**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **DANIELLE SPEARS** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Case no.7:24-cv-321-RCG** |
| | * | |
| **NEXT BRIDGE HYDROCARBONS, INC.** | * | |
| **GREG MCCABE, JOHN BRDA,** | * | |
| **SECURITIES AND EXCHANGE COMMISSION** | * | |
| **FINANCIAL INDUSTRY REGULATORY AUTHORITY** | * | |
| **JANE DOE 1-20, JOHN DOE 1-20** | * | |
| | * | |
| **Defendants** | * | |

---

**PLAINTIFF'S MOTION TO DISQUALIFY JAMES WES CHRISTIAN, BAR HIS INVOLVEMENT IN MMTLP/MMAT SECURITIES, PRESERVE ALL INVESTIGATIVE RECORDS, AND ENTER A PROTECTIVE ORDER**

**INTRODUCTION**

This motion is not merely about the courtroom process, it's about a pattern of professional misconduct that threatens the core principle of fairness. It is about integrity, truthfulness, transparency and the fundamental trust our courts place in officers licensed to practice before them. Attorney James Wes Christian, Esq., ("**Christian**") cannot be allowed to continue appearing in this matter or any matter involving Meta Materials, Inc. ("**MMAT**") or MMTLP securities. His own admissions, statements, and documented conduct disqualify him outright.

This Court has the inherent power to disqualify counsel whose conduct undermines judicial integrity, violates ethical rules, or creates an appearance of impropriety. *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009) and In *re Dresser Indus., Inc*., 972 F.2d 540 (5th Cir. 1992)

established that such disqualification is not only permitted, but constitutionally necessary where risk of bias or structural unfairness exists.

Christian's disqualification is supported by a sustained and overlapping sequence of events spanning back to his initial engagement by Flamethrower, LLC in January 2023.

## I. FACTS

1. Flamethrower, LLC, created by John Brda ("**Brda**"), and upon information and belief, Greg McCabe ("**McCabe**"), CEO Next Bridge Hydrocarbons, Inc., ("**NBH**") engaged Christian Levine Law Group. In a press release on January 18, 2023, by Warshaw Burnstein, states that they were hired to "investigate whether tens of thousands of unsuspecting investors, were fraudulently sold hundreds of millions of unauthorized, "phantom" shares of NBH by market makers, broker dealers and other third parties.
2. A press release from June 29, 2023 indicates that Christian was also hired by Meta Materials, Inc., ("**META**"). In that press release, Christian is quoted as saying, "Our mission is to expose any illicit activities and seek remedies that protect Meta Materials and its shareholders."
    a. He went on to say, "Based on the initial analysis, we believe this has the potential to become the motherload of counterfeit shares. The scale and complexity warrant exhaustive investigation, and we are prepared to relentlessly pursue justice for META and its shareholders," said Christian.
    b. This same press release goes on to say, "after conducting a preliminary trading analysis in collaboration with Shareholder Intelligence Services, LLC, ("**ShareIntel**") has identified seemingly trade imbalances in the trading of

META's shares aka ticker symbol ("**MMAT**") which are potentially material relative to MMAT's public float and average trading volume."

3. January 30, 2024 NBH led by Christian filed suit against TradeStation, case no. 0:24-cv-06194-RKA, but withdrew the suit months later.

   a. No investigative results or data was shared publicly.

4. Further in a May 20, 2024 press release, META is quoted as saying, "The lawyers have now concluded that META has a meritorious claim for market manipulation against several parties." Christian is also quoted as stating, "I believe META has an actionable case in connection with its MMAT/MMTLP claims." It further states that META "expects to file legal proceedings in the coming quarters against the responsible financial services firms."

5. Months later the company entered Voluntary Chapter 7 bankruptcy proceedings, case no. 24-50792-hlb.

   a. To plaintiffs knowledge META, NBH, McCabe and Christian have either never filed nor followed through with any litigation to seek redress on behalf of investors as promised.

6. On October 31, 2024 Christian submitted his Declaration of James W. Christian in support of *EX PARTE* Application by Chapter 7 Trustee to Employ the Law Firm of Christian Attar as Special Counsel [F.R.BANKR.P. 2014] ("**Declaration**") Dkt. 99 with Exhibits 1-4 for authority as special counsel to investigate and litigate any case of merit found due to market manipulation of MMAT and MMTLP securities.

   a. Within this Declaration in Dkt. 99-1, in Meta Materials, Inc., 24-50792-hlb in Exhibit A states in part, "The manipulation (of MMTLP & MMAT) led to

extreme financial losses for the Company, as it sold shares at artificially low prices which led to extreme financial losses for more than 65,000 retail shareholders. Prepetition, the Company engaged a group of specialist advisors, including Christian Attar (the "**ATTAR**"), whose analysis identified over 55 million shares of MMAT and 92 million shares of Torchlight Energy Resources, Inc., ("**TRCH**")."

i. That Christian and company insiders have been aware for several years now of the market manipulation that damaged shareholders.

1. Yet have taken no legal action, which speaks to the fact that this group has continued to control and withhold the data and results from shareholders, who have begged for answers.
2. The silence received from all parties is deafening.

7. On November 4, 2024, Trustee Lovato ("**LOVATO**") approved his application which indicated approximate costs of $11,800,000 and a 30% contingency fee on all recovered monies.
    a. Despite dramatic pronouncements and promises of justice, Christian and the parties he represents have offered no legal action.
    b. They have only exhibited control over data, and silence in place of transparency.
    c. Being paid by a third party to further investigate something he already claimed had merit seems extremely greedy from an investor's point of view.
8. On April 4, 2025, Plaintiff filed a formal Objection to Petition Filed by Attorney James Wes Christian, Esq., (" Spears Objection letter"), challenging his authority to investigate MMAT & MMTLP securities on behalf of the META bankruptcy court with exhibits[1]

[1] Attached hereto is a true and correct copy marked as **Exhibit B** - Spears Objection to Christian

submitted via email Jeffrey L. Hartman, Esq., ("**Hartman**"). Also sent certified mail to the clerk of court as well as emailed to Christian via email in an effort to offer full transparency.

9. On April 16, 2025, Christian responded to Spears' Objection letter by issuing Hartman a 5 page letter.

   a. Christian made multiple false accusations about her.

   b. Plaintiff only learned of the document from a fellow shareholder, as transparency was not forthcoming.

10. On April 23, 2025, the previous 5 page letter along with a 3 page filing including hundreds of pages of exhibits A-D were entered in the Nevada Bankruptcy Record in Dkt. 1878-4, In re Meta Materials, Inc., No. 24-50792-hlb. In this document, Christian claimed "**disinterestedness**" under 11 U.S.C. § 101(14), despite representing NBH and preparing litigation threats against Plaintiff and other shareholders.

**11 U.S.C. § 327, § 101 & § 330: Employment of Professionals, Limits on Compensation and Conflicts of Interest**

11. 11 U.S.C. § 101(14) – Disinterested Person

   a. Under 11 U.S.C. § 101(14), a person is "disinterested" only if they;

      i. Are not a creditor, equity holder, or insider;

      ii. Are not and were not, within 2 years before the petition date, a director, officer, or employee of the debtor; and

      iii. Do not have an interest materially adverse to the estate.

Christian's own representations in his letter to Hartman, admitting he was simultaneously representing NBH against shareholders, are plainly incompatible with the standard of 'disinterestedness' set forth in § 101(14)

12. 11 U.S.C. § 330(a) – Limitation on Compensation

    a.  Professionals may be compensated only for actual, necessary services to the estate. Compensation is denied if;

        i.  The professional has a conflict;

        ii.  They seek fees that are unreasonable or duplicative;

        iii.  They have otherwise failed to disclose their role or connections properly.

13. 11 U.S.C. § 330(a) – Limitation on Compensation

    a.  The trustee (or court) may employ attorneys "that do not hold or represent an interest adverse to the estate and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

14. In Christian's own words, (taken from his response to Spears Objection letter) to the Hartman April 16, 2025) Dkt. 1878-D he admitted to Hartman on or before November 4, 2024 that;

    a.  He would not represent McCabe due to potential conflict.

    b.  He was hired by NBH to sue Plaintiff and others.

    c.  Hartman communicated to Christian that McCabe may be investigated in the proceedings, warning him of conflicts of interest, providing McCabe as CEO of NBH with insider information.

      i.   This represented a clear conflict of interest with shareholders who have vested interests in the outcome of any investigations or litigation of MMTLP and MMAT.

      ii.   Plaintiff is shocked frankly that Hartman and Lovato allowed his representation to continue having been informed of his adversity to certain shareholders from the outset as told by Christian in his own words.

15. Within the documents Chrisitan filed into the META Nevada bankruptcy record, Christian refers to Plaintiff and others by using damaging language against shareholders, such as:

    a.   He states that shareholders are "*attempting to obstruct the bankruptcy process*," describing their activity as "*bizarre and incoherent*."

    b.   Christian collectively labels plaintiff and other shareholders as "*Perpetrators*", placing her in a category typically reserved for wrongdoers or criminal actors.

    c.   Christian escalates the rhetoric by describing the plaintiff as part of a group of "*co-conspirators*", implying intentional misconduct and unlawful coordination.

    d.   Christian also accuses Plaintiff as having filed "*frivolous pro se complaints*" in federal court, asserting plaintiffs legal actions lack merit without citing evidence.

    e.   Christian alleges the plaintiff is actively trying to sabotage or interfere with legal proceedings, including those involving META or NBH. He states that Plaintiff and others are "*Attempting to obstruct, impair, and derail our legal cases*."

    f.   Christian claims Plaintiff's purpose is not legal redress, but to protect others he is targeting through investigation or litigation. He states that Plaintiff and others are "*Acting as a shield for the people we are pursuing*."

g.  Christian strategically grouped plaintiff with "*the same group… that have complained to the court*"

h.  Christian further portrays Plaintiff as "*Filing complaints against many parties, including META*" as excessively litigious or unreasonably adversarial.

    i.  Plaintiff has not named META nor any of its executives in open litigation.

    ii.  Plaintiff sold all her MMAT shares in late 2023 to early 2024, suffering the loss of thousands of dollars.

    iii.  She did so when the CEO George Palikaras was relieved of his position in what Plaintiff can only express as a hostile takeover intended to bankrupt the company.

    iv.  Plaintiff made a post on X in November of 2024 in which she opined that META would be bankrupt in months.

        1.  While Plaintiff has no solid proof, she firmly believes this act has been committed in an effort to bury the trading data for good.

By associating Plaintiff with other vocal critics, he aims to delegitimize her concerns as part of a disruptive faction. Labeling Plaintiff and others "*Perpetrators*" and "*co-conspirators*." Christian references the onset of his authority to investigate when he admits to telling Hartman that he had been hired by NBH to litigate against Plaintiff before she even filed her original complaint. This language is inflammatory, prejudicial, and clearly retaliatory. It demonstrates that Christian is not a neutral officer of the court, but an adversary seeking to suppress and punish protected petitioning activity. This rhetoric does not serve legal analysis—it serves intimidation, and is unworthy of an officer of the Court.

## II. IMPROPER LITIGATION THREATS AND ABUSE OF PROCESS

16. On March 26, 2025 Christian filed with this court as attorney of record for NBH.

17. March 26, 2025 Christian also simultaneously sent Plaintiff a Demand for Preservation of ESI letter, ("**Christian's ESI letter**") that same day.[2]

   a. Delivered via DM on Twitter/X, a platform not recognized under FRCP or local rules;

   b. Claimed Plaintiff might be a witness or party;

   c. Referenced NBH as "*Plaintiff*";

   d. Repeatedly requested documentation and ESI of both NBH and McCabe, even though he admits to representing NBH and specifically, not McCabe;

   e. Demanded ESI dating back four years prior to Plaintiff's investment;

   f. Costs associated with this forensic endeavor were estimated between $7,000-$10,000, a serious financial burden to Plaintiff.

18. March 31, 2025 Plaintiff responded to this ESI letter.[3]

19. April 4, 2025 Christian responded by saying the ESI document was standard and not meant to intimidate.[4]

Such threats, when unaccompanied by legal follow-through and timed to intimidate a pro se litigant, raise concerns under Rule 4.04 of the Texas Disciplinary Rules of Professional Conduct, which prohibits using means that have no substantial purpose other than to embarrass, delay, or burden a third person.

---

[2] Attached hereto is a true and correct copy marked as **Exhibit C -** Christians ESI letter

[3] Attached hereto is a true and correct copy marked as **Exhibit D** - Spears response to Christian ESI letter

[4] Attached hereto is a true and correct copy marked as **Exhibit E** - Christian responds to my response to his ESI letter.

20. February 6, 2025 Christian filed a defamation suit against Scott Traudt ("**Traudt**"), a fellow shareholder. The suit was served on the 14th of February and he received the ESI letter on February 28, 2025.

    a. Mr. Traudt, like Plaintiff, was very vocal on X/fka Twitter. He also insisted on transparency, data, information, communication and answers to inconsistent findings.

    b. Plaintiff is aware of several individuals who also received these demand hold letters from Christian.

    c. When viewed in totality, the picture is one of persecution for any shareholder bold enough to ask questions publicly or to question inconsistent findings, leading to questions of fraud.

        i. These professional and procedural rules governing attorney conduct and court filings are pertinent;

            1. ABA Model Rule 4.4(a) – misuse of legal tools to burden or harass;

            2. ABA Model Rule 8.4(d) – conduct prejudicial to the administration of justice;

            3. FRCP 11(b) – improper legal assertions without valid basis.

21. In and around June 2025, Plaintiff began to have a dm chat relationship with Heather Roberts ("Roberts") a private investigator and owner of the non-profit organization Naked Truth Info. In these dm's Roberts provided a fair amount of information and context regarding Christian and his firm. She claims to hold first hand knowledge from her time working/interacting with Christian and his firm. On more than one occasion she

commented that Christian holds Non-disclosure agreements, ("NDAs") with social media influencers.

    a.   These individuals created forums of apparent solidarity and information-sharing, positioning themselves as advocates for retail investors. Over time, they became trusted by thousands.

    b.   These influencers, believed to be independent, may have in fact been serving as covert public relations agents or proxies;

        i.   To misdirect scrutiny away fromMcCabe, NBH, META, and affiliated insiders;

        ii.   Shielding executives from criticism;

        iii.   Attacking any shareholder who voiced dissent.

If Christian has been coordinating behind the scenes with such influencers under NDA's as Roberts believes, it would represent a profound betrayal, not only of the investing public, but of the integrity of legal processes surrounding this case.

Christian's continued involvement inflicts irreparable harm on Plaintiff's ability to fairly litigate her claims. His public attacks, concealed litigation threats, and misrepresentations have created a chilling effect. No firewall, stipulation, or withdrawal cures the damage already done; disqualification and correction of the record are the only sufficient remedies.

## III. MOTION TO WITHDRAW

22. Christian's May 2, 2025 motion to withdraw Dkt. 35 in Plaintiff's case no 7:24-cv-321 may have been voluntary. However, from her point of view, Christian sought to escape scrutiny by quietly stepping away in order to extract himself from a self-dealing situation.

23. On May 1st, 2025 Casidy Newcomer ("**Newcomer**") emailed Plaintiff asking if she would be opposed or unopposed to a Motion to Withdrawal as attorneys of record for NBH. Plaintiff emailed Newcomer back the same day stating she opposed the filing.

    a. May 2, 2025, Newcomer and Christian misrepresented Plaintiff's position, stating she did not oppose, despite quoting her as opposed to the withdrawal.

        i. Only after filing multiple damaging documents, and after falsely telling the Court Plaintiff did not object to his Motion, did Christian file his withdrawal.

        ii. The filing appears to be an attempt to sidestep scrutiny and exit under cover of silence.

        iii. The timing of nearly all Christians filings and letters are extremely suspect, occurring on the same day or only weeks apart from actions taken by Plaintiff.

24. Plaintiff has observed a small, tightly connected group gain and retain exclusive control over the trading data and investigative findings related to MMTLP and MMAT.

    a. At first, their public efforts, including announcements of legal engagement and data collection gave shareholders hope that meaningful redress might follow. Over time, it has become clear that no such redress is intended.

     b. Despite repeated declarations of ongoing investigation, no actionable litigation has been filed.

c. Instead of transparency, they are met with silence—strategically withholding data that might otherwise expose wrongdoing.

d. Meanwhile, the costs of these purported investigations appear to drain shareholder value, reinforcing the perception that the process is not designed for justice, but control.

## IV. LEGAL AUTHORITY FOR DISQUALIFICATION AND SANCTIONS

Relevant authorities:

25. *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009): Due process requires disqualification where significant financial or procedural bias creates even the probability of actual bias.

In *Caperton*, the Supreme Court held that extreme facts—such as undisclosed financial influence or litigation bias—require disqualification, even absent overt misconduct. Similarly here, Christian has been paid at least three separate times to investigate the same MMTLP/MMAT fraud, has proposed an $11.8 million litigation budget and a 30% contingency, and continues to control access to ShareIntel data while representing conflicting interests. This structure alone creates a high probability of bias and due process violation. Plaintiff, a directly affected shareholder, is caught in Christian's crossfire, having been both targeted and silenced by the very counsel claiming neutrality.

26. *Marshall v. Jerrico, Inc*., 446 U.S. 238 (1980): Judicial and quasi-judicial participants must be—and appear to be—impartial.

Christian is acting as both prosecutor and accuser in one forum (MMAT bankruptcy) and defense counsel for NBH in another. He has taken public positions against Plaintiff while simultaneously occupying an investigatory role with fiduciary duties to creditors and the court. This violates the core principle in *Marshall*, which held that enforcement actors must maintain "both actual fairness and the appearance of fairness." Christian's inflammatory accusations—e.g., labeling Plaintiff a "perpetrator" and "co-conspirator"—strip away any semblance of impartiality.

27. In *re South East Materials, Inc*., 262 B.R. 420 (Bankr. M.D. Fla. 2001): Attorneys must disclose all conflicts or risk disqualification under § 327 and Rule 2014.

Christian failed to properly disclose to the Meta bankruptcy court his adverse relationship with Plaintiff and other MMTLP shareholders—despite knowing they were parties or witnesses in ongoing litigation, and despite threatening to sue them prior to being appointed. This concealment mirrors the fact pattern in *South East Materials*, where nondisclosure alone warranted removal of counsel, regardless of outcome.

28. In *re American Airlines, Inc*., 972 F.2d 605 (5th Cir. 1992): Even the appearance of impropriety is sufficient to disqualify counsel.

Christian's continued involvement has eroded public confidence and shareholder trust in both the bankruptcy process and this litigation. His role, rhetoric, and financial entanglement not only create a conflict but broadcast it—making it impossible to separate

his investigatory authority from his prior hostility. The *American Airlines* standard supports disqualification when "public confidence" is at stake. That standard is clearly met.

29. *FDIC v. U.S. Fire Insurance Co*., 50 F.3d 1304 (5th Cir. 1995): Rule 1.9 bars attorneys from representing interests materially adverse to a former client or known opposing party.

Christian has actively positioned himself against Plaintiff (and similarly situated shareholders) while purporting to serve all MMTLP shareholders. His threats pre-date the complaint. His filings seek to discredit Plaintiff in unrelated proceedings. He cannot now claim to act impartially for parties he has already targeted, especially when his law firm remains in possession of exclusive investigative records and third-party data critical to this case.

30. Matter of *Consolidated Industries Corp*., 373 B.R. 378 (Bankr. N.D. Ind. 2007): Disqualification appropriate where counsel conceals adverse interests or pursues conflicting roles.

In *Consolidated Industries*, disqualification was ordered because the attorney tried to serve too many masters without disclosure. The parallels to Christian's conduct are unmistakable. He represented NBH, advised McCabe, sought to sue Plaintiff, and simultaneously swore he was "disinterested" to obtain a court appointment. These roles are irreconcilable, and his failure to disclose them fully renders his appointment invalid under both statutory and ethical frameworks.

These authorities confirm that Christian's continued involvement poses an ongoing threat of prejudice, due process violation, and improper influence over both the judicial and bankruptcy estates. These cases collectively stand for one proposition: the law does not tolerate conflicted, adversarial conduct disguised as neutral investigation, especially when it chills litigation, distorts court records, or harms pro se plaintiffs. Christian's conduct has done all three.

Pursuant to 28 U.S.C. § 1746, Plaintiff affirms under penalty of perjury that the factual statements made in this Motion are true and correct to the best of her knowledge, information, and belief. These facts are based on personal knowledge or reliable sources and are submitted to support the relief requested below.

31. Plaintiff further incorporates by reference the document titled "**Affidavit of Danielle Spears in Support of Motion to Disqualify James Wes Christian**," ("**Spears Affidavit**") submitted (herewith is a true and correct copy of ("**Exhibit A"**) Spears Affidavit). This timeline contains additional facts personally known to Plaintiff and offered under penalty of perjury pursuant to 28 U.S.C. § 1746. The full contents of Exhibit A are offered in support of the instant Motion and reinforce the allegations made herein.[5]

## V. Prayer for Relief

1. Plaintiff respectfully requests that this Court:
2. Disqualify James Wes Christian and his firm from representing NBH in this matter;

---

[5] Attached hereto as **Exhibit A** is a true and correct copy of Spears Affidavit.

3.  Permanently bar Christian from participation in any current or future matters involving MMAT or MMTLP securities;

4.  Enter a protective order prohibiting Christian or NBH from filing or threatening legal action against Plaintiff for any claims already described in Christian's correspondence or litigation hold materials;

5.  Order the immediate preservation and production of all trading data, investigatory findings, ShareIntel correspondence, NDA's, secrecy agreements or other contracts, memoranda, invoices, draft or final reports, and all internal or external communications involving ATTAR, Kasowitz Benson Torres LLP, META, Flamethrower LLC, and any related agents or third parties involved in MMTLP or MMAT investigations;

6.  Refer Christian to the relevant state disciplinary authority and/or this Court's internal ethics oversight for:

    a.  False statements made to the bankruptcy court;

    b.  Abuse of process and litigation threats;

    c.  Conflicts of interest in violation of 11 U.S.C. § 101(14)

    d.  ABA Rules 1.7, 3.3, 4.4, and 8.4;

7.  Stay any further participation or filings by James Wes Christian in any proceeding involving Plaintiff, NBH, MMAT, or MMTLP pending resolution of this motion;

8.  Grant leave to supplement this motion with emerging disclosures, newly filed exhibits, or rulings issued in related proceedings including the META bankruptcy, should further developments support additional relief. This includes, but is not limited to, evidence discovered through Freedom of Information Act ("**FOIA**") responses, bankruptcy filings,

or parallel federal court litigation. Plaintiff requests that the Court retain continuing jurisdiction to evaluate such supplements without requiring the filing of a new motion;

9. Issue Sanctions or Order to Show Cause under Rule 11(c): Plaintiff requests that the Court issue an Order to Show Cause requiring James W. Christian to produce evidentiary support for the defamatory statements made in Dkt. 1878-4 and his April 16, 2025 letter, or face sanctions under FRCP 11(c) for false, reckless, or harassing statements made against a pro se litigant;
10. Order Christian to formally retract or correct the unsupported accusations made in bankruptcy and related filings, or alternatively, issue a judicial finding that the accusations lacked evidentiary basis and were made for an improper purpose, to restore Plaintiff's credibility and prevent continued reputational harm.
11. Plaintiff respectfully requests this Court issue an order staying or enjoining any litigation or investigation by Defendants or their agents that overlaps materially with the facts in this case, or which seeks to influence, chill, or bypass Plaintiff's claims.
12. Plaintiff also requests that this Court order all counsel and agents of record to refrain from initiating or threatening parallel actions against Plaintiff involving MMAT or MMTLP during the pendency of this case, without first seeking leave of Court.

DATED: May 6, 2025

ORAL ARGUMENT REQUESTED

Danielle Spears

/s/ Danielle Spears
Danielle Spears, pro se

Certification of service to follow

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF system on May 6, 2025.

/s/ Danielle Spears
Danielle Spears

Appendix of Exhibits for
Motion to Disqualify James Wes Christian and
Spears Affidavit

A.  Spears Affidavit
B.  Spears Objection to Christian authority in META BK
C.  Christian ESI Letter
D.  Spears Response to Christians ESI letter
E.  Christian responds to Spears response to his ESI letter
F.  Books & Records Request
G.  Roberts Screenshot of Contract with Christian
H.  Roberts Screenshot of DM re: NDA's
I.  Roberts Screenshot of DM re: Christian's contract clause for dual representation
J.  Roberts Screenshot of DM re:Christian knew Trch was a pump & dump
K.  Roberts Screenshot of DM re: Atty paid leaders.

# EXHIBIT A
# Spears Affidavit
# For Motion to Disqualify
# James Wes Christian

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **DANIELLE SPEARS** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Case no.7:24-cv-321-RCG** |
| | * | |
| **NEXT BRIDGE HYDROCARBONS, INC.** | * | |
| **GREG MCCABE, JOHN BRDA,** | * | |
| **SECURITIES AND EXCHANGE COMMISSION** | * | |
| **FINANCIAL INDUSTRY REGULATORY AUTHORITY** | * | |
| **JANE DOE 1-20, JOHN DOE 1-20** | * | |
| | * | |
| **Defendants** | * | |

**EXHIBIT A**

**AFFIDAVIT OF DANIELLE SPEARS IN SUPPORT OF MOTION TO DISQUALIFY JAMES WES CHRISTIAN**

I, Danielle Spears, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1. On January 18, 2023 – James Wes Christian ("**Christian**") was hired by Flamethrower LLC,[1] formed by John Brda ("**Brda**") and, upon information and belief, Greg McCabe ("**McCabe**"), Next Bridge Hydrocarbons, Inc. ("**NBH**'s") CEO, to investigate MMTLP for market manipulation leading to a meritorious case. Plaintiff is unaware of the costs associated with this investigation.

[1] https://www.wbny.com/Warshaw-Burstein-Retained-by-Flamethrower-Shareholder-Group

2. June 29, 2023 – Christian is hired by Meta Materials, Inc. ("**META**")[2] to investigate MMTLP for market manipulation leading to a meritorious case. META announced Shareholder Intelligence Services, LLC ("Share Intel") had been retained to analyze trading data of META's ticker symbol ("**MMAT**") and MMTLP for signs of market manipulation. Plaintiff is unaware of the cost.
3. January 30, 2024 NHB led by James Wes Christian, ("**Christian**") filed suit against TradeStation Securities in case no. 0:24-cv-06194-RKA.
4. March 15, 2024 in case no. 4:24-cv-00767-P, Traggart v. Next Bridge Hydrocarbons, Inc., Christian began representing defendant NBH.
5. April 15, 2024 Christian filed a voluntary Motion to Withdraw from the TradeStation suit on behalf of NBH. Having presented no evidence of an oversold position as believed.
6. May 20, 2024 META press release announces[3] "The lawyers have now concluded that META has meritorious claims for market manipulation against several parties (without identifying the parties or specifying the manipulation alleged).

   Christian is quoted as saying, "I believe META has an actionable case in connection with its MMAT/MMTLP claims."

7. On or about June 2024, Plaintiff contacted the owner of Shareholder Intelligence Services LLC ("ShareIntel") directly to ask how she too could purchase the data. Plaintiff was informed that META had already purchased the data and therefore owned it and that Christian also had the data. Plaintiff was denied her request.

---

2 https://metamaterial.com/meta-materials-applauds-christianattar-for-teaming-up-with-warshaw-burstein-to-investigate-allegations-of-naked-short-selling/

3 https://www.accessnewswire.com/865475/meta-materials-announces-update-on-naked-short-selling-investigation

8. July 24, 2024 Heather Roberts ("**Roberts**"), a private investigator, also of the non-profit *The Naked Truth*, was chatting with Plaintiff in DM's on X regarding Christian. According to Roberts:

    a. She signed a contract with Christian when she planned to do work together on a project.[4]

    b. Christian believed her to have abandoned her non-profit *Naked Truth.* She disagrees, but had to move on to re-build her platform. Christian does have a NAKED TRUTH, INC. web page where Roberts is listed as Vice President and an Executive board member[5] [6]

    c. On July 24, 2024, In a DM I commented, " I've been amidst a flurry of bs with people I now know cannot be trusted. This has allowed me to link several key people. NO ONE will believe me. These people made sure they were at the top of the food chain. That way, they can run out the clock while making it look like they are the biggest cheerleaders." That same day, 7 minutes later, she wrote, "This is true. Smoke and mirrors. Wes had (an) NDA with many of them paid to push an agenda. Brainwashing is easy. Add, do you really think all the people in the spaces are there? No.[7]

    d. She made a point of telling me that she realized "there is a clause to that effect that they work with opposing clients." I asked, as in, he's a good guy working with you? She replied, "NO meaning their contract says they represent hedge funds basically or the company that stole the money, etc. In a professional sleek

---

[4] Attached hereto is a true and correct image marked as **Exhibit G** of a DM of her contract with Christian

[5] https://nakedtruth.info/faq/faq-with-wes-christian/

[6] https://nakedtruth.info/the-team/

[7] Attached hereto is a true and correct image marked as **Exhibit H** of a DM with Roberts about Christians' NDA's

saw Twist of words." I asked "Wait, so when Wes signed a contract with you, you realized there was a clause in there saying he had the right to work the other side of the aisle." She responded in part, "Yes, this is before I knew how corrupt the system was, as an investigator I caught on quick,"[8]

e. Roberts further wrote in part, " Things that make you go hmmmmm so when Wes took on torch he already knew it was a pump and dump.[9]

f. July 3, 2024 Roberts wrote in part, "Handful of paid leaders are heading investors on a free campaign that benefits who? The atty that was hired to do the job. They were being paid the last I knew before we were put on a shelf."[10]

9. August 9, 2024, MMAT enters Chapter 7 Voluntary Petition in Bankruptcy proceedings in case no. 24-50792-hlb, yet in the May 2024 press release, MMAT assured shareholders that litigation was imminent.

10. October 31-November 4, 2024 in case no. 24-50792-hlb, dkt. 98-100 ChristianAttar ("**ATTAR**") and Kasowitz Benson Torres LLP apply for and are granted authority dkt. 116-117 as special litigation counsel in the MMAT Chapter 11 bankruptcy.

a. The Ex Parte application by Chapter 7 Trustee to employ the law firms of ATTAR and Kasowitz Benson and Torres LLP as special litigation counsel, in Dkt. 98 states in part, "The Firms will investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'"

[8] Attached hereto is a true and correct image marked as **Exhibit I** of a DM with Roberts about Dual representation.
[9] Attached hereto is a true and correct image marked as **Exhibit J** Roberts - Christian knew torch was pump and dump when he took it
[10] Attached hereto is a true and correct image marked as **Exhibit K** Roberts - Paid leaders

b.  Christian's estimated cost as described in Dkt. 98-2, for the investigation, amounts
    to a staggering $11,800,000, in addition to a 30% contingency fee on any
    recovered sums. From an investor's standpoint, this triple-dipping arrangement
    appears excessively greedy.

c.  In dkt. 99-1, Christian certifies "to the best of his knowledge, there are no
    connections which ATTAR, and/or any of its employees, have with the Estate's
    creditors, shareholder or other parties-in-interest and their respective attorneys
    and accountants, the United States Trustee, and any person employed in the office
    of the United States Trustee, related to this matter."

d.  Also in Dkt. 99 Trustee Lovato ("**Lovato**") and Attorney for the Trustee, Jeffrey
    L. Hartman ("**Hartman**"), both certified that "To the best of the Trustee's
    knowledge, the Firms do not represent any interests adverse to the Estate in the
    matters upon which they are to be engaged and are disinterested as that term is
    defined in 11 U.S.C. § 101(14)."    Yet, at the signing of this document;

    i.   Christian was actively representing defendant NBH in Targgart v. NBH in
         an adversarial position against a shareholder;

    ii.  Through Flamethrower, LLC, Christian also held ties to Brda and
         McCabe who are each shareholders of both MMAT & MMTLP.

         1.  McCabe is the single largest shareholder of MMTLP.

         2.  Additionally, as CEO of NBH, McCabe automatically benefits
             from the unavoidable insider information.

    iii. February 6, 2025, Christian filed a defamation action against fellow
         MMTLP shareholder Scott Traud ("**Traudt**"), calling for $250,000 in

damages. He served him on the 14th and sent him the Demand for preservation of the ESI hold letter (“**ESI Letter” or “ESI**”) on the 28th of February. Christian also amended his suit from $250,000 to $50,000, citing a keying error.

1. Yet this did not cause Christian to step back from the bankruptcy proceedings at that time either.
2. Like Plaintiff, Traudt has been extremely vocal on platform X speaking out about the lack of communication, the lack of transparency and pointing out inconsistencies that raised questions of potential fraud by NBH and Mr. McCabe.

iv. Further Christian shares with the court that, in Dkt. 98-1- A, in part, “In the case of Meta Materials, Inc. (the “Company”), (Nasdaq: MMAT) and its predecessor Torchlight Energy Resources, Inc. (Nasdaq: (“**TRCH”**), the potential defendants or ‘targets’ engaged in persistent and extensive spoofing, placing millions of “Baiting Orders.” It further goes on to say, “The manipulation (of MMTLP & MMAT) led to extreme financial losses for the Company, as it sold shares at artificially low prices which led to extreme financial losses for more than 65,000 retail shareholders. Prepetition, the Company engaged a group of specialist advisors, including Christian Attar (the “Firm”), whose analysis identified over 55 million shares of MMAT and 92 million shares of TRCH.”

1. This is the first time that Plaintiff has read any results or data from NBH, McCabe, Brda or Christian.

11. November 4, 2024 or earlier, as stated in Christian's own words from his letter to the Attorney for Trustee, Jeffrey L. Hartman ("**Hartman**") on April 16, 2025, Christian communicated the following;

    a. "As you are aware, at the outset of retaining my firm, I advised you that I would not represent Mr. McCabe individually in any matter (as you advised me that META might be investigating potential claims against him)."

    b. "At that time I advised you I was representing NBH in a defamation, business disparagement, and tortious interference suit that will be pursued against some of the members of the same group referred to above that (a) have complained to the court; and (b) filed frivolous pro se complaints against many parties, including Meta." (Plaintiff is named with several others);

    c. "I made it clear to Mr. McCabe, I could not represent him in an individual capacity in the multiple pro se suits described below. (Plaintiff is singled out) As such, he retained separate legal counsel for his individual representation."

    d. "I understand the parties have alleged to the court that I have conflict; however, nothing could be further from the truth.

12. November 19, 2024, Plaintiff and a group of shareholders served a Books and Records request on NBH.(Attached is a true and correct copy of the "Books and Records" request)[11] No response was provided.

    a. Plaintiff learned that NBH had moved months earlier without notifying the Securities and Exchange Commission, ("**SEC**"), Secretary of State ("**SOS**"), nor shareholders.

[11]Attached hereto as **Exhibit F** is a true and correct copy - Books and Records request

13. November 25, 2024, Plaintiff emails Dennard Lascar requesting documentation of when NBH changed addresses with the SEC and SOS. No response was provided.
14. December 6, 2024 – Plaintiff files her pro se complaint in the Western District of Texas.
15. March 14, 2025 Plaintiff filed a second amended complaint with this court, filing the certificate of service on March 16, 2025.
16. March 26, 2025 Christian files a Motion to Appear Pro Hac Vice in defense of NBH in Plaintiff's case.
17. March 26, 2025 Christian sends Plaintiff a 7-page ESI letter via a dm's on X (formerly Twitter), naming NBH as "*plaintiff*.".[12]
18. March 31, 2025 Plaintiff Spears responded thoroughly in writing, objecting to several items within the letter such as its delivery, its tone, scope and expense.[13]
19. April 4, 2025 Christian replies to Plaintiff that it was standard and not meant to intimidate.[14]
20. April 4, 2025 Plaintiff filed a formal Objection to Petition Filed by Attorney James Wes Christian, Esq., ("**Objection Letter**") with Exhibits[15] to challenge Christians investigative authority via an email to Hartman and mailed a certified hard copy to the court, as well as provided Christian a copy via email to be fully transparent.
21. April 16, 2025, Christian responds to Plaintiffs' objection by issuing Hartman a 5 page letter Re: (a) Concurrent Representation of Meta Materials Inc. ("META") and Next

[12]Attached hereto as **Exhibit C** is a true and correct copy - Christian ESI Letter
[13] Attached hereto as **Exhibit D** is a true and correct copy - Spears response Christians ESI letter
[14] Attached hereto as **Exhibit E** is a true and correct copy - Christian responds to Spears response to Christians ESI letter
[15] Attached hereto as **Exhibit B** is a true and correct copy - Spears Objection letter sent to Hartman

Bridge Hydrocarbons, Inc., ("NBH") No Conflict of Interest and (b) Emails from Jennifer Vetrano and Danielle Spears (collectively, the "**Perpetrators**") to Christina Lovato.

a. Plaintiff only learned of the document from social media, as transparency was not forthcoming.

22. April 23, 2025, the previously mentioned 5 page letter with a 3 page filing titled, First Amended Declaration of James W. Christian in support of Application by Chapter 7 Trustee to Employ the Law Firm of Christian Attar as Special Counsel [F.R.BANKR.P 2014] along with hundreds of pages of exhibits was entered into the Nevada Bankruptcy Recorded in Dkt. 1878 A-D.

a. Within these pages, Christian singles out Plaintiff and a handful of other MMTLP shareholders within these documents.

i. All of whom have taken some kind of legal action with NBH or against individuals or entities tied to MMTLP.

ii. Speaking about Plaintiff using language with a clear adversarial air of superiority while using derogatory language to describe affected shareholders.

23. May 1, 2025 fellow MMTLP shareholder Matthew J. Pease ("**Pease**") filed Dkt. 1900 Notice of Non-party and Motion to Strike Scandalous Material in the MMAT bankruptcy court proceedings, case no. 24-50792-hlb. Pease simultaneously filed Dkt. 30 Notice Regarding Representation Status of Next Bridge Hydrocarbons, Inc. in *Pease v. NBH*, case no. 7:24-cv-322-RCG.

     a.  Plaintiff, like Pease, was confused as to Christians representation of NBH and also found the portrayal of Plaintiff provided by Christian to agents of the court are highly scandalous, requiring immediate correction.

     b.  Pease further indicated to Plaintiff that he also opposed the withdrawal under the current much clouded circumstances.

24.  May 1, 2025 Plaintiff received an email from Casidy Newcomer ("**Newcomer**") asking if plaintiff would be opposed or unopposed to their filing a motion to withdraw and emailed Newcomer back the same day, stating, "At this time, I am *opposed* to the motion to withdraw as presently contemplated." I stated specifically that conduct needed to be properly addressed prior to entering (an unopposed) motion to withdraw.

25.  May 2, 2025 Christian filed an unopposed Motion to Withdraw as counsel for NBH in Plaintiff's federal case, citing a potential for conflict of interest which is materially false.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 5/6/2025

   Danielle Spears

*/s/ Danielle Spears*
   Danielle Spears, Pro se
 12206 W Harrison St
 Avondale, AZ 85323
 paymmtlpnow@gmail.com
 480-476-1091

# EXHIBIT B
# Spears Objection letter to Hartman and Trustee For Motion to Disqualify James Wes Christian

April 4, 2025

Trustee Christina Lovato
United States Bankruptcy Court
District of Nevada

Re: Objection to Petition Filed by Attorney James Wes Christian, Esq. — Meta Materials, Inc.,
Bankruptcy Case No. 3:2024bk50792

Dear Trustee Lovato,

My name is Danielle Spears, and I respectfully submit this Urgent Letter of Objection to Attorney
James Wes Christian's Petition seeking investigative authority in the Meta Materials, Inc.
("MMAT") bankruptcy. I respectfully move for immediate judicial intervention to deny his petition
thus preclude Attorney James Wes Christian, Esq., from any further involvement or access to
the MMAT and MMTLP securities in the MMAT bankruptcy proceedings (Case No.
3:2024bk50792). My objection is firmly rooted in established constitutional rights, Supreme
Court precedents, the Professional Conduct Rules governing attorney behavior, including ABA
Model Rule 1.7 concerning concurrent conflicts of interest, conflicts of interest, as well as
documented facts detailed herein.

**Summary:**

My case centers squarely around the MMTLP controversy and its fallout.  Attorney Christian
currently represents Next Bridge Hydrocarbons ("NBH") in active litigation (Case No.
7:24-cv-321), where I am proceeding as a pro se Plaintiff.  My case pointedly includes formal
requests for access to Electronic Blue Sheets and CAT data specific to the MMTLP securities. It
raises many issues including securities fraud.  My action seeks to hold accountable the SEC,
FINRA, NBH, Greg McCabe (CEO of NBH), and John Brda (former CEO of Torchlight Energy
Resources).

MMAT and a related effort by Flamethrower, LLC created and funded by John Brda believed to
be joined by Greg McCabe, both previously announced investigations into alleged trading
irregularities of MMAT & MMTLP.(Exhibit 1 Flame thrower Press release)(Exhibit 2 John Brda
Flamethower 3+me= Post). Many shareholders, including myself, reasonably believed the
Flamethrower investigation was ongoing, yet no formal notice of investigation results were ever
publicly shared. When in fact two years later, many shareholders, like me, had no idea that
Flamethrower was no longer actively pursuing a case. (Exhibit 3 John Brda answers
shareholder question on X)  In public statements, Attorney Christian indicated that MMAT had
meritorious claims and had completed substantial due diligence by mid-2024. (Exhibit 4 MMAT
Press Release) Yet again, no formal investigation results, including data results were ever
publicly shared and clearly, no litigation followed as promised. NBH entered into litigation
against Trade Station and a hearing was set for September 20, 2024. Shareholders anticipated
substantive progress; however, Next Bridge withdrew from the case, resulting in further delay
and disappointment. (Exhibit 5 NBH v Tradestation)

Mr. Christian now represents NBH, whose chief executive officer Greg McCabe maintains a significant financial stake in MMAT and remains the largest shareholder of MMTLP. Thus he has the largest vested interest in the outcome of an MMTLP investigation. It is notable that Mr. McCabe, despite being the largest known shareholder and deeply involved in related matters, has not to date pursued permanent legal recourse through the courts to independently seek transparency or remedy regarding the alleged trading irregularities. This absence may be relevant when considering the broader context of litigation, access to market data, and the interests of shareholders seeking independent review.

Attorney Christian has also worked closely with both MMAT and Flamethrower, coordinating with third party data provider, Shareholder Intelligence Services, LLC ("Share Intel"). It is important to note, Mr. Christian historically has relied on third-party data provided by Shareholder Intelligence Services, LLC to litigate or settle naked short-selling cases. At times, settlements like these lack public disclosures, leaving shareholders unaware of settlement terms and amounts, contributing to shareholder concerns about transparency. I contacted Share Intel directly in the spring of 2024 and was told that both MMAT and Mr. Christian had the trading data. Further that MMAT owned the data, therefore, I was denied the ability to purchase or view that data independently as sought.

This small, tightly connected group, including MMAT, NBH, Mr. McCabe, Mr. Brda, all of whom now inextricably tied to Attorney James Wes Christian, has maintained consistent control over both the shareholder narrative and access to third-party trading data for over two years. This centralized control has effectively deprived shareholders of meaningful information, transparency, or investigative outcomes. Regulators have mirrored this pattern of stonewalling, further reinforcing the perception that this critical market data is being deliberately withheld. Access to this data is not only essential, it is foundational to shareholder rights. There appears to be a compelling but undisclosed reason why both this group and regulatory bodies remain intent on preventing investor access.

Granting Attorney Christian unrestricted access to such data would give him and his clients disproportionate power to continue to shape the narrative and influence the outcome of these proceedings to their advantage. The fact that Mr. Christian now serves as opposing counsel in my lawsuit while representing NBH, whose CEO, Greg McCabe, stands to benefit directly from any findings Mr. Christian obtains, makes this conflict untenable. Allowing Mr. Christian to act as a legal representative for a broader class of shareholders without their input or consent risks future litigation and violates principles of fairness and representation. I respectfully submit that this is the appropriate moment to deny his petition, thereby avoiding any appearance of impropriety and protecting the integrity of these proceedings.

**Standing:** is a condition that a party seeking a legal remedy must show they have, by demonstrating to the court, sufficient connection to and harm from the law or action challenged to support that party's participation in the case. I submit that I have direct standing to participate in these bankruptcy proceedings because I hold a legitimate position in MMTLP securities.

(Exhibit 6 AST STMT) (Exhibit 7 Schwab holdings) Therefore I have financial interests directly tied to and affected by these bankruptcy proceedings. Adding to that the fact that I have open litigation directly tied to any investigation involving MMAT and MMTLP market data.

**Conflict of Interest and Risk of Unfair Advantage:**

1. Mr. Christian's is counsel for defendant NBH in ongoing litigation case No. 7:24-cv-321.
2. Mr. McCabe is the CEO for NBH and also a defendant in ongoing litigation case No. 7:24-cv-321.
3. It is functionally impossible for Mr. Christian to isolate confidential information for NBH without it also reaching its CEO, Greg McCabe.
4. Mr. Christian seeks access to data specifically requested in case No. 7:24-cv-321.

This would give him an unfair advantage over myself Pro se Plaintiff. Mr. Christian is a seasoned litigator in naked short-selling cases and highly skilled at interpreting trading data to suit legal strategy. This expertise, when applied while representing NBH—a company led by Greg McCabe, who holds a significant vested interest in the outcome—raises serious concern that the data could be selectively framed to benefit his client.

Further, while no accusations are made, the existing relationships between Mr. Christian, NBH, MMAT, Flamethrower, Greg McCabe and John Brda reflect overlapping roles and relationships that present a textbook example of divided loyalty. (Exhibit 8 Web diagram of Conflicts of Interest). This Court has a duty to ensure that any investigation is conducted only by a truly neutral party, unconnected to any entity involved in related litigation.

**The Fourteenth Amendment's Due Process Clause** addresses state actions that potentially infringe upon an individual's rights to fair judicial or administrative proceedings.

Constitutional Due Process Violation: *Wardius v. Oregon*, 412 U.S. 470 (1973)

In *Wardius v. Oregon*, the U.S. Supreme Court emphasized that due process fundamentally requires reciprocal and equal discovery opportunities, explicitly forbidding any procedure that provides one party an unfair advantage in accessing critical evidence. Attorney Christian obtaining early or exclusive access to Electronic Blue sheet or Cat data, data essential to litigating the core issues, creates an obvious imbalance and a clear violation of the due process principle established in Wardius. Effectively providing Mr. Christian discovery of data sought specifically in my ongoing litigation whereupon Mr. Christian is opposing counsel, without giving me identical access, is a violation of my Constitutional Due Process rights.

Constitutional Due Process Violation: *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)

In *Caperton*, the U.S. Supreme Court ruled that due process requires recusal or disqualification when a judge or decision-maker has a probability of actual bias due to prior relationships, financial interests, or influence, even absent definitive proof. The Court emphasized that due process safeguards against substantial risks of bias that threaten the fairness and integrity of proceedings. Given Attorney Christian's specialized background in litigating naked short-selling cases and his historic reliance on proprietary trading data to craft legal strategies and settlements, his access to the MMAT and MMTLP data poses a serious risk. He has the experience and capability to interpret this data in ways that could serve his current clients' interests—potentially at the expense of other shareholders. With no oversight or transparency, Christian could shape the interpretation of this data to protect NBH and its leadership, including Greg McCabe, while sidelining competing claims or narratives. His dual role not only creates an appearance of bias but also offers him a unique opportunity to manipulate sensitive information for strategic legal advantage.

Constitutional Due Process Violation: *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980)

Finally, in *Marshall v. Jerrico, Inc.*, the Supreme Court considered whether a provision in the Fair Labor Standards Act violated due process by allowing administrative officials to allocate penalties collected to fund their department's operations. The Court concluded that due process requires both actual fairness and the perception of fairness, holding that any decision-maker who may benefit financially or otherwise from the outcome of proceedings is constitutionally prohibited from involvement. Shareholders remain uninformed regarding the cost of prior investigations. Now, Mr. Christian seeks approximately $11 million more, despite no prior litigation being filed, to review data, this time under the guise of court-sanctioned authority According to *Marshall v. Jerrico, Inc.*, due process is violated when a party stands to benefit financially from the outcome of an investigation. In this case, Mr. Christian appears to be profiting from repetitive investigations that yield no public results, effectively draining shareholder resources while offering no clear intent to pursue resolution.

A review appears warranted, to confirm and determine whether James Wes Christian, Esq., has at all times been accountable to the Professional Conduct Rules governing his practice. **ABA Model Rule 1.7** explicitly prohibits a lawyer from representing a client when a concurrent conflict of interest exists, unless specific conditions, such as informed consent from all affected parties, are met. Mr. Christian does not have my consent to access anything related to MMTLP or MMAT on my behalf. To suggest it is possible for Mr. Christian to advocate for all parties without bias is fundamentally flawed.

Any future oversight, investigative authority, or case influence should be placed in the hands of a truly neutral, disconnected third party, one selected independently and without input from Mr. Christian or his affiliates. Attorney Christian cannot claim neutrality while representing NBH in federal court and simultaneously seeking access to extremely sensitive and highly sought after evidence that might directly implicate NBH's and its leadership. This dual role presents a

textbook conflict of interest. The multifaceted roles and relationships directly mirror these circumstances, creating irreconcilable conflicts. (See Exhibit 5

Mr. Christian also has a history of prior sanctions (Case No. 1:02-cv-08726 (LAK)) and is currently subject to a pending Rule 11 motion in another securities matter (Case No. 1:23-cv-10637). While these are not dispositive, they warrant careful review when assigning investigatory authority in securities matters.

**Request for Relief**

I respectfully request that the Court:

1. Immediately suspend any and all participation, input, or influence currently granted to Attorney James Wes Christian, if any, until this matter is fully adjudicated.
2. Deny Attorney James Wes Christian's petition to obtain investigative authority in the MMAT bankruptcy proceedings, to ensure that no party gains undue advantage that could infringe upon my constitutional rights or the interests of other affected shareholders.
3. Appoint an independent, impartial investigator, who is free from prior relationships or conflicts of interest with any involved parties, to conduct a fair and transparent review of the MMTLP and MMAT securities.
4. Conduct a Formal Review: Initiate an immediate and comprehensive review of Attorney Wes Christian's dual representation to determine compliance with 11 U.S.C. § 327(a) and applicable ethical standards.
5. Ensure Full Disclosure: Mandate that Attorney Christian fully disclose all relevant relationships, financial interests, and potential conflicts involving NBH, MMAT, and himself, to all parties and the Court.

Given the urgency and importance of these issues, I respectfully request the Court's timely response and consideration to ensure that due process and transparency are upheld for all parties involved.

Respectfully,

Signed by:
Danielle Spears
CAC0EAB17D654A1...
4/4/2025

Danielle Spears
12206 W Harrison St
Avondale, AZ 85323
480-476-1091
paymmtlpnow@gmail.com

EXHIBITS 1 - 8 ATTACHED

# EXHIBIT C

# Christian's Demand for ESI

# preservation letter to Spears

# For Motion to Disqualify

# James Wes Christian

James W. Christian
*jchristian@christianattarlaw.com*

March 26, 2025

***Via X:***
@spldbrat351964

Re: Pre-Litigation Document Preservation Related to Potential Claims Involving Next Bridge Hydrocarbons, Inc.

**DEMAND FOR PRESERVATION OF ELECTRONICALLY STORED INFORMATION**

To Whom it May Concern:

The undersigned has been retained as litigation counsel by Next Bridge Hydrocarbons, Inc. (hereinafter "Plaintiff" or "NBH") to investigate and commence litigation against all parties who have engaged in a scheme of harassment, business disparagement, libel, slander, tortious interference, conspiracy, obstruction of justice and violations of the Administrative Procedures Act. We write to advise @spldbrat351964 that litigation is being considered against certain individuals with respect to this matter. You may become a party or witness in this dispute and therefore, you have an obligation to preserve all documents and electronically stored information ("ESI," as further defined below) that may relate in any way to the subject matter of this dispute (the "Claims").

We hereby request that You, individually, or on behalf of any entities you control ("You") preserve all documents, tangible things, and electronically stored information potentially relevant to the Claims such as documents, communications, and any other relevant materials including but not limited to:

1. All communications (emails, text messages, internal messaging systems, etc.) regarding NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe
2. All Twitter (now X) data, including but not limited to:
    - Direct messages (sent and received) related to NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe
    - Public and private posts, tweets, replies, retweets, and quote tweets referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe
    - Account activity logs referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe



- Any reports, complaints, or moderation actions related to content involving referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

3. Any third-party communications (including correspondence with regulators or law enforcement) mentioning Plaintiff referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

4. Metadata and logs associated with the above records, including timestamps, authorship, and any modifications

You should anticipate that files and much of the information relevant to Plaintiff's Claims are stored on your computers and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored on a computer, hard drive, cell phone, flash drive, CD, DVD or other electronic storage device as:

- Digital communications (e.g., e-mail, voice mail, text messaging, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., WAV and .MP3 files);
- Space Call Recordings;
- Webinars Recording;
- Podcasts Recordings;
- Video and Animation (e.g., AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you, but also in areas that may not reasonably be accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if it does not anticipate having to produce such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary for Plaintiff to determine the nature and extent of any claims.

**Preservation Requires Immediate Intervention**

You must act immediately to preserve potentially relevant ESI including, without limitation, information from January 1, 2018 to present.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents, files, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and
- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

You should anticipate that others may seek to hide, destroy, or alter ESI and act to prevent or guard against such actions. Especially where devices have been used for Internet access or personal communications, You should anticipate that users may seek to delete or destroy information they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you. It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to its data and archives from seeking to modify, destroy, or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

With respect to your hard drives and storage devices, the demand is made that you immediately obtain, authenticate, and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by you during the period from January 1, 2018 to present, as well as recording and preserving the system time and date of each such computer:

- Any Agents, Partners, or Collaborators of you concerning matters of NBH or its Officers, Directors, Shareholders, or Agents, including but not limited to Greg McCabe.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

The term "computer" shall include any computer, hard drive, cell phone, flash drive, CD, DVD, or other devices capable of storing ESI.

**Preservation in Native Form**

You should anticipate that certain ESI, including but not limited to Word documents, spreadsheets, and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, You should preserve ESI in such native forms, and it should not select methods to preserve ESI that remove or degrade the ability to search its ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation.

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible

**Metadata**

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers**

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino, G-mail) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downloaded or must be online 24/7. If you question whether the preservation method it pursues is one that we will accept as sufficient, please call us to discuss it.

**Home Systems, Laptops, Online Accounts and Other ESI Venues**

Though we expect that You will act swiftly to preserve data on all devices, it should also determine if any home or portable systems may contain potentially relevant data. To the extent that you sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and your PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if you used online or browser-based e-mail accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

**Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.



You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

**Paper Preservation of ESI is Inadequate**

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

**Agents, Attorneys and Third Parties**

Your preservation obligation extends beyond ESI in its care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, You must notify any current or former representative, agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and it must take reasonable steps to secure its compliance.

**System Sequestration or Forensically Sound Imaging**

We suggest that, You, removing your ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

In the event You deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols**

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if it will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol it intends to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If You do not currently have such expertise at its disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics.

**Do Not Delay Preservation**

I am available to discuss reasonable preservation steps; however, You should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which Plaintiff is entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

**Confirmation of Compliance**

Please confirm as soon as practically possible and no later than April 9, 2025 ,that You have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If You have not undertaken the steps outlined above, or have taken other actions, please describe what it has done to preserve potentially relevant evidence.

Sincerely,

James Wes Christian

# EXHIBIT D
# Spears response to Christians ESI letter
# For Motion to Disqualify James Wes Christian

Danielle Spears
12206 W. Harrison St.
Avondale, AZ, 85323

Wes Christian, Esq.
CHRISTIANATTAR
1177 West Loop S. Ste. 1700
Houston, TX 77027

RE: Response to Litigation Hold Letter

Dear Mr. Christian,

I acknowledge receipt of your Litigation Hold Letter dated March 26, 2025, sent via private message on the social media platform X (Twitter).

I feel compelled to bring to your immediate attention multiple serious ethical concerns arising from your recent correspondence. As you are undoubtedly aware, attorneys practicing in federal court, as well as in the states of Arizona and Texas, are bound by stringent ethical rules governing professional conduct. These include but are not limited to:

- Western District of Texas Local Rule AT-7, requiring adherence to the highest ethical, professional, and civil standards.
- Arizona Rule of Professional Conduct 4.4(a), prohibiting the use of methods designed to embarrass, delay, or burden any individual.
- Arizona Rule of Professional Conduct 1.7, prohibiting representation involving concurrent conflicts of interest.
- Texas Disciplinary Rule of Professional Conduct 4.04(a), prohibiting actions meant solely to burden, intimidate, or embarrass third persons.
- Texas Disciplinary Rule of Professional Conduct 1.06, prohibiting representation involving conflicts of interest.
- ABA Model Rule 4.4, requiring respect for third-party rights and prohibiting methods designed to burden third persons.
- ABA Model Rule 8.4, prohibiting intimidating and prejudicial conduct, dishonesty, and misrepresentation.
- ABA Model Rule 1.7, prohibiting conflicts of interest, particularly representation materially limited by responsibilities to other clients or interests.

I must highlight the glaring contradictions between your recent communication and these established ethical guidelines. Firstly, the tone, severity, and explicitly threatening language of your letter—particularly against myself, a Pro Se litigant actively involved in litigation against your client Next Bridge Hydrocarbons ("NBH")—can only be viewed as retaliatory and intended to chill the Plaintiff. Such conduct is wholly inappropriate and directly contravenes the aforementioned ethical standards.

Furthermore, your repeated references to Mr. Greg McCabe, whom you explicitly do not represent, demonstrate a significant and concerning conflict of interest. The consistent invocation of Mr. McCabe's name throughout your correspondence raises serious questions about your professional independence and your duty of loyalty exclusively to your client, NBH.

Moreover, your deliberate omission of your official role as attorney of record for Next Bridge Hydrocarbons in the pending federal litigation further compounds this conflict, representing a clear breach of transparency and candor.

Additionally, I find it particularly disappointing and somewhat disturbing that an attorney of your tenure and experience would consider it appropriate to deliver a litigation hold letter via private message on a social media platform rather than utilizing a more professional, conventional, and respectful method. Both you (James Wes Christian, jchristian@christianattarlaw.com) and Casidy Newcomer (cnewcomer@christianattarlaw.com) have previously corresponded with me via email, which further amplifies the inappropriate and unprofessional choice of using social media for such serious and formal communication.

For clarity, I am a 61-year-old disabled grandmother who resides with her son. Unlike your firm, I do not possess considerable financial resources and have had to painstakingly gather the resources necessary to pursue this litigation Pro Se. Your intimidating tactics, leveraging your considerable position of power and resources against a litigant in my circumstances, fall well below acceptable standards of professional conduct.

Please consider yourself formally advised to immediately adhere strictly to the very instructions outlined in your own Litigation Hold Letter. Given your insistence on continually referencing Mr. McCabe, whom you do not represent, I urge you to preserve all communications and documentation related not only to Next Bridge Hydrocarbons but also to Greg McCabe.

Should this correspondence have been intended to intimidate or silence me, please be advised that such tactics are ineffective and will not be tolerated.

Respectfully,

Danielle Spears

/s/ Danielle Spears

# EXHIBIT E
# Christians responds to Spears response to his ESI letter
# For Motion to Disqualify
# James Wes Christian



**James W. Christian**
*jchristian@christianattarlaw.com*

April 4, 2025

***Via Email:* paymmtlpnow@gmail.com**

Re: Response to letter regarding the demand for preservation of electronically stored information dated March 26, 2025 (the "Preservation Demand").

Dear Ms. Spears:

I am writing in response to your letter dated March 31, 2025, regarding the Preservation Demand. I would like to address these concerns and clarify the rationale behind the methods used for delivering the Preservation Demand.

Firstly, it is important to understand that evidence preservation letters are not subject to the traditional methods of service as outlined in the Texas Rules of Civil Procedure. These letters are merely pre-litigation documents intended to prevent the spoliation of evidence and ensure that all relevant information is preserved for potential future litigation. Therefore, evidence preservation letters do not require the same formal service methods as other litigation documents such as pleadings and motions. See Tex. R. Civ. P. 21(a);Tex. R. Civ. P. 501.4.

The decision to serve the Preservation Demand via direct message on the social media platform X (also known as "Twitter") was made out of an abundance of caution to confirm receipt. The use of direct messaging was not intended to cause confusion or concern but rather to have verification that you are the owner of the handle, @spldbrat351964.

I want to assure you that there was no intention to intimidate or retaliate against you. The language used in the Preservation Demand was standard and aimed solely at ensuring compliance with evidence preservation obligations. As stated in *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex. 2003), Texas law imposes a general duty to preserve evidence once a party knows, or should reasonably know that (1) there is a substantial chance that a claim will be filed and (2) evidence in the party's possession or control will be material and relevant to that claim. The Preservation Demand does not pertain to the current litigation in which you are a pro se Plaintiff, but to *potential future litigation*.

In conclusion, it is crucial that all parties involved in potential litigation take steps to preserve relevant evidence, and I trust that you will comply with this request.

Thank you for your attention to this matter.

Sincerely,

*/s/ James Wes Christian*
James Wes Christian

# EXHIBIT F
# NBH Books and Records Request
# For Motion to Disqualify James Wes Christian

**November 18, 2024**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons
6300 Ridglea Place, Suite 950
Fort Worth, TX 76116

**Subject:** Formal Request for Access to Books and Records Pursuant to Texas Business Organizations Code Section 21.218

Dear Mr. McCabe,

We, as a group of shareholders of Next Bridge Hydrocarbons ("NBH"), formally invoke our rights under **Section 21.218 of the Texas Business Organizations Code** to request access to specific books and records of NBH. This request is made in good faith for the legitimate purpose of investigating potential mismanagement, breaches of fiduciary duty, and actions that may have detrimentally affected shareholder value.

---

## Requested Documents and Records

### 1. Board and Management Communications

a. Board meeting minutes, resolutions, and presentations related to:
i. The reverse merger between Torchlight Energy and Meta Materials.
ii. The spin-out of oil and gas assets into NBH.
b. Internal communications, including emails, exchanged between board members and executive officers including but not limited to yourself, John Brda, George Palikaras and Clifton DuBose regarding these transactions.

### 2. Financial Records

a. Audited financial statements and annual reports for the preceding two fiscal years.
b. Documentation regarding stock issuances and allocations associated with the spin-out of NBH.

### 3. Consulting and Employment Agreements

a. Contracts or consulting agreements involving yourself, John Brda, George Palikaras, Clifton DuBose, Rich Masterson, Clinton Plant or any and all other executives with Torchlight, Meta Materials, or NBH, including terms of compensation and delineation of responsibilities.

**4. Lease and Asset Records**

a. Documentation and communications related to the loss of the University Lands lease, including:

1. Specific reasons for any missed payment or non-compliance with lease terms.
2. Internal correspondence or board discussions addressing risks to the lease.
3. Proposals or remedial actions considered to prevent termination.
4. Financial statements or cash flow records from the relevant period reflecting the company's ability (or inability) to meet payment obligations.
5. Agreements and due diligence materials related to the acquisition of the Louisiana Heritage Play, including any disclosures of conflicts of interest.
6. The exact locations, names, and production outputs of McCabe Petroleum Company's wells in Louisiana.

**5. Shareholder Records**

a. Records identifying individuals or entities that approached NBH to acquire shares, including details of initial approaches and subsequent negotiations.
b. Names and contact details of third parties expressing interest in purchasing NBH shares.
c. Summaries or descriptions of discussions or communications with third parties, including:

1. Meeting dates and locations.
2. Correspondence or exchanged documents (verbal or written).
3. Participants in these discussions, including, but not limited to any and all board members or executives.
4. Resolutions, agreements, or decisions made as a result of these discussions.
5. Verification of share counts and allocation records, including documentation addressing potential naked short selling or unregistered shares.

**6. SEC Filings and Withdrawals**

a. Correspondence and drafts associated with the withdrawn S-1 filing for Newco.
b. Documents detailing changes in strategy or corporate governance tied to Newco's postponement or abandonment.

**7. Non-Disclosure Agreements and Related By-Laws**

a. We request copies of any and all Non-Disclosure Agreements, Non-Compete/Non-Disclosure Agreements, Secrecy Agreements,any similar agreements relevant to NBH operations or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of NBH with any and all party or parties since the inception of NBH .

b. We request copies of any and all Non-Disclosure Agreements, Non-Compete/ Non-Disclosure Agreements, Secrecy Agreements, any similar agreements relevant to NBH operations or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of any company, business, or partnership you owned in whole or in part, or were an officer thereof, with any and all party or parties, if said agreements as delineated in the foregoing carried over into NBH operations, support operations, social media campaigns, or other efforts .

c. We request you identify with particularity by name of the party and date of agreement any payment, compensation agreement, share distribution agreement, contract for shares or warrants in NBH or any other company, business, or investment for specific performance of work of any kind to individuals, entities, businesses, lobbyists, or social media influencer .

---

## Detailed Explanation for Non-Compliance

If any requested documents are not provided, please include a comprehensive explanation for their unavailability or refusal to disclose.

---

## Summary of Requested Items (Checklist)

- Board and management communications.
- Audited financial statements and stock issuance documentation.
- Consulting and employment agreements.
- Lease and assets records.
- Shareholder records and share count verification.
- Correspondence related to SEC filings and withdrawals.
- NDAs and by-laws.

---

### Deadline for Compliance

In light of the urgency of this matter, I respectfully request the aforementioned documents be made available within **three (3) business days** of receipt of this correspondence. Should additional time be needed, please provide a detailed justification and a proposed timeline for compliance.

---

### Consequences of Non-Compliance

Failure to comply may result in legal remedies, including filing a petition to compel disclosure in accordance with Texas law.

---

### Point of Contact

For inquiries, please contact:
**Danielle Spears**
Phone: 480-476-1091
Email: paymmtlpnow@gmail.com

Please confirm receipt of this correspondence.

Sincerely,

Signed by:
CAC0EAB17D654A1...
11/17/2024

**Danielle Spears**
Along with all undersigned shareholders.

DocuSigned by:
53D41D27E1DD4C9...
Contique Willcot

Signed by:
3ABCA87652A148E...
Marcos Montiero

DocuSigned by:
B27B2110D21F472...
Dan Auxier

DocuSigned by:
CD84D7D57EA544B...
Matthew Pease

Signed by:
FD6F848F2C36486...
Jason Rolo

Signed by:
410B1F008947487...
Scott Traudt

Signed by:
7025171B7C7047C...
Jennifer Vetrano

# EXHIBIT G
# Roberts DM Screenshot Contract with Christian For Motion to Disqualify James Wes Christian

x.com/messages/4592222670-1479847684219490304
Apps
Trading
Banking
Shopping
Health
Social Media
FFootball
Daily TSLA
PAL Application-Ho...
G-Drive
Docusign
Public Access to Co...
Cockatoo - Convert...
ChatGPT
Home
Explore
Notifications
Messages
Grok
Premium
Bookmarks
Communities
Verified Orgs
Profile
More
Post
Danielle Spears
@spldbrat351964
Messages
Search Direct Messages
Message requests
1 person you may know
Pinned conversations
Naked Truth . Info - Non... @Nakedt... · Apr 27
Excellent
All conversations
Naked Truth . Info - Nonprofit Organization
Jul 24, 2024, 10:10 AM
I've been amidst a flurry of BS with people I now know cannot be trusted. This has allowed me to link several key people. NO ONE will believe me. These people made sure they were the top of the food chain. That way, they can run out the clock while making it look like they are the biggest cheerleaders.
Think about that!
Congress is and was never going to assist us. It's just busy work for the community to feel good about themselves, while the real clock ticks to zero.
Jul 24, 2024, 10:16 AM
This is true
Smoke and mirrors
Wes had NDA with many of them paid to push an agenda Brainwashing is easy. Add, do you really think all the people in the spaces are there? NO
Jul 24, 2024, 10:23 AM
Just who was shorting during all of it...... Look back at overstock, repeat repeat repeat offenders of the same acts Movies so appears they raised over 200k close t2 300k and no a fall out between Kristina and Mark keeps it from moving forward. Mark Faulk sent me his book... "The Naked Truth" oh and let's see
Start a new message

# EXHIBIT H
# Roberts DM Christian NDA's
# For Motion to Disqualify
# James Wes Christian

x.com/messages/4592222670-1479847684219490304
Messages
Search Direct Messages
Message requests
1 person you may know
Pinned conversations
Naked Truth . Info - Non... @Nakedt... · Apr 27
Excellent
All conversations
TRCH'r @JustFactivist · May 1
Shared a post
Jen @fearles59324823 · Apr 28
Shared a post
Debra @apaulson1112 · Apr 27
You reacted with ❤️: I wouldn't miss it for th...
FIN @RetailUnitedFin · Apr 27
FIN reacted with : Can you please repost?
Aaron Chow (Elephant An... @aaronmc... · Apr 27
You shared a post
Jeff Davies, the Ener... @EnergyCre... · Apr 27
You shared a post
PaulT @PaulusGreatus · Apr 27
You shared a post
Home
Explore
Notifications
Messages
Grok
Premium
Bookmarks
Communities
Verified Orgs
Profile
More
Post
Danielle Spears
@spldbrat351964
Naked Truth . Info - Nonprofit Organization
Yes there is a clause to that affect that they work with opposing clients
Jul 24, 2024, 10:36 AM
As in Wes is a good guy working with you?
Jul 24, 2024, 10:36 AM
NO meaning their contract say they represent hedge funds basically or the company that stole the money etc In a professional sleek way Twist pf words
Jul 24, 2024, 10:37 AM
Wait, so when Wes signed a contract with you, you realized there was a clause in there saying he had the right to work the other side of the aisle.
Jul 24, 2024, 10:37 AM
give me a second I'll send the clause
Jul 24, 2024, 10:38 AM
Yes Thank you!
Jul 24, 2024, 10:38 AM
YES, this is before I knew how corrupt the system was, as an Investigator I caught on quick, changed contracts, they sent us bylaws that would allow them to take over and then charged 14k, I dropped all of that quickly, we wrote our own, the 2 plants on the board poof one new and refused to show their
Start a new message

# EXHIBIT I
# Roberts Christian Dual Representation
# For Motion to Disqualify James Wes Christian



x.com/messages/4592222670-1479847684219490304
Messages
Search Direct Messages
Message requests
1 person you may know
Pinned conversations
Naked Truth . Info - Non... @Nakedt... · Apr 27
Excellent
All conversations
Home
Explore
Notifications
Messages
Grok
Premium
Bookmarks
Communities
Verified Orgs
Profile
More
Post
Danielle Spears
@spldbrat351964
Naked Truth . Info - Nonprofit Organization
DECEMBER 14, 2022 BY MARY CAMPBELL
SEC Says Influencers Pumped & Dumped Torchlight
On Tuesday, the US Securities Exchange Commission (SEC) filed a lawsuit in the US District Court for the Southern District of Texas against the following eight defendants:
Edward Constantin aka MrZackMorris aka Edward Constantinescu
Zack Morris
Jul 24, 2024, 6:04 PM
He had FBI go after him and put it on our bill. This is insane Wes represents torch but this guy hijacked his account during amc. Things that make you go hmmmmm so when Wes took on torch he already knew it was a pump and dump
I'll go back tomorrow and look at the invoice again. I haven't had time to really study yet, but there are several pages of information.
Jul 24, 2024, 6:07 PM
Start a new message

# EXHIBIT J
# Roberts Christian knew TRCH was a pump and dump
# For Motion to Disqualify James Wes Christian

x.com/messages/4592222670-1479847684219490304
Apps
Trading
Banking
Shopping
Health
Social Media
FFootball
Daily TSLA
PAL Application-Ho...
G-Drive
Docusign
Public Access to Co...
Cockatoo - Convert...
ChatGPT
Home
Explore
Notifications
Messages
Grok
Premium
Communities
Verified Orgs
Profile
More
Post
Danielle Spears
@spldbrat351964
Messages
Search Direct Messages
Message requests
1 person you may know
Pinned conversations
Naked Truth . Info - Nonp... @Nakedt... · Apr 27
Excellent
All conversations
Naked Truth . Info - Nonprofit Organization
Jul 1, 2024, 3:56 PM
Trying to convince you, seems cult like to me. Keep thinking outside the box. Stay the course.
Riddle me this if an atty had to pay investigators for the free DD and services these leaders are heading how much do you think it would cost? I was informed 2-3k per day per investigator by a well know securities atty. Someone is getting free info off investors free time intentionally leader crusade.
Jul 3, 2024, 11:07 AM
So you think Basile is only here for our DD?
Jul 3, 2024, 11:10 AM
No, I don't. He's not paying the leaders. Handful of paid leaders are heading investors on a free campaign that benefits who? The atty that was hired to do the job. They were being paid the last I knew before we were put on a shelf. Still here still watching still learning.
Jul 3, 2024, 11:12 AM
Start a new message

# EXHIBIT K
# Roberts Paid leaders
# For Motion to Disqualify
# James Wes Christian