IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **DANIELLE SPEARS** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Case no.7:24-cv-321-RCG** |
| | * | |
| **NEXT BRIDGE HYDROCARBONS, INC.** | * | |
| **GREG MCCABE, JOHN BRDA,** | * | |
| **SECURITIES AND EXCHANGE COMMISSION** | * | |
| **FINANCIAL INDUSTRY REGULATORY AUTHORITY** | * | |
| **JANE DOE 1-20, JOHN DOE 1-20** | * | |
| | * | |
| **Defendants** | * | |

---

## PLAINTIFF'S MOTION TO DISQUALIFY JAMES WES CHRISTIAN, BAR HIS INVOLVEMENT IN MMTLP/MMAT SECURITIES, PRESERVE ALL INVESTIGATIVE RECORDS, AND ENTER A PROTECTIVE ORDER

## I. INTRODUCTION

This Motion seeks to disqualify attorney James Wes Christian, Esq. (hereinafter referred to as "Christian") from participating in any matter related to the investigation or litigation of Meta Materials, Inc. (hereinafter referred to as "META"), and its related securities, MMAT and MMTLP. Proceeding pro se, Danielle Spears (hereinafter referred to as "Plaintiff") alleges that Christian has engaged in conduct inconsistent with his fiduciary duties, marked by conflicts of interest, retaliatory court filings, and exclusive control over data critical to pending shareholder (herein after referred to as "SHs") claims.

Since January of 2023, Christian has served in dual roles across all major investigations into alleged market manipulation involving MMTLP. This includes his engagements by Flamethrower LLC, META, and the META bankruptcy estate. Despite publicly stating in June of 2023 that Shareholder Intelligence Services, Inc. (hereinafter referred to as "ShareIntel"), a provider of third party market data, had confirmed manipulation, and later, on May 20, 2024, Christian stated that META had an actionable case, yet, no litigation has been filed on behalf of defrauded shareholders. Plaintiff has come to realize that this is not a strategic delay, it is deliberate inaction.

Christian's long-standing working relationship with Greg McCabe (hereinafter referred to as "McCabe"), the largest known MMTLP shareholder and Chief Executive Officer ("CEO") of Next Bridge Hydrocarbons (hereinafter referred to as "NBH"), presents an irreconcilable conflict of interest. As CEO and controlling shareholder, McCabe effectively directs the legal and strategic posture of NBH. Thus, representing NBH necessarily includes representing McCabe's interests.

Plaintiff believes Christian is not merely shielding key actors from liability, but actively controlling the public narrative in a way that undermines shareholder litigation. Upon information and belief, Christian maintains financial arrangements, including non-disclosure and secrecy agreements (hereinafter referred to as "NDAs"), with certain social media influencers (hereinafter referred to as "SMIs") who, in return, act as proxies for both NBH and Greg McCabe. As further detailed in Plaintiff's Affidavit (Exhibit A), Christian and McCabe used a network of social media influencers, some operating under NDAs, to shape public perception, marginalize dissenting voices, and aggressively target pro se litigants including Plaintiff.

As a case in point, the central asset supporting NBH's valuation, the Orogrande lease covering thousands of acres in West Texas, was lost due to the company's failure to make over $1 million in required payments to University Lands. Leading up to the halt, McCabe consistently promoted the Orogrande Project as containing over 3.5 billion barrels of oil equivalent (BBOE) and approximately 3 trillion cubic feet (TCF) of natural gas, claims widely circulated through SEC filings, investor communications, and public promotional campaigns. These representations were instrumental in generating investor confidence and engagement. Yet, just as news of the lease termination became public, SMIs believed by Plaintiff to be operating under NDAs with Christian and/or McCabe took to X, immediately deflecting blame onto University Lands. The narrative quickly escalated to suggest that unnamed parties were working to undermine NBH. As documented in Plaintiff's Affidavit (Exhibit A), McCabe referred to shareholder Scott Traudt as 'compromised' and questioned his motives in an October 10, 2024 email, which was later made public by the recipient. These communications were widely understood among shareholders to signal that pro se litigants were being blamed for corporate failures, including the lease loss. Further evidentiary discussion regarding University Lands' revocation of the lease and the FOIA disclosures is included in Plaintiff's Affidavit (Exhibit A).

At no point did McCabe acknowledge that he sold approximately 13% of his MMTLP holdings prior to the U3 halt, an amount large enough to trigger mandatory Form 4 reporting as a 10% insider. No such disclosure was ever filed. Instead, Christian continued to allow these misleading narratives to spread, disseminated by this Christian/McCabe paid SMI network. Used to insulate NBH and McCabe while discrediting shareholder litigants, including Plaintiff.

## II. STATEMENT OF FACTS

1. Christian has held conflict of interest in nearly every phase of MMTLP-related litigation and investigation. He was retained by Flamethrower LLC in Jan 2023, then META June 2023, and ultimately appointed as special counsel in the META Chapter 7 bankruptcy November 4, 2024.

2. Christian signed a certified declaration of disinterestedness on October 31, 2024, while seeking a court appointment in the META Chapter 7 bankruptcy. This declaration was materially false, because in his own April 16, 2025 letter to Attorney for the Trustee Jeffrey L. Hartman (herein after referred to as "Hartrman").  Christian admitted that as early as November 4, 2024, he had been hired by NBH to pursue litigation against individuals allegedly defaming the company. On October 31, 2024, he was already defending NBH in a shareholder filed lawsuit: *Targgart v. Next Bridge Hydrocarbons, Inc.*, Case No. 4:24-cv-00767-P. It also alleges fraud and market manipulation. It is legally irreconcilable for Christian to simultaneously defend NBH against a shareholder alleging securities fraud while seeking to serve as neutral counsel for the bankruptcy estate and its shareholder beneficiaries. His concurrent roles create a textbook conflict of interest—one that disqualifies him under 11 U.S.C. § 327(a) and violates the duty of loyalty owed to the estate and to affected investors. By the time of his second declaration, Christian was in active litigation with Plaintiff, multiple shareholder-litigants, including those identified in Plaintiff's Affidavit (Exhibit A). These active legal conflicts directly contradict the sworn statements he submitted and render him disqualified under 11 U.S.C. § 101(14) and 327(a). In his own April 16, 2025 letter to Hartman, Christian admitted that as early as October 31, 2024, he had been hired by NBH to pursue litigation against individuals allegedly defaming the company. By the time of his second declaration, Christian was in active litigation with Plaintiff and other pro se shareholder-litigants, as further detailed in Plaintiff's Affidavit (Exhibit A). He had also personally filed a defamation suit against Scott Traudt, another shareholder, on

February 6, 2025. These relationships and filings directly contradict the statements Christian made under penalty of perjury, and disqualify him under 11 U.S.C. § 101(14) and 327(a).Christian has since January 2023, managed and controlled investigatory data while targeting the same pro se shareholders he was duty-bound to protect.

4. In filings with the court, including Dkt. 1878 A-D, Christian referred to Plaintiff and others as "perpetrators," "co-conspirators," and "obstructionists." These filings were not only defamatory but intended to chill legal advocacy and undermine Plaintiff's credibility.

5. Christian's conduct reflects a broader pattern of fiduciary breach, false certification, misuse of court process, and retaliatory rhetoric. He has deprived Plaintiff of access to data essential to her claims while preserving it for clients with adverse interests. This conduct has obstructed shareholder recovery efforts and violated Plaintiff's right to fair and impartial proceedings. As outlined in Exhibit A, Christian's broader litigation timeline, including his role in *Next Bridge Hydrocarbons, Inc. v. TradeStation Securities, Inc.* and *Targgart v. NBH*, further reinforces the extent of his engagement on behalf of NBH prior to disclosing conflicts. Details of these matters are provided in Plaintiff's Affidavit (Exhibit A).

6. Plaintiff filed an objection to Christian's appointment on April 4, 2025. In response, Christian submitted a letter to the bankruptcy trustee's attorney labeling Plaintiff and others as "perpetrators" and "co-conspirators." He later reiterated this language in *In re Meta Materials, Inc.*, Case No. 24-50792-hlb (Dkt. 1878 A-D). These statements, presented without evidence, served no legal function other than to discredit pro se litigants and protect the individuals and entities now controlling investigatory data.

7. Christian's public threats extend beyond the bankruptcy court. On February 6, 2025, he filed *Christian v. Traudt*, Case No. DC-24-01617 (101st Judicial District Court, Dallas County), suing fellow shareholder Scott Traudt for defamation after Traudt demanded transparency. On May 1, 2025, shareholder Matthew Pease filed a Motion to Strike Scandalous Material in the MMAT bankruptcy (Dkt. 1900), challenging Christian's derogatory characterizations. Pease also filed *Pease v. NBH*, Case No. 7:24-cv-322-RCG, challenging the legitimacy of Christian's representation of NBH.

8. Christian claims that his disclosures to Hartman and role separation shield him from conflict. This is

legally insufficient. Rule 2014 and § 327(a) require that a court-appointed fiduciary make full disclosures on the record, not behind the scenes. Moreover, Christian's engagement with NBH—an entity led by the very person (McCabe) likely to face estate claims—renders him materially adverse to the estate and disqualifies him from serving. His tactical distinction between representing NBH "corporately" and not McCabe "individually" is a legal fiction. The interests of NBH, McCabe, and those seeking to conceal or suppress manipulation data are tightly interwoven. No firewall can prevent Christian from possessing—and misusing—information obtained through his bankruptcy appointment. His concurrent actions, threats, and litigation posture violate the Bankruptcy Code, professional ethics, and due process.

## III. LEGAL STANDARD

Under 11 U.S.C. §§ 101(14), 327, and 330, attorneys may not serve as court-appointed counsel if they hold or represent an interest adverse to the bankruptcy estate. Disqualification is warranted

under the Federal Rules of Civil Procedure where a conflict of interest exists, or where conduct undermines the integrity of proceedings.

Christian's actions violate:

- 11 U.S.C. § 101(14): He is not "disinterested."

- FRCP 11(b): Submitting false or inflammatory filings.

- ABA Model Rule 4.4(a) and 8.4(d): Misuse of litigation to harass or harm.

- Texas Disciplinary Rule 4.04: Improper threats to third parties.

## IV. LEGAL AUTHORITY FOR DISQUALIFICATION AND SANCTIONS

 Relevant authorities:

8. *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009): Due process requires disqualification where significant financial or procedural bias creates even the probability of actual bias. In *Caperton*, the Supreme Court held that extreme facts—such as undisclosed financial influence or litigation bias—require disqualification, even absent overt misconduct. Similarly here, Christian has been paid at least three separate times to investigate the same MMTLP/MMAT fraud, has proposed an $11.8 million litigation budget and a 30% contingency, and continues to control access to ShareIntel data while representing conflicting interests. This structure alone creates a high probability of bias and due process violation. Plaintiff, a directly affected shareholder, is caught in Christian's crossfire, having been both targeted and silenced by the very counsel claiming neutrality.

9. *Marshall v. Jerrico, Inc*., 446 U.S. 238 (1980): Judicial and quasi-judicial participants must be—and appear to be—impartial. Christian is acting as both prosecutor and accuser in one forum

(MMAT bankruptcy) and defense counsel for NBH in another. He has taken public positions against Plaintiff while simultaneously occupying an investigatory role with fiduciary duties to creditors and the court. This violates the core principle in *Marshall*, which held that enforcement actors must maintain "both actual fairness and the appearance of fairness." Christian's inflammatory accusations—e.g., labeling Plaintiff a "perpetrator" and "co-conspirator"—strip away any semblance of impartiality.

10. In *re South East Materials, Inc*., 262 B.R. 420 (Bankr. M.D. Fla. 2001): Attorneys must disclose all conflicts or risk disqualification under § 327 and Rule 2014. Christian failed to properly disclose to the Meta bankruptcy court his adverse relationship with Plaintiff and other MMTLP shareholders—despite knowing they were parties or witnesses in ongoing litigation, and despite threatening to sue them prior to being appointed. This concealment mirrors the fact pattern in *South East Materials*, where nondisclosure alone warranted removal of counsel, regardless of outcome.

11. In *re American Airlines, Inc*., 972 F.2d 605 (5th Cir. 1992): Even the appearance of impropriety is sufficient to disqualify counsel. Christian's continued involvement has eroded plaintiffs' trust in both the bankruptcy process. Christians recent bankruptcy filings bring her to file this rather urgent motion as a means to protect her due process rights. Counsel appointed to represent the estate must not place their personal financial interest above their fiduciary obligations to the estate and its stakeholders. The *American Airlines* standard supports disqualification when "public confidence" is at stake. That standard is clearly met.

12. *FDIC v. U.S. Fire Insurance Co*., 50 F.3d 1304 (5th Cir. 1995): Rule 1.9 bars attorneys from representing interests materially adverse to a former client or known opposing party. Christian

has actively positioned himself against Plaintiff (and similarly situated shareholders) while purporting to serve all MMTLP shareholders. His threats pre-date the complaint. His filings seek to discredit Plaintiff in unrelated proceedings. He cannot now claim to act impartially for parties he has already targeted, especially when his law firm remains in possession of exclusive investigative records and third-party data critical to this case.

13. Matter of *Consolidated Industries Corp*., 373 B.R. 378 (Bankr. N.D. Ind. 2007): Disqualification appropriate where counsel conceals adverse interests or pursues conflicting roles. In *Consolidated Industries Corp.*, disqualification was ordered because the attorney tried to serve too many masters without disclosure. The parallels to Christian's conduct are unmistakable. He represented NBH, advised McCabe, sought to sue Plaintiff, and simultaneously swore he was "disinterested" to obtain a court appointment. These roles are irreconcilable, and his failure to disclose them fully renders his appointment invalid under both statutory and ethical frameworks.

14. *In re BH&P Inc.*, 949 F.2d 1300 (3d Cir. 1991): Disqualification warranted where an attorney's concurrent

representation posed a potential for divided loyalty. The Third Circuit held that even the appearance or potential for conflicting interests is sufficient to disqualify counsel under 11 U.S.C. § 327(a). Christian's simultaneous defense of NBH and role as estate investigator mirrors this exact disqualifying posture.

15. *In re Granite Partners, L.P.*, 219 B.R. 22 (Bankr. S.D.N.Y. 1998): Counsel disqualified for representing related but ultimately adverse entities in a restructuring. The court emphasized that the potential for strategic divergence, even if initially aligned, demands early and clear

separation—highlighting why Christian's representation of both NBH and the estate must be disqualified.

16. *In re EWC, Inc.*, 138 B.R. 276 (Bankr. W.D. Okla. 1992): Disqualification was granted where counsel acted in concert with insiders to manage estate resources for non-estate interests. Christian's coordination with NBH, McCabe, and control over investigatory data raises identical concerns.

17. *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262 (1941): The Supreme Court emphasized that bankruptcy attorneys must avoid any divided loyalties. Where Christian's economic incentives with NBH exceed his fiduciary loyalty to the estate, disqualification and denial of fees are appropriate.

Plaintiff reaffirms the facts stated in Exhibit A under penalty of perjury and incorporates them by reference in support of this Motion.

## V.  PRAYER FOR RELIEF

Plaintiff brings this Motion under 11 U.S.C. §§ 101(14) and 327(a), the Federal Rules of Civil Procedure, and the ABA and Texas ethical codes governing attorney conduct. The following relief is narrowly tailored to prevent further prejudice and to preserve the integrity of these proceedings.

Plaintiff respectfully requests that this Court:

1. Disqualify James Wes Christian and his firm from representing NBH in this matter;

2. Permanently bar James Wes Christian and his firm from participation in any current or future matters involving MMAT or MMTLP securities, due to irreconcilable conflicts of interest, ethical violations, and the risk of continued prejudice to shareholder-litigants and the integrity of these proceedings;

3. Enter a protective order prohibiting Christian or NBH from filing or threatening legal action against Plaintiff for any claims already described in Christian's correspondence or litigation hold materials;

4. Order the immediate preservation and court-supervised custodial control of all trading data, investigatory findings, ShareIntel correspondence, NDA's, secrecy agreements, memoranda, invoices, draft or final reports, and all internal or external communications involving ATTAR, Kasowitz Benson Torres LLP, META, Flamethrower LLC, and any related agents or third parties involved in MMTLP or MMAT investigations, with equal access granted to all shareholder-litigants with pending claims;

5. Refer Christian to the relevant state disciplinary authority and/or this Court's internal ethics oversight for:

    1. False statements made to the bankruptcy court;

    2. Abuse of process and litigation threats;

    3. Conflicts of interest in violation of 11 U.S.C. § 101(14);

    4. Violations of ABA Rules 1.7, 3.3, 4.4, and 8.4;

6. Stay any further participation or filings by James Wes Christian in any proceeding involving Plaintiff, NBH, MMAT, or MMTLP pending resolution of this motion;

7. Grant leave to supplement this motion with emerging disclosures, newly filed exhibits, or rulings issued in related proceedings including the META bankruptcy, should further

developments support additional relief. This includes, but is not limited to, evidence discovered through Freedom of Information Act ("FOIA") responses, bankruptcy filings, or parallel federal court litigation. Plaintiff requests that the Court retain continuing jurisdiction to evaluate such supplements without requiring the filing of a new motion;

8. Issue Sanctions or Order to Show Cause under Rule 11(c): Plaintiff requests that the Court issue an Order to Show Cause requiring James W. Christian to produce evidentiary support for the defamatory statements made in Dkt. 1878-4 and his April 16, 2025 letter, or face sanctions under FRCP 11(c) for false, reckless, or harassing statements made against a pro se litigant;

9. Order Christian to formally retract or correct the unsupported accusations made in bankruptcy and related filings, or alternatively, issue a judicial finding that the accusations lacked evidentiary basis and were made for an improper purpose, to restore Plaintiff's credibility and prevent continued reputational harm;

10. Issue an order staying or enjoining any litigation or investigation by Defendants or their agents that overlaps materially with the facts in this case, or which seeks to influence, chill, or bypass Plaintiff's claims;

11. Order that all counsel and agents of record refrain from initiating or threatening parallel actions against Plaintiff involving MMAT or MMTLP during the pendency of this case, without first seeking leave of Court.

Dated: May 10, 2025

Respectfully submitted,

Danielle Spears

/s/ Danielle Spears

    Danielle Spears, Pro Se

12206 W Harrison St

Avondale, AZ 85323

paymmtlpnow@gmail.com

480-476-1091

CERTIFICATE OF SERVICE ON FOLLOWING PAGE

CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF

system on May 10, 2025.

    Danielle Spears

/s/ Danielle Spears
    Danielle Spears

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **DANIELLE SPEARS** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Case no.7:24-cv-321-RCG** |
| | * | |
| **NEXT BRIDGE HYDROCARBONS, INC.** | * | |
| **GREG MCCABE, JOHN BRDA,** | * | |
| **SECURITIES AND EXCHANGE COMMISSION** | * | |
| **FINANCIAL INDUSTRY REGULATORY AUTHORITY** | * | |
| **JANE DOE 1-20, JOHN DOE 1-20** | * | |
| | * | |
| **Defendants** | * | |

---

## EXHIBIT A

## AFFIDAVIT OF DANIELLE SPEARS IN SUPPORT OF MOTION TO DISQUALIFY JAMES WES CHRISTIAN

I, Danielle Spears, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1.  On January 18, 2023 – James Wes Christian ("**Christian**") was hired by Flamethrower LLC,[1] formed by John Brda ("**Brda**") and, upon information and belief, Greg McCabe ("**McCabe**"), Next Bridge Hydrocarbons, Inc. ("**NBH**'s") CEO, to investigate MMTLP for market manipulation leading to a meritorious case. Plaintiff is unaware of the costs associated with this investigation.

---

[1] https://www.wbny.com/Warshaw-Burstein-Retained-by-Flamethrower-Shareholder-Group

2. June 29, 2023 – Christian is hired by Meta Materials, Inc. ("**META**")[2] to investigate MMTLP for market manipulation leading to a meritorious case. META announced Shareholder Intelligence Services, LLC ("Share Intel") had been retained to analyze trading data of META's ticker symbol ("**MMAT**") and MMTLP for signs of market manipulation. Plaintiff is unaware of the cost.

3. January 30, 2024 NHB led by James Wes Christian, ("**Christian**") filed suit against TradeStation Securities in case no. 0:24-cv-06194-RKA.

4. March 15, 2024 in case no. 4:24-cv-00767-P, Traggart v. Next Bridge Hydrocarbons, Inc., Christian began representing defendant NBH.

5. April 15, 2024 Christian filed a voluntary Motion to Withdraw from the TradeStation suit on behalf of NBH. Having presented no evidence of an oversold position as believed.

6. May 20, 2024 META press release announces[3] "The lawyers have now concluded that META has meritorious claims for market manipulation against several parties (without identifying the parties or specifying the manipulation alleged).

   Christian is quoted as saying, "I believe META has an actionable case in connection with its MMAT/MMTLP claims."

7. On or about June 2024, Plaintiff contacted the owner of Shareholder Intelligence Services LLC ("ShareIntel") directly to ask how she too could purchase the data. Plaintiff was informed that META had already purchased the data and therefore owned it and that Christian also had the data. Plaintiff was denied her request.

---

[2]
https://metamaterial.com/meta-materials-applauds-christianattar-for-teaming-up-with-warshaw-burstein-to-investigate-allegations-of-naked-short-selling/
[3]
https://www.accessnewswire.com/865475/meta-materials-announces-update-on-naked-short-selling-investigation

8. July 24, 2024 Heather Roberts ("**Roberts**"), a private investigator, also of the non-profit *The Naked Truth*, was chatting with Plaintiff in DM's on X regarding Christian. According to Roberts:

   a. She signed a contract with Christian when she planned to do work together on a project.[4]

   b. Christian believed her to have abandoned her non-profit *Naked Truth*. She disagrees, but had to move on to re-build her platform. Christian does have a NAKED TRUTH, INC. web page where Roberts is listed as Vice President and an Executive board member[5] [6]

   c. On July 24, 2024, In a DM I commented, " I've been amidst a flurry of bs with people I now know cannot be trusted. This has allowed me to link several key people.  NO ONE will believe me. These people made  sure they were at the top of the food chain.  That way, they can run out the clock while making it look like they are the biggest cheerleaders." That same day, 7 minutes later, she wrote, "This is true. Smoke and mirrors. Wes had (an) NDA with many of them paid to push an agenda. Brainwashing is easy. Add, do you really think all the people in the spaces are there?  No.[7]

   d. She made a point of telling me that she realized "there is a clause to that effect that they work with opposing clients." I asked, as in, he's a good guy working with you? She replied, "NO meaning their contract says they represent hedge funds basically or the company that stole the money, etc. In a professional sleek

---

[4] Attached hereto is a true and correct image marked as **Exhibit G** of a DM of her contract with Christian
[5] https://nakedtruth.info/faq/faq-with-wes-christian/
[6] https://nakedtruth.info/the-team/
[7] Attached hereto is a true and correct image marked as **Exhibit H** of a DM with Roberts about Christians' NDA's

saw Twist of words." I asked "Wait, so when Wes signed a contract with you, you realized there was a clause in there saying he had the right to work the other side of the aisle." She responded in part, "Yes, this is before I knew how corrupt the system was, as an investigator I caught on quick,"[8]

    e.  Roberts further wrote in part, " Things that make you go hmmmmm so when Wes took on torch he already knew it was a pump and dump.[9]

    f.  July 3, 2024 Roberts wrote in part, "Handful of paid leaders are heading investors on a free campaign that benefits who?  The atty that was hired to do the job. They were being paid the last I knew before we were put on a shelf."[10]

9.  August 9, 2024, MMAT enters Chapter 7 Voluntary Petition in Bankruptcy proceedings in case no. 24-50792-hlb, yet in the May 2024 press release, MMAT assured shareholders that litigation was imminent.

10.  October 31-November 4, 2024 in case no. 24-50792-hlb, dkt. 98-100 ChristianAttar ("**ATTAR**") and Kasowitz Benson Torres LLP apply for and are granted authority dkt. 116-117 as special litigation counsel in the MMAT Chapter 11 bankruptcy.

    a.  The Ex Parte application by Chapter 7 Trustee to employ the law firms of ATTAR and Kasowitz Benson and Torres LLP as special litigation counsel, in  Dkt. 98 states in part, "The Firms will investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'"

---

[8] Attached hereto is a true and correct image marked as **Exhibit I** of a DM with Roberts about Dual representation.
[9] Attached hereto is a true and correct image marked as **Exhibit J** Roberts - Christian knew torch was pump and dump when he took it
[10] Attached hereto is a true and correct image marked as **Exhibit K** Roberts - Paid leaders

b. Christian's estimated cost as described in Dkt. 98-2, for the investigation, amounts to a staggering $11,800,000, in addition to a 30% contingency fee on any recovered sums. From an investor's standpoint, this triple-dipping arrangement appears excessively greedy.

c. In dkt. 99-1, Christian certifies "to the best of his knowledge, there are no connections which ATTAR, and/or any of its employees, have with the Estate's creditors, shareholder or other parties-in-interest and their respective attorneys and accountants, the United States Trustee, and any person employed in the office of the United States Trustee, related to this matter."

d. Also in Dkt. 99 Trustee Lovato ("**Lovato**") and Attorney for the Trustee, Jeffrey L. Hartman ("**Hartman**"), both certified that "To the best of the Trustee's knowledge, the Firms do not represent any interests adverse to the Estate in the matters upon which they are to be engaged and are disinterested as that term is defined in 11 U.S.C. § 101(14)."   Yet, at the signing of this document;

   i. Christian was actively representing defendant NBH in Targgart v. NBH in an adversarial position against a shareholder;

   ii.  Through Flamethrower, LLC, Christian also held ties to Brda and McCabe who are each shareholders of both MMAT & MMTLP.

      1. McCabe is the single largest shareholder of MMTLP.

      2. Additionally, as CEO of NBH, McCabe automatically benefits from the unavoidable insider information.

   iii. February 6, 2025, Christian filed a defamation action against fellow MMTLP shareholder Scott Traud ("**Traudt**"), calling for $250,000 in

6

damages. He served him on the 14th and sent him the Demand for preservation of the ESI hold letter ("**ESI Letter" or "ESI**") on the 28th of February. Christian also amended his suit from $250,000 to $50,000, citing a keying error.

1. Yet this did not cause Christian to step back from the bankruptcy proceedings at that time either.

2. Like Plaintiff, Traudt has been extremely vocal on platform X speaking out about the lack of communication, the lack of transparency and pointing out inconsistencies that raised questions of potential fraud by NBH and Mr. McCabe.

iv. Further Christian shares with the court that, in Dkt. 98-1- A, in part, "In the case of Meta Materials, Inc. (the "Company"), (Nasdaq: MMAT) and its predecessor Torchlight Energy Resources, Inc. (Nasdaq: ("**TRCH"**), the potential defendants or 'targets' engaged in persistent and extensive spoofing, placing millions of "Baiting Orders." It further goes on to say, "The manipulation (of MMTLP & MMAT) led to extreme financial losses for the Company, as it sold shares at artificially low prices which led to extreme financial losses for more than 65,000 retail shareholders. Prepetition, the Company engaged a group of specialist advisors, including Christian Attar (the "Firm"), whose analysis identified over 55 million shares of MMAT and 92 million shares of TRCH."

1. This is the first time that Plaintiff has read any results or data from NBH, McCabe, Brda or Christian.

11. November 4, 2024 or earlier, as stated in Christian's own words from his letter to the
    Attorney for Trustee, Jeffrey L. Hartman ("**Hartman**") on April 16, 2025, Christian
    communicated the following;

    a.  "As you are aware, at the outset of retaining my firm, I advised you that I would
        not represent Mr. McCabe individually in any matter (as you advised me that
        META might be investigating potential claims against him)."

    b.  "At that time I advised you I was representing NBH in a defamation, business
        disparagement, and tortious interference suit that will be pursued against some of
        the members of the same group referred to above that (a) have complained to the
        court; and (b) filed frivolous pro se complaints against many parties, including
        Meta." (Plaintiff is named with several others);

    c.  "I made it clear to Mr. McCabe, I could not represent him in an individual
        capacity in the multiple pro se suits described below. (Plaintiff is singled out) As
        such, he retained separate legal counsel for his individual representation."

    d.  "I understand the parties have alleged to the court that I have conflict; however,
        nothing could be further from the truth.

12. November 19, 2024, Plaintiff and a group of shareholders served a Books and Records
    request on NBH.(Attached is a true and correct copy of the "Books and Records"
    request)[11]  No response was provided.

    a.  Plaintiff learned that NBH had moved months earlier without notifying the
        Securities and Exchange Commission, ("**SEC**"), Secretary of State ("**SOS**"), nor
        shareholders.

---

[11]Attached hereto as **Exhibit F** is a true and correct copy -  Books and Records request

13. November 25, 2024, Plaintiff emails Dennard Lascar requesting documentation of when NBH changed addresses with the SEC and SOS. No response was provided.

14. December 6, 2024 – Plaintiff files her pro se complaint in the Western District of Texas.

15. March 14, 2025 Plaintiff filed a second amended complaint with this court, filing the certificate of service on March 16, 2025.

16. March 26, 2025 Christian files a Motion to Appear Pro Hac Vice in defense of NBH in Plaintiff's case.

17. March 26, 2025 Christian sends Plaintiff a 7-page ESI letter via a dm's on X (formerly Twitter), naming NBH as "*plaintiff.*".[12]

18. March 31, 2025 Plaintiff Spears responded thoroughly in writing, objecting to several items within the letter such as its delivery, its tone, scope and expense.[13]

19. April 4, 2025 Christian replies to Plaintiff that it was standard and not meant to intimidate.[14]

20. April 4, 2025 Plaintiff filed a formal <u>Objection to Petition Filed by Attorney James Wes Christian, Esq.</u>, ("**Objection Letter**") with Exhibits[15] to challenge Christians investigative authority via an email to Hartman and mailed a certified hard copy to the court, as well as provided Christian a copy via email to be fully transparent.

21. April 16, 2025, Christian responds to Plaintiffs' objection by issuing Hartman a 5 page letter Re:<u> (a) Concurrent Representation of Meta Materials Inc. ("META") and Next</u>

---

[12]Attached hereto as **Exhibit C** is a true and correct copy - Christian ESI Letter
[13] Attached hereto as **Exhibit D** is a true and correct copy  - Spears response Christians ESI letter
[14] Attached hereto as **Exhibit E** is a true and correct copy - Christian responds to Spears response to Christians ESI letter
[15] Attached hereto as **Exhibit B** is a true and correct copy - Spears Objection letter sent to Hartman

Bridge Hydrocarbons, Inc., ("NBH") No Conflict of Interest and (b) Emails from Jennifer
Vetrano and Danielle Spears (collectively, the "**Perpetrators**") to Christina Lovato.

    a.   Plaintiff only learned of the document from social media, as transparency was not
forthcoming.

22. April 23, 2025, the previously mentioned 5 page letter with a 3 page filing titled, <u>First
Amended Declaration of James W. Christian in support of Application by Chapter 7
Trustee to Employ the Law Firm of Christian Attar as Special Counsel [F.R.BANKR.P
2014]</u> along with hundreds of pages of exhibits was entered into the Nevada Bankruptcy
Recorded in Dkt. 1878 A-D.

    a.   Within these pages, Christian singles out Plaintiff and a handful of other MMTLP
shareholders within these documents.

        i.   All of whom have taken some kind of legal action with NBH or against
individuals or entities tied to MMTLP.

        ii.   Speaking about Plaintiff using language with a clear adversarial air of
superiority while using derogatory language to describe affected
shareholders.

23. May 1, 2025 fellow MMTLP shareholder Matthew J. Pease ("**Pease**") filed Dkt. 1900
<u>Notice of Non-party and Motion to Strike Scandalous Material</u> in the MMAT bankruptcy
court proceedings, case no. 24-50792-hlb. Pease simultaneously filed Dkt. 30 <u>Notice
Regarding Representation Status of Next Bridge Hydrocarbons, Inc.</u> in *Pease v. NBH*,
case no. 7:24-cv-322-RCG.

    a.   Plaintiff, like Pease, was confused as to Christians representation of NBH and also found the portrayal of Plaintiff provided by Christian to agents of the court are highly scandalous, requiring immediate correction.

    b.   Pease further indicated to Plaintiff that he also opposed the withdrawal under the current much clouded circumstances.

24.  May 1, 2025 Plaintiff received an email from Casidy Newcomer ("**Newcomer**") asking if plaintiff would be opposed or unopposed to their filing a motion to withdraw and emailed Newcomer back the same day, stating, "At this time, I am *opposed* to the motion to withdraw as presently contemplated." I stated specifically that conduct needed to be properly addressed prior to entering (an unopposed) motion to withdraw.

25. May 2, 2025 Christian filed an unopposed Motion to Withdraw as counsel for NBH in Plaintiff's federal case, citing a potential for conflict of interest which is materially false.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 5/6/2025

   Danielle Spears

*/s/ Danielle Spears*
   Danielle Spears, Pro se
 12206 W Harrison St
 Avondale, AZ 85323
 paymmtlpnow@gmail.com
 480-476-1091

20

Appendix of Exhibits for
Motion to Disqualify James Wes Christian and
Spears Affidavit

A.  Spears Affidavit
B.  Spears Objection to Christian authority in META BK
C.  Christian ESI Letter
D.  Spears Response to Christians ESI letter
E.  Christian responds to Spears response to his ESI letter
F.  Books & Records Request
G.  Roberts Screenshot of Contract with Christian
H.  Roberts Screenshot of DM re: NDA's
I.   Roberts Screenshot of DM re: Christian's contract clause for dual
     representation
J.  Roberts Screenshot of DM re:Christian knew Trch was a pump & dump
K.  Roberts Screenshot of DM re: Atty paid leaders.

**EXHIBIT G - RESERVED**

Note:

The April 16, 2025 letter from James Wes Christian to Jeffrey Hartman and the April 26, 2025 filings are on record as Dkt. 98 and 99 in Case No. 24-50792-hlb. These filings are incorporated herein by reference and not reattached.

## <u>CERTIFICATE OF SERVICE</u>

I certify that this is the Arizona Drivers License for myself, Danielle Dolores Spears.

Danielle Spears

<u>/s/ Danielle Spears</u>
Danielle Spears