**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**


| | | |
|---|---|---|
| **DANIELLE SPEARS** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Case no.7:24-cv-321-RCG** |
| | * | |
| **NEXT BRIDGE HYDROCARBONS, INC.** | * | |
| **GREG MCCABE, JOHN BRDA,** | * | |
| **SECURITIES AND EXCHANGE COMMISSION** | * | |
| **FINANCIAL INDUSTRY REGULATORY AUTHORITY** | * | |
| **JANE DOE 1-20, JOHN DOE 1-20** | * | |
| | * | |
| **Defendants** | * | |

---

**MOTION FOR LEAVE TO EXCEED PAGE LIMIT FOR MOTION TO DISQUALIFY
DEFENSE COUNSEL JAMES "WES" CHRISTIAN AND FOR ENTRY OF
PROTECTIVE ORDER AND PRESERVATION OF EVIDENCE**

Plaintiff, Danielle Spears, respectfully files this Motion for Leave to Exceed Page Limit in connection with the concurrently filed "Motion to Disqualify James 'Wes' Christian, Bar Further Involvement in MMTLP-Related Proceedings, and Enter Protective Order."

In support thereof, Plaintiff states as follows:

1. The issues raised in the Motion to Disqualify involve complex conflicts of interest, multi-party litigation, overlapping bankruptcy and securities actions, and allegations of improper conduct by the subject attorney across multiple venues.
2. The factual history requires substantial documentation and explanation to adequately demonstrate the material conflict of interest and potential prejudice to thousands of shareholders, including Plaintiff.
3. The Motion to Disqualify, excluding exhibits, is 13 pages in length. Plaintiff has made good faith efforts to be concise and avoid duplication, but the volume of relevant and necessary facts and law make strict compliance with the default page limits impracticable.

4.  The additional pages are essential to ensure the Court is fully apprised of the relevant facts, legal standards, and grounds for disqualification, preservation, and protective relief.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. GRANT leave to exceed the page limit for her Motion to Disqualify James "Wes" Christian;

B. ACCEPT the 13-page motion as filed;

C. GRANT such other relief as the Court deems just and proper.

Respectfully submitted,

Danielle Spears

/s/ Danielle Spears

Danielle Spears Spears, Pro Se

12206 W Harrison St, Avondale, AZ 85323

paymmtlpnow@gmail.com   480-476-1091

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **DANIELLE SPEARS** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Case no.7:24-cv-321-RCG** |
| | * | |
| **NEXT BRIDGE HYDROCARBONS, INC.** | * | |
| **GREG MCCABE, JOHN BRDA,** | * | |
| **SECURITIES AND EXCHANGE COMMISSION** | * | |
| **FINANCIAL INDUSTRY REGULATORY AUTHORITY** | * | |
| **JANE DOE 1-20, JOHN DOE 1-20** | * | |
| | * | |
| **Defendants** | * | |

---

## PLAINTIFF'S MOTION TO DISQUALIFY DEFENSE COUNSEL JAMES 'WES' CHRISTIAN, BAR HIS INVOLVEMENT IN MMTLP/MMAT SECURITIES, PRESERVE ALL INVESTIGATIVE RECORDS, AND ENTER A PROTECTIVE ORDER

## I. INTRODUCTION

This Motion seeks to disqualify attorney James Wes Christian, Esq. (hereinafter referred to as "Christian") from participating in any matter related to the investigation or litigation of Meta Materials, Inc. (hereinafter referred to as "META"), and its related securities, MMAT and MMTLP. Proceeding pro se, Danielle Spears (hereinafter referred to as "Plaintiff") alleges that Christian has engaged in conduct inconsistent with his fiduciary duties, marked by conflicts of interest, retaliatory court filings, and exclusive control over data critical to pending shareholder (herein after referred to as "SHs") claims.

Since January of 2023, Christian has served in dual roles across all major investigations into alleged market manipulation involving MMTLP. This includes his engagements by Flamethrower LLC, META, and the META bankruptcy estate. Despite publicly stating in June of 2023 that Shareholder Intelligence Services, Inc. (hereinafter referred to as "ShareIntel"), a provider of third party market data, had confirmed manipulation, and later, on May 20, 2024, Christian stated that META had an actionable case, yet, no litigation has been filed on behalf of defrauded shareholders. Plaintiff has come to realize that this is not a strategic delay, it is deliberate inaction.

Christian's long-standing working relationship with Greg McCabe (hereinafter referred to as "McCabe"), the largest known MMTLP shareholder and Chief Executive Officer ("CEO") of Next Bridge Hydrocarbons (hereinafter referred to as "NBH"), presents an irreconcilable conflict of interest. As CEO and controlling shareholder, McCabe effectively directs the legal and strategic posture of NBH. Thus, representing NBH necessarily includes representing McCabe's interests.

Plaintiff believes Christian is not merely shielding key actors from liability, but actively controlling the public narrative in a way that undermines shareholder litigation. Upon information and belief, Christian maintains financial arrangements, including non-disclosure and secrecy agreements (hereinafter referred to as "NDAs"), with certain social media influencers (hereinafter referred to as "SMIs") who, in return, act as proxies for both NBH and Greg McCabe. As further detailed in Plaintiff's Affidavit (Exhibit A), Christian and McCabe used a network of social media influencers, some operating under NDAs, to shape public perception, marginalize dissenting voices, and aggressively target pro se litigants including Plaintiff.

As a case in point, the central asset supporting NBH's valuation, the Orogrande lease covering thousands of acres in West Texas, was lost due to the company's failure to make over $1 million in required payments to University Lands. Leading up to the halt, McCabe consistently promoted the Orogrande Project as containing over 3.5 billion barrels of oil equivalent (BBOE) and approximately 3 trillion cubic feet (TCF) of natural gas, claims widely circulated through SEC filings, investor communications, and public promotional campaigns. These representations were instrumental in generating investor confidence and engagement. Yet, just as news of the lease termination became public, SMIs believed by Plaintiff to be operating under NDAs with Christian and/or McCabe took to X, immediately deflecting blame onto University Lands. The narrative quickly escalated to suggest that unnamed parties were working to undermine NBH. As documented in Plaintiff's Affidavit (Exhibit A), McCabe referred to shareholder Scott Traudt as 'compromised' and questioned his motives in an October 10, 2024 email, which was later made public by the recipient. These communications were widely understood among shareholders to signal that pro se litigants were being blamed for corporate failures, including the lease loss. Further evidentiary discussion regarding University Lands' revocation of the lease and the FOIA disclosures is included in Plaintiff's Affidavit (Exhibit A).

At no point did McCabe acknowledge that he sold approximately 13% of his MMTLP holdings prior to the U3 halt, an amount large enough to trigger mandatory Form 4 reporting as a 10% insider. No such disclosure was ever filed. Instead, Christian continued to allow these misleading narratives to spread, disseminated by this Christian/McCabe paid SMI network. Used to insulate NBH and McCabe while discrediting shareholder litigants, including Plaintiff.

## II. STATEMENT OF FACTS

1. Christian has held conflict of interest in nearly every phase of MMTLP-related litigation and investigation. He was retained by Flamethrower LLC in Jan 2023, then META June 2023, and ultimately appointed as special counsel in the META Chapter 7 bankruptcy November 4, 2024.

2. Christian signed a certified declaration of disinterestedness on October 31, 2024, while seeking a court appointment in the META Chapter 7 bankruptcy. This declaration was materially false, because in his own April 16, 2025 letter to Attorney for the Trustee Jeffrey L. Hartman (herein after referred to as "Hartrman").  Christian admitted that as early as November 4, 2024, he had been hired by NBH to pursue litigation against individuals allegedly defaming the company. On October 31, 2024, he was already defending NBH in a shareholder filed lawsuit: *Targgart v. Next Bridge Hydrocarbons, Inc.*, Case No. 4:24-cv-00767-P. It also alleges fraud and market manipulation. It is legally irreconcilable for Christian to simultaneously defend NBH against a shareholder alleging securities fraud while seeking to serve as neutral counsel for the bankruptcy estate and its shareholder beneficiaries. His concurrent roles create a textbook conflict of interest—one that disqualifies him under 11 U.S.C. § 327(a) and violates the duty of loyalty owed to the estate and to affected investors. By the time of his second declaration, Christian was in active litigation with Plaintiff, multiple shareholder-litigants, including those identified in Plaintiff's Affidavit (Exhibit A). These active legal conflicts directly contradict the sworn statements he submitted and render him disqualified under 11 U.S.C. § 101(14) and 327(a). In his own April 16, 2025 letter to Hartman, Christian admitted that as early as October 31, 2024, he had been hired by NBH to pursue litigation against individuals allegedly defaming the company. By the time of his second declaration, Christian was in active litigation with Plaintiff and other pro se shareholder-litigants, as further detailed in Plaintiff's Affidavit (Exhibit A). He had also personally filed a defamation suit against Scott Traudt, another shareholder, on

February 6, 2025. These relationships and filings directly contradict the statements Christian made under penalty of perjury, and disqualify him under 11 U.S.C. § 101(14) and 327(a).Christian has since January 2023, managed and controlled investigatory data while targeting the same pro se shareholders he was duty-bound to protect.

4. In filings with the court, including Dkt. 1878 A-D, Christian referred to Plaintiff and others as "perpetrators," "co-conspirators," and "obstructionists." These filings were not only defamatory but intended to chill legal advocacy and undermine Plaintiff's credibility.

5. Christian's conduct reflects a broader pattern of fiduciary breach, false certification, misuse of court process, and retaliatory rhetoric. He has deprived Plaintiff of access to data essential to her claims while preserving it for clients with adverse interests. This conduct has obstructed shareholder recovery efforts and violated Plaintiff's right to fair and impartial proceedings. As outlined in Exhibit A, Christian's broader litigation timeline, including his role in *Next Bridge Hydrocarbons, Inc. v. TradeStation Securities, Inc.* and *Targgart v. NBH*, further reinforces the extent of his engagement on behalf of NBH prior to disclosing conflicts. Details of these matters are provided in Plaintiff's Affidavit (Exhibit A).

6. Plaintiff filed an objection to Christian's appointment on April 4, 2025. In response, Christian submitted a letter to the bankruptcy trustee's attorney labeling Plaintiff and others as "perpetrators" and "co-conspirators." He later reiterated this language in *In re Meta Materials, Inc.*, Case No. 24-50792-hlb (Dkt. 1878 A-D). These statements, presented without evidence, served no legal function other than to discredit pro se litigants and protect the individuals and entities now controlling investigatory data.

7. Christian's public threats extend beyond the bankruptcy court. On February 6, 2025, he filed *Christian v. Traudt*, Case No. DC-24-01617 (101st Judicial District Court, Dallas County), suing fellow shareholder Scott Traudt for defamation after Traudt demanded transparency. On May 1, 2025, shareholder Matthew Pease filed a Motion to Strike Scandalous Material in the MMAT bankruptcy (Dkt. 1900), challenging Christian's derogatory characterizations. Pease also filed *Pease v. NBH*, Case No. 7:24-cv-322-RCG, challenging the legitimacy of Christian's representation of NBH.

8.  Christian claims that his disclosures to Hartman and role separation shield him from conflict. This is

legally insufficient. Rule 2014 and § 327(a) require that a court-appointed fiduciary make full disclosures on the record, not behind the scenes. Moreover, Christian's engagement with NBH—an entity led by the very person (McCabe) likely to face estate claims—renders him materially adverse to the estate and disqualifies him from serving. His tactical distinction between representing NBH "corporately" and not McCabe "individually" is a legal fiction. The interests of NBH, McCabe, and those seeking to conceal or suppress manipulation data are tightly interwoven. No firewall can prevent Christian from possessing—and misusing—information obtained through his bankruptcy appointment. His concurrent actions, threats, and litigation posture violate the Bankruptcy Code, professional ethics, and due process.

## III. LEGAL STANDARD

Under 11 U.S.C. §§ 101(14), 327, and 330, attorneys may not serve as court-appointed counsel if they hold or represent an interest adverse to the bankruptcy estate. Disqualification is warranted

under the Federal Rules of Civil Procedure where a conflict of interest exists, or where conduct undermines the integrity of proceedings.

Christian's actions violate:

- 11 U.S.C. § 101(14): He is not "disinterested."

- FRCP 11(b): Submitting false or inflammatory filings.

- ABA Model Rule 4.4(a) and 8.4(d): Misuse of litigation to harass or harm.

- Texas Disciplinary Rule 4.04: Improper threats to third parties.

## IV. LEGAL AUTHORITY FOR DISQUALIFICATION AND SANCTIONS

 Relevant authorities:

8. *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009): Due process requires disqualification where significant financial or procedural bias creates even the probability of actual bias. In *Caperton*, the Supreme Court held that extreme facts—such as undisclosed financial influence or litigation bias—require disqualification, even absent overt misconduct. Similarly here, Christian has been paid at least three separate times to investigate the same MMTLP/MMAT fraud, has proposed an $11.8 million litigation budget and a 30% contingency, and continues to control access to ShareIntel data while representing conflicting interests. This structure alone creates a high probability of bias and due process violation. Plaintiff, a directly affected shareholder, is caught in Christian's crossfire, having been both targeted and silenced by the very counsel claiming neutrality.

9. *Marshall v. Jerrico, Inc*., 446 U.S. 238 (1980): Judicial and quasi-judicial participants must be—and appear to be—impartial. Christian is acting as both prosecutor and accuser in one forum

(MMAT bankruptcy) and defense counsel for NBH in another. He has taken public positions against Plaintiff while simultaneously occupying an investigatory role with fiduciary duties to creditors and the court. This violates the core principle in *Marshall*, which held that enforcement actors must maintain "both actual fairness and the appearance of fairness." Christian's inflammatory accusations—e.g., labeling Plaintiff a "perpetrator" and "co-conspirator"—strip away any semblance of impartiality.

10. In *re South East Materials, Inc*., 262 B.R. 420 (Bankr. M.D. Fla. 2001): Attorneys must disclose all conflicts or risk disqualification under § 327 and Rule 2014. Christian failed to properly disclose to the Meta bankruptcy court his adverse relationship with Plaintiff and other MMTLP shareholders—despite knowing they were parties or witnesses in ongoing litigation, and despite threatening to sue them prior to being appointed. This concealment mirrors the fact pattern in *South East Materials*, where nondisclosure alone warranted removal of counsel, regardless of outcome.

11. In *re American Airlines, Inc*., 972 F.2d 605 (5th Cir. 1992): Even the appearance of impropriety is sufficient to disqualify counsel. Christian's continued involvement has eroded plaintiffs' trust in both the bankruptcy process. Christians recent bankruptcy filings bring her to file this rather urgent motion as a means to protect her due process rights. Counsel appointed to represent the estate must not place their personal financial interest above their fiduciary obligations to the estate and its stakeholders. The *American Airlines* standard supports disqualification when "public confidence" is at stake. That standard is clearly met.

*12. FDIC v. U.S. Fire Insurance Co*., 50 F.3d 1304 (5th Cir. 1995): Rule 1.9 bars attorneys from representing interests materially adverse to a former client or known opposing party. Christian

has actively positioned himself against Plaintiff (and similarly situated shareholders) while purporting to serve all MMTLP shareholders. His threats pre-date the complaint. His filings seek to discredit Plaintiff in unrelated proceedings. He cannot now claim to act impartially for parties he has already targeted, especially when his law firm remains in possession of exclusive investigative records and third-party data critical to this case.

13. Matter of *Consolidated Industries Corp.*, 373 B.R. 378 (Bankr. N.D. Ind. 2007): Disqualification appropriate where counsel conceals adverse interests or pursues conflicting roles. In *Consolidated Industries Corp.*, disqualification was ordered because the attorney tried to serve too many masters without disclosure. The parallels to Christian's conduct are unmistakable. He represented NBH, advised McCabe, sought to sue Plaintiff, and simultaneously swore he was "disinterested" to obtain a court appointment. These roles are irreconcilable, and his failure to disclose them fully renders his appointment invalid under both statutory and ethical frameworks.

14. *In re BH&P Inc.*, 949 F.2d 1300 (3d Cir. 1991): Disqualification warranted where an attorney's concurrent

representation posed a potential for divided loyalty. The Third Circuit held that even the appearance or potential for conflicting interests is sufficient to disqualify counsel under 11 U.S.C. § 327(a). Christian's simultaneous defense of NBH and role as estate investigator mirrors this exact disqualifying posture.

15. *In re Granite Partners, L.P.*, 219 B.R. 22 (Bankr. S.D.N.Y. 1998): Counsel disqualified for representing related but ultimately adverse entities in a restructuring. The court emphasized that the potential for strategic divergence, even if initially aligned, demands early and clear

separation—highlighting why Christian's representation of both NBH and the estate must be disqualified.

16. *In re EWC, Inc.*, 138 B.R. 276 (Bankr. W.D. Okla. 1992): Disqualification was granted where counsel acted in concert with insiders to manage estate resources for non-estate interests. Christian's coordination with NBH, McCabe, and control over investigatory data raises identical concerns.

17. *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262 (1941): The Supreme Court emphasized that bankruptcy attorneys must avoid any divided loyalties. Where Christian's economic incentives with NBH exceed his fiduciary loyalty to the estate, disqualification and denial of fees are appropriate.

Plaintiff reaffirms the facts stated in Exhibit A under penalty of perjury and incorporates them by reference in support of this Motion.

## V.  PRAYER FOR RELIEF

Plaintiff brings this Motion under 11 U.S.C. §§ 101(14) and 327(a), the Federal Rules of Civil Procedure, and the ABA and Texas ethical codes governing attorney conduct. The following relief is narrowly tailored to prevent further prejudice and to preserve the integrity of these proceedings.

Plaintiff respectfully requests that this Court:

1.  Disqualify James Wes Christian and his firm from representing NBH in this matter;

2. Permanently bar James Wes Christian and his firm from participation in any current or future matters involving MMAT or MMTLP securities, due to irreconcilable conflicts of interest, ethical violations, and the risk of continued prejudice to shareholder-litigants and the integrity of these proceedings;

3. Enter a protective order prohibiting Christian or NBH from filing or threatening legal action against Plaintiff for any claims already described in Christian's correspondence or litigation hold materials;

4. Order the immediate preservation and court-supervised custodial control of all trading data, investigatory findings, ShareIntel correspondence, NDA's, secrecy agreements, memoranda, invoices, draft or final reports, and all internal or external communications involving ATTAR, Kasowitz Benson Torres LLP, META, Flamethrower LLC, and any related agents or third parties involved in MMTLP or MMAT investigations, with equal access granted to all shareholder-litigants with pending claims;

5. Refer Christian to the relevant state disciplinary authority and/or this Court's internal ethics oversight for:

    1. False statements made to the bankruptcy court;

    2. Abuse of process and litigation threats;

    3. Conflicts of interest in violation of 11 U.S.C. § 101(14);

    4. Violations of ABA Rules 1.7, 3.3, 4.4, and 8.4;

6. Stay any further participation or filings by James Wes Christian in any proceeding involving Plaintiff, NBH, MMAT, or MMTLP pending resolution of this motion;

7. Grant leave to supplement this motion with emerging disclosures, newly filed exhibits, or rulings issued in related proceedings including the META bankruptcy, should further

developments support additional relief. This includes, but is not limited to, evidence discovered through Freedom of Information Act ("FOIA") responses, bankruptcy filings, or parallel federal court litigation. Plaintiff requests that the Court retain continuing jurisdiction to evaluate such supplements without requiring the filing of a new motion;

8.  Issue Sanctions or Order to Show Cause under Rule 11(c): Plaintiff requests that the Court issue an Order to Show Cause requiring James W. Christian to produce evidentiary support for the defamatory statements made in Dkt. 1878-4 and his April 16, 2025 letter, or face sanctions under FRCP 11(c) for false, reckless, or harassing statements made against a pro se litigant;

9.  Order Christian to formally retract or correct the unsupported accusations made in bankruptcy and related filings, or alternatively, issue a judicial finding that the accusations lacked evidentiary basis and were made for an improper purpose, to restore Plaintiff's credibility and prevent continued reputational harm;

10. Issue an order staying or enjoining any litigation or investigation by Defendants or their agents that overlaps materially with the facts in this case, or which seeks to influence, chill, or bypass Plaintiff's claims;

11. Order that all counsel and agents of record refrain from initiating or threatening parallel actions against Plaintiff involving MMAT or MMTLP during the pendency of this case, without first seeking leave of Court.

Dated: May 10, 2025

Respectfully submitted,

Danielle Spears

/s/ Danielle Spears

 Danielle Spears, Pro Se

12206 W Harrison St

Avondale, AZ 85323

paymmtlpnow@gmail.com

480-476-1091

CERTIFICATE OF SERVICE ON FOLLOWING PAGE

CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF

system on May 14, 2025.

    Danielle Spears

/s/ Danielle Spears
    Danielle Spears

Appendix of Exhibits for
Motion to Disqualify James Wes Christian and
Spears Affidavit

A.  Spears Affidavit
B.  Spears Objection to Christian authority in META BK
C.  Christian ESI Letter
D.  Spears Response to Christians ESI letter
E.  Christian responds to Spears response to his ESI letter
F.  Books & Records Request
G.  Roberts Screenshot of Contract with Christian
H.  Roberts Screenshot of DM re: NDA's
I.   Roberts Screenshot of DM re: Christian's contract clause for dual representation
J.  Roberts Screenshot of DM re:Christian knew Trch was a pump & dump
K.  Roberts Screenshot of DM re: Atty paid leaders.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **DANIELLE SPEARS** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Case no.7:24-cv-321-RCG** |
| | * | |
| **NEXT BRIDGE HYDROCARBONS, INC.** | * | |
| **GREG MCCABE, JOHN BRDA,** | * | |
| **SECURITIES AND EXCHANGE COMMISSION** | * | |
| **FINANCIAL INDUSTRY REGULATORY AUTHORITY** | * | |
| **JANE DOE 1-20, JOHN DOE 1-20** | * | |
| | * | |
| **Defendants** | * | |

---

**EXHIBIT A**

**AFFIDAVIT OF DANIELLE SPEARS IN SUPPORT OF MOTION TO DISQUALIFY**
**JAMES WES CHRISTIAN**

I, Danielle Spears, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1. On January 18, 2023 – James Wes Christian ("**Christian**") was hired by Flamethrower LLC,[1]

formed by John Brda ("**Brda**") and, upon information and belief, Greg McCabe ("**McCabe**"),

Next Bridge Hydrocarbons, Inc. ("**NBH**'s") CEO, to investigate MMTLP for market

manipulation leading to a meritorious case. Plaintiff is unaware of the costs associated with this

investigation.

---

[1] https://www.wbny.com/Warshaw-Burstein-Retained-by-Flamethrower-Shareholder-Group

2. June 29, 2023 – Christian is hired by Meta Materials, Inc. ("**META**")[2] to investigate MMTLP for market manipulation leading to a meritorious case. META announced Shareholder Intelligence Services, LLC ("Share Intel") had been retained to analyze trading data of META's ticker symbol ("**MMAT**") and MMTLP for signs of market manipulation. Plaintiff is unaware of the cost.

3. January 30, 2024 NHB led by James Wes Christian, ("**Christian**") filed suit against TradeStation Securities in case no. 0:24-cv-06194-RKA.

4. March 15, 2024 in case no. 4:24-cv-00767-P, Traggart v. Next Bridge Hydrocarbons, Inc., Christian began representing defendant NBH.

5. April 15, 2024 Christian filed a voluntary Motion to Withdraw from the TradeStation suit on behalf of NBH. Having presented no evidence of an oversold position as believed.

6. May 20, 2024 META press release announces[3] "The lawyers have now concluded that META has meritorious claims for market manipulation against several parties (without identifying the parties or specifying the manipulation alleged).

    a.   Christian is quoted as saying, "I believe META has an actionable case in connection with its MMAT/MMTLP claims."

7. On or about June 2024, Plaintiff contacted the owner of Shareholder Intelligence Services LLC ("ShareIntel") directly to ask how she too could purchase the data. Plaintiff was informed

---

[2]
https://metamaterial.com/meta-materials-applauds-christianattar-for-teaming-up-with-warshaw-burstein-to-investigate-allegations-of-naked-short-selling/
[3]
https://www.accessnewswire.com/865475/meta-materials-announces-update-on-naked-short-selling-investigation

that META had already purchased the data and therefore owned it and that Christian also had the data. Plaintiff was denied her request to purchase the data.

8. July 3- July 24, 2024 Heather Roberts ("**Roberts**"), a private investigator, also of the non-profit *The Naked Truth*, was chatting with Plaintiff via DM's on X regarding Christian. According to Roberts:

  a. She signed a contract with Christian and shared an image of two pages of her contract with Christian.[4]

  b. She made a point of telling me that she realized "there is a clause to that effect that they work with opposing clients." I asked, as in, he's a good guy working with you? She replied, "NO meaning their contract says they represent hedge funds basically or the company that stole the money, etc. In a professional sleek saw Twist of words." I responded "Wait, so when Wes signed a contract with you, you realized there was a clause in there saying he had the right to work the other side of the aisle." She answered in part, "Yes, this is before I knew how corrupt the system was, as an investigator I caught on quick,"[5]

  c. Roberts also stated that there was a disagreement between herself and Christian.

    i. Roberts wrote that Christian believed her to have abandoned her non-profit *Naked Truth*, so he absorbed it. She expressly disagrees and says she evenutaly chose to move on and re-build her platform from scratch. Christian does have a NAKED TRUTH, INC. web page where Roberts is listed as Vice President and an Executive board member[6]

---

[4] Attached hereto is a true and correct image marked as **Exhibit G** of a DM of her contract with Christian
[5] Attached hereto is a true and correct image marked as **Exhibit I** of a DM with Roberts about Dual representation.
[6] https://nakedtruth.info/faq/faq-with-wes-christian/

d. July 3, 2024 Roberts wrote in part, "Handful of paid leaders are heading investors on a free campaign that benefits who?  The atty that was hired to do the job. They were being paid the last I knew before we were put on a shelf."[7]

e. On July 24, 2024, in a DM, plaintiff commented, " I've been amidst a flurry of bs with people I now know cannot be trusted. This has allowed me to link several key people.  NO ONE will believe me. These people made sure they were at the top of the food chain.  That way, they can run out the clock while making it look like they are the biggest cheerleaders." That same day, 7 minutes later, Roberts responded, "This is true. Smoke and mirrors. Wes had (an) NDA with many of them paid to push an agenda. Brainwashing is easy. Add, do you really think all the people in the spaces are there?  No.[8]

f. Roberts further wrote in part, " Things that make you go hmmmmm so when Wes took on torch he already knew it was a pump and dump.[9]

g. Plaintiff asked Roberts for an Affidavit. She responded by saying, she could not. She did not want to chance pissing off Christian.  In fact, her demeanor suggests she is afraid of Christians reach.

9. August 9, 2024, MMAT enters Chapter 7 Voluntary Petition in Bankruptcy proceedings in case no. 24-50792-hlb, yet in the May 2024 press release, MMAT assured shareholders that litigation was imminent.

---

[7] Attached hereto is a true and correct image marked as **Exhibit K** Roberts - Paid leaders

[8] Attached hereto is a true and correct image marked as **Exhibit H** of a DM with Roberts about Christians' NDA's

[9] Attached hereto is a true and correct image marked as **Exhibit J** Roberts - Christian knew torch was pump and dump when he took it

10. On or about October 10, 2024, in a publicly shared email exchange, Greg McCabe told shareholder Jen Kapela that neither he nor NBH had initiated litigation related to MMTLP manipulation. This contradicts Christian's April 16, 2025 letter in which he claims NBH retained him to do so between October 31 and November 4, 2024.

11. October 31-November 4, 2024 in case no. 24-50792-hlb, dkt. 98-100 ChristianAttar ("**ATTAR**") and Kasowitz Benson Torres LLP apply for and are granted authority dkt. 116-117 as special litigation counsel in the MMAT Chapter 11 bankruptcy.

    h.   The Ex Parte application by Chapter 7 Trustee to employ the law firms of ATTAR and Kasowitz Benson and Torres LLP as special litigation counsel, in  Dkt. 98 states in part, "The Firms will investigate potential claims and, if meritorious, pursue litigation related to suspected stock manipulation through illegal trading practices such as 'naked short selling' and 'spoofing.'"

    i.   Christian's estimated cost as described in Dkt. 98-2, for the investigation, amounts to a staggering $11,800,000, in addition to a 30% contingency fee on any recovered sums. From an investor's standpoint, this triple-dipping arrangement appears excessively greedy.

    j.   In dkt. 99-1, Christian certifies "to the best of his knowledge, there are no connections which ATTAR, and/or any of its employees, have with the Estate's creditors, shareholder or other parties-in-interest and their respective attorneys and accountants, the United States Trustee, and any person employed in the office of the United States Trustee, related to this matter."

    k.   Also in Dkt. 99 Trustee Lovato ("**Lovato**") and Attorney for the Trustee, Jeffrey L. Hartman ("**Hartman**"), both certified that "To the best of the Trustee's

knowledge, the Firms do not represent any interests adverse to the Estate in the matters upon which they are to be engaged and are disinterested as that term is defined in 11 U.S.C. § 101(14)."

Yet, at the signing of this document;

l.   Christian was actively representing defendant NBH in Targgart v. NBH in an adversarial position against a shareholder;

12. Through Flamethrower, LLC, Christian also held ties to Brda and McCabe who are each shareholders of both MMAT & MMTLP.McCabe is the single largest shareholder of MMTLP.

Additionally, as CEO of NBH, McCabe automatically benefits from the unavoidable insider information.

13. February 6, 2025, Christian filed a defamation action against fellow MMTLP shareholder Scott Traud ("**Traudt**"), calling for $250,000 in damages. He served him on the 14th and sent him the Demand for preservation of the ESI hold letter ("**ESI Letter" or "ESI**") on the 28th of February. Christian also amended his suit from $250,000 to $50,000, citing a keying error. Yet this did not cause Christian to step back from the bankruptcy proceedings at that time either.

14. Like Plaintiff, Traudt has been extremely vocal on platform X speaking out about the lack of communication, the lack of transparency and pointing out inconsistencies that raised questions of potential fraud by NBH and Mr. McCabe.

15. Further Christian shared with the court, in Dkt. 98-1- A, in part, "In the case of Meta Materials, Inc. (the "Company"), (Nasdaq: MMAT) and its predecessor Torchlight Energy

Resources, Inc. (Nasdaq: ("**TRCH**"), the potential defendants or 'targets' engaged in persistent and extensive spoofing, placing millions of "Baiting Orders." It further goes on to say, "The manipulation (of MMTLP & MMAT) led to extreme financial losses for the Company, as it sold shares at artificially low prices which led to extreme financial losses for more than 65,000 retail shareholders. Prepetition, the Company engaged a group of specialist advisors, including Christian Attar (the "Firm"), whose analysis identified over 55 million shares of MMAT and 92 million shares of TRCH."

16. November 4, 2024 or earlier, as stated in Christian's own words from his letter to the Attorney for Trustee, Jeffrey L. Hartman ("**Hartman**") on April 16, 2025, Christian communicated the following;

> m. "As you are aware, at the outset of retaining my firm, I advised you that I would not represent Mr. McCabe individually in any matter (as you advised me that META might be investigating potential claims against him)."

> n. "At that time I advised you I was representing NBH in a defamation, business disparagement, and tortious interference suit that will be pursued against some of the members of the same group referred to above that (a) have complained to the court; and (b) filed frivolous pro se complaints against many parties, including Meta." (Plaintiff is named with several others);

> o. "I made it clear to Mr. McCabe, I could not represent him in an individual capacity in the multiple pro se suits described below. (Plaintiff is singled out) As such, he retained separate legal counsel for his individual representation."

> p. "I understand the parties have alleged to the court that I have conflict; however, nothing could be further from the truth.

17. November 19, 2024, Plaintiff and a group of shareholders served a Books and Records request on NBH.(Attached is a true and correct copy of the "Books and Records" request)[10]  No response was provided.

> q.  Plaintiff learned that NBH had moved months earlier without notifying the Securities and Exchange Commission, ("**SEC**"), Secretary of State ("**SOS**"), nor shareholders.

18. November 25, 2024, Plaintiff emails Dennard Lascar requesting documentation of when NBH changed addresses with the SEC and SOS. No response was provided.

19. December 6, 2024 – Plaintiff files her pro se complaint in the Western District of Texas.

20. February 18, 2025 — NBH issued a press release publicly announcing the engagement of ChristianAttar to represent it in connection with matters of business disparagement, defamation, and tortious interference. This disclosure came more than three months after Christian had already acknowledged that engagement to Trustee's attorney Jeffrey Hartman and after submitting sworn declarations of disinterestedness in the META bankruptcy case.

21. March 14, 2025 Plaintiff filed a second amended complaint with this court, filing certificate of service on March 16, 2025.

22. March 16, 2025 Christian writes Jeffrey L. Hartman 5 page letter

23. March 26, 2025 Christian files a Motion to Appear Pro Hac Vice in defense of NBH in Plaintiff's case.

---

[10]Attached hereto as **Exhibit F** is a true and correct copy -  Books and Records request

24. March 26, 2025 Christian sends Plaintiff a 7-page ESI letter via a dm's on X (formerly Twitter), naming NBH as "*plaintiff*.".[11]

25. March 31, 2025 Plaintiff Spears responded thoroughly in writing, objecting to several items within the letter such as its delivery, its tone, scope and expense.[12]

26. April 4, 2025 Christian replies to Plaintiff that it was standard and not meant to intimidate.[13]

27. April 4, 2025 Plaintiff filed a formal Objection to Petition Filed by Attorney James Wes Christian, Esq., ("**Objection Letter**") with Exhibits[14] to challenge Christians investigative authority via an email to Hartman and mailed a certified hard copy to the court, as well as provided Christian a copy via email to be fully transparent.

28. April 16, 2025, Christian responds to Plaintiffs' objection by issuing Hartman a 5 page letter Re: (a) Concurrent Representation of Meta Materials Inc. ("META") and Next Bridge Hydrocarbons, Inc., ("NBH") No Conflict of Interest and (b) Emails from Jennifer Vetrano and Danielle Spears (collectively, the "**Perpetrators**") to Christina Lovato.

     r.   Plaintiff only learned of the document from social media, as transparency was not forthcoming.

29. April 23, 2025, the previously mentioned 5 page letter with a 3 page filing titled, First Amended Declaration of James W. Christian in support of Application by Chapter 7 Trustee to Employ the Law Firm of Christian Attar as Special Counsel [F.R.BANKR.P 2014] along with

---

[11]Attached hereto as **Exhibit C** is a true and correct copy - Christian ESI Letter

[12] Attached hereto as **Exhibit D** is a true and correct copy - Spears response Christians ESI letter

[13] Attached hereto as **Exhibit E** is a true and correct copy - Christian responds to Spears response to Christians ESI letter

[14] Attached hereto as **Exhibit B** is a true and correct copy - Spears Objection letter sent to Hartman

hundreds of pages of exhibits was entered into the Nevada Bankruptcy Recorded in Dkt. 1878 A-D.

   s. Within these pages, Christian singles out Plaintiff and a handful of other MMTLP shareholders. All of whom have taken some kind of legal action against individuals or entities tied to MMTLP.

   t. Speaking about Plaintiff using language with a clear adversarial air of superiority while using derogatory language to describe affected shareholders.

30. May 1, 2025 fellow MMTLP shareholder Matthew J. Pease ("**Pease**") filed Dkt. 1900 <u>Notice of Non-party and Motion to Strike Scandalous Material</u> in the MMAT bankruptcy court proceedings, case no. 24-50792-hlb. Pease simultaneously filed Dkt. 30 <u>Notice Regarding Representation Status of Next Bridge Hydrocarbons, Inc</u>. in *Pease v. NBH*, case no. 7:24-cv-322-RCG.

   u. Plaintiff, like Pease, was confused as to Christians representation of NBH and also found the portrayal of Plaintiff provided by Christian to agents of the court are highly scandalous, requiring immediate correction.

   v. Pease further indicated to Plaintiff that he also opposed the withdrawal under the current much clouded circumstances.

31. May 1, 2025 Plaintiff received an email from Casidy Newcomer ("**Newcomer**") asking if plaintiff would be opposed or unopposed to their filing a motion to withdraw and emailed Newcomer back the same day, stating, "At this time, I am *opposed* to the motion to withdraw as presently contemplated." I stated specifically that conduct needed to be properly addressed prior to entering (an unopposed) motion to withdraw.

32. May 2, 2025 Christian filed an unopposed Motion to Withdraw as counsel for NBH in

Plaintiff's federal case, citing a potential for conflict of interest which is materially false.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 5/10/2025

   Danielle Spears

*/s/ Danielle Spears*
   Danielle Spears, Pro se
 12206 W Harrison St
 Avondale, AZ 85323
 paymmtlpnow@gmail.com
 480-476-1091

 **business**wire
A BERKSHIRE HATHAWAY COMPANY

**Newsroom**  Services & Solutions ⌄  Resources ⌄  For Journalists

Jan 18, 2023 2:13 PM Eastern Standard Time

# Warshaw Burstein, Christian Levine Law Group Retained by Shareholder Group to Investigate Market Manipulation Scheme

Share  

NEW YORK--(BUSINESS WIRE)--Warshaw Burstein, LLP, a full-service law firm in New York City, today announced that along with the Christian Levine Law Group and several industry consulting experts, it has been retained by Flamethrower, LLC ("Flamethrower") to investigate whether tens of thousands of unsuspecting investors were fraudulently sold hundreds of millions of unauthorized, "phantom" shares of Next Bridge Hydrocarbons, Inc. by market makers, broker dealers and other third parties.

This investigation will also focus on whether fraud was committed in connection with the listing of Metamaterials, Inc.'s ("MMTLP") shares and whether Torchlight, Inc. and MMTLP were targeted by broker dealers, market makers and other third parties who employed a scheme or device to manipulate their share prices.

Flamethrower, a consortium of shareholders, is committed to investigating and prosecuting every company or individual who engaged in a market manipulation scheme that targeted these companies and will seek to hold them financially liable for their unlawful conduct.



X

Home

Explore

Notifications

Messages

Grok

Premium

Lists

Bookmarks

Jobs

Communities

Verified Orgs

Profile

More

Post

Who to follow

manuel
@Manu...

skoonr1
@skoonr1

Minnesota
@MNUFC

Show more

Terms of Service    Priv
Accessibility    Ads inf

Danielle Spears ✔
@spldbrat351964          ...

Messages

🖨 Print  📄 PDF  ✉ Email

# META MATERIALS APPLAUDS CHRISTIANATTAR FOR TEAMING UP WITH WARSHAW BURSTEIN TO INVESTIGATE ALLEGATIONS OF NAKED SHORT SELLING

**HALIFAX, NS / ACCESSWIRE / June 29, 2023 /** Meta Materials Inc. (the "Company" or "META®") (NASDAQ:MMAT) (FSE:MMAT), an advanced materials and nanotechnology company applauds ChristianAttar (the "Firm") (previously known as Christian, Smith & Jewell), a preeminent law firm specializing in securities litigation, for joining forces with Warshaw Burstein and Partner Alan Pollack in helping investigate allegations of naked short selling of Meta Materials' stock. Wes Christian and Alan Pollack have worked together in securities litigation for over 15 years, forming a formidable team in fighting against illegal trading practices.

"This engagement reflects our commitment to protecting investors and maximizing shareholder value," said George Palikaras, President and CEO of Meta Materials Inc. "We are excited to work with a group of seasoned legal experts and advisors such as ChristianAttar and Warshaw Burstein."

"We are honored to be chosen by Meta Materials for this critically important task. Our firm has a storied history in taking on cases against fraudulent trading practices, and we will use our vast experience to thoroughly investigate and address these allegations," said Wes Christian, Partner at ChristianAttar.

META, after conducting a preliminary trading analysis in collaboration with ShareIntel Shareholder Services, LLC, has identified seemingly trade imbalances in the trading of MMAT shares which are potentially material relative to META's public float and average trading volume.

"Based on the initial analysis, we believe this has the potential to become the motherload of counterfeit shares. The scale and complexity warrant exhaustive investigation, and we are prepared to relentlessly pursue justice for META and its shareholders," said Wes Christian. "Our mission is to expose any illicit activities and seek remedies that protect Meta Materials and its shareholders. We value the trust META has placed in us and committed to working assiduously towards securing a fair and just resolution."

Alan Pollack, Partner at Warshaw Burstein, commented, "Our collaboration with ChristianAttar is built on a shared commitment to upholding market integrity. Together, we bring decades of combined experience and a track record of success in litigating against market manipulation and fraudulent trading practices."

-30-

## Archives



| Archives | |
|---|---|
| 2024 | + |
| 2023 | + |
| 2022 | + |
| 2021 | + |
| 2020 | + |
| 2019 | + |
| 2018 | + |
| 2017 | + |
| 2016 | + |
| 2014 | + |

**RSS**



FILED
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Gay Lane DEPUTY

DC-24-05631

CAUSE NO. _____

| | | |
|---|---|---|
| **NEXT BRIDGE HYDROCARBONS, INC.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **TRADESTATION SECURITIES, INC.** | § | 191st |
| | § | |
| Respondent. | § | _____ **JUDICIAL DISTRICT** |

## VERIFIED RULE 202 PETITION

Petitioner Next Bridge Hydrocarbons, Inc. ("Next Bridge") files this Verified Rule 202

Petition seeking to investigate potential claims or suits and respectfully states:

### PARTIES

DC-24-05631

1.    Petitioner Next Bridge is a Nevada corporation with its principal place of business

in Tarrant County, Texas.

2.    Respondent Tradestation Securities, Inc. ("TradeStation") is a Florida corporation

that conducts business in Texas.  TradeStation's principal place of business in Texas, as

designated with the Texas Secretary of State, is in Dallas County, Texas.  TradeStation may be

served through its registered agent, Corporate Creations Network Inc., at 5444 Westheimer, Suite

1000, Houston, Texas 77056.

### JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this case because the requested

relief is within the jurisdiction of the Court.  The Court has personal jurisdiction over

TradeStation because it conducts business in Texas.  Venue is proper in Dallas County, Texas

because TradeStation resides in Dallas County.  Tex. R. Civ. P. 202.2(b)(2).



X

🏠 Home

🔍 **Explore**

🔔 Notifications

✉️ Messages

🅖 Grok

🔖 Bookmarks

👥 Communities

𝕏 Premium

⚡ Verified Orgs

👤 Profile

⊙ More

**Post**

← 🔍 Trade Station from:JunkSavvy ⋯

**Top**  |  Latest  |  People  |  Media  |  Lists

💬 11      ↻ 169      ♡ 265      📊 5.3K      🔖 ⬆️

**JunkSavvy** ✔ @JunkSavvy · Apr 29, 2024    🅖 ⋯
Replying to @JunkSavvy
NEXTBRIDGE HYDROCARBONS, INC. V. TRADESTATION SECURITIES, INC.
FILED APRIL 15, 2023, CASE #DC-24-05631
Documents/Information requested as part of PETITION include...
$MMTLP $MMAT $TRCH #MMTLPFiasco @nbhydrocarbons @TradeStation

VERIFIED RULE 202 PETITION – Page 5
Exhibit A – Deposition Topics

1. The number of MMTLP shares lent out on December 8, 2022.
2. The brokers to whom the shares described in Topic 1 were loaned.
3. The current number of Next Bridge shares held, in either short or long positions, by TradeStation customers.
4. Whether any MMTLP or Next Bridge shares loaned by TradeStation have been returned.
5. Whether any borrower of MMTLP or Next Bridge shares made any cash deposit in connection with borrowing shares and, if so, the amount of the deposit.
6. TradeStation's business practices with respect to the documents requested in Exhibit B (i.e., whether they are business records).

VERIFIED RULE 202 PETITION – Page 7
Exhibit B – Document Requests

1. Documents sufficient to identify the number of MMTLP shares lent out on December 8, 2022.
2. Documents sufficient to identify the brokers to whom the shares described in Request 1 were loaned.
3. Documents sufficient to identify the current number of Next Bridge shares held, in either short or long positions, by TradeStation customers.
4. Documents sufficient to identify whether any MMTLP or Next Bridge shares loaned by TradeStation have been returned.
5. Documents sufficient to identify whether any borrower of MMTLP or Next Bridge shares made any cash deposit in connection with borrowing shares and, if so, the amount of the deposit.

💬 12      ↻ 151      ♡ 255      📊 20K      🔖 ⬆️

**BioOptics Stock Watch**    **Markets**    **Stocks**    **ETFs**    **Tools**

Overview  News  Currencies  International  Treasuries

# Meta Materials Announces Update on Naked Short Selling Investigation

**By: ACCESSWIRE**                                                      May 20, 2024 at 12:14 PM EDT

**HALIFAX, NS / ACCESSWIRE / May 20, 2024 /** Meta Materials Inc. (the "Company" or "META") (NASDAQ: MMAT), an advanced materials and nanotechnology company, today announced an update on the short selling investigation undertaken in June of 2023.

In an initial press release from late June 2023, META outlined its preliminary analysis of potential naked short selling, and retained well-known analytics firm, Shareholder Intelligence Services, LLC to review trading patterns of the Company's common stock. Based on this analysis, and with zero tolerance for illegal naked short selling and other stock manipulation, META employed the services of law firms, Christian Attar and Warshaw Burstein (collectively "Lawyers") to determine merit of such claims.

Since June 2023, the Lawyers have conducted an exhaustive investigation and undertaken in-depth due diligence. *The Lawyers have now concluded that META has meritorious claims for market manipulation against several parties.* "I believe META has an actionable case in connection with its MMAT/MMTLP claims. We look forward to working with the company," noted James "Wes" Christian, partner with Christian Attar.

Noted META Board Chairman, Jack Harding, "We needed all available data (unearthed by these esteemed securities law firms) at our disposal to delineate stock manipulation, and by which parties. We are now equipped with the necessary information to act and will be further sharing these findings with regulatory agencies. Simultaneously, we expect to file legal proceedings in the coming quarters against the responsible financial service firms." META looks forward to releasing additional press releases as more information becomes available.

**About Meta Materials Inc.**

wsing experience and serve personalized content.  **Privacy Policy**

why would you do it?

💬    ↻    ♡    ılıl 24    🔖 ⬆

 **Ven Hazzak** ✓ @XsyLocke · Sep 15    ···

Uh huh... "bad actor" huh... what other paranoid and illegitimate claims are you going to make next? You got one thing right, @MMTLPlifer definitely deserves to pick up an oscar if you've fallen for your own prejudicial paranoia that you're attempting to shove on everyone else.

Show more



**Laker Jay** @MMTLPlifer · 18m    ···
You like my receipts Danielle?

### Your position

| Shares | Market value |
| --- | --- |
| | — |

Avg cost
—

Today's return        $0.00 (0.00%)

Total return        —

## About Next Bridge Hydrocarbons Contra

The listed name for MMTZZZ is Next Bridge Hydrocarbons Inc.

**Today's volume**
0

Trade

💬 1    ↻ 1    ♡ 2    ılıl 206    🔖 ⬆

 

## Contents

Details

Parties

Documents

Latest Changes

Case Events

| Date | Type | Description |
|------|------|-------------|
| October 17, 2024 | Docket Event | DISMISSAL FOR WANT OF PROSECUTION |
| October 16, 2024 | Docket Event | PROPOSED DISMISSAL<br>PROPOSED ORDER/JUDGMENT |
| October 16, 2024 | Docket Event | NOTICE OF NONSUIT |
| September 20, 2024 | Docket Event | NOTICE OF HEAIRNG - RULE 202<br>MOTION HEARING<br>ZOOM. ORIGINAL PETITION. SHERRY FAULKNER 817/296-9905. |
| August 30, 2024 | Docket Event | MOTION HEARING<br>ZOOM. ORIGINAL PETITION. SHERRY FAULKNER. 817/296-9905. |
| August 09, 2024 | Docket Event | NOTICE OF HEAIRNG - RULE 202<br>NOTICE OF HEARING / FIAT<br>RULE 202 |
| May 31, 2024 | Docket Event | NOTICE OF HEARING - RULE 202<br>MOTION HEARING<br>**VIA ZOOM** 1 HOUR RULE 202 HIBESP ZIKRU 469 877-3132 |
| April 25, 2024 | Docket Event | OF SERVICE - NOTICE OF HEARING & PETITION - TRADESTATION SECURITIES, INC.<br>AFFIDAVIT |
| April 24, 2024 | Docket Event | CITATION<br>TRADESTATION SECURITIES INC |
| April 22, 2024 | Docket Event | NOTICE OF HEARING - RULE 202<br>NOTICE OF HEARING / FIAT<br>RULE 202 |
| April 15, 2024 | Docket Event | ISSUE CITATION-TRADESTATION SECURITIES INC<br>ISSUE CITATION |

**November 18, 2024**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons
6300 Ridglea Place, Suite 950
Fort Worth, TX 76116

**Subject:** Formal Request for Access to Books and Records Pursuant to Texas Business Organizations Code Section 21.218

Dear Mr. McCabe,

We, as a group of shareholders of Next Bridge Hydrocarbons ("NBH"), formally invoke our rights under **Section 21.218 of the Texas Business Organizations Code** to request access to specific books and records of NBH. This request is made in good faith for the legitimate purpose of investigating potential mismanagement, breaches of fiduciary duty, and actions that may have detrimentally affected shareholder value.

## Requested Documents and Records

### 1. Board and Management Communications

a. Board meeting minutes, resolutions, and presentations related to:
  i. The reverse merger between Torchlight Energy and Meta Materials.
  ii. The spin-out of oil and gas assets into NBH.
 b. Internal communications, including emails, exchanged between board members and executive officers including but not limited to yourself, John Brda, George Palikaras and Clifton DuBose regarding these transactions.

### 2. Financial Records

a. Audited financial statements and annual reports for the preceding two fiscal years.
b. Documentation regarding stock issuances and allocations associated with the spin-out of NBH.

### 3. Consulting and Employment Agreements

a. Contracts or consulting agreements involving yourself, John Brda, George Palikaras, Clifton DuBose, Rich Masterson, Clinton Plant or any and all other executives with Torchlight, Meta Materials, or NBH, including terms of compensation and delineation of responsibilities.

## 4. Lease and Asset Records

a. Documentation and communications related to the loss of the University Lands lease, including:

1. Specific reasons for any missed payment or non-compliance with lease terms.

2. Internal correspondence or board discussions addressing risks to the lease.

3. Proposals or remedial actions considered to prevent termination.

4. Financial statements or cash flow records from the relevant period reflecting the company's ability (or inability) to meet payment obligations.

5. Agreements and due diligence materials related to the acquisition of the Louisiana Heritage Play, including any disclosures of conflicts of interest.

6. The exact locations, names, and production outputs of McCabe Petroleum Company's wells in Louisiana.

## 5. Shareholder Records

a. Records identifying individuals or entities that approached NBH to acquire shares, including details of initial approaches and subsequent negotiations.
b. Names and contact details of third parties expressing interest in purchasing NBH shares.
c. Summaries or descriptions of discussions or communications with third parties, including:

1. Meeting dates and locations.
2. Correspondence or exchanged documents (verbal or written).
3. Participants in these discussions, including, but not limited to any and all board members or executives.
4. Resolutions, agreements, or decisions made as a result of these discussions.
5. Verification of share counts and allocation records, including documentation addressing potential naked short selling or unregistered shares.

## 6. SEC Filings and Withdrawals

a. Correspondence and drafts associated with the withdrawn S-1 filing for Newco.
b. Documents detailing changes in strategy or corporate governance tied to Newco's postponement or abandonment.

## 7. Non-Disclosure Agreements and Related By-Laws

a. We request copies of any and all Non-Disclosure Agreements, Non-Compete/Non-Disclosure Agreements, Secrecy Agreements,any similar agreements relevant to NBH operations  or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of NBH with any and all party or parties since the inception of NBH .
b. We request copies of any and all Non-Disclosure Agreements, Non-Compete/ Non-Disclosure Agreements, Secrecy Agreements, any similar agreements relevant to NBH operations  or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of any company, business, or partnership you owned in whole or in part, or were an officer thereof, with any and all party or parties, if said agreements as delineated in the foregoing carried over into NBH operations, support   operations, social media campaigns, or other efforts .
c. We request you identify with particularity by name of the party and date of agreement any payment, compensation agreement, share distribution agreement, contract for shares or warrants in NBH or any other company, business, or investment for specific performance of   work of any kind to individuals, entities, businesses, lobbyists, or social media influencer .

## Detailed Explanation for Non-Compliance

If any requested documents are not provided, please include a comprehensive explanation for their unavailability or refusal to disclose.

## Summary of Requested Items (Checklist)

- Board and management communications.

- Audited financial statements and stock issuance documentation.

- Consulting and employment agreements.

- Lease and assets records.

- Shareholder records and share count verification.

- Correspondence related to SEC filings and withdrawals.

- NDAs and by-laws.

## Deadline for Compliance

In light of the urgency of this matter, I respectfully request the aforementioned documents be made available within **three (3) business days** of receipt of this correspondence. Should additional time be needed, please provide a detailed justification and a proposed timeline for compliance.

## Consequences of Non-Compliance

Failure to comply may result in legal remedies, including filing a petition to compel disclosure in accordance with Texas law.

## Point of Contact

For inquiries, please contact:
**Danielle Spears**
Phone: 480-476-1091
Email: paymmtlpnow@gmail.com

Please confirm receipt of this correspondence.

Sincerely,

Signed by:
Danielle Spears
CAC0EAB17D654A1...

11/17/2024

**Danielle Spears**
Along with all undersigned shareholders.

DocuSigned by:
Contique Willcot
53D41D27E1DD4C9...
Contique Willcot

Signed by:
Marcos Montiero
3ABCA87662A14BE...
Marcos Montiero

DocuSigned by:
Dan Auxier
B27B2110D21F472...
Dan Auxier

DocuSigned by:
Matthew Pease
CD64D7D57EA544B...
Matthew Pease

Signed by:
Jason Rolo
FD6F849F3C36466...
Jason Rolo

Signed by:
Scott Traudt
410B1E00B947A97...
Scott Traudt

Signed by:
Jennifer Vetrano
7025171B7C7047C...
Jennifer Vetrano

← **Xeno Gray**
17.2K posts

Follow

 **Xeno Gray** @Acoustic454 · Nov 25
Danielle @spldbrat351964 Spears is Dumb as Fuck.
Congressional efforts are ongoing.

You're the Dead End.

Respect to all the Space Hosts that move #MMTLP forward...! 

---

 **Danielle Spears** @s... · 50m ⋮

#MMTLP #MMAT #NBH
LEGITS PAY ATTN! On
5/15/2024 in a video,
@MikeQfishing called out
@PaulusGreatus.
@anna_trades & myself for
pushing McHenry and Comer
to action! 195 DAYS LATER,
it's a fact that Congress is a
DEAD END! So this CM bullied
and berated us for being
RIGHT! Show more

💬 1        ⟲        ♡ 2        ᴸᴸᴵ 111        🔖 ⤴

💬 1        ⟲ 5        ♥ 31        ᴸᴸᴵ 678        🔖 ⤴

Danielle D Spears                                                    12/17/2024
12206 W Harrison Street
Avondale, AZ 85323

**RECEIVED**

DEC 2 3 2024
TPLP
**TEXAS**

Charles Schwab & Co., Inc.
Legal Compliance Department
3000 Schwab Way
Westlake, TX 76262-8104

RE: Formal Request for Books and Records Related to MMTLP Share Reconciliation

To Whom It May Concern,

I am writing as a client who transferred 100 shares of MMTLP from TD Ameritrade to Charles
Schwab during Schwab's acquisition of TD Ameritrade. I have significant concerns regarding the
handling, reconciliation, and tracking of MMTLP shares during this transition, including potential
overselling, failure-to-deliver (FTD) obligations, and discrepancies in share accounting.

Pursuant to FINRA Rules 4511, 3110, 4370, and 4530, as well as SEC Rules 17a-3, 17a-4,
15c3-3, and Regulation SHO, I formally request the following books and records that Schwab is
obligated to maintain and produce:

**Specific Records Requested:**
1. **Share Reconciliation Reports:** All documents showing the reconciliation, tracking, and
   movement of MMTLP shares during Schwab's acquisition of TD Ameritrade.
   Any internal or external audits conducted to verify share count, settlement status, and
   allocation.

2. **Trade Confirmations and Failure-to-Deliver (FTD) Reports:**
   Detailed records reflecting purchases, sales, and settlement of MMTLP shares in my
   account. All FTD notices under SEC Regulation SHO Rule 204 related to MMTLP
   shares during the acquisition period.

3. **Account Statements:**
   Historical account statements from TD Ameritrade and Charles Schwab showing
   ownership, transfers, and all activity related to my 100 shares of MMTLP.

4. **Internal and External Communications:**
   Any written, electronic, or recorded communications between Schwab, TD Ameritrade,
   FINRA, the SEC, and third parties concerning:
   > The handling and reconciliation of MMTLP shares,
   > Share overselling,
   > Failure-to-deliver (FTD) obligations, or

Other discrepancies affecting MMTLP shareholders during the acquisition process.

**Legal Basis for My Request:**
Schwab, as a FINRA member and registered broker-dealer, is obligated under the following legal and regulatory framework to provide accurate records and safeguard customer assets:

**FINRA Rule 4511:** Requires broker-dealers to maintain and produce books and records for at least 6 years.
**FINRA Rule 3110:** Requires broker-dealers to supervise and document compliance with securities laws, ensuring accurate tracking of shares during major transitions like acquisitions.
**FINRA Rule 4370:** Mandates that Schwab's Business Continuity Plan (BCP) address disruptions during acquisitions to protect customer accounts.
**FINRA Rule 4530:** Requires Schwab to report customer complaints, FTD issues, or violations of securities laws to FINRA.
**SEC Rule 17a-3 and 17a-4:** Requires Schwab to maintain and provide trade confirmations, reconciliation reports, account statements, and internal communications for audit and transparency purposes.
**SEC Regulation SHO Rule 204:** Obliges Schwab to promptly resolve and document failure-to-deliver positions.
**SEC Rule 15c3-3 (Customer Protection Rule):** Requires Schwab to safeguard and segregate customer securities, ensuring proper control of my 100 shares of MMTLP.
**Sarbanes-Oxley Act (SOX) Section 802:** Prohibits alteration, destruction, or concealment of documents material to securities transactions.
*UCC Article 8:* Guarantees my legal right to possession and control of investment securities. These rules, taken together, establish Schwab's clear responsibility to reconcile, document, and disclose all relevant information about my shares of MMTLP.

**Obligation to Respond Truthfully and Completely:**
Schwab is legally required to respond to this request in good faith, producing the requested documents in full. If Schwab asserts that any records are unavailable, incomplete, or privileged, I request a detailed written explanation identifying the specific grounds for such claims, including citations to applicable laws or regulations.

**Notice of Further Action:**
Should Schwab fail to comply with this request or provide an incomplete response, I reserve my right to take the following actions:

**File a Formal Complaint with FINRA:**
A complaint will include claims of non-compliance with FINRA Rules 4511, 3110, 4370, and 4530, as well as violations of SEC rules regarding books, records, and failure-to-deliver obligations.

**Seek Court Intervention:**
I will pursue legal action to compel Schwab to produce the requested records and to recover damages for any harm caused by the mishandling of MMTLP shares.

**Escalate to the SEC:**
File a complaint with the SEC Office of Compliance Inspections and Examinations (OCIE) regarding Schwab's potential violations of Regulation SHO and record-keeping rules.

**Response Deadline:**
This request is made for a proper purpose: to investigate potential misconduct, overselling, and mishandling of my shares. I expect a complete, substantive response within 30 calendar days, no later than **1/17/2025.**

*Please send your response, including all requested documents, to my contact information provided above.*

Failure to comply with this request will result in immediate escalation as outlined above. I trust Schwab will act in accordance with its regulatory obligations and fiduciary duties to its customers.

Thank you for your prompt attention to this matter.

Sincerely,

Danielle D Spears
Account # 59939916
Former TD Ameritrade Client
Current Schwab client via acquisition

Dated: 12/17/2024

# Post

Reply

**Jiminy Rickets** @jarvisslip · Jan 12
Replying to @happypositive0 @spldbrat351964 and 6 others
Not only is Danielle slow, but she has also isolated a majority of community members who have done a lot more than she ever will. She's been out of the loop for a long time now, and her knowledge of MMTLP in general is subpar, which will bite her in the ass in her court case.



**JUST IGNORE HER, MAYBE SHE'LL DISAPPEAR**

GIF

3      1      7      256

**Happy and Positive** ✔ @happypositive0 · Jan 12
If the person wishes her to know details, they can let her know. It's not my place to go divulging information. Danielle hasn't helped herself at all with her previous actions, so I don't fancy her chances to be honest.

## Explore Beta

**Heightened Security for Trump Inauguration; Underwood to Perform**
5 hours ago · Politics · 178K posts

**Biden's Border Claims Under Scrutiny**
6 hours ago · Politics · 80K posts

**SEC Imposes $45M Fine on Robinhood for Securities Law Breaches**
3 hours ago · Finance · 2.5K posts

**Calls for Milley's Court Martial Over Afghanistan Actions**
2 hours ago · Military · 95K posts

Show more

Terms of Service   Privacy Policy   Cookie Policy
Accessibility   Ads info   More ···   © 2025 X Corp.

Charles Schwab & Co., Inc. ("Schwab") hereby objects to the Subpoena issued to it in the above-referenced action as follows:

1.  Schwab objects to the Subpoena to the extent it purports to seek information and/or documents protected from discovery based on the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or substantive right, such as the right of privacy. Any inadvertent or unintentional disclosure of documents subject to a claim of privilege shall not be deemed a waiver, in whole or in part, of any such privilege; once put on notice of the inadvertent or unintentional disclosure of a protected document, the receiving party shall return the document(s) and not use such document(s) in any manner.

2.  Schwab objects to the Subpoena to the extent it seeks to impose obligations beyond those required by the forum or jurisdiction from which the Subpoena was issued.

3.  Schwab objects to the Subpoena to the extent it purports to impose an unreasonable timeframe for compliance.

4.  Schwab objects to the Subpoena to the extent that it is overbroad, unduly burdensome and/or vague, particularly insofar as any request seeks to impose a company-wide search for "All" documents, correspondence, records, reports, electronically stored data including but not limited to e-mail, telephone calls, etc., or other materials.

5.  Schwab objects to the Subpoena to the extent that it includes Definitions that are overbroad and/or vague.

6.  Schwab objects to the Subpoena to the extent that it does not contain a specific Relevant Time Period relating to the dispute or proceeding.

7.  Schwab objects to the Subpoena to the extent that it dictates the format of Schwab's production of records insofar as those formats may be different from the format(s) Schwab uses to archive and/or store its documents.

8.  Schwab objects to the Subpoena to the extent it purports to seek information and/or documents containing proprietary and/or commercially sensitive (confidential) information relating to Schwab's business, internal policies, programs, and guidelines, without adequate protection against improper use or disclosure.

9.  Schwab objects to the Subpoena to the extent it purports to seek documentation containing its customers' private, non-public and/or confidential information without adequate protection against improper use or disclosure.

10. Schwab objects to the Subpoena to the extent it seeks information and/or documents that are neither relevant to the subject matter involved in this action nor reasonably calculated to lead to the discovery of admissible evidence.

11. Schwab objects to the Subpoena to the extent that it demands the production of records that are already in the possession, custody, or control of the requesting party, or are otherwise publicly available.

12. Schwab objects to the Subpoena to the extent it demands the production of duplicative or ancillary documents relating to transactions or activities described in Schwab's account statements.

13. Schwab objects to the Subpoena insofar as it seeks documents from business entities other than the entity to which the subpoena is addressed, such as parent companies, subsidiaries, affiliates, etc.

14. Schwab objects to the Subpoena to the extent it purports to seek documents that are not within Schwab's possession, custody, or control and/or to the extent the Subpoena calls for the creation of a compilation, report, summary, or other document not created or maintained in the ordinary course of business.

15. Schwab objects to the Subpoena to the extent it purports to impose on Schwab the obligation of creating a privilege log or other list identifying documents withheld from production on the basis of privilege or other objections.



x.com/search?q=flamethrower...type=...

**Trading**  **Banking**  **Shopping**  **Health**  **Social Media**  **FFootball**  **Daily TSLA**  **PAL Application-Ho...**  **G-Drive**  **Docusign**  **Public Access to C**

X

🔍 flamethrower from:johnbrda

**Top**    Latest    People    Media    Lists

...attorney, and also funding consultants to get information, it was determined that only MMAT had standing to get information and develop a case (at that time). @palikaras was always helpful but his board did not want him to cooperate as they were not "believers" in the impropriety in MMTLP/NBH and for that matter MMAT. IMO, George lost his job because he stuck his neck out to get info to help the MMTLP holders and MMAT holders. Flamethrower had to yield to MMAT as they were in control, and Wes and his team are on the case for the benefit of MMAT holders and hopefully some share count info on MMTLP/NBH holders too.

💬 25       ⟲ 142       ♡ 280       ⽥ 12K       🔖  ⬆

**John Brda** ✔ @johnbrda · Jan 17                                    ⌀  ...
Replying to @Ryknol @Greenhills303 and 2 others
I spoke about this a long time ago. Flamethrower had to take a back seat to MMAT, **as everythi**ng happened under their control. George, IMO, got fired because he took steps to find out the information on behalf of MMTLP shareholders and MMAT shareholders. Now that MMAT is in BK, getting the info can be ordered by the BK judge without discovery motions. It sucks to be in BK, but we have to take advantage of the benefits it does provide.

💬 5       ⟲ 59       ♡ 125       ⽥ 2.4K       🔖  ⬆

**John Brda** ✔ @johnbrda · Jan 18, 2023                              ⌀  ...
Background. **Flamethrower** = me and 3 other OG TRCH folks. We together have funded the DD process with Wes and team. We will go where that DD takes us and make appropriate decisions when we have the data. Not afraid, ready to take action! All $MMTLP fam will be kept in the loop

💬 247       ⟲ 880       ♡ 2.2K       ⽥ 157K       🔖  ⬆

**John Brda** ✔ @johnbrda · Jan 9, 2023                              ⌀  ...
Replying to @SqueezeTeam6
Mine does not have a _ in it.

It is my **flamethrower** image tho

💬 4       ⟲ 4       ♡ 42       ⽥ 4K       🔖  ⬆

🏠 Home

🔍 **Explore**

🔔 Notifications

✉ Messages

𝄜 Grok

✖ Premium

▤ Lists

🔖 Bookmarks

💼 Jobs

👥 Communities

⚡ Verified Orgs

👤 Profile

⊙ More

**Post**

**Danielle Spears** ✔    ...
@spldbrat351964

# Post

**Johnna AR-INTL.com** ✓
@johnnaarintl

oh the 💩🤡crayon eating ✏️🖍️ guppie is back tagging me with her STUPIDITY!

I DO NOT HAVE AN NDA
I DO NOT WORK FOR ANYONE

I will call you a dumb ass for FREE! WTF!!! is a secrecacy agreement 🤣🤣🤪 oh, I forgot clown college pro-se legal drop out!

As for setting you...



▶️ GIF

3:00 PM · Jan 22, 2025

Jason Rolo

L6 Surrey Ln

Torrington, CT 06790

 (413) 657-9082

3/07/25

Jeffrey L. Hartman

Hartman & Hartman

510 West Plumb Lane, STE B

 Reno, NV 89509

**Subject: Formal Conflict of Interest Complaint: Attorney Wes Christian in Meta Materials, Inc. (MMAT) Bankruptcy Proceedings**

Dear Jeffrey Hartman,

I am writing to formally lodge a complaint, as a shareholder with a proof of interest filed, regarding a significant conflict of interest involving Attorney Wes Christian in the bankruptcy proceedings of Meta Materials, Inc. (MMAT). My concern stems from his simultaneous representation of Next Bridge Hydrocarbons (NBH) and his involvement with the MMAT bankruptcy trustee. Given the inherent overlap of interests and the stringent ethical obligations mandated by federal bankruptcy law, I request an immediate and thorough review to ensure strict compliance with all relevant legal and ethical standards.

**Background and Specific Conflict of Interest Concerns:**

- **Dual Representation:**

  - Attorney Wes Christian is currently representing Next Bridge Hydrocarbons (NBH) in matters concerning MMTLP shareholders and corporate governance.

- ○ Concurrently, he is engaged in acting as an advisor to the MMAT bankruptcy trustee, who bears fiduciary duties to the bankruptcy estate, its creditors, and other stakeholders.

- **Potential Ethical Violations:**

  - ○ **Conflict of Interest:** This dual representation presents a clear conflict of interest. The trustee's primary duty to maximize the estate's value for creditors may directly clash with the interests of NBH. Furthermore, Greg McCabe, the CEO of Next Bridge Hydrocarbons, has filed a proof of interest in the Meta Materials, Inc. bankruptcy proceedings, disclosing ownership of 120,001 shares of MMAT stock. This direct financial stake in MMAT by NBH's CEO, largest shareholder, and largest creditor, substantially exacerbates the conflict of interest, making Attorney Christian's simultaneous representation of both NBH and the bankruptcy trustee highly problematic.

  - ○ **Prior Involvement with MMAT:** A May 20, 2024 press release from Meta Materials Inc. announced that Attorney Wes Christian was previously involved in investigating claims of market manipulation related to NBH stock. This prior involvement raises concerns about potential bias and further conflicts of interest, as he may have formed opinions or relationships during that investigation that could affect his current representation of the bankruptcy trustee.

  - ○ **Breach of Fiduciary Duty:** The risk of confidential information being shared or used to the detriment of either party is substantial, potentially violating fundamental fiduciary obligations.

  - ○ **Violation of Bankruptcy Code:** 11 U.S.C. § 327(a) mandates that professionals employed by the trustee be "disinterested" and not hold or represent interests adverse to the estate. Attorney Christian's current position may violate this critical provision.

  - ○ **Professional Conduct Rules:** ABA Model Rule 1.7 explicitly prohibits a lawyer from representing a client when a concurrent conflict of interest exists, unless specific conditions, such as informed consent from all affected parties, are met.

- **Relevant Case Law:**

  - **In re Plaza Hotel Corp., 111 B.R. 882 (Bankr. S.D.N.Y. 1990):** This case emphasizes the critical importance of avoiding even the appearance of impropriety in bankruptcy proceedings to maintain public confidence. Attorney Christian's prior involvement with MMAT in investigating market manipulation claims creates such an appearance, raising concerns about his ability to act impartially in his current role.

  - **In re Pillowtex, Inc., 349 F.3d 711 (3d Cir. 2003):** This case demonstrates that an attorney with a prior relationship with a party involved in the bankruptcy, similar to Attorney Christian's prior involvement with MMAT, can be disqualified due to concerns about objectivity.

  - **In re Leslie Fay Cos., 175 B.R. 525 (Bankr. S.D.N.Y. 1994):** This case shows that any prior involvement that could raise questions about a professional's disinterestedness, such as Attorney Christian's prior work with MMAT, should be grounds for disqualification.

  - **In re Johns-Manville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986):** This case shows that a creditor with a significant equity interest in the debtor, such as NBH through its CEO, can be found to have a conflict of interest. This further complicates Attorney Christian's position.

  - **In re Official Committee of Unsecured Creditors of Cybergenics Corp., 226 B.R. 35 (Bankr. S.D.N.Y. 1998):** This case emphasizes that creditors with significant holdings, like NBH, owe fiduciary duties to the debtor and other creditors, adding another layer of complexity to Attorney Christian's dual representation.

- **Implications for Stakeholders:**

  - **Fairness and Impartiality:** The dual representation casts doubt on the fairness and impartiality of the bankruptcy proceedings, potentially eroding stakeholder trust.

- **Transparency:** Maintaining absolute transparency is paramount to preserving confidence in the legal process, particularly in complex bankruptcy cases involving numerous stakeholders.

**Requested Actions:**

In light of these serious concerns, I respectfully request the following actions:

1. **Conduct a Formal Review:** Initiate an immediate and comprehensive review of Attorney Wes Christian's dual representation to assess its compliance with 11 U.S.C. § 327(a) and all applicable ethical standards.
2. **Consider Disqualification:** If a conflict of interest is confirmed, take all necessary steps to disqualify Attorney Christian from representing parties with adverse interests in these proceedings.
3. **Ensure Full Disclosure:** Mandate that Attorney Christian fully disclose all relationships and interests related to both NBH and the MMAT bankruptcy trustee to all relevant parties and the court.

Addressing this matter promptly is crucial to safeguarding the integrity of the bankruptcy process and protecting the rights of all stakeholders. Please acknowledge receipt of this letter and inform me of the actions that will be taken in response.

Thank you for your immediate attention to this critical matter. I anticipate your prompt response.

Sincerely,

Jason Rolo

mastcab@yahoo.com

(413) 657-9082

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jeffrey Hartman
510 West Plumb Ln Suite B
Reno NV 89509

9590 9402 8741 3310 1387 57

2. Article Number (Transfer from service label)

9589 0710 5270 2582 8522 58

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _[signature]_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)
A Garber

C. Date of Delivery
3-12-25

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery ($500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Christine Lovato
P.O. Box 18417
Reno NV 89511

9590 9402 8741 3310 1387 64

2. Article Number (Transfer from service label)

0710 5270 2582 8522 65

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _[signature]_   ☐ Agent   ☒ Addressee

B. Received by (Printed Name)
Lovato

C. Date of Delivery
3/21/25

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☒ No

_[red circular stamp: RENO STEAMBOAT NEVADA 89511 MAR 21 2025]_

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt



**CHRISTIAN**ATTAR

James W. Christian
jchristian@christianattarlaw.com

March 26, 2025

*Via X:*
@spldbrat351964

Re:    Pre-Litigation Document Preservation Related to Potential Claims Involving Next Bridge
       Hydrocarbons, Inc.

**DEMAND FOR PRESERVATION OF ELECTRONICALLY
STORED INFORMATION**

To Whom it May Concern:

The undersigned has been retained as litigation counsel by Next Bridge Hydrocarbons, Inc. (hereinafter "Plaintiff" or "NBH") to investigate and commence litigation against all parties who have engaged in a scheme of harassment, business disparagement, libel, slander, tortious interference, conspiracy, obstruction of justice and violations of the Administrative Procedures Act. We write to advise @spldbrat351964          that litigation is being considered against certain individuals with respect to this matter. You may become a party or witness in this dispute and therefore, you have an obligation to preserve all documents and electronically stored information ("ESI," as further defined below) that may relate in any way to the subject matter of this dispute (the "Claims").

We hereby request that You, individually, or on behalf of any entities you control ("You") preserve all documents, tangible things, and electronically stored information potentially relevant to the Claims such as documents, communications, and any other relevant materials including but not limited to:

1. All communications (emails, text messages, internal messaging systems, etc.) regarding NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

2. All Twitter (now X) data, including but not limited to:

   - Direct messages (sent and received) related to NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe
   - Public and private posts, tweets, replies, retweets, and quote tweets referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe
   - Account activity logs referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

- Any reports, complaints, or moderation actions related to content involving referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

3. Any third-party communications (including correspondence with regulators or law enforcement) mentioning Plaintiff referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

4. Metadata and logs associated with the above records, including timestamps, authorship, and any modifications

You should anticipate that files and much of the information relevant to Plaintiff's Claims are stored on your computers and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored on a computer, hard drive, cell phone, flash drive, CD, DVD or other electronic storage device as:

- Digital communications (e.g., e-mail, voice mail, text messaging, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Space Call Recordings;
- Webinars Recording;
- Podcasts Recordings;
- Video and Animation (e.g., AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you, but also in areas that may not reasonably be accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if it does not anticipate having to produce such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary for Plaintiff to determine the nature and extent of any claims.

**Preservation Requires Immediate Intervention**

You must act immediately to preserve potentially relevant ESI including, without limitation, information from January 1, 2018 to present.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents, files, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and
- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

You should anticipate that others may seek to hide, destroy, or alter ESI and act to prevent or guard against such actions. Especially where devices have been used for Internet access or personal communications, You should anticipate that users may seek to delete or destroy information they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you. It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to its data and archives from seeking to modify, destroy, or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

With respect to your hard drives and storage devices, the demand is made that you immediately obtain, authenticate, and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by you during the period from January 1, 2018 to present, as well as recording and preserving the system time and date of each such computer:

- Any Agents, Partners, or Collaborators of you concerning matters of NBH or its Officers, Directors, Shareholders, or Agents, including but not limited to Greg McCabe.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

The term "computer" shall include any computer, hard drive, cell phone, flash drive, CD, DVD, or other devices capable of storing ESI.

**Preservation in Native Form**

You should anticipate that certain ESI, including but not limited to Word documents, spreadsheets, and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, You should preserve ESI in such native forms, and it should not select methods to preserve ESI that remove or degrade the ability to search its ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation.

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

**Metadata**

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers**

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino, G-mail) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downloaded or must be online 24/7. If you question whether the preservation method it pursues is one that we will accept as sufficient, please call us to discuss it.

**Home Systems, Laptops, Online Accounts and Other ESI Venues**

Though we expect that You will act swiftly to preserve data on all devices, it should also determine if any home or portable systems may contain potentially relevant data. To the extent that you sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and your PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if you used online or browser-based e-mail accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

**Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

## Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

## Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in its care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, You must notify any current or former representative, agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and it must take reasonable steps to secure its compliance.

## System Sequestration or Forensically Sound Imaging

We suggest that, You, removing all ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

In the event You deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols**

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if it will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol it intends to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If You do not currently have such expertise at its disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics.

**Do Not Delay Preservation**

I am available to discuss reasonable preservation steps, however, You should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which Plaintiff is entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

**Confirmation of Compliance**

Please confirm as soon as practically possible and no later than April 9, 2025 , that You have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If You have not undertaken the steps outlined above, or have taken other actions, please describe what it has done to preserve potentially relevant evidence.

Sincerely,

James Wes Christian

Danielle Spears
12206 W. Harrison St.
Avondale, AZ, 85323

Wes Christian, Esq.
CHRISTIANATTAR
1177 West Loop S. Ste. 1700
Houston, TX 77027

RE: Response to Litigation Hold Letter

Dear Mr. Christian,

I acknowledge receipt of your Litigation Hold Letter dated March 26, 2025, sent via private message on the social media platform X (Twitter).

I feel compelled to bring to your immediate attention multiple serious ethical concerns arising from your recent correspondence. As you are undoubtedly aware, attorneys practicing in federal court, as well as in the states of Arizona and Texas, are bound by stringent ethical rules governing professional conduct. These include but are not limited to:

- Western District of Texas Local Rule AT-7, requiring adherence to the highest ethical, professional, and civil standards.
- Arizona Rule of Professional Conduct 4.4(a), prohibiting the use of methods designed to embarrass, delay, or burden any individual.
- Arizona Rule of Professional Conduct 1.7, prohibiting representation involving concurrent conflicts of interest.
- Texas Disciplinary Rule of Professional Conduct 4.04(a), prohibiting actions meant solely to burden, intimidate, or embarrass third persons.
- Texas Disciplinary Rule of Professional Conduct 1.06, prohibiting representation involving conflicts of interest.
- ABA Model Rule 4.4, requiring respect for third-party rights and prohibiting methods designed to burden third persons.
- ABA Model Rule 8.4, prohibiting intimidating and prejudicial conduct, dishonesty, and misrepresentation.
- ABA Model Rule 1.7, prohibiting conflicts of interest, particularly representation materially limited by responsibilities to other clients or interests.

I must highlight the glaring contradictions between your recent communication and these established ethical guidelines. Firstly, the tone, severity, and explicitly threatening language of your letter—particularly against myself, a Pro Se litigant actively involved in litigation against your client Next Bridge Hydrocarbons ("NBH")—can only be viewed as retaliatory and intended to chill the Plaintiff. Such conduct is wholly inappropriate and directly contravenes the aforementioned ethical standards.

Furthermore, your repeated references to Mr. Greg McCabe, whom you explicitly do not represent, demonstrate a significant and concerning conflict of interest. The consistent invocation of Mr. McCabe's name throughout your correspondence raises serious questions about your professional independence and your duty of loyalty exclusively to your client, NBH.

Moreover, your deliberate omission of your official role as attorney of record for Next Bridge Hydrocarbons in the pending federal litigation further compounds this conflict, representing a clear breach of transparency and candor.

Additionally, I find it particularly disappointing and somewhat disturbing that an attorney of your tenure and experience would consider it appropriate to deliver a litigation hold letter via private message on a social media platform rather than utilizing a more professional, conventional, and respectful method. Both you (James Wes Christian, jchristian@christianattarlaw.com) and Casidy Newcomer (cnewcomer@christianattarlaw.com) have previously corresponded with me via email, which further amplifies the inappropriate and unprofessional choice of using social media for such serious and formal communication.

For clarity, I am a 61-year-old disabled grandmother who resides with her son. Unlike your firm, I do not possess considerable financial resources and have had to painstakingly gather the resources necessary to pursue this litigation Pro Se. Your intimidating tactics, leveraging your considerable position of power and resources against a litigant in my circumstances, fall well below acceptable standards of professional conduct.

Please consider yourself formally advised to immediately adhere strictly to the very instructions outlined in your own Litigation Hold Letter. Given your insistence on continually referencing Mr. McCabe, whom you do not represent, I urge you to preserve all communications and documentation related not only to Next Bridge Hydrocarbons but also to Greg McCabe.

Should this correspondence have been intended to intimidate or silence me, please be advised that such tactics are ineffective and will not be tolerated.

Respectfully,

Danielle Spears

/s/ Danielle Spears



**James W. Christian**
jchristian@christianattarlaw.com

April 4, 2025

<u>*Via Email: paymmtlpnow@gmail.com*</u>

Re:     Response to letter regarding the demand for preservation of electronically stored information dated March 26, 2025 (the "Preservation Demand").

Dear Ms. Spears:

I am writing in response to your letter dated March 31, 2025, regarding the Preservation Demand. I would like to address these concerns and clarify the rationale behind the methods used for delivering the Preservation Demand.

Firstly, it is important to understand that evidence preservation letters are not subject to the traditional methods of service as outlined in the Texas Rules of Civil Procedure. These letters are merely pre-litigation documents intended to prevent the spoliation of evidence and ensure that all relevant information is preserved for potential future litigation. Therefore, evidence preservation letters do not require the same formal service methods as other litigation documents such as pleadings and motions. See Tex. R. Civ. P. 21(a);Tex. R. Civ. P. 501.4.

The decision to serve the Preservation Demand via direct message on the social media platform X (also known as "Twitter") was made out of an abundance of caution to confirm receipt. The use of direct messaging was not intended to cause confusion or concern but rather to have verification that you are the owner of the handle, @spldbrat351964.

I want to assure you that there was no intention to intimidate or retaliate against you. The language used in the Preservation Demand was standard and aimed solely at ensuring compliance with evidence preservation obligations. As stated in *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex. 2003), Texas law imposes a general duty to preserve evidence once a party knows, or should reasonably know that (1) there is a substantial chance that a claim will be filed and (2) evidence in the party's possession or control will be material and relevant to that claim. The Preservation Demand does not pertain to the current litigation in which you are a pro se Plaintiff, but to *potential future litigation*.



In conclusion, it is crucial that all parties involved in potential litigation take steps to preserve relevant evidence, and I trust that you will comply with this request.

**www.christianattarlaw.com**

1177 West Loop S, Ste 1700 | Houston, Texas 77027 | Phone:  713.659.7617| Fax: 713.659.7641

Thank you for your attention to this matter.

Sincerely,

*/s/ James Wes Christian*
James Wes Christian



# CHRISTIANATTAR

**James W. Christian**
*jchristian@christianattarlaw.com*

April 16, 2025

*Via Email Only*
Jeffrey L. Hartman
jlh@bankruptcyreno.com

> **Re:** **(a) Concurrent Representation of Meta Materials Inc. ("Meta") and Next Bridge Hydrocarbons, Inc. ("NBH")– No Conflict of Interest and (b) Emails from Jennifer Vetrano and Danielle Spears (collectively, the "Perpetrators") to Christina Lovato**

Dear Jeffrey:

As the former chair of the Litigation Section of the State Bar of Texas (where I am presently emeritus), I take allegations of conflicts of interest seriously. However, I take issue with individuals who attempt to falsely create an apparent conflict for nefarious purposes. As explained below, the Perpetrators (along with their other co-conspirators) are attempting to obstruct, impair, and derail our legal cases against market manipulators by fabricating/spinning a supposed conflict. The Perpetrators have:

a.    filed numerous bizarre and incoherent pro se complaints in federal court (which are all very similar in nature) against Meta, NBH, Gregory McCabe, et, al.;

b.    filed a grievance against me to the State Bar of Texas (where my record is pristine). Ms. Vetrano's complaint is that I sent an evidence preservation letter that is too aggressive[1]. I am certain the complaint will be dismissed as it was simply a standard evidence preservation letter; and

c.    held Space Calls and distributed tweets on X and other platforms attempting to obstruct and impair our team by having us deal with the Perpetrator's false accusations.

All the foregoing actions are intended to obstruct our efforts on behalf of Meta to hold all people and entities responsible for destroying the market value of the securities of Meta. While I cannot prove today they are shielding for the very people we are pursuing, their acts are certainly consistent with this purpose.

---

[1] A Copy of Vetrano's complaint to the State Bar of Texas enclosed herein as **Exhibit A;** and an email from Jennifer Vetrano to James W. Christian, dated March 29, 2025, regarding the same is enclosed herein as **Exhibit B**.

Jeffrey L. Hartman
April 16, 2025
Page 2 of 5

Accordingly, this letter is submitted to explain and confirm, in connection with the undersigned firm's representation of NBH, that there is no potential or actual conflict of interest based on the undersigned firm's concurrent representation of Meta Materials, Inc. in the matter *In Re Meta Materials Inc.*, Case No. 24-50792-hlb, pending in the United States Bankruptcy Court in Reno, Nevada.

As you are aware, at the outset of retaining my firm, I advised you that I would not represent Mr. McCabe individually in any matter (as you advised me that Meta might be investigating potential claims against him). At that time, I advised you I was representing NBH in a defamation, business disparagement, and tortious interference suit that will be pursued against some of the members of the same group referred to above that (a) have complained to the court; and (b) filed frivolous pro se complaints against many parties, including Meta. I made it clear to Mr. McCabe, I could not represent him in an individual capacity in the multiple pro se suits described below. As such, he retained separate legal counsel for his individual representation. I understand the parties have alleged to the court I have a conflict; however, nothing could be further from the truth.

As set forth in more detail below, the scope of ChristianAttar's representation of NBH includes (i) the defense of NBH in connection with certain lawsuits filed by pro se litigants in the Western District of Texas asserting various claims against NBH; and (ii) the prosecution of claims to be asserted by NBH against certain third parties for tortious interference with existing contract, tortious interference with prospective business relations, and business disparagement arising from conduct that has caused harm to NBH's business operations and reputation. ChristianAttar's representation of NBH is limited exclusively to these matters and does not extend to any other legal services. Based on our current investigation and review, we are aware of no conflict of interest that would preclude our representation of NBH in these matters. For the sake of clarity, ChristianAttar's scope of representation of NBH **does not** include or involve investigation into potential claims of stock manipulation as that cannot exist because NBH did not "trade their own securities," nor did they receive anything from Meta that could be clawed back etc.

Under Rule 327 of the Bankruptcy Code and relevant case law, an actual conflict arises only when an attorney is concurrently serving two interests that are directly adverse and cannot be reconciled without impairing the attorney's ability to exercise independent judgment. *In re Am. Printers & Lithographers, Inc.*, 148 B.R. 862, 866 (Bankr.N.D.Ill.1992) (Schmetterer, J.); *Johnson v. Richter, Miller & Finn (In re Johnson)*, 312 B.R. 810, 822 (E.D. Va. 2004). Here, no such conflict exists. The matters do not involve active competition between Meta and NBH's interests, nor would representation in one matter require compromising the other matter.

To the extent any party may assert that a "potential conflict" exists, it is well established that such hypothetical concerns, standing alone, are not grounds for disqualification. The distinction between actual and potential conflicts is recognized by courts that favor a fact-specific, functional approach rather than per se rules. *In re Am. Printers & Lithographers*, 148 B.R. at 866 (citing *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir.1992); *In re BH & P, Inc.*, 949 F.2d 1300, 1315–16 (3d Cir.1991)). Only actual, current competition of interests—not speculative or contingent ones—warrant disqualification under 11 U.S.C. § 327(c). *In re Hummer Transp., Inc.*, 2013 Bankr. LEXIS 5587, at \*11 (Bankr. E.D. Cal. 2013); *In re Am. Printers &*

Jeffrey L. Hartman
April 16, 2025
Page 3 of 5

*Lithographers, Inc.*, 148 B.R. at 866. Indeed, events that may occur in the future are not relevant. *Id.* As such, the chance that there may be a potential conflict in the future between Meta and NBH is not enough to preclude my firm's involvement in the ongoing cases.

## I. Scope of Representation of NBH in pending Western District of Texas Cases

In March 2025, NBH was served with three lawsuits filed by three pro se litigants in the Western District of Texas (collectively, "Pro Se Lawsuits")[2]. Mr. McCabe was also named as a defendant in the Pro Se Lawsuits. NBH retained ChristianAttar to assist it with its' defense. ChristianAttar solely represents NBH in the Pro Se Lawsuits and **does not** represent Mr. McCabe in his individual capacity. Indeed, Mr. McCabe has retained Jill C. Pennington of Smith Clark Pennington PLLC and J. Paul Manning of Field Manning Stone Aycock P.C. for his individual representation. For ease of reference, included below is a list of the Pro Se Lawsuits and a description of the claims brought against NBH:

1. Case No. 7:24-cv-317; *Contique Willcot v. Securities & Exchange Commission, GTS Securities LLC, Ari Rubinstein, Next Bridge Hydrocarbons, Inc., John Brda, Gregory McCabe, Financial Industry Regulatory Authority*; filed in the Western District of Texas ("Willcot Matter")

    a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Violation of the Sherman Antitrust Act (15 U.S.C. §§ 1-2) and the Clayton Act (15 U.S.C. §§ 12-27); (iii) Negligence; (iv) Unjust Enrichment; (v) Conspiracy to Commit Fraud; and (vi) Emotional Distress (Negligent or Intentional Infliction).

2. Case No. 7:24-cv-321; *Danielle Spears v. Next Bridge Hydrocarbons, Inc., Gregory McCabe, John Brda, Roger N Wurtele, Kenneth Rice, Joseph DeWoody, Clifton Dubose, Jane Doe 1-20, John Do 1-20*; filed in the Western District of Texas ("Spears Matter")

    a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Negligence; (iii) Unjust Enrichment; (iv) Conspiracy to Commit Fraud; and (v) Emotional Distress (Negligent or Intentional Infliction).

3. Case No. 7:24-cv-322; *Matthew J. Pease v. Securities & Exchange Commission, Financial Industry Regulatory Authority, John Brda, Gregory McCabe, Next Bridge Hydrocarbons;* filed in the Western District of Texas ("Pease Matter")

    a. The causes of action asserted against NBH include: (i) Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Breach of Fiduciary Duty; (iii) Violation of Sarbanes-Oxley Act (15 U.S.C. § 7201); (iv) Violation of Regulation FD (17 C.F.R. § 243.100); (v) Fraudulent Inducement and

---

[2] Copies of the live pleadings in the Pro Se Lawsuits are enclosed herein as **Exhibits C-E.**

Jeffrey L. Hartman
April 16, 2025
Page 4 of 5

> Misrepresentation; (vi) Negligent and Intentional Infliction of Emotional
> Distress; and (vii) Conspiracy to Commit Fraud.
>
> b. Notably, there does not appear to be a direct cause of action against the
> companies, as the Plaintiff always qualifies with "corporate officers" and
> "including but not limited to Brda and McCabe." Despite the foregoing, NBH
> is a named Defendant.

For each of the Pro Se Lawsuits, ChristianAttar intends to pursue a dismissal of all claims asserted against NBH pursuant to FRCP 12(b)(6). We believe there is a high likelihood that the Pro Se Lawsuits will be dismissed for failure to state a claim because: (i) Plaintiffs lack standing for any of their claims; (ii) the claims are derivative in nature as they represent harm shared by all stockholders rather than direct harm to the individual shareholder; and (iii) certain claims are barred by the statute of limitations. Notably, none of these bases involve Meta.

Fore reference, NBH's deadlines for filing a responsive pleading in the Pro Se Lawsuits are as follows: (a) Willcot Matter on May 8, 2025; (b) Spears Matter on May 12, 2025; and (c) Pease Matter on May 25, 2025.

## II.     Scope of Representation of NBH in Other Matters

ChristianAttar has also been retained by NBH to pursue potential claims for business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. To be clear, we have not been retained to represent Mr. McCabe in his individual capacity, nor have we been retained to pursue any other Meta or market manipulation matter. The only material action our firm has taken in pursuing this potential litigation has been to send electronically stored information ("ESI") preservation letters to individuals who have, based on document statements, made potentially actionable statements about NBH on X. The ESI letter references the preservation of communications regarding NBH, or any officer or director of NBH. It's important to note that the potential claims we are pursuing on behalf of NBH do not involve or relate to stock manipulation or anything related thereto. The shareholder's complaint about my firm's alleged investigation into stock manipulation of NBH is frivolous and unsupportable. As stated above, the same shareholder who made this complaint, Jennifer Vetrano, filed an additional ethics complaint against me with the State Bar of Texas. Her sole basis for this ethics complaint was for sending her the evidence preservation letter. These acts are abusive and unacceptable.

## III.     Withdrawal of Representation of NBH if Avoidance Actions are Pursued

We are aware that the Trustee for Meta is investigating one or more potential avoidance actions in the future against Mr. McCabe. If that occurs, we will not be representing Mr. McCabe. In the event that the Trustee also opts to pursue any similar actions against NBH, ChristianAttar will withdraw from representation of NBH in the Pro Se Lawsuits and in the other matters for which it is investigating potential claims of business disparagement, tortious interference with the Orogrande Lease, and tortious interference with prospective relations. We have disclosed to NBH our need to withdraw if an actual conflict of interest arises regarding a claim filed by the trustee against NBH based on ChristianAttar's concurrent representation of Meta. Further, NBH would

Jeffrey L. Hartman
April 16, 2025
Page 5 of 5

be willing to provide a letter to the trustee that contains NBH's consent and acknowledgement of the same. Put simply, we cannot imagine what claim Meta would ever have against NBH. It simply does not exist. If however, the trustee elects to file a claim against NBH, we will withdraw with the consent of NBH.

I believe these Perpetrators are acting as a shield for the people who we are pursuing in discovery and in our lawsuit. They will do anything to impair or block us. We must **not** bow to their manipulation unless there is a true conflict (which there is not). My hope is we discuss this in detail and disclose what's necessary. We cannot let these spurious letters from our opponents cause us to do anything to stop our actions, as I believe they will not stop unless we classify it for what it is – harassment which we frequently experience in these types of cases.

We remain mindful of our ongoing duty to disclose any circumstances that may give rise to a conflict of interest. Should any such issue arise during the course of our representation of NBH, we will promptly notify the trustee and all necessary parties in accordance with the applicable ethical rules and bankruptcy procedures. Please let me know if you require any additional information or have any questions.

Sincerely,

*/s/James W. Christian*
James W. Christian

Enclosures:

Vetrano Complaint to the State Bar of Texas (**Exhibit A**)
Email from Jennifer Vetrano to James W. Christian, dated March 29, 2025 (**Exhibit B**)
Pro Se Lawsuit of Spears (**Exhibit C**)
Pro Se Lawsuit of Pease (**Exhibit D**)
Pro Se Lawsuit of Willcot (**Exhibit E**)





**DrewDiligence** ✓
@KarmaCollects

$MMTLP Alright, let's dive into this latest dumpster fire. Danielle Spears just filed her own lawsuit, and let me tell you, just when I thought it couldn't get any worse than Brad Davis's chaotic mess of a complaint, this one comes along and says "hold my beer".

Once again, we have a laundry list of defendants thrown into one filing with no clear explanation of who's responsible for what. It's like someone grabbed a dartboard, labeled it with 'Brokers,' 'FINRA,' 'NBH,' 'McCabe,' and 'Brda,' and decided to sue whoever the darts hit. And just like Davis's suit, it's completely unclear what damages are being sought from which parties. It's a big ball of confusion again.

The structure is all over the place. There's no rhyme or reason tying these defendants together. You've got brokers, issuers, and regulators all lumped in without any cohesive argument or clear delineation of liability.

And for the cherry on top, Danielle or **whoever ghostwrote this for her manages to pray for judgment 'in HIS favor.'** Unless Danielle is dropping a major revelation that some people may or may not have suspected, I think someone forgot to proofread. This is just sloppy, and sloppy doesn't win lawsuits.

It's obvious to me that the same person who wrote Davis's lawsuit probably wrote this one. The tone, structure, and approach are nearly identical: grandiose claims, a total lack of focus, and an over-reliance on buzzwords instead of actual substance. Danielle, you may have a heart the size of Texas as you claim, but whoever wrote this lawsuit has the IQ of a baked potato.

Once again, not only do I believe this thing will have no legs in court, but once real attorneys get involved to file their opposition, I would be SHOCKED if action isn't taken against these plaintiffs for what I believe could amount to conspiring to file frivolous lawsuits.

For G-d sake if I have to read these complaints, at least make them legible, and anatomically correct. Sheesh.





---

**Relevant people**

 

**DrewDiligence** ✓          Blocked
@KarmaCollects

19+ years experience in free markets. Exposing the MMTLP saga's impact on investors. Now I'm pissed. Join us in uncovering Wall St's hidden truth. Conservative.

**Live on X**

🎙 Neolud is listening
📱 BTC vs XRP                    +1.9K

Bridging the political generational gap, just …    +133

🚁 📱 Not Another Drone Space 📡 🚁    +101

Revolution Live 🐍🐍🐍 👥👥 🌶🚀    +62    is listening

Cap'nWicked .loopring.eth 🐍 ✓ is hosting
NFAWA: 12.10.24: $GME earnings go ✴    +20

Show more

**#ThePlaybook**
Promoted

**Explore**    Beta

Nancy Mace Assaulted at Capitol by Pro-Trans Supporter



# Messages

Search Direct Messages

Message requests
1 person you may know

## Pinned conversations

Naked Truth . Info - Non...   @Nakedt... · Apr 27
Excellent

## All conversations

TRCH'r🔥 @JustFactivist · May 1
Shared a post

Jen @fearles59324823 · Apr 28
Shared a post

Debra @apaulson1112 · Apr 27
You reacted with ❤️: I wouldn't miss it for th...

FIN @RetailUnitedFin · Apr 27
FIN reacted with 🐻: Can you please repost?

Aaron Chow (Elephant An... @aaronmc... · Apr 27
You shared a post

Jeff Davies, the Ener... @EnergyCre... · Apr 27
You shared a post

PaulT @PaulusGreatus · Apr 27
You shared a post

@ItB.easy · Mar 27

## Naked Truth . Info - Nonprofit Organization ✓

Jul 24, 2024, 10:36 AM

Yes there is a clause to that affect that they work with opposing clients

Jul 24, 2024, 10:36 AM

As in Wes is a good guy working with you?

Jul 24, 2024, 10:36 AM

NO meaning their contract say they represent hedge funds basically or the company that stole the money etc  In a professional sleek way Twist pf words

Jul 24, 2024, 10:37 AM

Wait, so when Wes signed a contract with you, you realized there was a clause in there saying he had the right to work the other side of the aisle.

Jul 24, 2024, 10:37 AM

give me a second  I'll send the clause

Jul 24, 2024, 10:38 AM

Yes Thank you!

Jul 24, 2024, 10:38 AM

YES, this is before I knew how corrupt the system was, as an Investigator I caught on quick, changed contracts, they sent us bylaws that would allow them to take over and then charged 14k, I dropped all of that quickly, we wrote our own, the 2 plants on the board poof one new and refused to show their

Start a new message

Home
Explore
Notifications
Messages
Grok
Premium
Bookmarks
Communities
Verified Orgs
Profile
More

Post

Danielle Spears ✓
@spldbrat351964

# X

- Home
- Explore
- Notifications (6)
- Messages
- Grok
- Premium
- Communities
- Verified Orgs
- Profile
- More

**Post**

Danielle Spears ✓
@spldbrat351964

## Messages

Search Direct Messages

Message requests
1 person you may know

### Pinned conversations

Naked Truth . Info - Nonp... ✓ @Nakedt... · Apr 27
Excellent

### All conversations

---

**Naked Truth . Info - Nonprofit Organization** ✓  ⓘ

❤️

Jul 1, 2024, 3:56 PM

Trying to convince you, seems cult like to me. Keep thinking outside the box. Stay the course.

Riddle me this if an atty had to pay investigators for the free DD and services these leaders are heading how much do you think it would cost? I was informed 2-3k per day per investigator by a well know securities atty. Someone is getting free info off investors free time intentionally leader crusade.

Jul 3, 2024, 11:07 AM

So you think Basile is only here for our DD?

Jul 3, 2024, 11:10 AM

No, I don't. He's not paying the leaders. Handful of paid leaders are heading investors on a free campaign that benefits who? The atty that was hired to do the job. They were being paid the last I knew before we were put on a shelf. Still here still watching still learning.

Jul 3, 2024, 11:12 AM

Start a new message



AST is now EQ

EQUINITI TRUST COMPANY, LLC
OPERATIONS CENTER
6201 15TH AVENUE
BROOKLYN, NY 11219

10108.0.001.002.4
DANIELLE  SPEARS

| | |
|---|---|
| Company Number: | 27067 |
| Company Name: | |
| NEXT BRIDGE HYDROCARBONS INC | |
| CUSIP: | 591994371 |
| Company Ticker Symbol: | |
| Stock Exchange: | |
| Account Number: | |
| Statement Date: | November 17, 2023 |

www.astfinancial.com
investors@astfinancial.com
800-937-5449

# Transaction Advice

**IMPORTANT: Retain this statement for your investment and tax records.**

| Account Balance | Restricted | Unrestricted | Total | Account Value | |
|---|---|---|---|---|---|
| DRS/Book Entry Shares | | 7,200.000 | 7,200.000 | Market Value Date | NA |
| Plan Shares | | | | Market Value Price | NA |
| Certificated Shares | | | | Total Market Value | NA |
| Total Shares | | | 7,200.000 | | |

The share prices provided are as of the close of the Market Value Date indicated in this letter and provided by third party. AST does not guarantee the accuracy of such information, and neither AST nor its provider will be liable for any informational errors or for any actions taken reliance on such prices.

# Transaction Details:

| Transaction Date | Transaction Number | Transaction Type | Shares Debited or Credited |
|---|---|---|---|
| 11/13/2023 | BK*0003462 | BOOK SHARES CREDITED | 3,600.000 |

# Positions

**Dani's Cash Acct**

☑ Group by Security Type  ☑ Condensed Table View

## Account Summary

| Total Accounts Value | Total Cash & Cash Invest | Total Market Value | Total Day Change | Total Cost Basis | Total Gain/Loss[2] |
|---|---|---|---|---|---|
| | | | $0.00 (0.00%) | $561.56 | – |

## Positions Details *

| Symbol | Description | Qty | Price | Mkt Val | Cost/Share ↓ | Cost Basis |
|---|---|---|---|---|---|---|
| ▼ Equities | | | | | | |
| 629999590 ☰∨ | NEXT BRIDGE HYDROCARBONS | 100 | N/A | N/A | $5.62 | $561.56 |
| **Total** Equities | | | | | | **$561.56** |





**Messages**

Search Direct Messages

Message requests
1 person you may know

**Pinned conversations**

Naked Truth . Info - Non...   @Nakedt... · Apr 27
Excellent

**All conversations**

**Naked Truth . Info - Nonprofit Organization** ✓

Jul 24, 2024, 10:10 AM

I've been amidst a flurry of BS with people I now know cannot be trusted. This has allowed me to link several key people. NO ONE will believe me. These people made sure they were the top of the food chain. That way, they can run out the clock while making it look like they are the biggest cheerleaders.

Think about that!

Congress is and was never going to assist us. It's just busy work for the community to feel good about themselves, while the real clock ticks to zero.

👍

Jul 24, 2024, 10:16 AM

This is true

Smoke and mirrors

Wes had NDA with many of them paid to push an agenda   Brainwashing is easy.  Add, do you really think all the people in the spaces are there?  NO

Jul 24, 2024, 10:23 AM

Just who was shorting during all of it...... Look back at overstock, repeat repeat repeat offenders of the same acts  Movies so appears they raised over 200k close t2 300k and no a fall out between Kristina and Mark keeps it from moving forward.  Mark Faulk sent me his book... "The Naked Truth"  oh and let's see

Start a new message

Danielle Spears ✓
@spldbrat351964



## Messages

Search Direct Messages

Message requests
1 person you may know

### Pinned conversations

Naked Truth . Info – Non...  ✔  @Nakedt... · Apr 27
Excellent

### All conversations

---

### Naked Truth . Info – Nonprofit Organization ✔

DECEMBER 14, 2022    BY MARY CAMPBELL

## SEC Says Influencers Pumped & Dumped Torchlight

On Tuesday, the US Securities Exchange Commission (SEC) filed a lawsuit in the US District Court for the Southern District of Texas against the following eight defendants:

Edward Constantin aka MrZackMorris aka Edward Constantinescu

Jul 24, 2024, 6:04 PM

He had FBI go after him and put it on our bill. This is insane Wes represents torch but this guy hijacked his account during amc. Things that make you go hmmmmm so when Wes took on torch he already knew it was a pump and dump

I'll go back tomorrow and look at the invoice again. I haven't had time to really study yet, but there are several pages of information.

Jul 24, 2024, 6:07 PM

Start a new message

---

Danielle Spears ✔
@spldbrat351964

**EXHIBIT T**

## Chronological Timeline Supporting Disqualification

**Submitted in Support of Plaintiff's Motion to Disqualify James Wes Christian**

**Submitted in Support of Movants Motion to Intervene and Stay Proceedings**

Danielle Spears v. Next Bridge Hydrocarbons, Inc., et al.

Case No. 7:24-cv-321-DC-RCG

United States District Court – Western District of Texas, Midland-Odessa Division

1. January 18, 2023 – James Wes Christian ("Christian") is hired by Flamethrower LLC, formed by John Brda and, upon information and belief, Greg McCabe to investigate for merit MMTLP. Plaintiff is unaware of the costs associated with this investigation.

2. June 29, 2023 – Christian is hired by Meta Materials, Inc. "(MMAT"). MMAT also announces that Share Intelligence Services, LLC ("Share Intel") was hired for third party trading data to determine whether manipulation existed;

3. January 30, 2024 Next Bridge Hydrocarbons, Inc., led by Christian, filed suit against TradeStation Securities in Case no. 0:24-cv-06194-rka

4. April 15th, 2024 NBH filed a Motion to withdraw the case.

5. May 20, 2024 MMAT PR announces "The lawyers have now concluded that META has meritorious claims for market manipulation against several parties (fails to identify parties or to define the manipulation detected).

    a.  Christian is quoted saying, "I believe META has an actionable case in connection with its MMAT/MMTLP claims;"

    b.  To plaintiffs knowledge, no public legal action has been taken by MMAT, NBH or Greg McCabe beyond the TradeStation Case;

6.  In or around June 2024, Plaintiff contacted the owner of Share Intel directly to ask how she too could purchase the data. I was told that MMAT already bought the data. Therefore MMAT owns the data and I was    informed that Christian had all the data as well.

7.  August 9, 2024, MMAT enters Chapter 7 Voluntary Petition in bankruptcy proceedings in case no. 24-50792-hlb, yet four months earlier MMAT assured shareholders of MMAT & MMTLP that litigation was imminent.

8.  October 31, 2024 – ChristianAttar and Kasowitz Benson Torres LLP submit applications to be retained as special litigation counsel in the MMAT bankruptcy;

    a.  Dkt. 98, 99, 100

    b.  Christian certifies that he and his firm are "disinterested" under 11 U.S.C. § 101(14). However, this certification appears inconsistent with Christian's own recent statements acknowledging he was already representing NBH in legal matters targeting Plaintiff and other MMTLP shareholders.

    c.  Christian claims to have uncovered spoofing of more than 55 million MMAT shares and 92 million TRCH shares using data provided by ShareIntel. Despite this, no findings have been publicly disclosed, and no shareholder-directed legal actions have been filed based on the data.;

    d.  Christians proposal includes an $11.8 million budget and a 30% contingency fee on any recoveries. These funds are structured to benefit the MMAT bankruptcy estate, not individual MMTLP shareholders, while Christian and associated insiders retain full control of the underlying trading data.

    e.  This appointment marked Christian's third engagement to investigate MMTLP-related manipulation (following prior retainers by Flamethrower LLC & MMAT), further cementing centralized control over critical evidence in the hands of parties who have yet to disclose results or pursue enforcement on behalf of shareholders.

9.  November 4, 2024 or earlier, (as stated in Christian's letter to the trustee on APril 16, 2025) Christian communicated to Hartman;

    a.  "As you are aware, at the outset of retaining my firm, I advised you that I would not represent Mr. McCabe individually in any matter (as you advised me that META might be investigating potential claims against him.)"

    b.  "At that time I advised you I was representing NBH in a defamation, business disparagement, and tortious interference suit that will be pursued against some of the members of the same group referred to above that (a) have complained to the court; and (b) filed frivolous pro se complaints against many parties, including META." (Spears is named with several others)";

    c.  "I made it clear to Mr. McCabe, I could not represent him in an individual capacity in the multiple pro se suits described below. (Spears is listed) As such, he retained separate counsel for his individual representation."

d. "I understand the parties have alleged to the court I have conflict; however, nothing could be further from the truth."

e. This marks the third time Christian is hired to investigate MMTLP & MMAT for market manipulation to determine whether meritorious cases exist.

f. Thus ensuring he and company insiders remain firmly in control over the data. Potentially shielding involved parties. Thus continuing to exert powerful control over the narrative and the outcome.

g. Since being hired by Flamethrower, LLC January 18, 2024, Christian, MMAT, NBH, McCabe, & Brda have shared zero investigative results and have all failed to take any legal action against the market fraud Christian admits to finding in his application to the bankruptcy court.

10. November 19, 2024 – Plaintiff and a group of shareholders serve a Books and Records request on NBH. Greg McCabe accepts service at the second attempt. The initial attempt was served on the address used in SEC filings, which was no longer valid. No response was provided.

11. November 25, 2024 – Plaintiff emails Dennard Lascar requesting documentation of when NBH changed addresses with the SEC and Secretary of State. No response was provided.

12. December 6, 2024 – Plaintiff files her pro se complaint in the Western District of Texas.

13. February 6th, 2025 Christian sues fellow shareholder Scott Traudt in a SLAPP suit. Calling for $250,000 for defamation as well as damage to his business.

14. February 14, 2025 Christian has Scott Traudt served with the SLAPP suit

15. February 19, 2025 Christian amended the suit from $250,000 to $50,000, sighting a keying error.

    a. Further Like Plaintiff, Mr. Traudt has been extremely vocal on the platform X speaking out about the lack of communication, the lack of transparency and pointing out inconsistencies that raised questions of company fraud by NBH and Mr. McCabe.

16. February 28, 2025 Scott Traudt is served with a demand for ESI and documentation preservation.

17. March 14, 2025 Plaintiff filed a second amended complaint with this court.

18. March 16, 2025 Plaintiff filed the certificate of service for Next Bridge Hydrocarbons, Inc., ("NBH").

19. March 26, 2025 Christian files a Motion to Appear Pro Hac Vice in defense of NBH in Plaintiffs case.

20. March 23, 2025 Christian sends Plaintiff a 7-page Demand for Preservation of ESI & documentation letter via X (formerly Twitter), naming NBH as plaintiff. Plaintiff found multiple issues with this document:

    a. Demanding preservation of not only NBH, but repeatedly included Gregory McCabe.

    b. It demanded preservation clear back to 2018.

    c. Plaintiff viewed the delivery method, tone, and scope as threatening, and perceived the letter as an abusive attempt to chill her pursuit of justice and improperly initiate early discovery.

21. March 31, 2025 – Plaintiff responds thoroughly in writing, objecting to several items within the letter such as its service, its wide scope, its tone and the costs associated with the demand for preservation.

    a. Plaintiff specifically addressed the fact that service on X was a fishing expedition in an inappropriate attempt at early discovery.

    b. Plaintiff further made clear that she would not tolerate any future attempts of intimidation.

22. April 4, 2025 – Christian replies to my response as quoted below;

    a. "The decision to serve the Preservation Demand via direct message on the social media platform X (also known as "Twitter") was made out of an abundance of caution to confirm receipt. The use of direct messaging was not intended to cause confusion or concern but rather to have verification that you are the owner of the handle, @spldbrat351964."

        i. Plaintiff is concerned that it was used as a fishing trip, skirting proper court procedures.

    b. Further he states, "I want to assure you that there was no intention to intimidate or retaliate against you. The language used in the Preservation demand was 'standard' and aimed solely at ensuring compliance with evidence preservation obligations."

        i. Christian did not admit to Spears that he had previously told other agents of the court that he had intended to bring a defamation, business slander and tortious interference suit naming her as defendant at least as long as seven months ago.

23. April 4, 2025 Plaintiff files a formal objection via email to Jeffrey L. Hartman and mailed a hard copy to the bankruptcy court as well as provided Christian a copy via email.

24. April 16, 2025 – Christian sends a letter to Trustee's attorney Jeffrey L. Hartman. The following attributes and characteristics were said of me by Christian were entered into the record when they were filed in the Nevada federal MMAT bankruptcy proceeding without any notification to Plaintiff;

    a. "Perpetrators" - Christian collectively labels plaintiff and other      shareholders as "Perpetrators", placing her in a category typically reserved for wrongdoers or criminal actors.

    b. "Co-conspirators," - Christian escalates the rhetoric by describing plaintiff as part of a group of "co-conspirators", implying intentional         misconduct and unlawful coordination.

    c. "Filing frivolous pro se complaints" – Christian accuses plaintiff and others of filing "frivolous" complaints in federal court,       asserting plaintiffs legal actions lack merit without citing evidence.

    d. "Attempting to obstruct, impair, and derail our legal cases" – Christian alleges the plaintiff is actively trying to sabotage or interfere with legal proceedings, including those involving Meta or NBH.

    e. "Acting as a shield for the people we are pursuing" – Christian     claims plaintiffs purpose is not legal redress, but to protect others he is targeting through investigation or litigation.

    f. "Filing complaints against many parties, including Meta" – Christian attempts to portray the plaintiff as excessively litigious or unreasonably adversarial.

        i. Plaintiff has not named META nor any of its executives in open litigation.

ii.    She sold her shares in complete disgust, suffering thousands of dollars in losses as she watched the founder & CEO was walked out his own front door and then watched a board of directors appear to bankrupt the company purposely.

g.  Strategically   grouped plaintiff with "the same group… that have complained to the court" – By associating plaintiff with other vocal                critics, he aims to delegitimize her concerns as part of a          disruptive faction.

h.  Labeling Plaintiff and others "Perpetrators" and "co-conspirators."          - He references the onset of his authority to investigate when he          admits to telling Hartman that he had been hired by NBH to litigate          against those intent to sue Plaintiff before she even filed her                complaint.

25. April   23, 2025 – Christian files the April 16 letter along with five exhibits with the Nevada bankruptcy court without notification to Plaintiff. Demonstrating a lack of candor and transparency again.

26. May 1, 2025 fellow MMTLP shareholder Matthew J. Pease filed Dkt. #1900 Notice of Non-party and Motion to Strike Scandalous Material in the MMAT bankruptcy court proceedings, case no. 24-50792-HLB. Pease simultaneously filed Dkt. #30 Notice Regarding Representation Status of Next Bridge Hydrocarbons, Inc. in Case no. 7:24-cv-322-RCG.

a.  Plaintiff, like Pease, was confused as to Christians representation of NBH & also found the portrayal of Spears provided by Christian to agents of the court are highly scandalous, requiring immediate attention.

    b.  Pease further indicated to Plaintiff that he also opposed the withdrawal under the current circumstances.

    c.  These statements were highly derogatory and inflammatory toward Plaintiff and intended to paint Plaintiff in a very negative light.

27. May 1, 2025 Plaintiff received an email from Casidy Newcomer asking if Plaintiff would be opposed or unopposed to their filing a motion to withdraw.

28. May 1, 2025 Plaintiff emails Casidy Newcomer an email stating, "At this time, I am opposed to the motion to withdraw as presently contemplated." I stated that conduct needed to be properly addressed prior to the withdrawal itself.

29. May 2, 2025 – Christian filed a Motion to Withdraw as counsel for NBH in Plaintiff's federal case as unopposed, even though he quotes me as stating I am opposed.

30. May 9, 2025 - Dkt. 1921 Ex Parte Motion for Protective Order, Dkt. 1922 Ex Parte Application for litigation expenditure $60K Shareholder Intelligence Services LLC, Dkt. 1924 Declaration in support of Lovato in support of Ex Parte application & authorizing expenditure, Dkt. 1925 Ex Parte application and subscription of David Wenger, Shareholder Intelligence Services, Declaration

I certify the above is true and correct.

Danielle Spears

/s/ Danielle Spears

Danielle Spears  May 14, 2025