**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| DANIELLE SPEARS,<br><br>                          Plaintiff,<br><br>    v.<br><br>NEXT BRIDGE HYDROCARBONS, INC.,<br>GREGORY MCCABE, JOHN BRDA,<br>THE SECURITIES & EXCHANGE COMMISSION,<br>FINANCIAL INDUSTRY REGULATORY<br>AUTHORITY, and JANE DOE 1-20, JOHN DOE 1-20,<br><br>                        Defendants. | Case No.:<br>7:24-CV-321-RCG-DC |

---

**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

---

**FINRA'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................... 2

    A.    The Second Amended Complaint. ....................................................... 2

    B.    FINRA is a Private Company That Regulates its Broker-Dealer Members, Subject to SEC Oversight. ................................................... 3

    C.    FINRA Regulates the National Securities Markets. ............................ 5

    D.    Procedural History. ............................................................................. 6

III.  ARGUMENT .................................................................................................. 8

    A.    Legal Standard. ................................................................................... 8

    B.    The Court Has No Jurisdiction Over FINRA in This Action. ............... 8

        1.    Texas's Long-Arm Statute Does Not Confer Jurisdiction Over FINRA. ..................................................................................... 9

        2.    FINRA is Not Subject to General Personal Jurisdiction in Texas. ........... 10

        3.    Spears Has Not Alleged Any Basis for Specific Jurisdiction Over FINRA. ............................................................................. 11

    C.    FINRA's Regulatory Immunity Is Absolute And Bars All Claims. ..................... 13

    D.    Spears Has No Private Right of Action Against FINRA. ..................... 15

        1.    No Private Right of Action Under the Exchange Act. .............. 15

        2.    No Private Right of Action for Common Law Claims Against FINRA. ..................................................................................... 16

    E.    Spears Fails to State an Antitrust Claim. ........................................... 18

    F.    Spears's Constitutional Claims Fail. .................................................. 19

        1.    Spears Lacks Article III Standing to Pursue Any Constitutional Claims. ............................................................. 19

        2.    FINRA is Not a State Actor. .................................................... 21

        3.    Spears Does Not Allege That FINRA Deprived Her of Any Property Right. ......................................................................... 22

IV.   CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Am. Benefits Grp. Inc. v. NASD,*
   1999 WL 605246 (S.D.N.Y. Aug. 10, 1999) ........................................................22

*Asahi Metal Ind. Co., v. Sup. Court of Cal.,*
   480 U.S. 102 (1987) .........................................................................................12

*Austin Mun. Sec., Inc. v. NASD,*
   757 F.2d 676 (5th Cir. 1985) .......................................................................4, 13

*Balabon v. Ketchum,*
   785 Fed. App'x 263 (5th Cir. 2019) ...............................................................4

*Barbara v. NYSE,*
   99 F.3d 49 (2d Cir. 1996) ...............................................................................22

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 1955 (2007) ......................................................................................8

*Bond v. U.S.,*
   564 U.S. 211 (2011) .......................................................................................21

*Browne v. NASD,*
   2006 U.S. Dist. LEXIS 35507 (N.D. Tex. May 31, 2006) ....................................13

*Bulkley & Assocs., LLC v. Dep't of Indus. Rels.,*
   1 F.4th 346 (5th Cir. 2021) ........................................................................9, 12

*Cent. Registration Depository v. FINRA,*
   2010 WL 1154216 (C.D. Cal. Apr. 14, 2010) ......................................................16

*Citadel Sec. LLC v. Chicago Bd. Opt. Exch., Inc.,*
   2018 WL 5264195 (N.D. Ill. Oct. 23, 2018) .........................................................16

*Credit Suisse Sec. (USA) LLC v. Billing,*
   551 U.S. 264 (2007) ..................................................................................18, 19

*Cuvillier v. Taylor,*
   503 F.3d 397 (5th Cir. 2007) .........................................................................8

*D'Alessio v. NYSE,*
   258 F.3d 93 (2d Cir.), *cert. denied*, 534 U.S. 1066 (2001) ..................................13

*D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.,*
   279 F.3d 155 (2d Cir. 2002) ......................................................................21, 22

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).............................................................................................11

*Desiderio v. NASD*,
    191 F.3d 198 (2d Cir. 1999) *cert. denied*, 531 U.S. 1069 (2001)..............................15, 21, 22

*Dobbins v. NASD*,
    2007 WL 2407081 (N.D. Ohio Aug. 22, 2007) ...............................................................22

*Edmonson v. Leesville Concrete Co.*,
    500 U.S. 614 (1991).............................................................................................22

*Empire Fin. Grp., Inc. v. FINRA, Inc.*,
    No. 08-80534-CIV, 2009 U.S. Dist. LEXIS 133643 (S.D. Fla. Jan. 15, 2009)........................5

*Epstein v. SEC*,
    416 F. App'x 142 (3d Cir. 2010) .............................................................................22

*Eugene v. Afd Petro. Ltd.*,
    2023 U.S. Dist. LEXIS 150992 (W.D. Tex. Aug. 26, 2023)...............................................8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 428 (S.D.N.Y. 2013).......................................................................14

*Feins v. AMEX*,
    81 F.3d 1215 (2d Cir. 1996)..................................................................................15

*First Jersey Sec., Inc. v. Bergen*,
    605 F.2d 690 (3d Cir. 1979)..................................................................................22

*Fusco v. Connecticut*,
    815 F.2d 201 (2d Cir. 1987)..................................................................................23

*GE v. Jackson*,
    610 F.3d 110 (D.C. Cir. 2010) ...............................................................................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).....................................................................................10, 11, 12

*Gordon v. NYSE*,
    422 U.S. 659 (1975)...........................................................................................19

*Graman v. NASD*,
    1998 WL 294022 (D.D.C. Apr. 27, 1998) ..................................................................22

*Hanson v. Denckla*,
    357 U.S. 235 (1958)...........................................................................................12

*Hensley v. TD Ameritrade, Inc.*,
   No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023) ................................................2

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ...................................................................................................11

*Hofman v. Fidelity Brokerage Servs., LLC*,
   2023 WL 3872564 (C.D. Cal. May 8, 2023) .............................................................2

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) .................................................................................................20

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .................................................................................................11

*James v. Cleveland Sch. Dist.*,
   45 F.4th 860 (5th Cir. 2022) ....................................................................................23

*Johnson v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ......................................................................................8

*Johnson v. TheHuffingtonpost.com, Inc.*,
   21 F.4th 314 (5th Cir. 2021) ....................................................................................12

*JSW Steel (USA) Inc. v. Nucor Corp.*,
   2025 U.S. App. LEXIS 6204 (5th Cir. Mar. 17, 2025)............................................18

*Kim v. FINRA*,
   698 F. Supp. 3d 147 (D.D.C. 2023) .........................................................................22

*Kurz v. Fid. Mgmt. & Rsch. Co.*,
   556 F.3d 639 (7th Cir. 2009) ......................................................................................5

*Lance v. Coffman*,
   549 U.S. 437 (2007) (*per curiam*) ...........................................................................20

*Louisiana v. Bank of Am., N.A.*,
   2021 U.S. Dist. LEXIS 63292 (M.D. La. Mar. 31, 2021) .......................................16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................................................20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*,
   616 F.2d 1363 (5th Cir. 1980) ....................................................................................4

*Meyers v. NASD*,
   1996 WL 1742619 (E.D. Mich. Mar. 29, 1996) ......................................................22

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
    806 F.3d 835 (5th Cir. 2015) .......................................................................................18

*MM&S Fin., Inc. v. NASD*,
    364 F.3d 908 (8th Cir. 2004) ................................................................................15, 17

*Mohlman v. FINRA*,
    2020 WL 905269 (S.D. Ohio Feb. 25, 2020), *aff'd*, 977 F.3d 556 (6th Cir.
    2020) ............................................................................................................................21

*NHBPA v. Black*,
    107 F.4th 415 (5th Cir. 2024) ......................................................................................3

*NHBPA v. Black*,
    53 F.4th 869 (5th Cir. 2022) ........................................................................................4

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007)......................................................................................3, 14

*Opulent Fund, L.P. v, Nasdaq Stock Mkt., Inc.*,
    2007 U.S. Dist. LEXIS 79260 (N.D. Cal. Oct. 12, 2007).......................................14

*Pace v. Cirrus Design Corp.*,
    No. 23-60465, 2024 U.S. App. LEXIS 13317 (5th Cir. June 3, 2024)....................11

*Park v. FINRA*,
    2023 WL 11795601 (N.D. Ga. Sept. 25, 2023) .........................................................2

*Perpetual Secs., Inc. v. Tang*,
    290 F.3d 132 (2d Cir. 2002)......................................................................................22

*Ramapo Homeowners' Ass'n v. N.Y. State Office of Mental Retardation &*
    *Developmental Disabilities*,
    180 F. Supp. 2d 519 (S.D.N.Y. 2002).....................................................................23

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) .......................................................................................8

*Sangha v. Navig8 Shipmanagement Private Ltd.*,
    882 F.3d 96 (5th Cir. 2018) .........................................................................................9

*Scher v. NASD*,
    386 F. Supp. 2d 402 (S.D.N.Y. 2005), *aff'd*, 218 Fed. Appx. 46 (2d Cir. 2007) ...................22

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
    548 F.3d 110 (D.C. Cir. 2008) ..................................................................................17

**FINRA'S MOTION TO DISMISS**                                    Page v of vii

*Sparta Surgical Corp. v. NASD,*
    159 F.3d 1209 (9th Cir. 1998) ........................................................................13

*Spicer v. Chicago Bd. of Options Exch., Inc.,*
    977 F.2d 255 (7th Cir. 1992) ..........................................................................15

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)........................................................................................20

*Stuart v. Spademan,*
    772 F.2d 1185 (5th Cir. 1985) ..........................................................................8

*Sybalski v. Indep. Grp. Home Living Program, Inc.,*
    546 F.3d 255 (2d Cir. 2008)............................................................................21

*Tawil v. FINRA,*

*2023 WL 4353179 (N.D. Fla. May 24, 2023)* .........................................2, 14

*In re Toyota Hybrid Brake Litig.,*
    Case No. 4:20-CV-127, 2021 U.S. Dist. LEXIS 124918 (E.D. Tex. July 6,
    2021) ...............................................................................................................10

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021)........................................................................................20

*Turbeville v. FINRA,*
    874 F.3d 1268 (11th Cir. 2017) ........................................................................4

*U.S. v. NASD, Inc.,*
    422 U.S. 694 (1975)........................................................................................19

*Webb v. FINRA,*
    889 F.3d 853 (7th Cir. 2018) .....................................................................4, 11

*Weinraub v. Glen Rauch Sec., Inc.,*
    399 F. Supp. 2d 454 (S.D.N.Y. 2005)............................................................22

*Weissman v. NASD, Inc.,*
    500 F.3d 1293 (11th Cir. 2007) ......................................................................13

*Wiley v. SEC,*
    663 Fed. App'x 353 (5th Cir. 2016) .................................................................3

**Statutes, Rules & Regulations**

17 C.F.R. § 240.10b-17.............................................................................................6

72 Fed. Reg. 42,169 (Aug. 1, 2007).........................................................................4

15 U.S.C. § 15 ......................................................................................................................18

15 U.S.C. § 78o-3(b) ...............................................................................................................5

15 U.S.C. §§ 78o(a)(1), (b)(1) ................................................................................................4

15 U.S.C. §§ 78s(c), (h)(1)-(4) ...............................................................................................5

15 U.S.C. §§ 78u(d)(1), (d)(3)(A) ..........................................................................................5

Fed. R. Civ. P. 12(b) ........................................................................................................1, 8, 9

Tex. Civ. Prac. & Rem. Code § 17.041(2) .............................................................................10

Tex. Civ. Prac. & Rem. Code § 17.042 ..............................................................................9, 10

**Other Authorities**

SEC Release No. 34-56145, 72 Fed. Reg. 42160, 42170-72 (Jul. 26, 2007) .................................4

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, respectfully moves this Court for an order dismissing each cause of action that Plaintiff Danielle Spears ("Spears") asserts against FINRA in the Second Amended Complaint ("SAC"). [ECF No. 13].

## I.    **INTRODUCTION**

FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, with oversight from the Securities and Exchange Commission ("SEC"). The national securities markets are comprised of the national securities exchanges (*e.g.*, NASDAQ, New York Stock Exchange, Cboe) and the over-the-counter ("OTC") market. Equity securities not listed on a national securities exchange may be traded and quoted in the OTC market.

This case relates to an OTC equity security formerly traded on the OTC market and identified with the symbol MMTLP. On December 9, 2022, based on its authority to regulate its members who quote and trade equity securities on the OTC market, FINRA directed its member firms to halt trading and quoting of MMTLP. The SAC is one in a series of *pro se* lawsuits filed by investors who previously held shares of MMTLP and are seeking to lay blame for their purported losses at the feet of regulators like FINRA and the SEC.[1]

Like other unsuccessful MMTLP investor lawsuits,[2] Spears's claims against FINRA in the SAC are fatally flawed for multiple reasons. To begin, this Court lacks personal jurisdiction over

---

[1] There are currently two other cases pending before this Court relating to this same MMTLP security where FINRA is a defendant. *See Willcot v. SEC et al.*, 7:24-CV-317-RCG-DC (W.D. Tex. Dec. 6, 2024); *Pease v. SEC, et al.*, 7:24-CV-322-RCG-DC (W.D. Tex. Dec. 9, 2024).

[2] *See, e.g.*, *Hensley v. TD Ameritrade, Inc.*, No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023) (a true and correct copy of this decision is attached as Exhibit A to FINRA's Accompanying Request for Judicial Notice ("FINRA RJN")); *Park v. FINRA*, 2023 WL 11795601, at *3-5 (N.D. Ga. Sept.

**FINRA'S MOTION TO DISMISS**                                               Page 1 of 24

FINRA. In addition, all of Spears's claims against FINRA are barred by absolute immunity because they relate to FINRA's regulatory activities. Further, neither the Exchange Act nor any other statute or common law principle provides Spears with a private right of action against an SRO for acts or omissions in connection with its regulatory duties. Finally, due to the foregoing, as well as Spears's lack of standing to bring her purported constitutional claims and the fact that FINRA is not a state actor, the SAC (which includes 336 separate paragraphs, not including subparts, and is over 87 pages) fails to state any claim against FINRA.

For the reasons outlined in this Motion, the SAC must be dismissed with prejudice as to FINRA, and without leave to amend because any amendment to the SAC would be futile.

## II.    FACTUAL BACKGROUND

### A.    The Second Amended Complaint.

Spears's SAC is one in a series of investor complaints, filed by *pro se* litigants, seeking relief for claims against FINRA that arise exclusively from its regulatory activities related to MMTLP—an equity security that traded on the OTC market. Several such cases have been dismissed by other federal district courts pursuant to orders that have become final. *See supra* fn. 2.

The SAC appears to assert eight causes of action against FINRA,[3] all of which are based on speculative and unsupported conclusions about FINRA's regulatory activities related to MMTLP. There is a prolific social media community of former MMTLP investors who discuss

---

25, 2023); *Hofman v. Fidelity Brokerage Servs., LLC*, 2023 WL 3872564, at *6-8 (C.D. Cal. May 8, 2023); *Tawil*, 2023 WL 4353179, at *1-2.

[3] Specifically, Count I (Violations of the Exchange Act); Count II (Violations of Sherman and Clayton Acts); Count III (Negligence); Count IV (Failure to Resolve the FINRA U3 Halt); Count V (Unjust Enrichment); Count VI (Conspiracy to Commit Fraud); Count VII (Failure to Supervise); and Count VIII (Negligent/Intentional Infliction of Emotional Distress ("NIED/IIED")).

**FINRA'S MOTION TO DISMISS**                                              Page 2 of 24

conspiracy theories and misinformation related to MMTLP. Indeed, the SAC is largely duplicative of other cases related to MMTLP that were filed on or after December 9, 2024. The social media community refers to the plaintiffs that filed these complaints as the "1209 Group." The SAC (and the other complaints filed by the 1209 Group) include hundreds of paragraphs repeating the same or significantly similar allegations, all of which appear to be fueled by the social media discussions among former MMTLP investors.

B.    **FINRA is a Private Company That Regulates its Broker-Dealer Members, Subject to SEC Oversight.**

In the Securities Exchange Act of 1934 ("Exchange Act"), Congress established "a comprehensive system of federal regulation of the securities industry," an integral part of which is the formation and oversight of private SROs, like FINRA, which are "responsible for the self-regulation of member brokerage firms, exchange markets, and individuals associated with those firms and markets." *Wiley v. SEC*, 663 Fed. App'x 353, 356 n.1 (5th Cir. 2016). Under that system, the SEC has "formidable oversight power to supervise, investigate, and discipline [FINRA] for any possible wrongdoing or regulatory missteps." *NHBPA v. Black*, 107 F.4th 415, 435 (5th Cir. 2024) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007)) (quotation marks omitted).

FINRA is a private, not-for-profit Delaware corporation and SRO headquartered in the District of Columbia.[4] *See* SAC ¶ 6 (FINRA is headquartered in Washington, D.C.); *see also Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018). The government does not appoint FINRA board members, officers, or employees. SEC Release No. 34-56145, 72 Fed. Reg. 42160, 42170-72 (Jul.

---

[4] FINRA was formed in 2007 when its predecessor, the National Association of Securities Dealers, Inc. ("NASD"), consolidated its member-firm regulation and enforcement functions with the regulatory and enforcement functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change to Amend the By-Laws of NASD, 72 Fed. Reg. 42,169 (Aug. 1, 2007).

**FINRA'S MOTION TO DISMISS**                                                Page 3 of 24

26, 2007); *see also* SAC ¶ 159. FINRA does not receive any state or federal funding; it is funded by registration, membership, and transaction fees charged to its members. *See* FINRA By-Laws, Art. VI, § 1, *publicly available at* https://www.finra.org/rules-guidance/rulebooks/corporate-organization/power-corporation-fix-and-levy-assessments.

The Exchange Act generally requires any broker or dealer transacting in securities to join an association of broker-dealers registered as a national securities association, which is one type of SRO. *See* 15 U.S.C. §§ 78o(a)(1), (b)(1); *see also Balabon v. Ketchum,* 785 Fed. App'x 263, 263 (5th Cir. 2019). FINRA is a registered national securities association under the Exchange Act. *See Balabon,* 785 Fed. App'x at 263; *see also Turbeville v. FINRA,* 874 F.3d 1268, 1270, n.2 (11th Cir. 2017); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD,* 616 F.2d 1363, 1365 (5th Cir. 1980). In that capacity, FINRA regulates the broker-dealer industry in accordance with the requirements of the Exchange Act and under close supervision by the SEC. *NHBPA v. Black,* 53 F.4th 869, 876-77 (5th Cir. 2022).

The SEC has "broad supervisory responsibilities over [SROs]" and correspondingly broad power to enforce their compliance with these obligations. *See Austin Mun. Sec., Inc. v. NASD,* 757 F.2d 676, 680 (5th Cir. 1985). If FINRA violates the Exchange Act, federal regulations, or its own rules, the SEC may suspend or revoke FINRA's registration as an SRO, limit FINRA's activities, functions, and operations, or impose other sanctions. *See* 15 U.S.C. §§ 78s(c), (h)(1)-(4). The SEC is also authorized to initiate judicial proceedings against FINRA to enjoin activities that would violate the Exchange Act or FINRA's rules and to seek civil penalties. *See* 15 U.S.C. §§ 78u(d)(1), (d)(3)(A). Thus, "Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities." *Empire Fin. Grp., Inc. v. FINRA, Inc.,* No. 08-80534-CIV, 2009 U.S. Dist. LEXIS 133643, *20 (S.D. Fla. Jan. 15, 2009).

**FINRA'S MOTION TO DISMISS**                                      Page 4 of 24

The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, . . . and, in general, to protect investors and the public interest . . . ." 15 U.S.C. § 78o-3(b)(6). FINRA's rules are "part of the apparatus of federal securities regulation." *Kurz v. Fid. Mgmt. & Rsch. Co.*, 556 F.3d 639, 641 (7th Cir. 2009).

### C.    FINRA Regulates the National Securities Markets.

The national securities markets are comprised of the national securities exchanges and the OTC market. FINRA does not operate a market, and it does not issue, cancel, settle, or clear securities that are traded in the national securities markets. Instead, FINRA performs oversight functions and regulates its members that trade and quote securities in the national securities markets to ensure compliance with FINRA rules, the federal securities laws, and the rules and regulations thereunder. 15 U.S.C. § 78o-3(b).

Specifically, FINRA performs multiple regulatory functions to oversee the OTC market for equity securities, like MMTLP, that are not listed on a national securities exchange. For example, FINRA: (1) maintains a symbol directory for OTC equity securities and can issue and delete security symbols, *see* https://otce.finra.org/otce/symbol-directory; (2) adopts rules regarding quoting and trading in OTC equity securities, *see* FINRA Rule 6400 Series;[5] (3) reviews, processes, and announces information about corporate actions regarding OTC equity securities,

---

[5]    The FINRA Rule 6400 Series is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6400.

*see* SEC Rule 10b-17, 17 C.F.R. § 240.10b-17; *see also* FINRA Rule 6490;[6] and (4) is authorized to halt trading and quoting of OTC equity securities if FINRA determines that doing so is necessary to protect investors and the public interest, *see* FINRA Rule 6440.[7]

### D.    Procedural History.

In 2021, Torchlight Energy Resources, Inc. ("Torchlight") completed a reverse merger to create Meta Materials, Inc. ("Meta"). SAC ¶¶ 58-60, 73-75. As part of that merger, Torchlight shareholders received Non-Voting Series A Preferred Shares ("Series A Shares"). SAC ¶¶ 58-59, 75. In June 2021, the Options Clearing Corporation ("OCC") issued a memorandum stating that the trading status of the Series A Shares was "not yet known," and based on the Proxy Statement filed by the company, those shares were not expected to be listed on a national securities exchange. *See* FINRA RJN, Exhibit B (OCC Memo); *see also* SAC ¶ 79. That memorandum also explains how transactions in the Series A Shares would be expected to clear if an OTC market developed and if such a market did not develop. *See* FINRA RJN, Exhibit B (OCC Memo), at 1.

In October 2021, a market developed, and the Series A Shares began trading on the OTC market under the symbol MMTLP. SAC ¶¶ 75, 77. In 2022, Meta initiated a corporate action pursuant to which the Series A Shares, which represented a shareholder's interest in Torchlight's oil and gas assets, were spun off into Next Bridge Hydrocarbons ("Next Bridge"). SAC ¶¶ 2, 66, 79. Pursuant to FINRA Rule 6490, on December 6, 2022, as modified on December 8, 2022, FINRA announced Meta's plan to distribute shares of Next Bridge's common stock to holders of its Series A Shares on a one-for-one basis (the "Announcement"). FINRA RJN, Exhibit C

---

[6] FINRA Rule 6490 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

[7] FINRA Rule 6440 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440-0.

**FINRA'S MOTION TO DISMISS**                                    Page 6 of 24

(12/6/2022 Corporate Action Notice); FINRA RJN, Exhibit D (12/8/2022 Corporate Action Notice); *see also* SAC ¶¶ 125, 128. The Announcement explained that "MMTLP shareholders with settled positions as of [December 12, 2022] will receive one (1) share of [Next Bridge] for every one (1) share of MMTLP held." *See* FINRA RJN Exhs. C and D. Among other things, the Announcement further explained that any "[p]urchases of MMTLP executed after [December 8, 2022] will not receive the distribution. . . . Symbol: MMTLP will be deleted effective [December 13, 2022]." *See id.*; *see also* SAC ¶ 74.[8]

On December 9, 2022, pursuant to FINRA Rule 6440, FINRA notified its members to halt trading and quoting of MMTLP on the OTC market because "an extraordinary event has occurred or is ongoing that has caused or has the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP." *See* FINRA RJN, Exhibit E (Notice of Trading Halt); *see also* SAC ¶¶ 153-54. As announced, "[t]he trading and quoting halt will end concurrent with the deletion of the symbol effective Tuesday, December 13, 2022." FINRA RJN, Exhibit E (Notice of Trading Halt); *see also* SAC ¶¶ 155-56. The Meta distribution was finalized on December 14, 2022, *see* Next Bridge Press Release (Dec. 20, 2022),[9] and Meta cancelled the MMTLP Shares on

---

[8] The Announcement was modified on December 8, 2022, in part, to clarify that FINRA would *delete* the MMTLP trading symbol on December 13, 2022. FINRA RJN, Exhibit D; *see also* SAC ¶ 128. While the original version of the Announcement, published on December 6, 2022, stated that MMTLP *shares will be cancelled* effective December 13, 2022, *see* FINRA RJN, Exhibit C, FINRA does not *and cannot* cancel a company's securities. FINRA may, however, delete a trading symbol for a security when it learns that the security has been cancelled. Thus, the Announcement was modified to reflect that FINRA would delete the MMTLP symbol because the Series A Shares would be cancelled as part of Meta's corporate action. FINRA RJN, Exhibit D.

[9] A*vailable at https://uploads-ssl.webflow.com/6169e69d0075ec7c66221a8b/63a376a38add926dd316f36a _NBH%20News%20Release%2012-20-2022%20.pdf* ("Next Bridge Press Release") (last visited May 7, 2025).

**FINRA'S MOTION TO DISMISS**                                              Page 7 of 24

or about that same date. *See* FINRA RJN, Exhibit F (Amendment); *see also* Next Bridge Investor

FAQs.[10]

## III.    ARGUMENT

### A.    Legal Standard.

A plaintiff bears the burden to establish jurisdiction over a defendant moving to dismiss

pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See Johnson v. Multidata Sys.*

*Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In deciding whether a court has personal jurisdiction

over the defendant, a court may consider affidavits and documents submitted by the parties. *Revell*

*v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th

Cir. 1985)).

When considering a Rule 12(b)(6) motion to dismiss, courts accept all well-pleaded facts

as true and view them in the light most favorable to the plaintiff. *See Eugene v. Afd Petro. Ltd.*,

2023 U.S. Dist. LEXIS 150992, *4 (W.D. Tex. Aug. 26, 2023). To survive a motion to dismiss, a

complaint must contain enough facts for the allegations to be plausible on their face. *See Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 1955, 1974 (2007); *id.* at *4 ("[A complaint] must provide the

plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be

true raise a right to relief above the speculative level.") (quoting *Cuvillier v. Taylor*, 503 F.3d 397,

401 (5th Cir. 2007)) (cleaned up).

### B.    The Court Has No Jurisdiction Over FINRA in This Action.

A court must have jurisdiction over both the parties and the claims asserted in a plaintiff's

complaint to decide the case. Because FINRA is not subject to personal jurisdiction in this Court,

---

[10]A*vailable at*
*https://web.archive.org/web/20230106094030/https://www.nextbridgehydrocarbons.com/investo*
*rs* ("Next Bridge FAQs") (last visited May 7, 2025).

**FINRA'S MOTION TO DISMISS**                                              Page 8 of 24

the SAC should be dismissed under Rule 12(b)(2).

In Texas, courts evaluate personal jurisdiction over nonresident defendants through a two-step inquiry, ensuring compliance with the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Bulkley & Assocs., LLC v. Dep't of Indus. Rels.*, 1 F.4th 346, 351 (5th Cir. 2021). Texas's long-arm statute specifically provides for personal jurisdiction over nonresidents who "do[] business" in Texas or "commit[] a tort" in Texas. Tex. Civ. Prac. & Rem. Code § 17.042. However, "the Texas long-arm statute extends to the limits of federal due process." *Bulkley*, 1 F.4th at 351 (citations omitted). Therefore, "the two-step inquiry" of assessing the long-arm statute and due process "collapses into one federal due process analysis." *Id.*; *see also Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

As a threshold matter, Spears does not allege that the Court has personal jurisdiction over FINRA as to any claim in the SAC. *See* SAC ¶¶ 6, 8-16. Nor do the facts as alleged support the exercise of personal jurisdiction over FINRA pursuant to Texas's long-arm statute. And even if Texas's long-arm statute did provide a basis for exercising jurisdiction over FINRA, the Due Process Clause of the Fourteenth Amendment requires dismissal because the Court lacks both general and specific personal jurisdiction over FINRA. Thus, Spears's claims against FINRA should be dismissed.

1.    Texas's Long-Arm Statute Does Not Confer Jurisdiction Over FINRA.

Texas's long-arm statute provides for personal jurisdiction over nonresidents[11] conducting business in Texas if the nonresidents: (1) contract by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole

---

[11] A "nonresident" includes a foreign corporation. *See* Tex. Civ. Prac. & Rem. Code § 17.041(2).

**FINRA'S MOTION TO DISMISS**                                                    Page 9 of 24

or in part in this state; or (3) recruit Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. Tex. Civ. Prac. & Rem. Code § 17.042.

"Because 'Texas gives its courts of general jurisdiction all of the power allowed by the Due Process Clause,' Texas courts need only determine 'whether the exercise of jurisdiction comports with the limits imposed by federal due process on the State of Texas.'" *In re Toyota Hybrid Brake Litig.*, Case No. 4:20-CV-127, 2021 U.S. Dist. LEXIS 124918, at *7 (E.D. Tex. July 6, 2021) (citations omitted).

None of FINRA's alleged conduct in the SAC falls into any of the categories enumerated under the long-arm statute. Spears's claims undeniably arise out of FINRA's performance of its regulatory functions generally, and the SAC does not allege that any of those activities occurred in Texas. Thus, Texas's long-arm statute does not confer personal jurisdiction over FINRA as to any claim in the SAC. Even if Texas's long-arm statute did confer personal jurisdiction over FINRA, however, the Court still cannot exercise personal jurisdiction over FINRA in this action because to do so would violate the Due Process Clause of the Fourteenth Amendment.

2.    FINRA is Not Subject to General Personal Jurisdiction in Texas.

Corporations are subject to general personal jurisdiction solely where "their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "[O]nly a limited set of affiliations with a forum" are sufficient to establish that the corporation is "essentially at home." *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is considered "essentially at home" in two places: (1) its state of incorporation, and (2) the state in which its principal place of business is located. *Id.*[12]

---

[12] A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93

**FINRA'S MOTION TO DISMISS**                                                      Page 10 of 24

FINRA is an out-of-state corporation that is not subject to general personal jurisdiction in Texas. FINRA is not incorporated in Texas, and it does not maintain its principal place of business in Texas. Instead, FINRA is incorporated in Delaware and its principal place of business is in Washington, D.C. *See Webb*, 889 F.3d at 856 (7th Cir. 2018).[13] Accordingly, because FINRA is not "essentially at home" in Texas, the Court lacks general personal jurisdiction over FINRA.

      3.     <u>Spears Has Not Alleged Any Basis for Specific Jurisdiction Over FINRA.</u>

FINRA is also not subject to specific personal jurisdiction because there is no connection (nor has Spears alleged one) between FINRA's alleged conduct and Texas. A forum may exercise personal jurisdiction over an out-of-state defendant not otherwise subject to personal jurisdiction in the forum where the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 924 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). It is not enough that an act was allegedly directed at the plaintiff. Instead, to be consistent with due process, the defendant's actions must be "purposefully directed toward the forum State." *Asahi Metal Ind. Co., v. Sup. Court of Cal.*, 480 U.S. 102, 112 (1987).

---

(2010). Typically, a corporation's headquarters qualifies as its principal place of business, and, as a result, the corporation is subject to general personal jurisdiction in the courts of that state. *See Pace v. Cirrus Design Corp.*, No. 23-60465, 2024 U.S. App. LEXIS 13317, at *9 (5th Cir. June 3, 2024) ("A corporation is at home where its place of incorporation and its principal place of business are located.") (citation omitted).

[13] Spears acknowledges that FINRA is headquartered in Washington, D.C. *See* SAC ¶ 6.

**FINRA'S MOTION TO DISMISS**

Here, Spears fails to allege any facts establishing that her claims "arise[] out of or result[] from [FINRA's] forum-related contacts." *See Bulkley*, 1 F.4th at 351 (citations omitted). Rather, Spears challenges the propriety of FINRA's regulatory decisions related to MMTLP and FINRA's power for making such determinations, claiming that such failures harmed her and other retail investors generally. *See, e.g.*, SAC, §I. INTRODUCTION ("Spears . . . has filed this lawsuit alleging a coordinated and systemic scheme . . . involv[ing] . . . severe regulatory negligence . . . causing significant financial harm to retail investors."), *id.*, ("Central to Plaintiff's claim is FINRA's abrupt and indefinite extraordinary U3 trading halt imposed on December 9, 2022."); ¶¶ 223-24 (alleging that SEC and FINRA failed to "effectively coordinate in addressing market irregularities in TRCH, MMAT, and MMTLP trading [which] contributed significantly to . . . investor confusion, and financial harm."). In addition, Spears appears to challenge the constitutional validity of FINRA's authority (*see, e.g.,* SAC ¶¶ 144-45, 159, 253-54) and alleges violations of the private nondelegation doctrine (*see, e.g.,* SAC ¶ 254) and the Fifth Amendment (*see, e.g.,* SAC Count I, ¶¶ 8, 11; Count IV, ¶ 2). In short, the SAC lacks any facts tying FINRA's alleged conduct to the forum.

Moreover, even if allegations that FINRA's actions were specifically directed at Spears were sufficient to establish specific personal jurisdiction, Spears is a resident of Arizona—not Texas. *See* SAC ¶ 1; *see also Johnson v. TheHuffingtonpost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) (no personal jurisdiction where defendant's alleged acts did not target the forum).

None of the allegations contained in the SAC establishes specific personal jurisdiction over FINRA in this forum. As such, the SAC should be dismissed. However, even if the Court could exercise jurisdiction over FINRA, the SAC should be dismissed for multiple other reasons.

## C.     FINRA's Regulatory Immunity Is Absolute And Bars All Claims.

An SRO such as FINRA is absolutely "immune from liability based on the discharge of its duties under the Exchange Act." *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998); *see also Browne v. NASD*, 2006 U.S. Dist. LEXIS 35507, *13 (N.D. Tex. May 31, 2006) ("The Fifth Circuit has explicitly held that NASD and its disciplinary officers have absolute immunity from further prosecution for personal liability on claims arising within the scope of their official duties.").

Every circuit court that has considered the issue has held that SROs are absolutely immune "from suit for conduct falling within the scope of [their] regulatory and general oversight functions." *See, e.g.*, *D'Alessio v. NYSE*, 258 F.3d 93, 105 (2d Cir.), *cert. denied*, 534 U.S. 1066 (2001); *see also Austin Mun.*, 757 F.2d at 679 (NASD has absolute immunity from claims arising within the scope of its duties). Such protection is crucial to an SRO's ability to perform its regulatory tasks within the federal framework and is consistent with the system of cooperative regulation enacted by Congress "under which [SROs] . . . exercise a primary supervisory role subject to ultimate SEC control." *Sparta Surgical*, 159 F.3d at 1213-14.

When determining an SRO's entitlement to absolute immunity, courts examine the nature of the function performed and not "an SRO's subjective intent or motivation." *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1297 (11th Cir. 2007); *see also Austin Mun.*, 757 F.2d at 688 (examining whether challenged action falls within scope of permissible discretion).

Here, all of Spears's claims against FINRA arise from its regulatory activities—specifically, the trading halt FINRA imposed on December 9, 2022, and its alleged failure to oversee its members. *See, e.g.*, SAC § I. Introduction; ¶¶ 141-45, ¶¶ 153-56, Count I, ¶¶ 8-11, Count II, ¶¶ 3-4, Count III, ¶¶ 5-6, Count IV, ¶¶ 1, 3-4, Count V, ¶ 2, Count VI, ¶ 2, Count VII, ¶¶ 1-5, Count VIII, ¶ 3. Spears acknowledges that FINRA has the regulatory powers to oversee market

**FINRA'S MOTION TO DISMISS**                                          Page 13 of 24

activities, including the authority to enact rules, conduct investigations, and impose the trading halt. *See* SAC ¶¶ 6, 157, 160. But Spears relies on vague and conclusory allegations that FINRA abdicated its regulatory responsibilities by failing to, among other things, take certain action(s) to address alleged market failures and manipulation. *See, e.g.*, SAC § I. INTRODUCTION, Specifics Acts of Scienter, ¶ 1, ¶¶ 142, 223, 241-45, Count VIII, ¶ 3.

While vaguely alleged and wholly unsupported, all of Spears's factual allegations regarding FINRA relate exclusively to FINRA's regulatory activities and, as a result, all of her claims are barred by absolute immunity. For example, FINRA's decision to halt trading of MMTLP is a "quintessentially regulatory function." *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013) (dismissing claim against an SRO alleging its decision not to halt trading of a security was negligent on regulatory immunity grounds because "[t]he capacity to suspend trading . . . is a quintessentially regulatory function."); *Tawil v. FINRA, 2023 WL 4353179 at \*2-3 (N.D. Fla. May 24, 2023)* ("Suspending trading—when warranted—is precisely the kind of activity FINRA can undertake in its quasi-regulatory capacity."); *Opulent Fund, L.P. v, Nasdaq Stock Mkt., Inc.*, 2007 U.S. Dist. LEXIS 79260, \*13 (N.D. Cal. Oct. 12, 2007) (identifying suspension of trading as regulatory in nature).

The immunity afforded to FINRA is absolute, and it applies even if FINRA failed to enforce federal securities laws and regulations or follow its own rules, as Spears contends. *See, e.g.*, SAC COUNT I, ¶¶ 8-10, COUNT III, ¶ 5, COUNT V, ¶ 2, COUNT VII, ¶¶ 1-5; *see also In re NYSE Specialists Secs. Litig.*, 503 F.3d at 99 (dismissing claims that SRO "violated its own internal rules" because the "enforcement (or nonenforcement) of these rules clearly implicates the quasi-governmental functions" for which an SRO is entitled to absolute immunity).

Put simply, Spears's allegations in the SAC are direct challenges to FINRA's performance of its regulatory functions. No matter how Spears packages these claims, they challenge FINRA's regulatory activities. Accordingly, all claims against FINRA in the SAC are barred by absolute immunity and should be dismissed with prejudice.

**D.    Spears Has No Private Right of Action Against FINRA.**

Neither the Exchange Act nor any other statute or common law principle provides for a private right of action against an SRO, like FINRA, for acts or omissions in connection with its duties as a regulator. Thus, in addition to being barred by regulatory immunity, Spears's claims against FINRA fail for the independent reason that she has no private right of action against FINRA arising under the Exchange Act, other federal law, state law, or otherwise.

1.    <u>No Private Right of Action Under the Exchange Act.</u>

The SAC purports to assert causes of action against FINRA arising out of FINRA's alleged acts or omissions under the Exchange Act. *See generally* SAC. Courts have consistently held that no private right of action exists against an SRO, like FINRA, for its regulatory acts, omissions, or alleged violations of its own rules. *See, e.g.*, *MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 911-12 (8th Cir. 2004) ("[T]he Exchange Act does not create a private right of action against NASD defendants for violating their own rules" and a party's attempt to bypass the absence of a private right of action by asserting a claim under state contract law is "fruitless."); *Desiderio v. NASD*, 191 F.3d 198, 208 (2d Cir. 1999) ("[T]here is no private right of action available under the Securities Exchange Act . . . to challenge an exchange's failure to follow its own rules.") *cert. denied*, 531 U.S. 1069 (2001); *Feins v. AMEX*, 81 F.3d 1215, 1223-34 n.6 (2d Cir. 1996) (no private right of action exists against an SRO under Section 19 of the Exchange Act); *Spicer v. Chicago Bd. of Options Exch., Inc.*, 977 F.2d 255, 259-60 (7th Cir. 1992) (no private right of action exists under the Exchange Act against an SRO for failing to enforce its rules); *Louisiana v. Bank of Am., N.A.*, 2021 U.S. Dist. LEXIS

63292, *13 (M.D. La. Mar. 31, 2021) ("Courts have generally held that the violation of a FINRA or NASD rule does not create a private right of action because to do so would go against Congress's intent when passing the Securities Exchange Act.").

Here, Spears's claims directly challenge the propriety of FINRA's decision-making in carrying out its regulatory functions arising under specific provisions of the Exchange Act. In fact, each cause of action that Spears asserts against FINRA arises out of alleged violations of the Exchange Act. *See* SAC, Count I (Violations of Exchange Act), ¶¶ 8-12; Count II (Violations of Sherman and Clayton Acts), ¶ 1; Count III (Negligence), ¶¶ 5-6; Count IV (Failure to Resolve the FINRA U3 Halt), ¶¶ 1-4; Count V (Unjust Enrichment), ¶¶ 2-3; Count VI (Conspiracy to Commit Fraud), ¶ 2; Count VII (Failure to Supervise), ¶¶ 1-5; and Count VIII (NIED/IIED), ¶¶ 3-4. Thus, Counts I through VIII against FINRA should be dismissed with prejudice because Spears has no private right of action to assert any of those claims.

### 2.     No Private Right of Action for Common Law Claims Against FINRA.

Likewise, Spears cannot assert any common law negligence, emotional distress, or unjust enrichment claims against FINRA arising out of alleged breaches of FINRA's duties as a regulator. Courts universally find that plaintiffs are foreclosed from asserting common law claims against SROs based on alleged breaches of duties arising under federal securities laws. *See, e.g.*, *Cent. Registration Depository v. FINRA*, 2010 WL 1154216, at *2 (C.D. Cal. Apr. 14, 2010) (dismissing plaintiff's claims against FINRA for common law fraud, negligence, and defamation because the claims arose out of FINRA's administration of plaintiff's CRD record and registration requirements which were "performed pursuant to both statutory and regulatory mandates."); *Citadel Sec. LLC v. Chicago Bd. Opt. Exch., Inc.*, 2018 WL 5264195, at *4 (N.D. Ill. Oct. 23, 2018) (dismissing breach of contract and other state law claims against an SRO because "common law claims against an SRO for violating its own rules are either preempted or barred by immunity,

or both."); *see also MM&S Fin. Inc.*, 364 F.3d at 912 (8th Cir. 2004) (dismissing breach of contract claim against an SRO because allowing such a claim "would vitiate Congress's intent not to allow private rights of action against self-regulatory organizations for violating [an SRO's] own rules.").

Here, Spears asserts three common law causes of action against FINRA, each of which are based on FINRA's alleged regulatory failures. Specifically, Count III (Negligence); Count V (Unjust Enrichment); and Count VIII (NIED/IIED) are each based on alleged breaches of duties arising under the Exchange Act. *See* SAC, Count III, ¶¶ 5-6 (predicating Count III (Negligence) claim on allegations that FINRA "negligently fail[ed] to enforce [multiple sections of the Exchange Act]"); Count V, ¶ 2 (predicating Count V (Unjust Enrichment) claim on allegations that "FINRA . . . violated Section 29(b) [of the Exchange Act] by unjustly receiving and retaining fees, assessments, or other financial benefits while failing to enforce securities laws effectively"); Count VIII, ¶ 3 (predicating Count VIII (NIED/IIED) claim on allegations that FINRA "violated Section 15A(b)(6) [of the Exchange Act] by recklessly failing to address, investigate, or mitigate market manipulation").

The SAC purports to bring causes of action under common law theories and based directly on FINRA's regulatory duties established in the Exchange Act. Each of these causes of action— like the rest of Spears's claims against FINRA—purport to challenge the propriety of FINRA's U3 trading halt, which is quintessential regulatory activity. Indeed, no matter how the Court analyzes the common law causes of action in the SAC, the result is the same—Spears cannot assert common law claims against FINRA for alleged violations of the Exchange Act, FINRA rules, or perceived failures in FINRA's regulatory decision making. *See In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 113 (D.C. Cir. 2008) ("Whether analyzed under preemption doctrine or a theory of regulatory immunity, the result is the same: plaintiffs cannot raise a common law

complaint against defendants based on duties arising under the Exchange Act."). Thus, Count III (Negligence), Count V (Unjust Enrichment), and Count VIII (NIED/IIED) in the SAC should be dismissed with prejudice.

**E.      Spears Fails to State an Antitrust Claim.**

Section 4 of the Clayton Act establishes a private right of action under the antitrust laws as it permits a private individual to bring suit under the antitrust laws if that individual has been "injured in [her] business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Thus, as an initial matter, a plaintiff must allege an antitrust violation that can be remedied pursuant to Section 4 of the Clayton Act. No such allegation exists in the SAC.

Specifically, to state an antitrust claim under the Sherman Act, "a plaintiff must show that the defendants '(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market.'" *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). While the SAC asserts that "FINRA violated Section 1 of the Sherman Act . . . by colluding with market participants . . . to facilitate or negligently permit illegal short selling activities and related anti-competitive practices," SAC, Count II, ¶ 1, it fails to allege any agreement among the defendants. To establish a conspiracy, plaintiffs must demonstrate that the challenged conduct stems from an agreement, either tacit or express. *See JSW Steel (USA) Inc. v. Nucor Corp.*, 2025 U.S. App. LEXIS 6204, *11 (5th Cir. Mar. 17, 2025) (internal quotation marks and citation omitted). Assertions of "parallel conduct that could just as well be independent action" are insufficient. *Id.* at *11-12. Thus, Spears fails to and cannot state a claim for an antitrust violation against FINRA.

Moreover, the U.S. Supreme Court has found that securities laws preclude application of the antitrust laws where "the two are 'clearly incompatible.'" *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264, 275 (2007). To determine whether there is "sufficient incompatibility to warrant an implication of preclusion," courts look to the following factors: "(1) the existence of

**FINRA'S MOTION TO DISMISS**                                                      Page 18 of 24

regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority; . . . (3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct[; and] (4) . . . the possible conflict affected practices that lie squarely within an area of financial market activity that the securities law seeks to regulate." *Id.* at 275-76 (citing *Gordon v. NYSE*, 422 U.S. 659 (1975); *U.S. v. NASD, Inc.*, 422 U.S. 694 (1975)).

Here, the allegations in the SAC all relate to FINRA's regulatory activities. Indeed, Spears specifically alleges that "FINRA directly facilitated anticompetitive conditions by selectively enforcing trading halts, notably the unprecedented U3 halt on MMTLP, . . . [and] by failing to enforce fair trading practices and regulatory standards consistently." *See* SAC, Count II, ¶ 4. In addition, Spears couples her antitrust allegations against FINRA directly with alleged Exchange Act violations. *See* SAC, Count II, ¶¶ 1-4. Accordingly, Spears's antitrust claim is precluded by the Exchange Act, and her antitrust claim against FINRA should be dismissed with prejudice.

 **F.** **Spears's Constitutional Claims Fail.**

  1. <u>Spears Lacks Article III Standing to Pursue Any Constitutional Claims.</u>

Spears lacks standing to assert claims based on any alleged constitutional violation of the "separation of powers doctrine," the "Appointments Clause," or the "non-delegation doctrine."[14] *See* SAC ¶¶ 158, 162, 254. To have such standing, Spears must show: (i) that she "has suffered . . . a concrete and particularized 'injury in fact'; (ii) that is 'fairly traceable to the challenged action of the defendant' and (iii) that her injury is 'likely to be redressed by a favorable judicial decision.'"

---

[14] Though Spears does not explicitly seek relief based on alleged constitutional violations other than the Fifth Amendment discussed in Section F.3 *infra*, Spears does question FINRA's constitutionality in the SAC on these bases. *See* SAC ¶¶ 158, 162, 254. Thus, FINRA addresses Spears's allegations here.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). Spears asserts only generalized grievances about the separation of powers, the Appointments Clause, and the private nondelegation doctrine. *See* SAC ¶¶ 158, 162, 254. Indeed, Spears claims that she "filed this lawsuit alleging a coordinated and systemic scheme that has undermined the integrity of U.S. Capital Markets. . . . involv[ing] . . . violations of constitutional protections, causing significant financial harm to retail investors." SAC § I. INTRODUCTION. And, as a result, Spears requests that the "Court declare FINRA's existing operational and regulatory structure unconstitutional due to inherent conflicts of interest stemming from its funding model." SAC Prayer for Relief, ¶ 5; *see also* Declaratory and Injunctive Relief Regarding FINRA. But without allegations of any "personal, particularized injury," Spears cannot establish Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 556 (1992) ("This Court has consistently held that a plaintiff claiming only a generally available grievance . . . , unconnected with a threatened concrete interest of [her] own, does not state an Article III case or controversy."); *see also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (collecting cases).

In short, Spears is effectively challenging FINRA's existence. However, the SAC is "precisely the kind of undifferentiated, generalized grievance" that is not redressable in federal court. *See Lance v. Coffman*, 549 U.S. 437, 442 (2007) (*per curiam*). Spears simply cannot circumvent the constitutional bar on asserting generalized grievances by framing FINRA's very existence as a harm to her, and other retail investors.[15]

---

[15] Though not a generalized grievance, Spears does not have standing to allege that FINRA's imposition of a trade halt violated her Fifth Amendment rights by depriving her of the ultimate value of her security interest, either. *See* SAC Count I, ¶ 11; *see also* SAC, Count IV, ¶ 2; Prayer for Relief, ¶ 2 (seeking a declaration that "FINRA's handling of the U3 trading halt . . . violated [Spears's] Fifth Amendment due process rights by depriving [Spears] of access to investments without timely resolution or adequate transparency."). Standing to assert a due process claim under the Fifth Amendment requires demonstration that a property entitlement was extinguished or

**FINRA'S MOTION TO DISMISS**                                                                Page 20 of 24

Challenges to a regulator's constitutional structure are not exempt from Article III's requirement that a plaintiff allege a concrete, particularized injury. As the U.S. Supreme Court has emphasized, constitutional-structure challenges remain "subject to the Article III requirements . . . applicable to all litigants." *Bond v. U.S.*, 564 U.S. 211, 225 (2011) (a litigant must "show actual or imminent harm that is concrete and particular" and that "[t]hese requirements must be satisfied before an individual may assert a constitutional claim"). Because the SAC does not assert a concrete, particularized injury fairly traceable to FINRA and redressable by a favorable judicial determination, Spears fails to state a declaratory relief claim upon which relief can be granted.

2.    <u>FINRA is Not a State Actor.</u>

Spears's constitutional claims are also fatally flawed because, to assert a constitutional violation, a plaintiff must "demonstrate 'that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action.'" *D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*, 279 F.3d 155, 161 (2d Cir. 2002) (citation omitted); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 256-57 (2d Cir. 2008) (dismissing First Amendment claims and other claims where plaintiff failed to plead state action); *Desiderio*, 191 F.3d at 206-07 (affirming dismissal of plaintiff's Fifth Amendment claim because plaintiff failed to show NASD's actions constituted state action). Courts have uniformly held that FINRA, like its predecessor the NASD and other SROs, "is a private actor, not a state actor." *Desiderio*, 191 F.3d at 206-07; *Mohlman v. FINRA*, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) ("Courts have held without exception that

---

modified, which cannot be shown here (*see* fn. 8 above); such standing is not conferred by the stand-alone assertion that a plaintiff suffered some resulting consequential injury such as a security's decrease in market value. *See GE v. Jackson*, 610 F.3d 110, 119-21 (D.C. Cir. 2010).

**<u>FINRA'S MOTION TO DISMISS</u>**                                              *Page 21 of 24*

FINRA is a private entity and not a state actor.") (collecting cases), *aff'd*, 977 F.3d 556 (6th Cir. 2020).[16]

FINRA is a private, not-for-profit corporation that does not receive state or federal funding. *See Meyers*, 1996 WL 1742619, at *1; *see also Desiderio*, 191 F.3d at 206. No government official serves as a FINRA employee, and the government does not appoint any FINRA employees or officers. *Id.* Because FINRA is not a state actor, Spears's purported constitutional claims against FINRA fail as a matter of law. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).

      3.     <u>Spears Does Not Allege That FINRA Deprived Her of Any Property Right.</u>

Spears alleges that "FINRA . . . violated [her] constitutional rights under the Fifth Amendment's Due Process Clause . . . by failing to provide adequate oversight, timely communication, transparency, or corrective actions, thus depriving [Spears] of protected property interests without due process of law." SAC, Count I, ¶ 11; *see also* SAC, Count IV, ¶ 2 ("FINRA violated [Spears's] constitutional rights under the Fifth Amendment . . . by failing to promptly lift, adequately explain, or address the U3 halt, resulting in denial of investors' protected property interests without due process."); Prayer for Relief, ¶ 2 (seeking a declaration that "FINRA's

---

[16] *See also D.L. Cromwell, Inc.*, 279 F.3d at 162; *Scher v. NASD*, 386 F. Supp. 2d 402, 407-08 (S.D.N.Y. 2005), *aff'd*, 218 Fed. Appx. 46 (2d Cir. 2007); *Weinraub v. Glen Rauch Sec., Inc.*, 399 F. Supp. 2d 454, 463 (S.D.N.Y. 2005); *Am. Benefits Grp. Inc. v. NASD*, 1999 WL 605246, at *8 (S.D.N.Y. Aug. 10, 1999); *Dobbins v. NASD*, 2007 WL 2407081, *3 (N.D. Ohio Aug. 22, 2007); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 698 (3d Cir. 1979); *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) ("It is clear that NASD is not a state actor."); *Barbara v. NYSE*, 99 F.3d 49, 58 (2d Cir. 1996) (same, with regard to New York Stock Exchange); *Graman v. NASD*, 1998 WL 294022, at * 3 (D.D.C. Apr. 27, 1998) ("Every court that has considered the question has concluded that NASD is not a governmental actor."); *Kim v. FINRA*, 698 F. Supp. 3d 147, 161 (D.D.C. 2023); *Meyers v. NASD*, 1996 WL 1742619, at *8-10 (E.D. Mich. Mar. 29, 1996) (allowing the complaint to be amended would be futile because NASD's regulatory actions do not constitute state action); *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) ("Epstein cannot bring a constitutional due process claim against the NASD, because the NASD is a private actor, not a state actor.") (alterations and internal quotation marks omitted).

**FINRA'S MOTION TO DISMISS** *Page 22 of 24*

handling of the U3 trading halt . . . violated [Spears's] Fifth Amendment due process rights by depriving [Spears] of access to investments without timely resolution or adequate transparency.").

As noted above, FINRA is not a state actor. But, notwithstanding that fatal pleading defect, a plaintiff alleging that the government violated her Fifth or Fourteenth Amendment rights by depriving her of property without due process must first: (1) identify the property right, and (2) show that the state deprived her of that right. *See James v. Cleveland Sch. Dist.*, 45 F.4th 860, 867 (5th Cir. 2022) ("The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty."). The government's alleged interference with a property right does not rise to a constitutional deprivation if the property loses value as a result of the alleged interference. *See Fusco v. Connecticut*, 815 F.2d 201, 206 (2d Cir. 1987) ("[G]overnmental action [allegedly causing a decline in property values] has never been held to 'deprive' a person of property within the meaning of the Fourteenth Amendment."); *Ramapo Homeowners' Ass'n v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 180 F. Supp. 2d 519, 526-27 (S.D.N.Y. 2002) (plaintiff homeowners' association could not allege a cognizable deprivation of property where the alleged harm was based on loss of real property value).

Here, Spears does not identify any specific "protected property interest" that FINRA took from her. *See generally* SAC. Rather, Spears alleges that FINRA deprived her of access to her investment during the trading halt of MMTLP. *See* SAC Count I, ¶ 11; Count IV, ¶ 2; Prayer for Relief, ¶ 2. But the trading halt was not indefinite. As Spears admits, the halt "would remain in effect until the deletion of MMTLP, scheduled for December 13, 2022." *See* FINRA RJN, Exhibit E (Notice of Trading Halt). Meta determined that it would distribute to MMTLP shareholders shares in Next Bridge and that the MMTLP shares would be cancelled by Meta on December 14,

2024. *See* FINRA RJN, Exhibit F (Amendment). In other words, MMTLP securities were not "taken" from Spears—instead, any MMTLP shares that Spears held after December 12, 2022, became shares in Next Bridge. And Spears cannot state a claim for a Constitutional deprivation of property rights based on a loss in stock value. Thus, any claim that FINRA deprived Spears of a property interest fails because she has not alleged, much less established, that she was deprived of any property rights.

## IV.    CONCLUSION

For the foregoing reasons, FINRA respectfully requests that the Court grant its Motion to Dismiss with prejudice. FINRA further requests that any request for leave to amend be denied on the grounds that FINRA's regulatory immunity and Spears's lack of a private right of action would render any amendment futile.

Respectfully submitted,

David C. Kent
State Bar No. 11316400
david.kent@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2323 Ross Avenue, Suite 1700
Dallas, Texas 75201
(469) 357-2500
(469) 327-0860 (fax)

*Attorneys for Defendant*
*Financial Industry Regulatory Authority, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served on all *pro se* parties and counsel of record through the CM/ECF system on May 19, 2025.

David C. Kent

**FINRA'S MOTION TO DISMISS**                                      Page 24 of 24