## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

DANIELLE SPEARS,                          §
       Plaintiff,                      §
                                       §
v.                                        §     Case No. 7:24-CV-321-DC
                                       §
NEXT BRIDGE HYDROCARBONS, INC.,           §
GREGORY McCABE, JOHN BRDA,                 §
ROGER N. WURTELE, KENNETH RICE,            §
JOSEPH DeWOODY, CLIFTON DUBOSE             §
AND JANE DOE 1/20, JOHN DOE 1-20           §
       Defendants.                     §

## <u>DEFENDANT, NEXT BRIDGE HYDROCARBONS, INC.'S MOTION TO DISMISS</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), Defendant Next Bridge Hydrocarbons, Inc. ("NBH") files this Motion to Dismiss the Second Amended Complaint of Plaintiff Danielle Spears ("SAC") for failure to state claims upon which relief can be granted, and in support thereof Defendant respectfully shows as follows.

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................................................ 1

II.  BACKGROUND ........................................................................................................................ 2

III.  LEGAL STANDARDS .............................................................................................................. 3

    A.  Rule 12(b)(6) .................................................................................................................... 3

    B.  Section 10(b) of the Exchange Act and Rule 9(b) ........................................................... 3

IV.  ARGUMENTS AND AUTHORITIES ....................................................................................... 4

    A.  Plaintiff Failed to Establish Statutory Standing for Section 10(b) or Rule 10b-5 claims ...... 5

    B.  Plaintiff Failed to State a §10(b) or Rule 10b-5 Claim Under FRCP 9(b) and the PSLRA ... 6

    i.  Plaintiff fails to allege facts sufficient to show a purchase or sale of a security in connection with a material misstatement or omission by NBH ................................................. 7

    ii.  Plaintiff's scienter allegations are insufficient ................................................................. 9

    iii.  Plaintiff's loss causation allegations are insufficient ..................................................... 12

    C.  Plaintiff Failed to State a Claim for Failure to Resolve FINRA U3 Halt ........................... 13

    D.  Plaintiff Failed to State a Claim for Unjust Enrichment and Conspiracy to Commit Fraud Because His Section 10(b) or Rule 10b-5 Claims Fail as a Matter of Law ........................ 14

    i.  Unjust Enrichment .......................................................................................................... 14

    ii.  Conspiracy to Commit Fraud .......................................................................................... 15

    E.  Plaintiff Failed to State a Claim for Negligence ............................................................. 17

    F.  Plaintiff's Emotional Distress (Negligent or Intentional Infliction) claim fails as a matter of law because NBH does not owe Plaintiff an independent legal duty .................................. 19

V.  CONCLUSION ......................................................................................................................... 20

## Table of Authorities

**Cases**

*Abrams v. Baker Hughes, Inc.,*
292 F.3d 424 (5th Cir. 2002).................................................................................. 17

*Amorosa v. AOL Time Warner Inc.,*
409 F. App'x 412 (2d Cir. 2011) ............................................................................ 6

*Barrie v. Intervoice–Brite, Inc.,*
397 F.3d 249 (5th Cir. 2005) ................................................................................. 10

*Bell Atlantic v. Twombly,*
550 U.S. 544 (2007), cert. denied 552 U.S. 1182 (2008) ........................................ 3

*Benchmark Electronics, Inc. v. J.M. Huber Corp.,*
343 F.3d 719 (5th Cir. 2003) ................................................................................. 4

*Birnbaum v. Newport Steel Corp.,*
193 F.2d 461 (2d Cir. 1952) .................................................................................. 5

*Blue Chips Stamp v. Manor Drug Stores,*
421 U.S. 723–31 (1975) ..................................................................................... 5, 13

*Brewerton v. Dalrymple*
997 S.W.2d 212 (Tex. 1999) ................................................................................ 20

*Chan v. Wells Fargo Bank, N.A.,*
2012 U.S. Dist. LEXIS 205137 at *4 (S.D. Tex. Apr. 30, 2012) ........................... 20

*Denicus v. Bosacker, No. 6:19-cv-655-JCM,*
2021 U.S. Dist. LEXIS 125398 at *9 (W.D. Tex. Jan. 26, 2021) .......................... 14

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005) .................................................................................. 4, 12, 13

*Ernst & Ernst v. Hochfelder,*
425 U.S. 185, 96 S. Ct. 1375, 47 L.Ed 2d (1976) ............................................... 17

*Hancock v. Chicago Title Ins. Co.,*
635 F. Supp. 2d 539 (N.D. Tex. 2009) ................................................................. 14

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.,*
302 F.3d 552 (5th Cir. 2002) ................................................................................ 16

*Hoffman-La Roche Inc. v. Zeltwanger,*
144 S.W.3d 438 (Tex. 2004) ................................................................................ 19

*Holland v. GEXA Corp.,*
  161 F. App'x 364 (5th Cir. 2005) ................................................................ 6

*In re Enron Corporation Securities, Derivative & "ERISA" Litigation,*
  238 F. Supp. 3d 799 ................................................................................ 16

*In re Katrina Canal Breaches Litigation,*
  495 F.3d 191 (5th Cir. 2007) .................................................................... 3

*In re Penn Cent. Sec. Litigation,*
  494 F.2d 528 (3rd Cir. 1974) .................................................................. 18

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.,*
  537 F.3d 527 (5th Cir. 2008) ................................................................... 10

*Janus Capital Group, Inc. v. First Derivative Traders,*
  131 S. Ct. 2296 (2011) ............................................................................. 8

*Kapps v. Torch Offshore, Inc.,*
  379 F.3d 207–14 (5th Cir. 2004) .............................................................. 7

*Krim v. BancTexas Grp., Inc.,*
  989 F.2d 1435 (5th Cir. 1993) .................................................................. 6

*Lampkin v. UBS Financial Services, Inc.,*
  925 F.3d 727 (5th Cir. 2019) .................................................................. 16

*Licht v. Watson,*
  567 F. App'x 689 (11th Cir. 2014) .......................................................... 13

*Matrixx Initiatives, Inc. v. Siracusano,*
  563 U.S. 27–44, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011) ....................... 7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
  547 U.S. 71–80 (2006) ............................................................................. 6

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.,*
  369 F.3d 27 (2d Cir. 2004) ...................................................................... 6

*Owens v. Jastrow,*
  789 F.3d 529 (5th Cir.2015) ............................................................... 11, 16

*Paul F. Newton & Co. v. Texas Commercial Bank*
  630 F.2d 1111 (5th Cir. 1980) ................................................................ 12

*Plaisance v. Schiller, No. CV H-17-3741,*
  2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) .......................................... 8

*Plotkin v. IP Axess Inc.,*
  407 F.3d 690 (5th Cir. 2005) .................................................................... 4

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) ................................................................. 13

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) ................................................................. 4, 10

*Regents of University of California v. Credit Suisse First Boston (USA), Inc.*,
  482 F.3d 372 (5th Cir. 2007) ................................................................. 15

*Regents of University of California v. Merrill Lynch, Pierce, Fenner & Smith.*,
  552 U.S. 1170, 128 S.Ct. 1120, 169 L.Ed.2d 957 (2008) ................. 16

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ................................................................. 10

*Salermo v. Hughes Watters & Askanase LLP*
  516 F. Supp. 3d 696 (S.D. Tex. 2021) ............................................... 9

*SCI Tex. Funeral Servs. v. Nelson*,
  540 S.W.3d 539 (Tex. 2018) ................................................................. 19

*SEC v. Hallam*,
  42 F.4th 316 (5th Cir. 2022) ................................................................. 15

*Southland Securities Corp. v. Inspire Ins. Solutions Inc.*,
  365 F.3d 353 (5th Cir. 2004)............................................................. 11, 16, 17

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148, 128 S.Ct. 761, 169 L. Ed. 2d 627 (2008) ................. 15

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ............. 4, 10, 17

*Tuchman v. DSC Communications*,
  14 F.3d 1061 (5th Cir.1994) ................................................................. 7, 15

*Twyman v. Twyman*,
  855 S.W.2d 619 (Tex. 1993) ................................................................. 19, 20

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ................................................................. 16

**Statutes**

15 U.S.C. 78m ................................................................................................. 18

15 U.S.C. 78r ................................................................................................. 18

15 U.S.C. § 78j ................................................................................................. 3, 5

15 U.S.C. § 78u–4 ................................................................................................... 10, 12

15 U.S.C. §78 ................................................................................................................ 1

**Other**

17 C.F.R. § 240.10b–5 ........................................................................................ 3, 5, 14

## I.     INTRODUCTION

Plaintiff's claims arise out of her frustration with a U3 Trading Halt enacted by FINRA in regard to the trading of preferred shares of Meta Materials, Inc ("MMTLP"). The inclusion of NBH in this lawsuit is absurd considering it was simply the recipient of asset transfers from Meta Materials and didn't control the trading of MMTLP, and did not exist or conduct business for much of Plaintiff's purported timeline. Plaintiff alleges to be a retail investor that was caught up in a potential 'short squeeze' that did not materialize. Plaintiff asserts various claims against FINRA and the SEC for their oversight of the markets, and asserts various claims against JOHN BRDA and MCCABE, and attempts to bootstrap her claims against various individuals to NBH, and attempts to bolster her claims through inclusion of various "John Doe" social media influencers.

In the SAC, Plaintiff attempts to allege six claims for relief against NBH: (i) Count 1—Violations of Securities Exchange Act of 1934 (15 U.S.C. §78); (ii) Count 3 – Negligence; (iii) Count 4- Failure to Resolve the FINRA U3 Halt- with reference to Section 10(b); (iv) Count 5 – Unjust Enrichment; (v) Count 6 – Conspiracy to Commit Fraud; and (vi) Count 8 – Emotional Distress (Negligent or Intentional Infliction). (Doc.13).

While the SAC is eighty-eight pages in length, it utterly lacks substance and specificity as to the basis of the claims asserted against NBH and fails to meet the heightened pleading standards under FRCP 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") and fails to establish standing for violations of federal securities laws. In addition, Plaintiff's own allegations prove that she cannot plausibly state a cause of action against NBH for which relief may be granted. Dismissal *with prejudice* is accordingly appropriate consistent with the arguments set forth below.

## II.    BACKGROUND

The reality is Plaintiff's claims against NBH are based on alleged regulatory failures stemming from the U3 trading halt of MMTLP securities enacted by FINRA. The Court should not entertain Plaintiff's misguided attempt to involve NBH in her vendetta against FINRA and the SEC for enacting a trading halt of MMTLP securities. NBH had no control over this process, nor does NBH have the ability or authority to overturn it.

NBH is a private energy company engaged in the acquisition, exploration, exploitation and/or development of oil and natural gas properties in the United States. In 2021, Torchlight Energy Resources (TRCH) merged with Meta Materials, Inc. (MMAT), creating Series A Preferred shares ("MMTLP Shares"). Those shares began trading on the OTC market sometime in October of 2021 with the ticker, MMLTP. In late 2022, NBH spun off from MMAT, resulting in NBH becoming an independent company that is not publicly traded. The holders of MMTLP Shares were to receive a 1-for-1 share exchange of shares of Next Bridge common shares. The exchange was to take place on December 14, 2022.

On December 9, 2022, FINRA halted trading of MMTLP shares, citing an "extraordinary event" code U3. The abrupt trading halt and cancellation of MMTLP shares without prior notice led to significant investor frustration. Many shareholders were upset that their projected squeeze on alleged naked shorts did not materialize, and others were upset that they were unable to sell their positions before the halt and have since been unable to trade their NBH shares, as the company remains private and its shares are not traded on any public exchange. Plaintiff alleges that she is a 'shareholder' of MMTLP as of October 2022, and was a holder intending to sell in December of 2022. SAC at 81. Plaintiff does not allege that she purchased shares based on any alleged representations by NBH, but instead by various anonymous social media influencers pushing for a short squeeze of the stock. (SAC at 85).

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir. 2007) *(quoting Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 570 (2007)), cert. denied, 552 U.S. 1182 (2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id. (quoting Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004))(internal quotation marks omitted).

### B.    Section 10(b) of the Exchange Act and Rule 9(b)

Under § 10(b) of the Securities and Exchange Act of 1934, "[i]t shall be unlawful for any person, directly or indirectly, ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b–5 implements § 10(b) by forbidding, among other things, the making of any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made ... not misleading." 17 C.F.R. § 240.10b–5. Section 10(b) has been interpreted to

provide a right of action to securities purchasers or sellers injured by its violation. *Tellabs, Inc., v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 318, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 345 (2005) (internal citations omitted).

To state a private cause of action under § 10(b), a plaintiff must allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 641 (5th Cir. 2005).

For fraud claims, including securities fraud claims, Rule 9(b) requires the complaint to "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

## IV.    ARGUMENTS AND AUTHORITIES

Plaintiff's claims against NBH should be dismissed pursuant to FRCP 12(b)(6) because: (a) Plaintiff failed to establish statutory standing for her §10(b) or Rule 10b-5 claims under the Securities Exchange Act of 1934; (b) Plaintiff failed to state a §10(b) or Rule 10b-5 claim under FRCP 9(b) and the PSLRA; (c) Plaintiff failed to state a claim for "failure to correct"; (d) Plaintiff's

claims for unjust enrichment and conspiracy to commit fraud should be dismissed because her 10(b) claims fail as a matter of law; (e) Plaintiff failed to state a claim for Negligence; and (f) Plaintiff's claim for Emotional Distress (Negligent and Intentional) fails as a matter of law as it is not predicated upon an independent legal duty that NBH owes to Plaintiff.

### A.  Plaintiff Failed to Establish Statutory Standing for Section 10(b) or Rule 10b-5 claims

Plaintiff claims to be entitled to relief under the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) ("Exchange Act"). Specifically, Plaintiff alleges that Defendants (including NBH) violated Section 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R. § 240.l0b-5) by engaging in manipulative practices, including undisclosed paid promotions, dissemination of false information, and failing to ensure market transparency. (SAC at 68-69). Plaintiff repeats this claim alleging NBH engaged in coordinated manipulative activities, including cyberbullying, cyberstalking, harassment, and deceptive information dissemination, and through hiring, compensating, and orchestrating undisclosed paid proxies and promotors. (SAC at 68-69). Plaintiff also alleges violations of Section 9(a) through "manipulation of price of MMTLP shares through artificial and deceptive trading conditions." (SAC at 68).

Plaintiff has failed to adequately plead and prove statutory standing for her claims. A plaintiff has standing under the Act as an actual purchaser or seller of securities; however, a plaintiff does not have standing as a mere holder of securities. *Blue Chips Stamp v. Manor Drug Stores,* 421 U.S. 723, 730–31 (1975)(rejecting recognition of holder claims under the federal securities laws because they are speculative and difficult to prove); *see also Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir. 1952) (finding that a purchase or sale was required for a Rule 10b–5 cause of action).

An investor who held a security and, in reliance on the alleged misstatement, did not sell it, cannot bring suit. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 79–80 (2006). "It is well established that mere retention of securities in reliance on material misrepresentations or omissions does not form the basis for a § 10(b) or Rule 10b–5 claim." *Krim v. BancTexas Grp., Inc.,* 989 F.2d 1435, 1443 (5th Cir. 1993). Courts have also held that plaintiffs failed to satisfy the standing requirement when considering Section 10(b) suits brought, for example, by a plaintiff asserting claims based on the dilution of shareholder equity,[1] and the purchaser of stock in a company whose stock price is negatively impacted by the material misstatement of another company in which the plaintiff did not purchase stock[2].

Here, Plaintiff is a mere holder of MMTLP securities, which is insufficient to satisfy the statutory standing requirement. Indeed, Plaintiff admits that she has not sold shares of MMTLP: "Many MMTLP traders, including the Plaintiff, were **holding their shares with the intent to execute** opportunity trades-to sell, rather than buy – on December 9 and 12, 2022." (emphasis added) (SAC, ¶133). *See also* SAC, ¶240 ("Shareholders remain unable to trade their positions, and MMTLP investors continue to face financial harm with no clear recourse."). An intent to execute trades does not meet the threshold of a purchase or a sale. *See Amorosa v. AOL Time Warner Inc.,* 409 F. App'x 412, 417 (2d Cir. 2011) (holding "mere holders of securities that did not purchase or sell stock resulting from the defendants' conduct failed to satisfy the standing requirement for Section 10(b) suits"). Because Plaintiff has failed to establish statutory standing, the Court should dismiss Plaintiff's Section 10(b) or Rule 10b-5 claims with prejudice.

**B.**    **Plaintiff Failed to State a §10(b) or Rule 10b-5 Claim Under FRCP 9(b) and the PSLRA**

---

1 *See Holland v. GEXA Corp.,* 161 F. App'x 364, 365-66 (5th Cir. 2005).
2 *See Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.,* 369 F.3d 27, 34 (2d Cir. 2004)

Notwithstanding the fact that Plaintiff failed to establish statutory standing for the Section 10(b) or Rule 10b-5 claims, Plaintiff failed to adhere to the heightened pleading standards under FRCP 9(b) and the PSLRA.[3] Indeed, the SAC is utterly void of specific allegations demonstrating (i) materially misleading statements or omissions by NBH in connection with Plaintiff's purchase or sale of an MMTLP security; (ii)  a strong inference of scienter as to NBH; and (iii) loss causation. Accordingly, the SAC fails to meet the heightened pleading standards under FRCP 9(b) and the PSLRA.

### i. Plaintiff fails to allege facts sufficient to show a purchase or sale of a security in connection with a material misstatement or omission by NBH

To be actionable, a misrepresentation of fact, including an omission, must be material. Materiality is not a test of "statistical significance." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 43–44, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011). Instead, it requires a "fact-specific inquiry ... of [the] source, content, and context" of the alleged statement or omission. *Id.* A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in making an investment decision. ... For an omission to be material, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Kapps v. Torch Offshore, Inc.,* 379 F.3d 207, 213–14 (5th Cir. 2004)(quoting *Basic Inc. v. Levinson,* 485 U.S. 224, 231–32 (1988)(emphasis removed)). Materiality can be determined at the pleading stage, and "many [securities] cases have been properly dismissed on the pleadings for lack of materiality." *Id.* at 216 (*citing In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 369

---

[3] "In securities fraud suits, this heightened pleading standard provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Tuchman v. DSC Communications,* 14 F.3d 1061, 1067 (5th Cir.1994).

n.13 (3d Cir. 1993)(If "alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality [it is] appropriate for the district court to rule that the allegations are inactionable as a matter of law.")(citations omitted; insertion in original)).

In addition to the statement having to be material, it also must be made by the person or entity the plaintiff seeks to hold liable. In *Janus Capital Group Inc. v. First Derivative Traders,* the Supreme Court emphasized that, for purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011). For example, a plaintiff cannot hold an individual defendant responsible for unattributed corporate statements in press releases based solely on his title as CFO. *See Plaisance v. Schiller,* No. CV H-17-3741, 2019 WL 1205628, at *16 (S.D. Tex. Mar. 14, 2019). Even more so, a plaintiff cannot hold an individual defendant responsible for unattributed speculative statements posted to social media by random anonymous individuals.

In "Count I" Plaintiff makes two generalized allegations: Paragraph 2 states all of the Defendants violated Section 10(b) by "engaging in manipulative practices" and Paragraph 3 states all Defendants violated Section 9(a) by intentionally manipulating the price of shares through artificial and deceptive trading conditions. (SAC at 68). Plaintiff wholly fails to identify actionable statements made by Defendant NBH. The closest allegation to a misstatement is Plaintiff's allegations in Paragraphs 6 & 7 - that NBH violated 10(b) through statements allegedly made by Jane and John Does on social media related to the trading of the MMTLP stock. Plaintiff does not show that these were material or that they were false, and as a matter of law, no reasonable investor would base their investment thesis on anonymous twitter users.

Even if they were material, the remainder of Plaintiff's SAC does not allege any facts with particularity regarding NBH's involvement with these alleged proxies sufficient to show that NBH was the maker of the misrepresentations, other than generalized allegations 'upon information and belief' that defendants hired, compensated, or otherwise directed them to make statements. She states that she "was further harmed by listening to those *she now believes* were undisclosed paid social media stock promoters and influencers." SAC at 4. Everywhere else in her SAC, she alleges that she believes it was Brda and McCabe used undisclosed, paid, social media stock promoters. (SAC ¶ 64, 86, 92).

Plaintiff's mere suspicion or allegations upon information and belief are insufficient. *Salermo v. Hughes Watters & Askanase LLP*, 516 F. Supp. 3d 696, 710 (S.D. Tex. 2021) (*quoting Donald J. Trump for President Inc. v. Pennsylvania,* 830 F. App'x 377, 387 (3d Cir. 2020)). Because Plaintiff does not identify any actionable misrepresentation by NBH, and because she has not articulated that NBH was the maker of any alleged misrepresentations in any anonymous social media postings, Plaintiff's 10(b) claim fails as a matter of law.

Finally, Plaintiff has entirely failed to plead facts demonstrating a purchase or sale of stock in connection with false or misleading statements by NBH. Plaintiff states she purchased the stock in October 2022 because of social media influencers and retail investors discussing the potential for a 'short squeeze,' not on the basis of any alleged representation (false or otherwise) by NBH. (SAC ¶ 85). Plaintiff fails to include facts demonstrating that she made a purchase or sale of an MMTLP security in connection with these alleged misrepresentations, Plaintiff's 10(b) claims should be dismissed without prejudice.

**ii.    Plaintiff's scienter allegations are insufficient**

Even if the SAC did allege sufficient facts to support the inference that Plaintiff sold or purchased MMTLP shares in connection with a material misstatement or omission by NBH (it

does not), the SAC nevertheless fails to allege sufficient facts supporting a strong inference of scienter as to NBH.

Section 10(b) and Rule 10b–5 do not protect investors against negligence or corporate mismanagement. *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.,* 537 F.3d 527, 539 (5th Cir. 2008). Under the PSLRA, for "each act or omission alleged," the plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Scienter consists of "an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Phillips,* 401 F.3d at 643 (internal quotation marks omitted). Severe recklessness is "limited to those highly unreasonable omissions and misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 866 (5th Cir. 2003)(internal quotation marks omitted).

In *Tellabs*, the Supreme Court described how to analyze the sufficiency of scienter allegations under the PSLRA on a motion to dismiss. 551 U.S. at 322–23. The district court must first determine the factually sufficient complaint allegations and take them as true. *Id.* at 322. The court then considers documents incorporated in the complaint by reference and matters subject to judicial notice. *Id.* at 322–23. Finally, the court must take into account plausible inferences opposing as well as supporting a scienter inference. *Id*. at 323. The factual allegations are evaluated collectively, not in isolation, to determine whether the pleadings support a strong scienter inference. *Cf. Barrie v. Intervoice–Brite, Inc.,* 397 F.3d 249, 260 (5th Cir. 2005)("While [the Fifth

Circuit] will view a complaint in toto when considering whether a complaint has adequately pled scienter, each allegation of fraud must individually meet the particularity requirements of the PSLRA." (internal citation omitted)).

The Plaintiff's SAC relies in part on group pleading to allege scienter as she groups NBH leadership in the same 'scienter bucket' as leadership for Torchlight Energy and Meta Materials and, for her convenience, with anonymous social media personalities. Plaintiff alleges, for instance, under her "Specific Acts of Scienter" that "Torchlight Energy Resources, Inc. (John Brda)" and "Next Bridge Hydrocarbons (Gregory McCabe)" overstated the valuation of Orogrande Basin assets, and that they failed to investigate, disclose, or resolve discrepancies related to short positions (which even if true, doesn't go to scienter for a material misrepresentation), and that "leadership communications" omitted critical information about known trading irregularities and illegal short positions. *See* SAC at 82-83.

The Fifth Circuit does not permit group pleading in securities fraud suits. *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir.2015), citing *Southland Securities Corp. v. Inspire Ins. Solutions Inc*., 365 F.3d 353 at 365 ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud.... [W]e do not construe allegations contained in the [second amended complaint] against 'defendants' as a group as properly imputable to any particular defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."). Group pleading or group publishing doctrine fails to satisfy the heightened pleading standards of the PSLRA. *Southland*, 365 F.3d at 363 n. 9.

Here, Plaintiff's scienter allegations regarding a failure to address trading irregularities and misleading shareholders are insufficient as they constitute a "group pleading." Plaintiff does not

distinguish NBH's particular part in the alleged fraud concerning these acts, nor does Plaintiff plead facts demonstrating NBH acted recklessly or with the intent to deceive. The only allegation that cannot be considered a "group pleading" is the allegation concerning a misrepresentation of asset valuations. This allegation, however, is similarly insufficient as Plaintiff fails to allege falsity with the requisite particularity under the PSLRA. Moreover, as stated above, Plaintiff admits that Gregory McCabe's alleged statements with regard to the valuation of the oil and gas properties that would later form NBH, were made in his capacity as Chairman of TRCH in 2020 prior to NBH's existence and two years prior to Plaintiff's purchase of the stock. *See* SAC, ¶54-55. These statements cannot be imputed to NBH. *Paul F. Newton & Co. v. Texas Commercial Bank,* 630 F.2d 1111, 1118 (5th Cir. 1980). Accordingly, Plaintiff has failed to adequately plead scienter for NBH.

Finally, Plaintiff states she purchased the stock *because* of the trading irregularities and the potential for a 'short squeeze,' so to now claim that she was misled and harmed by such trading irregularities, or that NBH committed fraud by failing to disclose such trading irregularities is disingenuous.

### iii. Plaintiff's loss causation allegations are insufficient

Under the PSLRA, "the plaintiff shall have the burden of proving that the act or omission of the defendant ... caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4). The PSLRA "makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss." *Dura,* 544 U.S. at 346. "To establish proximate causation, the plaintiff must allege that when the 'relevant truth' about the fraud began to leak out or otherwise make its way into the marketplace, it caused the price of the stock to depreciate and, thereby, proximately caused the plaintiff's economic harm." *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.,* 769 F.3d 313, 320

(5th Cir. 2014). *Dura* made clear there must be sufficient allegations the misrepresentations caused the plaintiffs' loss; it is insufficient to simply allege the misrepresentation "touches upon a later economic loss." *Dura,* 544 U.S. at 343, 125 S.Ct. 1627.

Leaving aside Plaintiffs' failure to specify the material, misleading representations made by NBH or scienter of NBH, Plaintiff has not alleged any loss that was proximately caused by any alleged material misrepresentations or omissions by NBH. Nowhere does Plaintiff articulate a loss, the amounts of losses sustained, or even the amount of stock she purchased, nor does she allege any casual connection to NBH. Indeed, Plaintiff broadly alleges that she is asserting claims on behalf of retail investors and fails to explain the causal connection between NBH's alleged misrepresentations and any economic loss suffered by Plaintiff. It is not enough for a plaintiff bringing a Section 10(b) or Rule 10b-5 claim to have merely suffered loss in the value of the investment as a shareholder or creditor. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-38, 749 (1975); *Licht v. Watson*, 567 F. App'x 689, 691 (11th Cir. 2014). Accordingly, Plaintiff's broad and conclusory allegations concerning loss causation are insufficient.

## C.    Plaintiff Failed to State a Claim for Failure to Resolve FINRA U3 Halt

Plaintiff alleges additional violations of Section 10(b) in Count IV and restyles them as "failure to resolve FINRA halt" claims. Plaintiff states that Brda, McCabe, and NBH violated Section 10(b) and 10(b)-5 by "failing to take corrective action regarding the FINRA U3 halt despite their clear knowledge of ongoing market manipulation, unresolved illegal short positions, and investor harm." (SAC at 73).  She also states they violated the above sections by "breaching their fiduciary duties through failure to meaningfully address or rectify the regulatory disruptions from the U3 halt."  (SAC at 74).

Plaintiff does not identify any fiduciary duties, and NBH has been unable to find any such duty, or any authority providing NBH with the ability to resolve such a halt. However, even if Plaintiff did establish such a duty, Plaintiff's re-asserted 10(b) and Rule 10b05 claims fail for the reasons stated above, as Plaintiff has failed to establish standing and has failed to establish her claims with particularity per the heightened pleading standards under FRCP 9(b) and the PSLRA. As such, Plaintiff's re-iterated §10(b) or Rule 10b-5 claims that Defendants failed to resolve the FINRA U3 halt should be dismissed.

**D.    Plaintiff Failed to State a Claim for Unjust Enrichment and Conspiracy to Commit Fraud Because His Section 10(b) or Rule 10b-5 Claims Fail as a Matter of Law**

Notably, Plaintiff's claims for Unjust Enrichment and Conspiracy to Commit Fraud are also predicated upon alleged 10(b) violations of the Exchange Act. (*See* SAC at 74-75). For sake of brevity, Plaintiff incorporates the arguments set forth above concerning Plaintiff's lack of statutory standing and failure to meet the heightened pleading standards under FRCP 9(b) and the PSLRA.

**i.    Unjust Enrichment**

In Count V, Plaintiff appears to assert a state common law claim for unjust enrichment, but alleges that Defendants Brda, McCabe, and NBH "violated Section 29(b) (15 U.S.C. § 78cc(b)) and Rule l0b-5 (17 C.F.R. § 240 10b-5) by unjustly enriching themselves through coordinated promotional schemes and undisclosed compensation to paid proxies and promoters, thereby inflating share prices and facilitating illegal short positions at investors' expense." (SAC at 74). First, unjust enrichment is not an independent cause of action, and should therefore be dismissed. *Denicus v. Bosacker,* No. 6:19-cv-655-JCM, 2021 U.S. Dist. LEXIS 125398 at *9 (W.D. Tex. Jan. 26, 2021); *Hancock v. Chicago Title Ins. Co.,* 635 F. Supp. 2d 539, 561 (N.D. Tex. 2009). Unjust

enrichment is a remedy that is available to a party that proves an exchange act violation. *SEC v. Hallam,* 42 F.4th 316, 334 (5th Cir. 2022) (citing to 15 U.S.C. § 78u(d)(3)).

Further, as set forth above *ad nauseum*, Plaintiff has failed to establish statutory standing for violations of the Exchange Act. Plaintiff's unjust enrichment claim fails on this basis alone. Alternatively, Plaintiff's unjust enrichment claim against NBH is based on alleged 10(b) violations, which means it is subject to the heightened pleading standards under FRCP 9(b) and the PSLRA. *Tuchman v. DSC Communications,* 14 F.3d 1061, 1067 (5th Cir.1994). The SAC is void of any allegations demonstrating or identifying the supposed "coordinated promotional schemes" that NBH profited from or how they violated Section 10(b), and as such, is fatally deficient under the heightened pleading standards. Accordingly, the Court should dismiss Plaintiff's unjust enrichment claim with prejudice.

### ii. Conspiracy to Commit Fraud

In Count VI, Plaintiff alleges that Defendants Brda, McCabe, NBH and Jane and John Does "violated Section 10(b) and Rule 10b-5 by conspiring to disseminate materially false and misleading information through undisclosed proxies and stock promoters, deliberately misleading investors, artificially inflating share prices, and facilitating illegal short positions." SAC at 75.

Notably, there is no private right of action under § 10(b) of the Exchange Act for aiding and abetting. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 155, 128 S.Ct. 761, 169 L. Ed. 2d 627 (2008) *citing Central Bank of Denver*, 511 U.S. at 191, 114 S.Ct. 1439 (§ 10(b) does not extend to aider and abettors). A defendant must satisfy the requirements for a primary violation to be liable under § 10(b), i.e., must engage in deceptive conduct involving either a misstatement or a failure to disclose by one with a duty to disclose. *Regents of University of California v. Credit Suisse First Boston (USA), Inc.,* 482 F.3d 372, 388 (5th Cir. 2007), cert.

denied sub nom. *Regents of University of California v. Merrill Lynch, Pierce, Fenner & Smith*, 552 U.S. 1170, 128 S.Ct. 1120, 169 L.Ed.2d 957 (2008). Further, the particularity requirement for pleading fraud also governs a conspiracy to commit fraud. *See In re Enron Corporation Securities, Derivative & "ERISA" Litigation,* 238 F. Supp. 3d 799, Fed. Sec. L. Rep. (CCH) ¶ 99638 (S.D. Tex. 2017), aff'd, 925 F.3d 727, Fed. Sec. L. Rep. (CCH) ¶ 100419 (5th Cir. 2019), referencing Fed. R. Civ. P. 9(b).

Here, Plaintiff has failed to articulate, with particularity, the specific acts of Defendant NBH, and instead attempts to group Defendant NBH with other Defendants. Pleading "fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 179 (5th Cir. 1997). Plaintiff does not articulate any statements made by NBH, nor does Plaintiff explain when, where, or why. *Id.* Plaintiff instead asserts generalized allegations and against all defendants. (SAC at 75-76). Additionally, Plaintiffs must show the requisite level of scienter for each claim. *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 565 (5th Cir. 2002). Again, Plaintiff has not alleged any facts regarding NBH involvement and any alleged fraud with any particularity.

The Fifth Circuit does not permit group pleading in securities fraud suits. *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir.2015), *citing Southland,* 365 F.3d at 365 ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud.... [W]e do not construe allegations contained in the [second amended complaint] against 'defendants' as a group as properly imputable to any particular defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."). Group pleading or group publishing doctrine fails to satisfy

the heightened pleading standards of the PSLRA. *Southland*, 365 F.3d at 363 n. 9; Tellabs, Inc. 551 U.S. at 321. As such, Plaintiff's Complaint should be dismissed.

**E.     Plaintiff Failed to State a Claim for Negligence**

In Count III, Plaintiff appears to attempt to allege a claim of Negligence against NBH by alleging violations of various statutes including Section 10(b) and Rule 10b-5 and Section 13(b)(2) and Rule 13b2-2. Plaintiff attempts to circumvent the required showing of fraud by pleading Defendants' negligent violations of Section 10(b) and other sections of the Exchange Act.

In *Ernst & Ernst,* the Supreme Court considered whether negligent acts could violate § 10(b). *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976) at 197. The Court noted that "[t]he words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct." *Id.* The Supreme Court concluding that the SEC's interpretation would "add a gloss to the operative language of the statute quite different from its commonly accepted meaning." *Id.* at 199.

Similar to the SEC's argument in *Ernst & Ernst*, Plaintiff appears to assert that NBH negligently violated Section 10(b) and 13(a) by asserting that NBH permitted the unchecked proliferation of illegal short positions, negligently hired and compensated undisclosed proxies and paid promoters, negligent failed to establish and enforce effective internal control mechanisms. SAC at 71-72. While these appear to just be restated allegations of violations of Section 10(b), the Court should reject Plaintiff's argument because negligent acts cannot be the basis of Section 10(b) or 13(a) violations. *See e.g. Abrams v. Baker Hughes, Inc.,* 292 F.3d 424 at 433 (5th Cir. 2002) (stating that the nature of accounting problems that lead to restatement could "easily arise from

negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action").

Plaintiff also appears to assert a claim of negligence for violation of Section 13(a) and 13(b) of the Exchange Act, as well as Rules 13b2-1 and Rule 13b2-2. (SAC at 71-72). Section 13(a) requires the filing of information, reports and documents with the SEC. 15 U.S.C. 78m(a). Section 13(b) applies to the form of the annual reports that are required to be submitted to the SEC under 13(a) of the Exchange Act. *Id.* Courts are clear that there is no private cause of action for 13(a), and that the sole remedy for 13(a) is offered by 18(a). *In re Penn Cent. Sec. Litigation,* 494 F.2d 528, 540 (3rd Cir. 1974). However, liability is limited to persons who make or cause to be made false or misleading statements in any application, report, or document filed with the SEC through fraud, not mere negligence. 15 U.S.C. § 78r. As such, Plaintiff's claims for negligence should be dismissed.

However, Plaintiff's allegations do not concern or touch upon any filings with the SEC, and therefore Plaintiff's claims should be dismissed. Indeed, Plaintiff wholly fails to identify any preparation of required reports or documents, any accountants or auditors, or any filings with the SEC, and does not allege an issue with the S-1 filing by NBH. Instead, she argues Defendant NBH failed to "establish and enforce effective internal control mechanisms and oversight, facilitating widespread securities violations and fraudulent conduct" which is outside the scope of Section 13(a). (SAC at 72).

Moreover, Plaintiff provides no authority or explanation as to the existence of a duty owed by NBH in regard to alleged trading irregularities of MMTLP securities or creation of naked shares or short positions, or how NBH violated any such duty or how NBH could rectify or redress such an alleged breach. Finally, Plaintiff wholly fails to address any harm or causation between any

alleged negligence and injuries or damages. Accordingly, Plaintiff's negligence claim should be dismissed for failure to state a claim upon which relief can be granted.

**F.    Plaintiff's Emotional Distress (Negligent or Intentional Infliction) claim fails as a matter of law because NBH does not owe Plaintiff an independent legal duty.**

In Count VIII, Plaintiff alleges that Defendants' (including NBH) "violated Section 10(b) and Rule 10b-5 and that such a violation constitutes infliction of emotional distress. (SAC at 78). First and foremost, Texas does not recognize the tort of negligent infliction of emotional distress. *See SCI Tex. Funeral Servs. v. Nelson,* 540 S.W.3d 539, 546 (Tex. 2018). The only exception to this rule is if the defendant breaches an independent legal duty, such as a duty to not negligently mishandle a corpse. *Id.*

As to intentional infliction, Texas considers the tort of intentional infliction of emotional distress as a "gap-filler" to be used when the victim of severe emotional distress has no other recognized theory of redress. *Hoffman-La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 447 (Tex. 2004). Where the gravamen of a complaint is covered by another common-law or statutory tort, IIED is not available. *Id.* Here, Plaintiff has other theories of redress alleged against each defendant, including defendant NBH. As such, this Court should dismiss Plaintiff's complaint with prejudice

Even assuming, arguendo, that Plaintiff can assert a claim for IIED, a well-pleaded allegation of intentional infliction of emotional distress requires a showing that defendant (1) acted intentionally or recklessly (2) with extreme or outrageous conduct (3) that caused (4) severe emotional distress. *See Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993).

Plaintiff's contention that NBH owes an independent legal duty pursuant to Section 10(b) and Rule 10-b5 is baseless as the statutory scheme is comprehensive.  Further, for the reasons stated above, Plaintiff's alleged violations of Section 10(b) and Rule 10b-5 must fail as a matter of law.

Plaintiff does not identify any specific action by Defendant NBH, but group pleads it in stating that Defendants organized social media harassment and cyberstalking, obstructed transparency, and intimidation campaigns. (SAC at 78-79). Plaintiff's allegations of promotion and dissemination of false information does not constitute "intentional or reckless acts of extreme or outrageous conduct" committed by NBH. *Chan v. Wells Fargo Bank, N.A.,* 2012 U.S. Dist. LEXIS 205137 at *4 (S.D. Tex. Apr. 30, 2012) (dismissing IIED claim and finding false and reckless misrepresentation do not rise to the extreme degree required). Extreme and outrageous conduct is conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman v. Twyman,* 855 S.W.2d 619, 621, 36 Tex. Sup. Ct. J. 827 (Tex. 1993). Whether conduct is sufficiently extreme is a question of law for the *Court. Brewerton v. Dalrymple,* 997 S.W.2d 212, 216 (Tex. 1999).

Further, Plaintiff's complaint should be dismissed because she does not identify any severe emotional distress. Plaintiff's SAC is completely devoid of any factual allegations to support a claim for emotional distress. Accordingly, the Court should dismiss Plaintiff's claim for Emotional Distress (Negligent or Intentional Infliction) for failure to state a claim upon which relief can be granted.

## V.    CONCLUSION

WHEREFORE, Defendant Next Bridge Hydrocarbons, Inc. respectfully requests that this Court dismiss Plaintiff's Amended Complaint *with prejudice* for failure to state claims for which relief can be granted, as well as grant such other and further relief as this Court deems just and proper.

Date: June 16, 2025

Respectfully submitted,

BY: */S/ J. Paul Manning*_____
J. PAUL MANNING
   State Bar No. 24002521
   jpmanning@lubbocklawfirm.com
JOSHUA D. FROST
   State Bar No. 24097711
   jfrost@lubbocklawfirm.com
**FIELD MANNING STONE AYCOCK P.C.**
2112 Indiana Avenue
Lubbock, Texas 79410-1499
806/792-0810 (Telephone)
806/792-9148 (Facsimile)

ATTORNEYS FOR DEFENDANT **Next Bridge Hydrocarbons, Inc**.

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF system on June 16, 2025.

*/s/ J.Paul Manning*_____
J.Paul Manning