# Appendix

## A.1 Formation of FINRA

The Financial Industry Regulatory Authority ("FINRA") was created on July 30, 2007, following approval by the Securities and Exchange Commission ("SEC") on July 26, 2007. Its formation resulted from a regulatory consolidation between the National Association of Securities Dealers ("NASD") and the enforcement and regulatory functions of the New York Stock Exchange ("NYSE"). This merger was formalized under SEC Release No. 34-56145. From that point forward, FINRA became the sole registered national securities association in the United States.

## A.2  FINRA is a private, non-profit corporation—not a government agency. Courts have

repeatedly affirmed that FINRA is a private entity, not a government actor. See *DL Capital Group, LLC v. NASD Regulation, Inc.*, 409 F.3d 93, 96 (2d Cir. 2005) ("NASD is a private actor, not a state actor"); *Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999) ("NASD is a private actor for constitutional purposes").[1] Courts across multiple circuits, including the Fifth Circuit, have recognized that FINRA is a private self-regulatory organization rather than a governmental entity, and that its authority exists solely by virtue of delegation from the SEC. In *David Fernea v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 559 F. App'x 366, 369 (5th Cir. 2014), the Fifth Circuit acknowledged FINRA's role as a private SRO subject to SEC oversight, not a sovereign regulator. Likewise, in *Scottsdale Capital Advisors Corp. v. FINRA*, 844 F.3d 414, 423 (4th Cir. 2016), the Fourth Circuit confirmed that FINRA's powers are limited to those expressly conferred by the Exchange Act and SEC-approved rules, and that it "is not a governmental agency." These authorities underscore that FINRA's actions must remain within its delegated scope and that any exercise of power beyond that scope is ultra vires. *DL Capital Group, LLC v. NASD*, 409 F.3d 93 (2d Cir. 2005), *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209 (9th Cir. 1998), *Weissman v. NASD*, 500 F.3d 1293 (11th Cir. 2007), *Alpine Securities Corp. v. FINRA*, 61 F.4th 1093 (D.C. Cir. 2023). These cases confirm that ultra vires conduct by a self-regulatory organization is subject to judicial review and is not protected by immunity.

## A.3 FINRA is registered with the SEC under Section 15A of the Securities Exchange Act of

1934, codified at 15 U.S.C. § 78o–3. Unlike a registered national securities exchange (which must comply with 15 U.S.C. § 78f), FINRA was never authorized to operate a trading platform or market. FINRA has never filed a Form 1 registration with the SEC,[2] never obtained exchange approval under SEC Rule 6a-1,[3] and has never submitted a market operating rulebook under Exchange Act Section 6.[4]

---

[1] *Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999); *DL Capital Grp., LLC v. NASD Regulation, Inc.*, 409 F.3d 93, 96 (2d Cir. 2005).
[2] **17 C.F.R. § 240.6a-1** — Form 1 is required to register as a national securities exchange; FINRA has never done so.
[3] **Id.** — FINRA never obtained exchange approval under SEC Rule 6a-1.
[4] **15 U.S.C. § 78f** — Governs the registration and regulation of exchanges.

Its rulemaking authority applies only to its member firms, and only when acting within the scope of a properly filed rule approved by the SEC under Section 19(b).[5]
Its authority is explicitly limited to the regulation of its members, namely, broker-dealers.

**A.4  The consolidation that created FINRA** was intended to reduce duplicative regulation, increase consistency, and enhance investor protection by eliminating overlapping oversight from NASD and NYSE Regulation. However, the statutory limits on FINRA's authority remained intact: it was created to regulate member conduct, not to operate markets or intervene in trading systems. That limitation remains in effect today and when FINRA exceeds it, it acts *ultra vires* and without immunity.

**A.5  The legal framework** that governs FINRA was established by Congress through the Securities Exchange Act of 1934. Specifically, Section 15A (see 15 U.S.C. § 78o–3) authorizes the SEC to register and supervise self-regulatory organizations ("SROs") like FINRA. Under this authority, FINRA may regulate only its members (i.e., broker-dealers), not operate exchanges or perform exchange-level regulatory functions, which are governed by 15 U.S.C. § 78f.[6]

**A.6 The rules that govern FINRA's day-to-day operations come from two sources:**

1. FINRA itself, through its internal rulemaking process; and

2. The SEC, which must review and approve all proposed rule changes before they take effect.

Under Section 19(b) of the Exchange Act (15 U.S.C. § 78s(b)), FINRA cannot enforce or modify any rule without the SEC's formal approval. The SEC also retains authority under Section 19(c) (15 U.S.C. § 78s(c)) to amend or abrogate FINRA rules independently if necessary to protect investors or the public interest.

**A.7** *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023)
- *Alpine Securities Corp. v. FINRA*, 61 F.4th 1093 (D.C. Cir. 2023)
- *Alan B. Rich v. Cantilo & Bennett, L.L.P.*, 492 S.W.3d 755 (Tex. App.—Austin 2016)
- *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430 (Tex. 2007)
- *Harvestons Securities, Inc. v. Narnia Investments, Ltd.*, No. 22-20424, 2023 WL 2390716 (5th Cir. Mar. 7, 2023)

---

[5] **15 U.S.C. § 78s(b)(1)** — No proposed rule change shall take effect unless approved by the Commission.
[6] **15 U.S.C. § 78f** — Exchanges are subject to their own registration and rulebook obligations; FINRA is not authorized to operate as an exchange.

**A.8** *Bankers Trust Co. v. Tex. & Pac. Ry.*, 241 U.S. 295 (1916)

- *Knop v. McMahan*, 872 F.2d 1132 (3d Cir. 1989)

- *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254 (3d Cir. 1977)

- *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001)

- *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 757 F.3d 481 (5th Cir. 2014)

- *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)

- *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238 (1943)

- *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82 (2d Cir. 1991)

- *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)

- *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)

- *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)

**A.9 Unauthorized Modifications to Corporate Actions:**

- FINRA Rule 6490 (Processing of Company-Related Actions)

- 15 U.S.C. § 78s(b)(1)

- 17 C.F.R. § 240.19b-4

- FINRA Daily List notices dated December 6 and 8, 2022

- Declaration of George Palikaras (Meta Materials CEO), confirming issuer was not consulted

- FINRA FAQ on MMTLP Halt (March 16, 2023)

A.10

**A.11 1. SEC Oversight of FINRA**  As a registered SRO, FINRA is legally accountable to the Securities and Exchange Commission, which serves as its federal regulator. The SEC has ultimate authority over FINRA's rulebook, regulatory conduct, and enforcement activity. The SEC reviews FINRA disciplinary decisions upon appeal and determines whether FINRA remains in compliance with the Securities Exchange Act. Under 15 U.S.C. § 78s(h), the SEC may: (1) suspend or revoke FINRA's registration as a national securities association; (2) censure or limit FINRA's regulatory functions; and (3) initiate enforcement actions against FINRA if it fails to carry out its responsibilities under the Act. Additionally, under 15 U.S.C. § 78s(b), FINRA must file all proposed rules with the SEC, and such rules are ineffective until formally approved. In this way, FINRA's authority is not autonomous; it is delegated and conditional, and its continued existence depends entirely on SEC oversight and compliance with federal securities law.

**A.11 2. FINRA Rule 6440 – Trading Halt Authority** "Trading and Quotation Halt in OTC Equity Securities," authorizes FINRA to direct member firms to halt trading in an OTC equity security if FINRA determines that an extraordinary event has occurred or is ongoing that has the potential to cause significant uncertainty in the trading, clearance, or settlement of the security, or to otherwise significantly impact the public interest or investor protection. Available at: https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440

**A.12  FINRA Rule 6490**, **"Processing of Company-Related Actions for OTC Equity Securities,"** governs the procedures for issuers to provide notice of corporate actions to FINRA and limits FINRA's authority to determine whether the request is complete and in compliance with applicable laws and regulations. Rule 6490 expressly states that FINRA "may not unilaterally alter the terms of a company-related action" submitted by an issuer. Available at: https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

<u>**A.13**</u> **Plaintiff notes that FINRA has never identified what specific platform MMTLP was trading on in December 2022.** Whether MMTLP was processed through the defunct OTC Bulletin Board, Pink Sheets, or another OTC quotation facility remains unclear. This uncertainty is material because Rule 6440, which FINRA invoked as justification for the U3 halt, applies only to OTC equity securities subject to FINRA's quotation oversight. Other plaintiffs, including Rolo, have documented FINRA's contradictory statements regarding the operational status of the OTC Bulletin Board following its announced closure in Regulatory Notice 21-38 (Nov. 8, 2021). Without trade confirmation data or discovery into FINRA's communications with DTCC and issuers, neither Plaintiff nor the Court can determine with certainty what rules governed MMTLP's trading, or whether Rule 6440 properly applied.

**A.14 Palikaras Affidavit and timeline**

1.  ***NBH Prospectus (S-1 filed Nov. 18, 2022):*** *Provided more than 30 days of advance notice of the spin-off.*
2.  ***Draddy Email (Dec. 5, 2022):*** *FINRA SVP Sam Draddy emailed three SEC staff, as well as Richard Boyle (Market Fraud), Jay Gibbon (Corporate Actions), Patti Casimates (Market Operations), and members of FINRA's General Counsel's office, stating that the "MMAT/MMTLP matter has now hit my Fraud team's radar screen" and confirming that FINRA was "blue-sheeting both MMAT and MMTLP as we speak."*
3.  ***Meta/NBH Escalation (Dec. 5, 2022):*** *On the same day, META and NBH executives emailed FINRA's executive team, escalating settlement concerns directly to CEO Robert Cook. Cook referred the matter to Ombudsman Sarah Gill, who arranged a Dec. 6 call with Millicent Banks, head of FINRA's Corporate Actions team.*
4.  ***FINRA–DTCC Call (Dec. 7, 2022):*** *FINRA and DTCC held a closed-door call from which META, NBH, and their counsel were excluded.*
5.  ***Daily List Tampering (Dec. 6–8, 2022):*** *FINRA initially posted a Dec. 14 pay date and "cancelled" status, then on Dec. 8 unilaterally revised the notice to delete the pay date and change "cancelled" to "deleted," without issuer authorization.*
6.  ***Halt (Dec. 9, 2022):*** *FINRA imposed a U3 halt declared to remain until deletion of the symbol. META and NBH were never informed that a halt was imminent; META had only asked for a freeze on Dec. 13.*

***Sources:*** *Palikaras Affidavit (Dkt. 65-6 Ex. 2, pp. 6 ¶22, 7 ¶27, 9 ¶¶31–32, 35); Daily List (Dkt. 65-7 Ex. 3) Draddy Email (Ex ##).*

**A.15 Judicial Recognition of DTCC and FINRA Roles in MMTLP Trading Halt**

- Rolo v. SEC explicitly states: "DTCC cleared and settled trades involving MMTLP, and the regulatory trading halt was imposed by FINRA on MMTLP in 2022." (See Rolo v. SEC, Case No. 3:24-cv-02053-VDO, Dkt. 48-1, p. 8, ¶2, D. Conn. 2025).

- Pease v. SEC further confirms DTCC's involvement explicitly: "DTCC cleared and settled trades involving MMTLP shares directly linked to the regulatory trading halt imposed by FINRA on MMTLP in 2022." (See Pease v. SEC, No. 7:24-cv-00322-DC-RCG, Dkt. 56, p. 8, ¶2, W.D. Tex. 2025).

**A.16 Judicial Recognition of SEC disavowing responsibility over the actions of FINRA**

- Rolo v Sec explicitly states: "Even if FINRA didn't meet it's obligations, SEC is not responsible for FINRA's actions." (See Rolo v. SEC, Case No. 3:24-cv-02053-VDO,

Dkt. 48-1, p. 8, ¶2, D. Conn. 2025).