

April 18, 2023

VIA EMAIL

Financial Industry Regulatory Authority
Attention: Corporate Actions Division

To Whom It May Concern:

Next Bridge Hydrocarbons, Inc. (the "Company") requests the assistance of the Financial Industry Regulatory Authority ("FINRA") to address a continuing public issue arising from the spin-off of the Company from Meta Materials, Inc. ("Meta"). Specifically, since the date of the spin-off, the Company has received numerous complaints and expressions of concern from a large number of Company stockholders regarding the following issues that we wanted to bring to FINRA's attention and ask for FINRA's cooperation:

1. Many of our stockholders believe that a significant number of uncovered short positions exist in the Company's shares of common stock (the "NBH Common Stock"), which shares were received in the spin-off by holders of Meta's Series A Non-Voting Preferred Stock traded under the OTC Markets ticker symbol MMTLP (the "MMTLP Stock"). One basis for this belief is due to the large number of short positions were disclosed by FINRA as of November 30, 2022, and some short holders as of that date and any other investors who sold the MMTLP Stock short thereafter might not have had an opportunity to close their positions due to FINRA's U-3 trading halt of the MMTLP Stock on December 9, 2022, before the record date of the spin-off (December 12, 2022). Our stockholders believe any uncovered short positions (i) materially affect the value of their NBH Common Stock and (ii) may impact the Company's corporate governance and stockholder votes.

2. Stockholders have complained that they believed that they would be able to trade the MMTLP Stock on December 9 and December 12, 2022 leading up to the December 12, 2022 record date of the spin-off. Because FINRA issued its U-3 trading halt prior to these trading days, stockholders did not have the opportunity to trade their MMTLP Stock on those two days. While FINRA addressed this in its March 16, 2023 publication addressing frequently asked question regarding the spin-off of the Company (the "FINRA FAQs"), the action of FINRA to eliminate these trading days is still a point of concern of many stockholders who believe that FINRA should have not issued the trading halt at all or informed brokerages and stockholders that FINRA intended to halt trading when FINRA made its announcement approving the spin-off.

Financial Industry Regulatory Authority
Attention: Corporate Actions Division
April 18, 2023

> 3. As noted in the FINRA FAQs, there was a coding issue with respect to the MMTLP Stock, FINRA incorrectly classified MMTLP Stock as the security of a non-SEC-reporting company and, as a result, incorrectly published its "Threshold Securities List" from October 22, 2021, through January 4, 2022, and from October 17, 2022, through December 13, 2022. Many of our stockholders have expressed frustration over their understanding that they made trading decisions based upon inaccurate information.

Stockholder complaints have grown in scope and intensity since the completion of the spin-off. Many of our stockholders have reported that their inability to sell some or all of their shares in MMTLP Stock due to the trading halt has brought substantial financial hardship to themselves and their families, and the Company is sympathetic to our stockholders who have found themselves in this position.

Some of our stockholders' anger or desperation has risen to such a level that a few stockholders have made threats against the Company's officers and directors, necessitating heightened security measures at our offices. Due to the complaints and questions of our stockholders, our officers and directors have been spending substantial time addressing these pressing stockholder issues, which has also required significant additional cost on legal advice and investor relations support. Further, the Company has been contacted by Congressman Pete Sessions' office to explore what steps we can take to alleviate the concerns of our stockholders. As we hope you can see, our Company is under substantial pressure to address or even explain these issues outside of our control, which we did not cause and which we have limited power and funds to tackle on behalf of, and explain to, our stockholders, regulators, and the investing public. With that aside, we want to make clear that we are ready and willing to be part of a solution for a situation of great concern to our stockholders, but the Company cannot provide this solution by itself. We need the help of FINRA to provide the relief that our stockholders are seeking.

While we appreciate FINRA's explanation of its decision to halt trading in MMTLP Stock in the FINRA FAQs (and, to be clear, this request is not intended to address that decision, only the concerns of current Company stockholders), the Company respectfully requests that FINRA now take action to cause FINRA member firms to close out and settle any remaining uncovered short positions originating in MMTLP Stock that are now in the NBH Common Stock to ensure fair and orderly ownership of the NBH Common Stock and for the protection of Company stockholders. We join our stockholders in this request in order to ensure fair and orderly ownership of the NBH Common Stock and for the protection of Company stockholders. The Company believes that this request is appropriate under FINRA Rule 6490 because such action is necessary for the protection of investors and the public interest and to maintain fair and orderly markets.

To facilitate the orderly unwind of existing short positions and to allow stockholders the opportunity to sell their shares of the NBH Common Stock on a public exchange, the Company is prepared to apply for quotation of the NBH Common Stock over-the-counter for a limited period of time and is willing to work with FINRA, the Securities and Exchange Commission, and OTC Markets to facilitate an orderly process to allow these settlements to occur. Our request will be for the NBH Common Stock to be traded for only two trading days, and the Company plans to

delist the NBH Common Stock after the completion of the second trading day. Our Company has contacted OTC Markets, which has indicated that we can apply to trade on an OTC Markets exchange for a limited period of time. The Company will need to go through their standard application process to do so, but we believe that we will meet its criteria to be traded. The Company may be willing to allow the NBH Common Stock to be traded for a longer period of time than two days if requested by FINRA, the Securities and Exchange Commission, or OTC Markets as part of the approval process.

As part of our application process to trade on the OTC Markets, we plan to arrange with the DTCC and FINRA that the CUSIP number and ticker symbol that will be assigned to the NBH Common Stock to allow for trading will be deleted after our delisting from trading on the OTC Markets, as it will be important that the NBH Common Stock is no longer publicly-traded. DTCC has indicated that it is willing to help the Company have the CUSIP deleted after our delisting. As was noted in the FINRA FAQs, the MMTLP Stock was applied to be traded on the OTC Markets not by our prior corporate parent Meta but by brokers. The Company's desire is to not be publicly-traded, and we intend to not allow the NBH Common Stock to continue to be traded other than for a very short, finite period of time.

At the time of the trading halt, 165,472,241 shares of MMTLP Stock had been issued and were tradeable. If we are to open a temporary trading window, it is paramount that only the 165,472,241 shares of NBH Common Stock that were distributed as a result of the spin-off are allowed to trade. We do not want to dilute our stockholders' opportunity during the trading period by allowing additional shares to trade. In order to allow this to occur, we note the following:

- The Company will not sell any new shares during the temporary trading period.

- The Company has filed of its certificate of merger with the Texas Secretary of State for the completion of its merger with Wolfbone Investments, LLC (the "Wolfbone Merger"), and the issuance of 56,297,638 shares of NBH Common Stock to the former owner of Wolfbone Investments, Gregory McCabe. Mr. McCabe has agreed to a six-month lock-up period for these 56,297,638 shares and will not be trading these shares during the proposed temporary trading period.

- The board members and management team of the Company were given stock options to acquire NBH Common Stock as consideration for taking our position with the Company and will be given additional stock options following the completion of the Wolfbone Merger. All board members, management and employees with stock options will agree not to exercise their stock options during the proposed temporary trading period. It is important to the management team and the Board that none of the shares of the NBH Common Stock related to our options are open to participate in the proposed temporary trading period. We do note that our board member Robert Lance Cook owned shares of MMTLP Stock and received shares of NBH Common Stock as a result of the spin-off, and Mr. Cook will not have restrictions on trading these shares during this proposed temporary trading period. None of NBH's employees or other board members own any NBH Common Stock other than their stock options.

Financial Industry Regulatory Authority
Attention: Corporate Actions Division
April 18, 2023

In order to execute this plan, the Company and FINRA must take action immediately. The Company is in the process of raising additional capital to continue its operations, which includes possibly issuing additional equity in the Company. If we do so by issuing additional equity to investors, then it may be difficult to ensure that only the 165,472,241 shares of NBH Common Stock issued in the spin-off will be tradeable in the proposed temporary trading window. We need FINRA's prompt cooperation in agreeing to cause FINRA member firms to close out and settle any remaining uncovered short positions originating in MMTLP Stock that are now in the NBH Common Stock.

If FINRA has a different preferred path to addressing the issues raised in this letter, the Company welcomes a discussion on these issues. We look forward to working with FINRA to resolve these issues in the best manner possible for our stockholders and for the Company.

Please do not hesitate to contact me at
at any time if you have any questions regarding this request.

Regards,

*[signature: Clifton DuBose Jr.]*

Clifton DuBose, Jr.
Chief Executive Officer
Next Bridge Hydrocarbons, Inc.

# FINRA
**Financial Industry Regulatory Authority**

**Robert L.D. Colby**
Executive Vice President
and Chief Legal Officer

June 7, 2023

Dear Mr. DuBose,

Following our phone conversation last Friday, I am writing to provide you with responses to the three follow-up questions you asked after reviewing my letter of May 19, 2023 (which responded to your letter of April 18, 2023).

First, you indicated that shareholders of Next Bridge Hydrocarbons ("NBH") have asked whether the company has a legal right to force investors who hold short positions in the company's stock to close their short positions. I can only address FINRA's authority in this regard; as indicated in my letter of May 19, FINRA has jurisdiction only over its broker-dealer members and their associated persons, not investors. Neither FINRA Rule 6490 nor any other FINRA or SEC rule provides authority for FINRA to force particular investors to close out short positions. Whether other entities, such as NBH, have the means of effectively compelling this outcome is a question of corporate law that FINRA cannot answer. NBH would need to seek the advice of its own counsel on that question.

Second, you asked whether NBH could have access to blue sheet data for trading activity in MMTLP in December 2022. FINRA does not voluntarily provide its confidential records, including blue sheet data, to third parties. As you may know, FINRA blue sheet data comprises transaction information obtained upon request by FINRA from clearing broker-dealers and is used solely for regulatory and law enforcement purposes. *See* Draddy Affidavit, *Khorassani v. FINRA*, No. 153819/2023 (N.Y. Sup. Ct) [Dkt. No. 37], ¶¶ 8, 15. This data contains very sensitive trading information and highly confidential personal, financial, and other identifying information for individuals and other investors, much of which is subject to various data privacy laws. *Id.* ¶¶ 11-12. Indeed, FINRA restricts internal access to blue sheet data to its own examination and investigation teams and does not widely share such data even among its own staff. Consequently, FINRA is unable to provide blue sheet information for MMTLP trading to NBH.

Finally, you asked whether FINRA is reviewing the trading activity in MMTLP for irregular trades or buy/sell imbalances. In addition to the automated surveillance patterns FINRA routinely runs to identify potentially violative trading, FINRA takes any complaints or regulatory tips regarding potential trading violations seriously. FINRA focuses keen attention on identifying and pursuing trading activity that may violate FINRA rules, the federal securities laws or the rules and regulations thereunder (or referring this activity to other regulatory agencies, when the parties are not FINRA members or associated persons). In this case, although I cannot provide details on specific areas of inquiry, I would note our recent statement in *Khorassani* that FINRA "has initiated a number of investigations related to MMTLP, some of which remain open and ongoing." *See* Dumont Affidavit, *Khorassani v. FINRA*, No. 153819/2023 (N.Y. Sup. Ct.) [Dkt. No. 38], ¶ 11.



Thank you for sharing your questions in our call, and I hope you find this letter responsive.

Very truly yours,

Robert Colby
Executive Vice President
and Chief Legal officer

Case 7:24-cv-00321-DC-RCG    Document 69-45    Filed 08/22/25    Page 7 of 18



VIA EMAIL AND FEDERAL EXPRESS

November 21, 2023

Robert Colby
Executive Vice President
and Chief Legal Officer

Mr. Colby:

I write on behalf of Next Bridge Hydrocarbons, Inc. ("Next Bridge" or the "Company"), which as you know, is a privately held company that was a spin-off from Meta Materials, Inc. ("Meta Materials").[1]

Next Bridge appreciates that FINRA has continued to address the issues that followed FINRA's halt of trading in Meta Materials' Preferred Series A shares (OTC: MMTLP) on December 9, 2022.

We have read FINRA's November 6, 2023 Supplemental FAQ: MMTLP Corporate Action Trading Halt,[2] including FINRA's estimate "that there was an aggregate short interest position in MMTLP in accounts held at broker-dealers as of December 12[] of approximately 2.65 million shares out of 165.47 million total shares outstanding…."  Next Bridge has received information from financial firms since the spin-off that suggests that the number of short positions may be significantly higher than FINRA's estimated 2.65 million.

Despite FINRA's FAQs, investors continue to express concerns to Next Bridge concerning unresolved issues from the trading halt, including the lack of clarity around potentially unsettled positions.  The ongoing uncertainty risks disrupting Next Bridge's corporate governance and creates a continuing burden on the Company's resources.

---

[1] *See* April 18, 2023, May 19, 2013, and June 7, 2023 letters between you and Next Bridge Hydrocarbons, Inc.'s Chief Executive Officer Clifton Dubose, Jr. (https://www.finra.org/media-center/newsreleases/2023/finra-correspondence-next-bridge-hydrocarbons-april-june-2023).
[2] https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-action-and-trading-halt ("November 6 Supplemental FAQ").



Accordingly, Next Bridge respectfully renews its request that FINRA continue to investigate the open short positions in MMTLP. Because we understand from prior correspondence that FINRA lacks the ability to order the close-out of all existing short positions, we respectfully request that FINRA take steps to facilitate those close-outs.

Please let me know if you have any questions or need additional information.

Sincerely,

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons



Robert L.D. Colby
Executive Vice President
and Chief Legal Officer

December 7, 2023

**VIA EMAIL (**▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**)**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons, Inc.
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮

Dear Mr. McCabe:

I am writing in response to your letter dated November 21, 2023, in which you raise several issues concerning Next Bridge Hydrocarbons, Inc. (NBH) common stock that was distributed last December to holders of Meta Materials, Inc. (Meta Materials) Series A Preferred Shares (formerly identified by the symbol "MMTLP").  Your letter states that investors have continued to express concerns regarding "unresolved issues from the trading halt, including the lack of clarity around potentially unsettled positions."  You also state that NBH has "received information from financial firms since the spin-off that suggests that the number of short positions may be significantly higher than FINRA's estimated 2.65 million."  Finally, you request that "FINRA take steps to facilitate … close-outs [of all existing short positions]."  I address these issues below.

As you know, I previously corresponded with NBH regarding its common stock.[1]  At that time, I reiterated the clearance and settlement concerns that arose due to the structure and timing of the NBH / MMTLP corporate action that led to the trading halt.[2]  Because NBH chose not to obtain a CUSIP identifier or DTC-eligibility for its common stock, the structure of the corporate action did not provide for continuity in the clearance and

---

[1]  *See* Letter from Robert Colby, Executive Vice President and Chief Legal Officer, FINRA, to Clifton DuBose, Jr, Chief Executive Officer, Next Bridge Hydrocarbons, Inc, dated May 19, 2023 ("May 19th Letter"), and Letter from Robert Colby, Executive Vice President and Chief Legal Officer, FINRA, to Clifton DuBose, Jr, Chief Executive Officer, Next Bridge Hydrocarbons, Inc, dated June 7, 2023 ("June 7th Letter").

[2]  *See* May 19th Letter.

**Investor protection. Market integrity.**                                                              www.finra.org

settlement process for the distribution of the NBH shares. As we explained,[3] FINRA halted trading to address the settlement uncertainty created by the structure and timing of the NBH / MMTLP corporate action and has since taken several steps to address the investor concerns that followed.

As we approach the one-year anniversary of your corporate action, NBH has yet to obtain a CUSIP identifier for its common stock and the shares still are not DTC-eligible; thus, it continues to be very difficult for holders to trade NBH (although NBH's common stock is widely held).[4] If NBH were to take steps to facilitate secondary market trading and the efficient clearance and settlement of transactions in NBH common stock, some of the issues raised in your letter would be addressed. For example, you state that there are concerns regarding "potentially unsettled positions." To the extent these concerns exist, clearing transactions in NBH common stock through SEC-registered clearing agencies (*i.e.*, serving as a central counterparty and a central securities depository) would help settle positions.

You also state that you have received information from "financial firms" suggesting that the number of short positions in NBH is significantly different than FINRA's estimate of approximately 2.65 million shares (as provided in FINRA's Supplemental Frequently Asked Questions).[5] We would like to review the information you received to understand why it is inconsistent with our estimate. We note that, if NBH were to obtain a CUSIP for its common stock and a FINRA member obtained a symbol from FINRA, FINRA members could report short interest in NBH common stock, which would be made public by FINRA.[6]

Finally, although your letter states that NBH understands from previous correspondence that FINRA cannot order the close out of all existing short positions, you request that FINRA "take steps to facilitate" close outs of open short positions. As stated previously,

---

[3]   *See* FAQ: MMTLP Corporate Action and Trading Halt (March 16, 2023), available at https://www.finra.org/investors/insights/FAQ-MMTLP-corporate-action-and-trading-halt ("March 16th FAQ"); and Supplemental FAQ: MMTLP Corporate Action and Trading Halt (November 06, 2023), available at https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-action-and-trading-halt ("November 6th FAQ").

[4]   In your letter, you describe NBH as a "privately held company." However, NBH is not "privately held" by any conventional definition of that term (*e.g.*, NBH shares were not offered through an unregistered private placement of securities). Instead, the offering of NBH common stock was filed on a Form S-1 registration statement with the SEC, and the NBH prospectus states that, following the spin-off, NBH would be a "public reporting company."

[5]   *See* November 6th FAQ.

[6]   *See* May 19th Letter.

2

FINRA has jurisdiction only over its members and their associated persons, not investors; and neither FINRA nor SEC rules provide authority for FINRA to require particular investors to close out short positions. Therefore, your requested action is outside the scope of FINRA's authority.[7] However, we would again note that NBH can take steps to facilitate a market for its common stock where shares could be efficiently purchased and transactions settled to close out short positions.

We would be glad to discuss with you in more detail the steps that NBH could take to facilitate secondary market trading in, and clearance and settlement of, NBH common stock.[8] We share your apparent desire for a fair, open, and transparent market for NBH common stock.

Very truly yours,

Robert Colby

---

[7] *See Id*. and June 7th Letter.

[8] *See Id*.

3



VIA EMAIL AND FEDERAL EXPRESS

January 18, 2024

Mr. Robert Colby
Executive Vice President
and Chief Legal Officer

Mr. Colby:

I write on behalf of Next Bridge Hydrocarbons, Inc. ("Next Bridge" or the "Company") in response to your letter dated December 7, 2023 ("FINRA's Response Letter"). This continues our correspondence related to FINRA's November 6, 2023 Supplemental FAQ: MMTLP Corporate Action Trading Halt.[1]

In FINRA's Response Letter, FINRA noted that "NBH has yet to obtain a CUSIP identifier for its common stock and the shares are not DTC-eligible, thus, it continues to be very difficult for holders to trade NBH (although NBH's common stock is widely held)." At the time of Next Bridge's spin-off from Meta Materials, Inc. ("Meta Materials"), Next Bridge did not plan to have publicly traded securities. Indeed, the Prospectus for that transaction disclosed that Next Bridge common stock "is not and will not be publicly traded and will not be eligible for electronic transfer through the Depository Trust Company book-entry system or any other established clearing corporation."[2]

If FINRA is interested in receiving the information we have regarding the number of short positions being held in Next Bridge's common stock, I am happy to schedule a call at a mutually convenient time for you and your staff to discuss.

Please let me know if you have any questions or need additional information.

Sincerely,

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons, Inc.

---

[1] https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-action-and-trading-halt ("November 6 Supplemental FAQ").
[2] Prospectus of Next Bridge Hydrocarbons, Inc. dated November 18, 2023 on page 1 at
https://www.sec.gov/Archives/edgar/data/1936756/000119312522292114/d302576d424b4.htm#toc302576_3.



Robert L.D. Colby
Executive Vice President
and Chief Legal Officer

January 19, 2024

**VIA EMAIL (**█████████████**)**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons, Inc.
████████████████████
████████████████

Dear Mr. McCabe:

I received your letter of January 18, 2024. FINRA would welcome the opportunity to review the information you have regarding the number of short positions in Next Bridge Hydrocarbons, Inc's common stock, so we can discuss it with you on an informed basis.

Please send that information to us by email or return correspondence. After we have reviewed the information, we can schedule a meeting to meaningfully discuss the matter.

Very truly yours,

*Robert Colby* (signature)

Robert Colby

Investor protection. Market integrity.                                          www.finra.org



January 23, 2024

Mr. Robert Colby
Executive Vice President
and Chief Legal Officer

Mr. Colby,
Next Bridge Hydrocarbons has been gathering a significant amount of data regarding the imbalance in our shareholder ledger. As stated in our press release, the very early results of our data gathering suggests a number considerably higher than the 2.65mm shares of aggregate short interest stated in FINRA's most recent FAQ.

Per your request, the investment banking firm representing Next Bridge on our proposed S-1 has received several inbound calls from financial institutions needing to buy our shares to get their books in balance. One of the inquiries was of a size so large that I requested to be on a call with this group. From this call, I now have knowledge of an admitted shareholder imbalance from one single financial institution that is multiples more that 2.65mm shares. We continue to collect additional data regarding imbalances from multiple sources.

There is a significant disconnect between our growing data and FINRA's stated number of 2.65mm shares of outstanding short interest. I believe this highlights the need for a more exhaustive review of the total shares in all accounts and through all categories of security, long or short, onshore or offshore, and by parties registered with FINRA or not. The ultimate goal of this investigation is to make sure that every shareholder who purchased a share of MMTLP has the corresponding one-for-one share of Next Bridge Hydrocarbons. Furthermore, any party that sold shares short of MMTLP, or was short Torchlight Energy and carried that short position through the merger with Meta Materials, and, for whatever reason, has not provided the corresponding sold share to the rightful owner, needs to consummate the final step of the "short" transaction, and purchase those shares they sold without a borrow and deliver them to the rightful owners.



It has been over 13 months since the U-3 Halt and the anger and frustration of the Next Bridge retail community has only grown. I believe we are at a critical juncture to solve this problem. All relevant parties need to have a meeting and determine the best means to get a complete and accurate share count, as well as a plan of action to address this serious problem of shares sold, yet never delivered, that is manifestly unfair to the purchaser and to our company. Instead of a phone call between us, I strongly suggest an in-person meeting as soon as possible with appropriate members of FINRA, the SEC, and Next Bridge Hydrocarbons. This proposed meeting will give us our best opportunity to address these issues that is fair and causes as little disruption as possible to the markets.

Please let me know your thoughts. Thank you again for your time.

Sincerely,

*[signature]*

Greg McCabe
Chairman and Chief Executive Officer
Next Bridge Hydrocarbons, Inc.



Robert L.D. Colby
Executive Vice President
and Chief Legal Officer

January 30, 2024

**VIA EMAIL (**█████████████████**)**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons, Inc.
████████████████████████
████████████████

Dear Mr. McCabe:

I received your letter of January 23, 2024, in which you request an in-person meeting with members of FINRA, the Securities and Exchange Commission (SEC), and Next Bridge Hydrocarbons. FINRA staff welcomes the opportunity to meet with you to understand your perspective on the nature and extent of short positions in Next Bridge Hydrocarbons common stock.

For a constructive conversation at our meeting, please provide us in advance any specific information you have regarding the names of the financial institutions referenced in your letter, and the size and location of the referenced short positions. We will then analyze the information and compare it to our estimate of the aggregate short interest position in MMTLP shares in accounts held at FINRA-member broker-dealers. Without this information it will be difficult to have a productive meeting.

Please provide me with a range of dates that you would be available for a meeting, preferably in Washington, DC. We are unable to speak to whether the SEC is available to join us; you should reach out to them directly to discuss your request.

Very truly yours,

*Robert Colby* (signature)

Robert Colby

**Investor protection. Market integrity.**                                                                                          www.finra.org




February 5, 2024

Mr. Robert Colby
Executive Vice President
and Chief Legal Officer

Mr. Colby,

Thank you for your response dated January 30, 2024. I believe it will be most effective for the SEC to be represented at my proposed in-person meeting with you. I have sent two emails to all five commissioners at the SEC and I have yet to receive a response. I will attempt to reach out to them again this week. Any guidance you might have as to the correct person to be speaking to at the SEC about MMTLP and Next Bridge Hydrocarbons would be greatly appreciated.

Sincerely,

Greg McCabe
Chairman and Chief Executive Officer
Next Bridge Hydrocarbons, Inc.



Robert L.D. Colby
Executive Vice President
and Chief Legal Officer

February 5, 2024

**VIA EMAIL (**█████████████**)**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons, Inc.
█████████████████
█████████

Dear Mr. McCabe,

In your letter dated February 5, 2024, you expressed the view that it would be most effective if the Securities and Exchange Commission were represented at the meeting you requested with the SEC and FINRA. To that end, you asked for suggestions regarding whom to speak to at the SEC about MMTLP and Next Bridge Hydrocarbons.

My best suggestion for a contact person at the SEC would be ████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████.

I hope this information is helpful.

Sincerely,

*Robert Colby*

Robert Colby