**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WESTERN TEXAS**
**MIDLAND/ODESSA DIVISION**

```
*****************************************************
DANIELLE SPEARS                                 *
Plaintiff                                       *
                                                *   Docket Number: 7:24-cv-321
v.                                              *
                                                *
NEXT BRIDGE HYDROCARBONS, INC.                  *   ORAL ARGUMENTS
GREGORY MCCABE, JOHN BRDA                        *      REQUESTED
THE SECURITIES & EXCHANGE COMMISSION            *
FINANCIAL INDUSTRY REGULATORY AUTHORITY         *
JANE DOE 1-20, JOHN DO 1-20                      *
Defendant                                       *
                                                *
*****************************************************
```

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO NEXT BRIDGE HYDROCARBONS MTD**

---

I. INTRODUCTION………………………………………………………... 1
II. LEGAL STANDARDS FOR DENYING A MOTION TO DISMISS...................... 1
    A. Rule 12(b)(6) Standard
    B. Rule 9(b) Standard for Pleading Fraud
    C. PSLRA Heightened Requirements
    D. Standard Applied Here
III. ARTICLE III AND STATUTORY STANDING…………………………… 2
    A. Article III Standing
    B. Statutory Standing under Section 10(b)
    C. Standing for State-Law Claims
IV. STATEMENT OF FACTS……………………………………………… 4
    A. Insider Acquisition and Reporting of META Loans
    B. Capital Structure: Share Dilution, Preferred Shares, and Consulting Compensation
    C. SEC Investigations, NBH and META 8-K Disclosures
    D. S-1/A Filings, Press Releases, and Rule 6490 Omission
    E. Books & Records Demands and Non-Response
    F. Omission of Shareholder Lawsuits in 2025 10-K
V. COUNT I: SECTION 10(b) AND RULE 10b-5………………………….. 6
    A. Material Misstatements and Omissions

    **B.  "In Connection With" the Purchase or Sale of Securities**

    **C.  Reliance and Loss Causation**

    **D.  Scienter**

    **E.  Rule 9(b) and PSLRA Compliance**

    **F.  Conclusion on Count I**

**VI. COUNT III: NEGLIGENCE…………………………………….. 8**

    **A.  Duty and Breach in Shareholder Communications**

    **B.   Internal Controls and Oversight Failures**

    **C.  Causation and Damages**

    **D.  Conclusion on Count III**

**VII. COUNT VI: FAILURE TO RESOLVE THE FINRA HALT…………………… 10**

    **A.  Post-Halt Omissions and Inducements**

    **B.  Misleading Silence and Press Positioning**

    **C.  Rule 9(b), PSLRA, and Scienter**

    **D.  Conclusion on Count VI**

**VIII. COUNT V: UNJUST ENRICHMENT……………………………………… 13**

    **A.  Insider Debt Economics and Retention of Benefits**

    **B.  Failure to Pass Through Value to Shareholders**

    **C.  Dilution and Asset Misreporting**

    **D.  Texas Standard Satisfied**

    **E.  Conclusion on Count V**

**IX. COUNT VI: CONSPIRACY TO COMMIT FRAUD…………………………….. 14**

    **A.   Insider Coordination and Messaging**

    **B.  Legal Elements and Application**

    **C.  Conclusion on Count VI**

**X. COUNT VIII: EMOTIONAL DISTRESS (IF RETAINED)……………………… 16**

    **A.  Timeline of Harassment and Targeted Attacks**

    **B.  Foreseeability and Alleged NBH Involvement**

    **C.  Legal Support**

    **D.  Conclusion on Count VIII**

**XI. CONCLUSION……………………………………………… 18**

**XII. PRAYER FOR RELIEF……………………………………………… 20**

**AUTHORITIES**

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, 152–54 (1972)………… 3

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988)……………………………………… 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)............................................ 2

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975)..................... 3

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 540 F. Supp. 2d 800,

813 (S.D. Tex. 2007)............................................................................................... 2

*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)... 14

*Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)................................................ 15

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).............. 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)............................... 2

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011)............................ 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)................ 2

**STATUTES**

Tex. Bus. Org. Code § 21.218……………………………………………… 6

## I. INTRODUCTION

This case arises from a sustained pattern of financial misrepresentation, insider self-dealing, and shareholder inducement by Defendant Next Bridge Hydrocarbons, Inc. ("NBH"), led by CEO Gregory McCabe ("McCabe").

Plaintiff alleges that NBH reported inflated liabilities despite its CEO having acquired and settled insider debt at a steep discount.

Simultaneously, NBH engaged in insider-friendly transactions issuing dilutive shares, authorizing preferred stock, and compensating undisclosed consultants who shaped investor perception online (SAC ¶¶ 30–34, 82–97). While publicly projecting progress, NBH withheld the SEC's rejection of its S-1/A and the need for restatement of financials (SAC ¶¶ 66–74, 83–88). It also failed to disclose the loss of its primary asset and omitted pending litigation in its September 15, 2025 10-K (SAC ¶¶ 75–78, 93).

Plaintiff alleges she was induced to hold shares based on a narrative promoted by McCabe, John Brda ("Brda"), and affiliated actors ("Doe Defendants") of monetized oil assets and future liquidity (SAC ¶¶ 10, 13–27, 30–34). This narrative is corroborated by public filings, transaction records, press releases, and allegations detailed in the SAC.

These allegations meet the pleading standards. NBH's motion should be denied.

## II. LEGAL STANDARDS FOR DENYING A MOTION TO DISMISS

### A. Rule 12(b)(6) Standard

A complaint survives Rule 12(b)(6) if it plausibly alleges a claim and supports a reasonable expectation that discovery will yield evidence. See *Twombly*, *Tellabs*, *Matrixx*.

**B. Rule 9(b) Standard for Pleading Fraud**

Rule 9(b) requires Plaintiffs to plead fraud with particularity, but not every detail, only enough to give notice. See *In re Enron*, 540 F. Supp. 2d at 813.

**C. PSLRA Heightened Requirements**

The PSLRA requires Plaintiffs to identify specific misstatements, explain their misleading nature, and allege facts supporting a strong inference of scienter via motive or recklessness. See *Tellabs*, 551 U.S. at 321–23.

**D. Standard Applied Here**

Plaintiff satisfies all applicable standards with clear factual allegations and strong inferences of scienter. Dismissal is unwarranted.

**III. ARTICLE III AND STATUTORY STANDING**

**A. Article III Standing**

Plaintiff alleges economic harm caused by NBH's misleading disclosures and omissions traceable to the challenged conduct and redressable by the Court. This satisfies Article III. See *Lujan*, 504 U.S. at 560–61.

**B. Statutory Standing Under Section 10(b)**

3

To assert a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, a plaintiff must be a purchaser or seller of a security. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975). Plaintiff is a holder of NBH common shares received in connection with the MMTLP spin-off from Meta Materials, Inc. ("META"). This satisfies the purchaser requirement, and courts recognize that continued holding of securities due to fraudulently induced inducements, including misleading omissions, also satisfies transactional standing. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 152–54 (1972); *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

Plaintiff intended to evaluate price action on December 9 and 12, 2022, before deciding whether to sell her MMTLP shares. However, FINRA halted trading on December 9, cutting off that opportunity. Plaintiff's holding decision was based on inducements made before the spin-out, including public statements by former Torchlight CEO Brda, then a consultant with META, who claimed the company was preparing to sell the Orogrande asset to a large-cap acquirer. This was reinforced by social media influencers whom Plaintiff believes were tied to Brda, McCabe, or NBH. These representations were echoed in TRCH and NBH's S-1 filings, which overstated the value of the Orogrande lease, later lost by NBH. Following the spin-out, NBH's silence despite SEC-mandated restatements and material omissions in its public filings furthered the deception. NBH's adoption and concealment of the prior narrative contributed to Plaintiff's continued holding, satisfying the "in connection with" element under Rule 10b-5.

## C. Standing for State-Law Claims

Plaintiff has standing to assert state-law claims including negligence and unjust enrichment based on:

- Economic loss from NBH's concealment of insider debt forgiveness,

- Misleading equity issuances and omissions about related-party transactions, and

- False or incomplete disclosures affecting shareholder value.

- In addition, Plaintiff alleges personal injury including emotional distress caused by harassment from unknown Doe defendants, which is not alleged in other shareholder suits. These claims are individualized and based on specific reliance and conduct directed at Plaintiff personally. Texas law permits such direct suits where the harm is not purely derivative of the company's injury.

## IV. STATEMENT OF FACTS

### A. Insider Acquisition and Reporting of META Loans

In 2021–2022, META loaned Oilco/NBH $20 million, $15M secured and $5M unsecured (SAC ¶¶ 42–44). In August 2023, META sold the loans to McCabe for $6M, with a stock purchase agreement he largely defaulted on. The deal was later settled for $700K in cash and stock, meaning McCabe acquired $23.86M in liabilities for only $7.3M (SAC ¶ 46). Yet NBH continued reporting the full $25.13M face value on its books as of June 30, 2024, misleading investors about its financial condition (SAC ¶¶ 47–49).

### B. Capital Structure: Share Dilution, Preferred Shares, and Consulting Compensation

As of August 2, 2024, NBH had issued 251.9 million common shares (of 500 million authorized) and held 50 million blank-check preferred shares (SAC ¶ 28).

NBH continued reporting large insider-related debts: $25M to McCabe (including META-originated notes and related-party instruments), plus $2M in CAPCO financing backed by NBH shares (SAC ¶¶ 48–54).

On the same day as the CAPCO deal, NBH compensated Clinton A. Plant with $10,000/month and 500,000 shares, and later issued 100,000 more shares to an unnamed consultant (SAC ¶¶ 30–32).

Plaintiff alleges Plant promoted misleading narratives online using the "CPLANT" account, including a falsified oil report. NBH did not disavow this conduct. Plaintiff believes the second consultant engaged in similar efforts to influence investors and suppress litigation (SAC ¶¶ 82–89).

These omissions and related-party transactions support claims for fraudulent concealment and unjust enrichment (SAC ¶¶ 90–91).

**C. SEC Investigations, NBH and META 8-K Disclosures**

NBH's March 21, 2025 Form 8-K admitted errors in asset valuations and equity allocations (SAC ¶¶ 66–67).

 META's July 20, 2023 Form 8-K disclosed an SEC investigation into Brda and the TRCH/MMTLP merger (SAC ¶ 68).

 NBH failed to disclose these developments until compelled and omitted mention of ongoing shareholder lawsuits, including this one, in its September 15, 2025 10-K—violating its disclosure obligations under Regulation S-K, Item 103 (SAC ¶¶ 69, 93–94).

**D. S-1/A Filings, Press Releases, and Rule 6490 Omission**

In February 2024, NBH issued press releases suggesting its S-1/A was progressing, despite the SEC's request for withdrawal and pending restatements (SAC ¶¶ 83–85).

The S-1/A omitted the FINRA U3 halt (Dec. 9, 2022) and failed to disclose NBH's Rule 6490 deficiencies, including omission of T+2 settlement language. These omissions misled investors about tradability and monetization potential (SAC ¶¶ 70–74).

**E. Books & Records Demands and Non-Response**

In November 2024, Plaintiff served a formal records demand under Tex. Bus. Org. Code § 21.218, which NBH ignored despite McCabe accepting service (SAC ¶ 52; Ex. K).

A follow-up in August 2025 prompted McCabe to instruct counsel to "ignore it" and delete the email (SAC ¶¶ 95–96). These facts support an inference of willful concealment and potential spoliation (SAC ¶ 97).

**V. COUNT I – SECURITIES FRAUD 10(b) AND RULE 10b-5**

**A. Material Misstatements and Omissions**

NBH failed to disclose that McCabe acquired META-originated loans for just $7.3M while continuing to report the full $25.13M face value (SAC ¶¶ 42–49).

It also concealed paid consultant arrangements (SAC ¶¶ 30–34), share dilution (SAC ¶¶ 28–29), SEC-mandated restatements (SAC ¶¶ 66–67, 83–85), pending litigation (SAC ¶¶ 93–94), and the loss of its core asset (SAC ¶¶ 75–78).

**B. "In Connection With" the Purchase or Sale of Securities**

As detailed in SAC ¶¶ 13–22, Plaintiff held MMTLP shares into the halt based on statements from Brda, stock promoting influencers, and the S-1 narrative that NBH would provide value through oil-linked assets or registration. The inducement was direct, specific, and linked to a tradable security. Even post-spin, NBH's silence and selective disclosure perpetuated the fraud.

**C. Reliance and Loss Causation**

Plaintiff relied on misleading statements and omissions by NBH, Brda, and affiliated actors (SAC ¶¶ 22–27, 90–91). The halt on December 9, 2022, trapped Plaintiff in a worthless, illiquid position. Absent the misstatements by Brda, META, and affiliated actors later tied to NBH, Plaintiff would not have held her MMTLP shares into the halt.

**D. Scienter**

The totality of the conduct supports a strong inference of scienter under the PSLRA. McCabe was the counterparty to the insider loan transaction (SAC ¶¶ 42–45). NBH failed to disclose shareholder litigation (SAC ¶¶ 93–94), ignored books and records demands (SAC ¶¶ 95–96), and allowed false oil reports and misleading press to persist (SAC ¶¶ 86–89). These reflect intent or reckless disregard.

**E. Rule 9(b) and PSLRA Compliance**

Plaintiff has pled with particularity:

- **Who:** NBH and McCabe (SAC ¶¶ 30–34, 42–48)
- **What:** Omission of insider economics, regulatory failure, and capital manipulation

- **When:** August 2023 through NBH's 2025 10-K (SAC ¶¶ 47–49, 66–67, 93–94)

- **Where:** NBH filings, press releases, S-1, and silence

- **How:** Omitting facts that a reasonable investor would consider material

The SAC pleads facts sufficient to meet the PSLRA's heightened scienter and materiality requirements.

## F. Conclusion on Count I

Plaintiff has adequately alleged material misstatements, inducement, reliance, and scienter as required under Rule 10b-5. NBH's motion to dismiss Count I should be denied.

## VI. COUNT III: NEGLIGENCE

Plaintiff asserts that NBH breached its duty of care by failing to provide accurate, complete, and non-misleading information to shareholders, and by neglecting internal governance practices necessary to prevent misrepresentations and misuse of corporate power.

### A. Negligent Disclosures to Shareholders

NBH owed shareholders a duty of care in public communications, including filings, press releases, S-1 materials, and online outreach. That duty required accurate disclosure of financials, capital structure, insider deals, and asset status.

NBH breached that duty by:

- Reporting insider-acquired loans at full face despite a $7.3M settlement (SAC ¶¶ 42–48);

- Falsely stating "obligations remain unchanged" without disclosing McCabe's discount (SAC ¶ 47);

- Hiding dilution from 165.5M to 251.9M shares and creation of 50M preferred shares (SAC ¶¶ 28–29);

- Concealing paid consultants tied to litigation dissuasion and misinformation (SAC ¶¶ 30–34, 82–89);

- Promoting the S-1/A while omitting the SEC's rejection and withdrawal demand (SAC ¶¶ 83–85);

- Failing to disclose loss of the University Lands lease (SAC ¶¶ 75–78).

     These failures misled Plaintiff and other investors regarding NBH's financial condition, obligations, and asset legitimacy.

**B. Negligent Internal Controls and Oversight**

NBH failed to maintain proper governance and compliance systems, enabling insider enrichment and risk concealment. Specifically, NBH:

- Lacked reliable financial reporting protocols, leading to SEC-mandated restatements (SAC ¶¶ 66–67);

- Let its CEO acquire and restructure debt without board approval or disclosure (SAC ¶¶ 50–51);

- Approved consultant deals without defined roles, results, or disclosures (SAC ¶¶ 30–34);

- Ignored formal records requests in violation of Texas BOC § 21.218 (SAC ¶¶ 52, 95–96; Ex. K);

- Issued undisclosed equity and manipulated its capital structure to benefit insiders (SAC ¶¶ 28–29, 49–51).

These governance failures foreseeably harmed shareholders.

## C. **Proximate Cause and Damages**

Plaintiff relied on NBH's omissions and misstatements in deciding to hold shares.

Accurate disclosure of insider financing, dilution, asset risk, and registration issues would

have altered that decision.

These failures caused Plaintiff to hold illiquid, devalued equity and miss exit

opportunities. She seeks recovery for:

- Share value loss;
- Liquidity loss from inducement to hold;
- Denied access to corporate records;
- Out-of-pocket costs tied to false disclosures.

NBH's negligence directly and foreseeably caused economic harm.

**Conclusion on Count III:**

Based on the allegations above and the facts pled in the Second Amended Complaint, Plaintiff

has sufficiently stated a claim for negligence under Texas law. NBH's motion to dismiss Count

III should be denied.

## VII. COUNT VI: FAILURE TO RESOLVE THE FINRA U3 HALT

### A. Material Omissions and Half-Truths Post-Halt

After the December 9, 2022 FINRA U3 halt, NBH had a duty to clarify its role, legal status, and

investor outlook. Instead, it remained silent about:

- The halt's regulatory basis (SAC ¶¶ 70–71);

- Rule 6490 compliance failures, including missing T+2 settlement language (SAC ¶¶ 72–73);

- Ineligibility for DTC and SEC registration (SAC ¶ 74); and

- The high likelihood shares would remain permanently illiquid (SAC ¶¶ 66–67).

Rather than acknowledge these facts, NBH issued no corrective disclosures and ignored investor concerns, prolonging confusion and false hopes of recovery (SAC ¶¶ 83–85, 90–91).

**B. Post-Halt Promises of Newco/AST Share Recovery**

NBH deepened confusion by promoting an alternative narrative that value would return via "Newco," AST transfers, or future registration:

- Via NBH press releases (SAC ¶¶ 83–85);

- Through affiliated and compensated individuals (SAC ¶¶ 30–34, 86–89);

- In withdrawn S-1/A filings omitting known SEC registration barriers (SAC ¶¶ 66–67);

- And in FAQs suggesting long-term holding without warning of legal and structural dead ends (SAC ¶¶ 70–71, 74).

These messages were misleading given:

- The SEC's withdrawal order (SAC ¶¶ 83–85);

- NBH's financial restatements (SAC ¶¶ 66–67);

- The loss of the Orogrande lease (SAC ¶¶ 75–78);

- And NBH's failure to offer any trading or monetization plan (SAC ¶¶ 90–91).

**C. Scienter and Misleading Silence**

NBH's omissions were not accidental. Despite knowing:

- The SEC's rejection of its S-1/A;

- The lease termination (SAC ¶ 75);

- Regulatory barriers to trading (SAC ¶¶ 70–74);

- And the lack of a liquidity path—

It allowed consultants and corporate messaging to imply relief was coming. This pattern of silence and selective optimism suggests intent to mislead or reckless disregard for shareholder rights (SAC ¶¶ 83–85, 86–89, 93–94).

**D. Rule 9(b) and PSLRA Compliance**

Plaintiff alleges with particularity:

- **Who:** NBH and its control persons, including McCabe (SAC ¶¶ 30–34, 86–89);

- **What:** Withholding material facts about tradability, assets, and regulatory denials (SAC ¶¶ 70–74, 83–85);

- **When:** From the December 2022 halt through 2025 (SAC ¶¶ 66–67, 83–85);

- **Where:** NBH press releases, filings, FAQs, and silence toward shareholder inquiries (SAC ¶¶ 83–89);

- **How:** Promoting future recovery while concealing known barriers.

Under the PSLRA, Plaintiff also alleges a strong inference of scienter based on:

- McCabe's control over NBH disclosures;

- Promotional conduct by paid consultants (SAC ¶¶ 86–89);

- False statements about S-1/A progress (SAC ¶¶ 83–85);

- And failure to disclose litigation (SAC ¶¶ 93–94).

These allegations meet the heightened standards of Rule 9(b) and the PSLRA.

**Conclusion on Count VI**

Plaintiff has adequately alleged post-halt omissions and inducement under Rule 10b-5. NBH's

motion to dismiss Count VI should be denied.

**VIII. COUNT V: UNJUST ENRICHMENT**

**A. Retention of full-face debt treatment after discounted insider acquisition**

NBH continued to report META-originated loans at full face value even after CEO McCabe

acquired them at a steep discount (SAC ¶¶ 42–48). Public filings stated the obligations were

"unchanged," obscuring the insider deal and misleading shareholders about NBH's solvency and

capital structure (SAC ¶¶ 45–49).

**B. Failure to pass through economic benefit of forgiveness**

McCabe paid ~$6.7M for nearly $24M in debt, later defaulting on SPA terms. META forgave the

remainder (SAC ¶¶ 46–47), yet NBH never disclosed this nor adjusted its financials. By

concealing the discount, NBH denied shareholders the benefit and misrepresented its liabilities

(SAC ¶¶ 48–49).

**C. Equity dilution and capital structure manipulation**

Concurrently, NBH:

- Issued over 86 million additional shares;

- Created a blank-check preferred class;

- Entered undisclosed stock-based consultant agreements (SAC ¶¶ 28–34); and

- Layered insider-controlled debts, subordinated only after issuing senior CAPCO debt secured by stock (SAC ¶¶ 49–51).

These actions entrenched insider control and diluted shareholder value without transparency.

**D. Texas unjust enrichment standard met**

Texas law allows unjust enrichment claims where a party obtains benefits through fraud or unfair advantage. See *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). NBH and McCabe retained insider benefits while concealing transactions, manipulating the capital structure, and issuing equity in opaque arrangements (SAC ¶¶ 30–34, 49–51). This unjustly enriched them at shareholders' expense.

**Conclusion on Count V**

Plaintiff has adequately alleged unjust enrichment under Texas law. NBH's motion to dismiss Count V should be denied.

**IX. COUNT VI: CONSPIRACY TO COMMIT FRAUD**

**A. Coordinated Loan Transactions, Misreporting, and PR Inducement**

As alleged in SAC ¶¶ 30–34, 42–51, and 86–91, NBH, CEO Gregory McCabe, and Doe Defendants engaged in a coordinated scheme to defraud shareholders by concealing insider deals, misreporting liabilities, manipulating equity, and promoting misleading narratives.

The conspiracy included:

- McCabe's insider acquisition of META debt at a steep discount while NBH reported full face value (SAC ¶¶ 42–48);
- Related-party loans secured by NBH stock, subordinating shareholder claims (SAC ¶¶ 50–51);
- Stock-based payments to consultants who promoted the company without disclosing ties (SAC ¶¶ 30–34, 86–89);
- Failure to correct misstatements about Newco, registration, and recovery rights (SAC ¶¶ 66–67, 83–85, 90–91).

These acts induced shareholders to hold or misvalue their shares based on false premises.

**B. Legal Elements and Evidence in Support**

To plead civil conspiracy under Texas law, a plaintiff must allege: (1) two or more people; (2) a shared unlawful objective; (3) agreement; (4) overt acts; and (5) resulting harm. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996).

The SAC alleges:

- A joint effort by McCabe, NBH, and Doe Defendants to conceal debt forgiveness and control public perception (SAC ¶¶ 30–34, 42–51);

- A shared goal of maintaining insider control and deterring shareholder/legal action (SAC ¶¶ 83–91);

- Overt acts including false filings, defaulting on SPA terms, and undisclosed promotional conduct (SAC ¶¶ 45–48, 86–89);

- Resulting harm through shareholder reliance and continued holding of devalued, illiquid equity (SAC ¶¶ 90–91, 93–94).

**C. Application to McCabe, NBH, and Doe Defendants**

McCabe, acting as both CEO and insider creditor, benefited from concealed transactions and structural manipulation (SAC ¶¶ 42–51). NBH—under his direction—issued misleading filings and press releases to sustain false narratives (SAC ¶¶ 66–67, 83–85).

Doe Defendants, including consultants and external actors, reinforced misinformation through media, legal tactics, and silence (SAC ¶¶ 30–34, 86–89), contributing to the cover-up and shareholder deception.

**Conclusion on Count VI**

Plaintiff has adequately alleged civil conspiracy to commit fraud under Texas law. NBH's motion to dismiss Count VI should be denied.

**X. COUNT VIII: EMOTIONAL DISTRESS (IF RETAINED)**

**A. Harassment, Cyber-Bullying, and Online Targeting**

As detailed in SAC ¶¶ 87–89, 93–94, Plaintiff began facing harassment and reputational attacks in May 2024 after organizing a shareholder event. Attacks escalated following service of a Books and Records demand in November 2024 and the filing of this lawsuit in December.

Plaintiff alleges that individuals—reasonably believed to be affiliated with or acting on behalf of NBH—engaged in:

- Public mockery and discrediting attempts;
- False accusations targeting the lawsuit;
- Psychological intimidation.

These actions intensified in direct response to Plaintiff exercising shareholder rights and seeking legal remedies.

**B. Causation and Documented Harm**

Plaintiff suffered emotional distress, including:

- Anxiety and sleep disruption;
- Reputational harm in investor circles;
- Social and professional isolation.

These effects are documented through digital evidence and third-party communications. The distress stems from specific, sustained efforts to shame Plaintiff as a litigant—not generalized online criticism (SAC ¶¶ 93–94).

**C. Legal Support for Claim**

Under Texas law, intentional infliction of emotional distress requires:

- Extreme and outrageous conduct;

- Intent or reckless disregard; and

- Resulting severe emotional harm.

Alternatively, negligent infliction may arise where emotional harm was foreseeable due to fraud or conspiracy.

Plaintiff reasonably believes at least one participant was compensated by or affiliated with NBH, McCabe, or their agents. NBH disclosed compensating at least two consultants with equity, including an unnamed individual granted 100,000 shares on April 2, 2024. NBH never disclosed the scope or public-facing role of these consultants.

Given the timing and nature of the harassment, Plaintiff alleges NBH knowingly incentivized—or failed to supervise—actors who caused foreseeable harm.

**Conclusion on Count VIII**

Plaintiff has adequately pled intentional or negligent infliction of emotional distress. NBH's motion to dismiss Count VIII should be denied.

**XI. CONCLUSION**

Plaintiff has met the pleading standards under Rules 12(b)(6), 9(b), and the PSLRA. Her claims are based on detailed factual allegations from the Second Amended Complaint (SAC ¶¶ 22–94), supported by documentary evidence, including:

- NBH's own 10-K and 10-Q filings;

- META's financial records;

- Executed loan documents and notices;

- SEC-mandated restatements and S-1/A withdrawal; and

- Evidence of ignored records demands and undisclosed consultant compensation.

These materials are publicly available and appropriate for consideration at the pleading stage.
See *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

They collectively establish a pattern of omission, insider enrichment, capital manipulation, and
misleading disclosures that defrauded shareholders.

NBH's motion attempts to reframe the SAC through narrow transactional arguments. But under
federal securities law and Texas common law, Plaintiff has pled viable claims for:

- Securities fraud (Rule 10b-5);

- Negligence;

- Unjust enrichment;

- Civil conspiracy; and

- Emotional distress.

Each is pled with particularity and supported by public records, exhibits, and NBH's own
admissions.

**For these reasons, NBH's motion to dismiss should be denied in full, and this case should
proceed to discovery.**

**XII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **Deny Defendant Next Bridge Hydrocarbons, Inc.'s Motion to Dismiss in full**;

2. **Allow all claims to proceed to discovery**; and

3. **Grant such other and further relief as the Court deems just and proper**.

Respectfully submitted September 29, 2025,

/s/Danielle Spears
Danielle Spears
12206 W Harrison Street
Avondale, AZ 85323
paymmtlpnow@gmail.com
480-476-1091

## **CERTIFICATE OF SERVICE**

I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF

system on September 29, 2025.

/s/Danielle Spears
Danielle Spears,  pro se
12206 W Harrison St
Avondale, AZ 85323
paymmtlpnow@gmail.com
480-476-1091