**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **DANIELLE SPEARS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **MO:24-CV-00321-DC-RCG** |
| | § | |
| **NEXT BRIDGE HYDROCARBONS,** | § | |
| **INC.; GREGORY MCCABE; JOHN** | § | |
| **BRDA; SECURITIES & EXCHANGE** | § | |
| **COMMISSION; FINANCIAL** | § | |
| **INDUSTRY REGULATORY** | § | |
| **AUTHORITY; and JANE DOES 1-20,** | § | |
| **JOHN DOES 1-20;** | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant John Brda and Gregory McCabe's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 53).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** John Brda and Gregory McCabe's Motion to Dismiss be **GRANTED**. (Doc. 53).

## I.    BACKGROUND

Plaintiff Danielle Spears ("Plaintiff"), proceeding *pro se*, filed her Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended her Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 13). Plaintiff's Second Amended Complaint bring claims against six Defendants—Next Bridge Hydrocarbons, Inc. ("NBH"); Gregory McCabe ("McCabe"); John Brda ("Brda"); Securities and Exchange Commission ("the

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

Commission"); Financial Industry Regulatory Authority ("FINRA"); and Jane Doe 1-20, John Doe 1-20 ("Does"). (Doc. 13).

The relevant factual allegations in Plaintiff's Complaint are as follows.[2] On December 14, 2020, Torchlight Energy Resources, Inc. ("Torchlight"), a Texas-based oil exploration company, formally planned to merge with Metamaterials, Inc. ("MMAT shares"), a Canadian high-technology materials firm, which would create Series A Preferred shares ("MMTLP shares"). (Doc. 13 at 23–25). Once the merger was complete in June 2021, Torchlight shareholders received ½ MMAT share and 1 MMTLP share for each Torchlight share. *Id*. at 25. MMTLP shares started trading shortly after the merger, angering Torchlight shareholders as the shares were intended to be non-tradable. *Id*. Brda, as CEO of Torchlight, asserted the trading of MMTLP commenced without his knowledge or authorization. *Id*. Plaintiff alleges "Brda told shareholders that it wasn't his fault, yet with the same breath of air, he stated that there was a mistake in his paperwork." *Id*. at 26. "Plaintiff asserts that this was a meticulously planned and executed strategy, deliberately utilizing vague or misleading language within regulatory filings, designed specifically to enable unauthorized trading, artificially inflate shareholder expectations, and ultimately facilitate significant personal enrichment of company insiders at the direct expense of retail investors." *Id*.

Following the merger, "Plaintiff believes Brda and McCabe used undisclosed, paid, social media stock promoters to pump the stock." *Id*. at 28. "Plaintiff recalls influencers frequently declaring that MMTLP would provide 'generational wealth' and promised returns 'beyond investors' wildest dreams.'" *Id*. at 29. According to her Complaint, Plaintiff began buying MMTLP in October 2022. *Id*. at 22, 27. Plaintiff also provides she purchased shares

---

2. Plaintiff's allegations involving Brda go back to his conduct in 2004—the Court finds those facts have no bearing on the case at hand.

between December 5, 2022, and December 8, 2022. *Id*. at 45. "Plaintiff personally acknowledges that these pervasive messages directly influenced her decision to abandon her usual investment safeguards, notably removing stop-loss protections on MMTLP shares." *Id*. at 29. Plaintiff believes these undisclosed stock promoters, reinforced by explicit public endorsements from Brda, set the stage for FINRA's trading halt by "strategically and repeatedly assur[ing] retail investors that short sellers would be forced to close their positions by December 12, 2022, dramatically heightening investor anticipation of a lucrative short squeeze event." *Id*. at 40.

Between October 1, 2022, and December 8, 2022, MMTLP stock "experienced significant volatility, with prices ranging from a low of $2.85 to a high of $12.50, raising questions about potential market manipulation." *Id*. at 40. On December 7, 2022, both FINRA and the merging entity's corporate leadership confirmed the existence of an approved corporate action for MMTLP—the spin-off to NBH. *Id*. at 42. Plaintiff alleges that according to this action, no new trades could be executed after December 8, 2022, but shareholders could settle positions through the end of trading on December 12, 2022. *Id*. The announcement further specified MMTLP shares would be cancelled on December 13, 2022, with a date for NBH shares or dividends set for December 14, 2022. *Id*. at 42–43.

On December 9, 2022, FINRA[3] halted trading of MMTLP shares, citing "extraordinary circumstances." *Id*. at 47, 51. Then, on December 13, 2022, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *See id*. at 2, 26, 43, 58. Plaintiff alleges FINRA's trading halt disproportionately affected retail investors by permanently trapping their shares in an illiquid state. *Id*. at 48.

---

3. FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, including the over-the-counter market, with oversight from the Commission. (Doc. 13 at 50–51). FINRA is a registered national securities association under the Securities Exchange Act. (Doc. 47 at 11).

Following the halt, in November 2023, Plaintiff contends McCabe deliberately misled shareholders by publicly advocating for the transfer of MMTLP shares to AST, assuring shareholders that such transfers would result in receiving equivalent shares in "NEWCO"— Plaintiff relied on these representations and transferred all 100 shares to AST. *Id*. at 50. Subsequently, Plaintiff learned no legitimate plans for NEWCO existed. *Id*.

Plaintiff brings six causes of action against Brda and McCabe: (1) violation of the Securities Exchange Act (15 U.S.C. § 78); (2) negligence; (3) failure to resolve the FINRA U3 halt; (4) unjust enrichment; (5) conspiracy to commit fraud; and (6) negligent or intentional infliction of emotional distress. (Doc. 13 at 68–78). On June 16, 2025, Brda and McCabe filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 53). After numerous extensions of time Plaintiff filed her Response on September 15, 2025 (Doc. 82-1),[4] and Brda and McCabe subsequently filed their Reply (Doc. 86). Accordingly, this matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

4. As reflected on the case's docket sheet, Plaintiff filed a Response in Opposition to Brda and McCabe's Motion to Dismiss. (*See* Doc. 82). In reality, Plaintiff filed a Motion for Leave to Exceed the Page Limitation of her Response, and Plaintiff attached her Response as an Exhibit to the Motion. (Doc. 82-1). Because Plaintiff did not file her document as a motion, the Court did not previously rule on it. Given Plaintiff's *pro se* status, the Court will accept and consider Plaintiff's Response, which exceeds the page limit and is docketed as an exhibit.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be

appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### B.  Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 only provides a remedy for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. EP-CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (emphasis in original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

### III.    DISCUSSION

6

A.       **Securities Exchange Act § 10(b) and Rule 10b-5**

"Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024) (internal quotations omitted). "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id*. (quoting 17 C.F.R. § 240.10b-5(b) (2022)). The Supreme Court has interpreted Section 10(b) to provide a right of action to purchasers or sellers of securities injured by its violation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

i.       **Statutory Standing**

In their Motion to Dismiss, Brda and McCabe first argue Plaintiff failed to establish statutory standing for her § 10(b) and Rule 10b-5 claim. (Doc. 53 at 10). Brda and McCabe argue Plaintiff is a mere holder of MMTLP securities and has not purchased or sold her shares as it relates to their conduct, which negates her standing to bring this claim. *Id*. at 10–11. In her Response, Plaintiff argues she has statutory standing because she purchased MMTLP shares in October 2022, and the "alleged misstatements and omissions about the non-tradable nature of the dividend and the Orogrande value story were made in connection with those MMTLP purchases

7

and the decision to continue holding." (Doc. 82-1 at 12). The Court agrees, in part, with Plaintiff here.

The Supreme Court has held that a plaintiff may only bring a private damage action under § 10(b) and Rule 10b-5 as an actual purchaser or seller of securities and not as a mere holder. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 79 (2006) (explaining the Court treats this as a statutory standing requirement). One justification for this is that "a putative plaintiff, who neither purchases nor sells securities but sues instead for intangible economic injury such as loss of a noncontractual opportunity to buy or sell, is more likely to be seeking a largely conjectural and speculative recovery in which the number of shares involved will depend on the plaintiff's subjective hypothesis." *Blue Chip Stamps*, 421 U.S. at 734. The Court further reasoned that a contract to purchase or sell a security can be voidable under § 10(b) at the option of the deceived party, but this principle is absent if there is no actual purchase or sale of securities. *Id*. at 735.

Brda and McCabe contend that "[b]ecause Plaintiff fails to allege the purchase or sale of MMTLP Shares as a result of any alleged conduct on the part of Brda or McCabe, [s]he fails to establish the predicate for statutory standing." (Doc. 53 at 11). To the extent Plaintiff relies on deciding to *hold* her shares based on Brda and McCabe's conduct or on the exchange of shares following the NBH spin-off to establish standing, these do not constitute purchases or sales of securities. *Blue Chip Stamps*, 421 U.S. at 730; *Targgart v. Next Bridge Hydrocarbons*, 790 F. Supp. 3d 520, 525 (N.D. Tex. 2025) (stating that "receiving shares in a distribution does not confer standing"). But Plaintiff does state she purchased MMTLP securities in October 2022. (Doc. 13 at 27). Reading the Complaint in the light most favorable to Plaintiff, Plaintiff alleges prior to purchasing her shares, she heard "a lot of talk about MMTLP" and Brda and McCabe

were responsible for disseminating at least some of that narrative. *Id*. Plaintiff expounds that Brda and McCabe employed a "coordinated use of multiple social media influencers, all disseminating identical narratives simultaneously, with Brda regularly reinforcing these messages through public endorsements." *Id*. at 29. While, as discussed below, this is insufficient to state a claim under § 10(b) and Rule 10b-5, the Court finds Plaintiff has alleged just enough to have statutory standing to bring such a claim against Brda and McCabe.

Accordingly, the Court **RECOMMENDS** Brda and McCabe's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **DENIED** (Doc. 53) for lack of standing.

### ii. Failure to State a Claim

Even though Plaintiff established statutory standing against Brda and McCabe as to her § 10(b) and Rule 10b-5 claim, she did not sufficiently plead a claim. "To state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Emps.' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm.*, 544 U.S. at 341–42).

Plaintiff fails to allege factual allegations to meet most, if not all, of the elements. To start, in her Response, Plaintiff states she alleges actionable misstatements and omissions in four "buckets": (1) the pre-merger non-tradable intent of the dividend; (2) the Orogrande value narrative; (3) the post-merger tradability intent; and (4) the promotional messaging regarding the expected short squeeze. (Doc. 82-1 at 15–16). Plaintiff also conclusively states that her purchase

of MMTLP shares in October 2022 and decision to continue holding them were made in connection to these statements. *Id*. at 17.

First, Plaintiff asserts that before the merger occurred, Brda and McCabe had described the resulting dividends as non-tradeable, which turned out to be false. *Id*. at 15. Plaintiff asserts these misstatements are material because "a reasonable investor would care whether a security pitched as non-tradeable will, in fact, trade." *Id*. Even putting aside that the Complaint does not describe these statements Brda and McCabe allegedly made, Plaintiff is unable to show a connection exists between these misstatements and a purchase or sale of securities because Plaintiff was not one of those "reasonable investors." *Id*. Plaintiff did not purchase her MMTLP shares until well after the merger when it was clear the dividends were tradeable, thus those misstatements could not have been material for Plaintiff. (*See* Doc. 13 at 27).

Second, Plaintiff asserts in her Response that Brda and McCabe repeatedly overstated the value of the Orogrande project, which was materially misleading and inflated shareholder expectations. (Doc. 82-1 at 15). In her Complaint, Plaintiff only alleges one specific insistence where Brda and McCabe made a statement about the Orogrande value back in 2020. (Doc. 13 at 18) ("For example, on or about April 23, 2020, Defendants publicly presented inflated valuations of oil reserves and exaggerated the economic potential of properties such as Orogrande, which later proved materially misleading."). While this allegation still falls shorts of the factual specificity necessary to plead a fraud claim, Plaintiff also fails to state she relied on this statement in her Complaint or explain how she relied on this statement made in 2020 when she purchased MMTLP shares in 2022.

Third, Plaintiff argues in the run-up to the NBH spin-off, "public communications identified December 12, 2022[,] as the last trading day." (Doc. 82-1 at 16). But "those

expectations *became* false or misleading when FINRA's U3 halt on December 9 froze liquidity and cut off exit paths, yet Defendants did not correct or update prior statements or half-truths, sustaining a misleading impression about liquidity and the ability to exit." *Id.* (emphasis added). But as Plaintiff says herself, Brda and McCabe's statements were not inherently misrepresentations; the statements "became false" after FINRA took action and imposed the halt on December 9. Despite Brda and McCabe not correcting any statements they made, Plaintiff did not purchase or sell any securities after the halt, so Plaintiff could not have relied on these statements after they became false. (Doc. 13 at 45).

Fourth and finally, Plaintiff contends Brda and McCabe "coordinated promotional messaging during the merger-to-spin-off window that urged investors to 'buy and hold,' expect a short squeeze due to long-held shares, and rely on NBH as a fallback. These inducements reinforced existing half-truths about tradability and exit option." (Doc. 82-1 at 16). In her Complaint, Plaintiff alleges, "[u]pon information and belief Brda and McCabe paid undisclosed stock promoters and strategically leveraged social media influencers to further amplify misleading expectations about the value of the assets, significantly influencing investor decisions and inflating the stock's value artificially." (Doc. 13 at 23). Thus, in this "bucket," the misstatements Plaintiff relies on to form the basis for a securities fraud claim are posts on social media made by unknown individuals that she believes Brda and McCabe used, hired, or coordinated with. (Doc. 13 at 23, 28, 69).

This fails for many reasons. "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). While the Fifth Circuit has held that "fraud may be pled on information and belief under [certain] circumstances, [the

Circuit has] also warned that this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. In addition, even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id*. Plaintiff has not set forth any facts to support the allegation that Brda and McCabe enlisted these social media promoters but instead relied on only her belief. (*See* Doc. 13). Even so, the Supreme Court has stated that under Rule 10b-5, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("One who prepares or publishes a statement on behalf of another is not its maker. . . . Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it."). Thus, even with the conclusory allegations that Brda and McCabe hired and paid the promoters, Plaintiff does not allege they had complete control over the promoters that would allow the Court to conclude Brda and McCabe are the "makers" of these statements. And, even if Plaintiff properly alleged Brda and McCabe hired the promoters and were the makers of the statements, Plaintiff does not allege with any specificity that she relied on these statements to purchase or sell securities. In her Response, Plaintiff only argues that these omissions and misrepresentations materially influenced her decision to *hold* MMTLP shares, which, as the Court stated above, is insufficient for this claim. (Doc. 82-1 at 16).

Lastly, Plaintiff fails to plead scienter as to Brda or McCabe. In pleading scienter, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Mun. Emps.' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (citing 15 U.S.C. § 78u-4(b)(2)(a)). The Complaint alleges

nothing to establish a strong inference that Brda or McCabe intended to "deceive, manipulate, or defraud" Plaintiff. *Tellabs*, 551 U.S. at 319 ("To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud."). In her Response, Plaintiff only points to (1) statements McCabe made that are not contained in her Complaint; (2) the general timing of the corporate transitions from Torchlight to Meta to NBH; (3) Brda and McCabe selling MMTLP shares when the online promoters told investors to hold their shares; and (4) "Brda's filings and social-media engagement." (Doc. 82-1 at 17). These allegations lack the specificity needed to plead fraudulent intent under Rule 9(b) standards. As Plaintiff is unable to establish Brda or McCabe intentionally made a material misrepresentation that Plaintiff relied on in connection with the purchase or sale of a security, Plaintiff did not sufficiently plead a § 10(b) and Rule 10b-5 claim.[5]

As a final note, in Plaintiff's enumerated cause of action for failure to resolve the FINRA U3 halt, as it relates to Brda and McCabe, Plaintiff again alleges only that they violated § 10(b) and Rule 10b-5. (Doc. 13 at 73–74). While "failure to resolve the FINRA U3 halt" is not a cause

---

5. "Section 10(b), in proscribing the use of a 'manipulative or deceptive device or contrivance,' prohibits not only material misstatements but also manipulative acts." *ASTI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d. Cir. 2007). "Market manipulation requires a plaintiff to allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *Id*. at 101. To the extent Plaintiff attempts to plead this theory in her Complaint, she is equally unable to meet the elements. Further, Plaintiff's Response fails to address a manipulative acts argument to avoid dismissal of this claim, meaning Plaintiff has waived it. *In Re Matter of Dall. Roadster, Ltd.*, 846 F.3d 112, 125–26 (5th Cir. 2017) (holding the plaintiff "abandoned the claim by failing to include any argument about the claim in his response to [the defendant's] motions to dismiss and for summary judgment"); *Douglas v. Dorchester Props Ltd.*, No. 22-CV-100, 2023 WL 5156337, at *4 (N.D. Tex. May 17, 2023) ("At the motion to dismiss stage, plaintiffs must defend their claims against the movant's arguments in order to preserve those claims. Courts are strict about this requirement, even when the plaintiff is *pro se*.") (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

of action Plaintiff can bring, even if the Court were to look to her sub-claims, as discussed, Plaintiff has failed to state a § 10(b) and Rule 10b-5 claim.[6]

Accordingly, the Court **RECOMMENDS** Brda and McCabe's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **GRANTED** (Doc. 53) for failure to state a claim, and this claim be **DISMISSED WITH PREJUDICE**.

### B.     Negligence

In her Complaint, Plaintiff brings a cause of action for negligence against all Defendants. (Doc. 13 at 71). Within that claim, Plaintiff again alleges Brda and McCabe violated Section 10(b) and Rule 10b-5, Section 13(b)(2)(A) and Rule 13b2-1, and Section 13(b)(2)(B) and Rule 13b2-2. *Id*. at 71–72. But in her Response, Plaintiff attempts to flip the script—Plaintiff asserts she pleads a Texas common law negligence claim in the alternative to her securities fraud claims. (Doc. 82-1 at 18–20). And Plaintiff argues she references the sections of the Exchange Act to provide the relevant standards of care that Brda and McCabe breached. *Id*. "Unfortunately, Plaintiff cannot amend her pleadings with her briefing, and her briefing does not merely clarify or explain her pleadings but seeks to fully rewrite them." *Fuller v. Bank of Am., N.A.*, No. 13-CV-576, 2013 WL 12134089, at *3 (N.D. Tex. Apr. 22, 2013). Even using a liberal standard, which the Court must with *pro se* pleadings, Plaintiff does not allege a negligence claim under Texas law but instead applies a negligence standard to the Exchange Act provisions. (*See, e.g.*,

---

6. Under the "Failure to Resolve the FINRA U3 Halt" section of her Response, Plaintiff makes reference to the "Post-halt 'Newco/AST' inducement." (Doc. 82-1 at 24). Within her Complaint, Plaintiff alleges McCabe deliberately misled shareholders in November 2023 by advocating for investors to transfer their MMTLP shares to AST and that such transfers would result in receiving equivalent shares in NEWCO, which has distinct assets and improved interests. (Doc. 13 at 50). Plaintiff explains that, relying on those representations, she transferred all 100 shares to AST but subsequently learned there were no legitimate plans for NEWCO. *Id*. To the extent Plaintiff wants these facts to form the basis of her Section 10(b) and Rule 10b-5 claim, the claim would still fail. While she does allege McCabe made a material misrepresentation that she relied on, Plaintiff does not allege facts to support McCabe's fraudulent intent, this transfer constituted a purchase or sale of securities, or she suffered a loss from this transfer.

Doc. 13 at 71–72) ("Brda, McCabe, and NBH violated Section 10(b) (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) by negligently . . .") ("Brda, McCabe, and NBH violated Section 10(b) (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) by negligently . . ."). The Court will analyze the claims as such.

As Brda and McCabe argue, Plaintiff is seemingly attempting to circumvent the required showing of fraud by pleading they negligently violated Section 10(b) of the Exchange Act. (Doc. 53 at 16). In *Ernst & Ernst v. Hochfelder*, the Supreme Court considered whether Section 10(b) embraces negligence as a standard of liability. 425 U.S. 185, 200 (1976). The Court determined "[t]he words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct." *Id*. at 197. Thus, these negligent acts Plaintiff alleges cannot form the basis for a violation of Section 10(b).

Looking to Plaintiff's allegations that Brda and McCabe violated Section 13(b), "[a]lthough the Fifth Circuit has not addressed whether or not there is a private right of action under either Section 13(a) or Section 13(b), other circuits have consistently held that there is no private right of action under either section." *Earle v. Aramark Corp.*, No. 03-CV-2960, 2005 WL 473675, at *3 (N.D. Tex. Feb. 28, 2005) (collecting cases). As Plaintiff seemingly concedes this point (*See* Doc. 82-1 at 20), the Court finds she cannot bring a claim for negligently violating Section 13(b).

Accordingly, the Court **RECOMMENDS** Brda and McCabe's Motion to Dismiss as to Plaintiff's claim for negligence be **GRANTED** (Doc. 53), and this claim be **DISMISSED WITH PREJUDICE**.

### C.     Conspiracy to Commit Fraud

Under her conspiracy to commit fraud claim, Plaintiff alleges Defendants Brda, McCabe, NBH, and the Does violated Section 10(b) and Rule 10b-5 "by conspiring to disseminate materially false and misleading information through undisclosed proxies and stock promoters, deliberately misleading investors, artificially inflating share prices, and facilitating illegal short positions." (Doc. 13 at 75). Plaintiff further asserts "Defendants Brda, McCabe, NBH, and undisclosed paid proxies (Jane and John Does) conspired to utilize cyberbullying, cyberstalking, and harassment as deliberate tools of market manipulation and investor suppression, furthering their fraudulent scheme and maintaining illegal short positions" in violation of Section 10(b) and Rule 10b-5.[7] *Id.* at 76.

To start, "there is no private right of action for aiding and abetting a § 10(b) violation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 155 (2008). Second, to the extent Plaintiff's allegations of conspiracy to commit fraud are derivative of her Section 10(b) and Rule 10b-5 fraud allegations, because the Court found Plaintiff failed to state a claim for a violation of Section 10(b) and Rule 10b-5, she has also failed to state a claim for conspiracy to commit fraud. *Highland Crusader Offshore Partners LP v. LifeCare Holdings Inc.*, 377 F. App'x 422, 428 (5th Cir. 2010); *Burback v. Oblon*, No. 20-CV-946, 2021 WL 4477607, at *10 (E.D. Tex. Sept. 30, 2021) (holding because the plaintiffs failed to state a claim for fraud under any of their theories of liability, including a violation of Section 10(b) and Rule 10b-5, their claim for conspiracy to commit fraud also fails). Finally, Rule 9(b)'s heightened pleading standard applies to conspiracy to commit fraud claims. *Cavazos v. Allstate Vehicle & Prop. Ins.*, No. 17-CV-368,

---

7. Plaintiff also alleges all Defendants violated 18 U.S.C. §§ 371, 1349. (Doc. 13 at 75–76). However, these are both federal criminal statutes that do not give rise to a private right of action. *Cleveland v. Dripping Springs Indep. Sch. Dist.*, No. 19-CV-1256, 2020 WL 10054501, at *2 (W.D. Tex. June 24, 2020); *Ireland v. Ward*, No. 23-CV-00828, 2023 WL 9103066, at *2 (W.D. Tex. Dec. 6, 2023).

2017 WL 11317905, at *2 (S.D. Tex. Oct. 27, 2017). And Plaintiff has failed to articulate with particularity the fraudulent conduct committed by Brda and McCabe that resulted in harm to her.

Accordingly, the Court **RECOMMENDS** Brda and McCabe's Motion to Dismiss as to Plaintiff's claim for conspiracy to commit fraud be **GRANTED** (Doc. 53) and this claim be **DISMISSED WITH PREJUDICE**.

### D.    Negligent or Intentional Infliction of Emotional Distress

Plaintiff brings a cause of action for negligent or intentional infliction of emotional distress against Brda and McCabe. (Doc. 13 at 78). Under this enumerated claim, Plaintiff asserts Brda and McCabe violated Section 10(b) and Rule 10b-5 "by intentionally orchestrating harassment, cyberbullying, and targeted intimidation campaigns through paid proxies, foreseeably causing significant emotional distress, humiliation, anxiety, and substantial disruption of Plaintiff's personal and social relationships." *Id*. At the outset, Plaintiff "cannot recover for negligent infliction of emotional distress because Texas does not recognize a cause of action under this theory." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 224 (5th Cir. 2013) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

The tort of intentional infliction of emotional distress ("IIED") requires proof of the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman*, 855 S.W.2d at 621–22. "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (quoting *Twyman*, 855 S.W.2d at 621). The Texas Supreme

Court has repeatedly recognized that an IIED claim is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has *no other* recognized theory of redress." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998) (emphasis added). Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Hoffmann-La Roche*, 114 S.W.3d at 447.

Here, IIED is not Plaintiff's only recognized theory of redressability, so Plaintiff is not permitted to recover under this claim. Even if IIED was a claim available to Plaintiff, she does not plausibly allege the elements as to Brda and McCabe. In her Complaint, Plaintiff only provides conclusory allegations that Brda and McCabe orchestrated and utilized online harassment and cyberbullying through paid proxies. (Doc. 13 at 78). And the harassment and cyberbullying Plaintiff describes falls short of the extreme and outrageous standard which is required to plead a claim for IIED. *Hoffmann-La Roche Inc.*, 144 S.W.3d at 445.

Accordingly, the Court **RECOMMENDS** Brda and McCabe's Motion to Dismiss as to Plaintiff's claim for negligent or intentional infliction of emotional distress be **GRANTED** (Doc. 53) and this claim be **DISMISSED WITH PREJUDICE**.

### E.     Various Provisions of the Exchange Act

Within Plaintiff's enumerated causes of action in her Complaint, she also alleges Brda and McCabe violated two other provisions of the Exchange Act: Section 9(a) (15 U.S.C. § 78i(a)) and Section 13(d) (15 U.S.C. § 78m(d)). (Doc. 13 at 68). In her Complaint, Plaintiff generally states "Defendants violated Section 9(a) (15 U.S.C. § 78i(a)) by intentionally manipulating the price of MMTLP shares through artificial and deceptive trading conditions." *Id.* at 68. If this claim applies to Brda and McCabe, because Plaintiff cannot establish a Section

10(b) claim, she similarly did not sufficiently plead a Section 9(a) claim. *Chemetron Corp v. Bus. Funds, Inc.*, 718 F.2d 725, 727 (5th Cir. 1983) (explaining the two Sections have overlapping elements but Section 9(a) requires an additional element to establish liability); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 423–34 (S.D.N.Y. 2010) (analyzing Section 9(a) and 10(b) claims together). As to Section 13(d), courts have held there is no private right of action.[8] *GAF Corp. v. Milstein*, 453 F.2d 709, 719 (2d Cir. 1971); *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 490–91 (S.D.N.Y. 2009) ("There is no private right of action under section 13(d) of the Exchange Act, but a plaintiff can point to a violation of section 13(d) as the predicate for a 10b–5 claim.").

Accordingly, the Court **RECOMMENDS** Brda and McCabe's Motion to Dismiss as to Plaintiff's Section 9(a) (15 U.S.C. § 78i(a)) and Section 13(d) (15 U.S.C. § 78m(d)) claims be **GRANTED** (Doc. 53) and these claims be **DISMISSED WITH PREJUDICE**.

## F.    Unjust Enrichment

Finally, in her Complaint, Plaintiff seeks to bring an unjust enrichment claim against Brda and McCabe for unjustly enriching themselves through coordinated promotional schemes and undisclosed compensation to paid proxies and promoters.[9] (Doc. 13 at 74). But unjust

---

8. "Section 18(a) provides the sole basis for a private right of action for damages resulting from a violation of Section 13(d)." *Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008). To the extent Plaintiff is attempting to recover under § 18(a) for a violation of § 13(d), she does not plead sufficient facts to state such a claim. Further, Plaintiff's Response fails to address her Section 13(d) claim, meaning Plaintiff has abandoned it. *In Re Matter of Dall. Roadster, Ltd.*, 846 F.3d at 125–26 (holding the plaintiff "abandoned the claim by failing to include any argument about the claim in his response to [the defendant's] motions to dismiss and for summary judgment"); *Douglas*, 2023 WL 5156337, at *4 ("At the motion to dismiss stage, plaintiffs must defend their claims against the movant's arguments in order to preserve those claims. Courts are strict about this requirement, even when the plaintiff is *pro se*.") (citing *Black*, 461 F.3d at 588 n.1).

9. Within this cause of action, Plaintiff states Brda and McCabe violated Section 29(b) (15 U.S.C. § 78cc(b)). To the extent Plaintiff seeks to bring a Section 29(b) claim, it is inapplicable to this action. "Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006). To void an agreement under this Section, a plaintiff must establish that the contract involved a prohibited transaction, the parties are in contractual privity, and the plaintiff is the class

19

enrichment is not an independent cause of action; it is merely a theory of recovery. *In re Primera Energy, LLC*, 579 B.R. 75, 183 (Bankr. W.D. Tex. 2017); *Llort v. BMW of N. Am., LLC*, No. 20-CV-94, 2020 WL 2928472, at *10 (W.D. Tex. June 2, 2020). Because the Court has found Plaintiff's substantive claims fail to state a cause of action, Plaintiff has no underlying claim to tether her unjust enrichment claim to.

Accordingly, the Court **RECOMMENDS** Brda and McCabe's Motion to Dismiss as to Plaintiff's unjust enrichment claim be **GRANTED** (Doc. 53) and this claim be **DISMISSED WITH PREJUDICE**.

## IV.    RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** Brda and McCabe's 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint be **GRANTED**. (Doc. 53). Further, the Court **RECOMMENDS** Plaintiff's claims as to Brda and McCabe for violations of the Securities Exchange Act (15 U.S.C. § 78), failure to resolve the FINRA U3 halt, negligence, conspiracy to commit fraud, negligent or intentional infliction of emotional distress, and unjust enrichment be **DISMISSED WITH PREJUDICE**.

SIGNED this 28th day of January, 2026.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

---

of persons that the securities acts were designed to protect. *Id*. Given that Plaintiff has no factual allegations relating to a contract, this provision is inapplicable here.

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party **has not been served** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).