**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **DANIELLE SPEARS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **MO:24-CV-00321-DC-RCG** |
| | § | |
| **NEXT BRIDGE HYDROCARBONS,** | § | |
| **INC.; GREGORY MCCABE; JOHN** | § | |
| **BRDA; SECURITIES & EXCHANGE** | § | |
| **COMMISSION; FINANCIAL** | § | |
| **INDUSTRY REGULATORY** | § | |
| **AUTHORITY; and JANE DOES 1-20,** | § | |
| **JOHN DOES 1-20;** | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Financial Industry Regulatory Authority's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 45).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** Financial Industry Regulatory Authority's Motion to Dismiss be **GRANTED**. (Doc. 45).

## I.    BACKGROUND

Plaintiff Danielle Spears ("Plaintiff"), proceeding *pro se*, filed her Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended her Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 13). Plaintiff's Second Amended Complaint bring claims against six Defendants—Next Bridge Hydrocarbons, Inc. ("NBH"); Gregory McCabe ("McCabe"); John Brda ("Brda"); Securities and Exchange Commission ("the

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

Commission"); Financial Industry Regulatory Authority ("FINRA"); and Jane Doe 1-20, John Doe 1-20 ("Does"). (Doc. 13).

The relevant factual allegations in Plaintiff's Complaint are as follows.[2] On December 14, 2020, Torchlight Energy Resources, Inc. ("Torchlight"), a Texas-based oil exploration company, formally planned to merge with Metamaterials, Inc. ("MMAT shares"), a Canadian high-technology materials firm, which would create Series A Preferred shares ("MMTLP shares"). *Id*. at 23–25. Once the merger was complete in June 2021, Torchlight shareholders received ½ MMAT share and 1 MMTLP share for each Torchlight share. *Id*. at 25. MMTLP shares started trading shortly after the merger, angering Torchlight shareholders as the shares were intended to be non-tradable. *Id*. Brda, as CEO of Torchlight, asserted the trading of MMTLP commenced without his knowledge or authorization. *Id*. Plaintiff alleges "Brda told shareholders that it wasn't his fault, yet with the same breath of air, he stated that there was a mistake in his paperwork." *Id*. at 26. "Plaintiff asserts that this was a meticulously planned and executed strategy, deliberately utilizing vague or misleading language within regulatory filings, designed specifically to enable unauthorized trading, artificially inflate shareholder expectations, and ultimately facilitate significant personal enrichment of company insiders at the direct expense of retail investors." *Id*.

Following the merger, "Plaintiff believes Brda and McCabe used undisclosed, paid, social media stock promoters to pump the stock." *Id*. at 28. "Plaintiff recalls influencers frequently declaring that MMTLP would provide 'generational wealth' and promised returns 'beyond investors' wildest dreams.'" *Id*. at 29. According to her Complaint, Plaintiff began buying MMTLP in October 2022. *Id*. at 22, 27. Plaintiff also provides she purchased shares

---

2. Plaintiff's allegations involving Brda go back to his conduct in 2004—the Court finds those facts have no bearing on the case at hand.

between December 5, 2022, and December 8, 2022. *Id*. at 45. "Plaintiff personally acknowledges that these pervasive messages directly influenced her decision to abandon her usual investment safeguards, notably removing stop-loss protections on MMTLP shares." *Id*. at 29. Plaintiff believes these undisclosed stock promoters, reinforced by explicit public endorsements from Brda, set the stage for FINRA's U3 trading halt by "strategically and repeatedly assur[ing] retail investors that short sellers would be forced to close their positions by December 12, 2022, dramatically heightening investor anticipation of a lucrative short squeeze event." *Id*. at 40.

Between October 1, 2022, and December 8, 2022, MMTLP stock "experienced significant volatility, with prices ranging from a low of $2.85 to a high of $12.50, raising questions about potential market manipulation." *Id*. at 40. On December 7, 2022, both FINRA and the merging entity's corporate leadership confirmed the existence of an approved corporate action for MMTLP—the spin-off to NBH. *Id*. at 42. Plaintiff alleges that according to this action, no new trades could be executed after December 8, 2022, but shareholders could settle positions through the end of trading on December 12, 2022. *Id*. The announcement further specified MMTLP shares would be cancelled on December 13, 2022, with a date for NBH shares or dividends set for December 14, 2022. *Id*. at 42–43.

On December 9, 2022, FINRA[3] halted trading of MMTLP shares, citing "extraordinary circumstances." *Id*. at 47, 51. Then, on December 13, 2022, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *See id*. at 2, 26, 43, 58. Plaintiff alleges FINRA's U3 trading halt disproportionately affected retail investors by permanently trapping their shares in an illiquid state. *Id*. at 48.

---

3. FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, including the over-the-counter market, with oversight from the Commission. (Doc. 13 at 50–51). FINRA is a registered national securities association under the Securities Exchange Act. (Doc. 47 at 11).

Plaintiff brings eight causes of action against FINRA: (1) violation of the Securities Exchange Act (15 U.S.C. § 78), (2) violation of the Sherman Antitrust Act (15 U.S.C. § 1) and Clayton Act (15 U.S.C. §§ 15, 23), (3) negligence, (4) failure to resolve the FINRA U3 halt, (5) unjust enrichment, (6) conspiracy to commit fraud, (7) failure to supervise, and (8) negligent or intentional infliction of emotional distress. (Doc. 13 at 68–78). On May 20, 2025, FINRA filed a Rule 12(b)(2) and 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 45). After numerous extensions of time, Plaintiff filed her Response on August 22, 2025 (Doc. 69), and FINRA subsequently filed its Reply (Doc. 81). Accordingly, this matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. In resolving a Rule 12(b)(2) motion, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 496 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). To carry that burden the plaintiff must plead a prima facie showing of personal jurisdiction. *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 467 (E.D. Tex. 2020) (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). Additionally, "allegations in the plaintiff's complaint are taken as true, except to the extent that they are

contradicted by the defendant" and "[a]ny material and genuine, conflicting facts are resolved in favor of the plaintiff for the purpose of determining whether a prima facie case exists." *Id.*

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284

(5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### C. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 only provides a remedy for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act ("PSLRA") "reinforces the particularity requirements of Rule 9(b), requiring the

6

plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (emphasis in original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

## III. DISCUSSION

### A.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

FINRA argues it is not subject to personal jurisdiction in this Court, so Plaintiff's Complaint should be dismissed under Rule 12(b)(2). (Doc. 45 at 17). In Texas, there are two requirements for a court to exercise personal jurisdiction over a non-resident defendant: "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). "Because Texas' long-arm statute has been held to extend to the limits of due process, only the second jurisdictional precondition must be examined." *Allstate Inc. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 506 (N.D. Tex. 2014) (citing *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)).

For personal jurisdiction to satisfy due process, the plaintiff must show: (1) "the defendant purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with that state such that it would reasonably anticipate being haled into court there"; and (2) "exercising jurisdiction over the defendant would not offend

traditional notions of fair play and substantial justice." *Id.* (citing *Jones*, 954 F.2d at 1068). "The 'minimum contacts' prong of the due process analysis can be met through contacts giving rise to either specific or general jurisdiction." *Id.* (citing *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996)). To exercise general personal jurisdiction, a defendant's contacts with the forum state must be so "continuous and systematic as to render them essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations omitted). When the defendant is a corporation, it is considered at home in the "corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). And, in an "exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* (internal quotations omitted). In contrast, specific jurisdiction "is established through the defendant's contacts with the forum state arising from, or related to, the cause of action." *Allstate Inc.*, 997 F. Supp. 2d at 506 (citations and quotation marks omitted).

Here, Plaintiff is unable to establish general or specific jurisdiction. FINRA cannot be considered "at home" in Texas—FINRA is incorporated in Delaware and its principal place of business is in Washington, D.C., which Plaintiff does not dispute. (Docs. 45 at 19; 13 at 3). Looking to specific jurisdiction, in both her Complaint and Response, Plaintiff is unable to tie FINRA to Texas as it relates to this case. (*See* Docs. 13, 69). The closest Plaintiff gets is alleging that the "core conduct giving rise to Plaintiff's claims, including corporate decision-making, communications, and market actions, occurred in Texas." (Doc. 69 at 13). Plaintiff also provides that "[t]he Western District of Texas is also home to numerous brokers and market participants who were directly impacted by FINRA's halt. The consequences of that halt were immediately

felt by Texas investors and firms . . . ." *Id.* at 14. But because Plaintiff is a citizen of Arizona (Doc. 13 at 1), the Court finds this does not suffice to meet Plaintiff's burden. *Palmer*, 434 F. Supp. 3d at 467. Thus, Plaintiff failed to establish FINRA's "minimum contacts" with Texas under either the general or specific personal jurisdiction theories.

Accordingly, the Court **RECOMMENDS** FINRA's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction be **GRANTED** (Doc. 45) and the claims be **DISMISSED WITH PREJUDICE**.

### B. FINRA's Absolute Regulatory Immunity

In addition to the Court lacking personal jurisdiction over FINRA, FINRA also argues, as an SRO, its regulatory immunity is absolute and bars all Plaintiff's claims against it. (Doc. 45 at 21). The Court agrees. It is well settled that "[a]s an SRO, FINRA and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities." *Xu v. Fin. Indus. Regul. Auth. Inc.*, 503 F. App'x 7, 8 (2d. Cir. 2012); *Austin Min. Secs., Inc. v. Nat'l Assoc. of Secs. Dealers, Inc.*, 757 F.2d 676, 679 (5th Cir. 1985) ("NASD [now FINRA] and its disciplinary officers have absolute immunity from further prosecution for personal liability on claims arising within the scope of their official duties."). In rebuttal, Plaintiff concedes FINRA has absolute immunity when performing regulatory functions but argues FINRA was acting outside of that scope. (Doc. 69 at 18–19). Plaintiff asserts FINRA took two actions outside of its regulatory authority: (1) imposing the trading halt and (2) violating its own rules by altering the corporate action to remove the pay date and reclassify the event. *Id.* at 19–21. Plaintiff also makes broad claims that FINRA committed ultra vires actions in bad faith, far exceeding its delegated authority under the Exchange Act and operating without SEC oversight or approval. *Id.* at 11, 13, 17, 19–20, 25, 27.

But this "misconduct alleged by [Plaintiff] falls squarely within FINRA's regulatory responsibilities." *Xu*, 503 F. App'x at 8. "FINRA's decision to halt MMTLP trading and alleged facilitation of misconduct by market makers and brokers [] are incident to FINRA's power to regulate the securities market." *Traudt v. Rubenstein*, No. 24-CV-782, 2025 WL 1795825, at *7 (D. Vt. June 30, 2025) (collecting cases where courts "have held that FINRA was immune from claims based on allegations very similar to those in this case") (citing *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013) ("The capacity to suspend trading, irrespective of the identity of the decision-maker or the presence of an official SEC rule, is a quintessentially regulatory function.")). Further, Plaintiff's allegation that FINRA violated its own rules does not exclude it from immunity as the action or inaction FINRA took implicates the quasi-governmental functions the SEC has delegated to it. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 99 n.4 (2d Cir. 2007) ("[O]ur own review of the [SRO's] internal rules leads to the inexorable conclusion that the [SRO's] enforcement (or nonenforcement) of [its own] rules clearly implicates the quasi-governmental functions the SEC has delegated to [it]."). And, to the extent Plaintiff alleges FINRA's conduct was done in bad faith, "allegations of bad faith, malice, and even fraud—all of which may be relevant to a *qualified* immunity analysis—cannot, except in the most unusual of circumstances, overcome *absolute* immunity." *Xu*, 503 F. App'x at 8 ("Thus, it behooves the Court not to carve out a bad faith exception to the absolute immunity of an SRO as a matter not simply of logic but of intense practicality since otherwise the SRO's exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits."); *Sparta Surgical Corp. v. Nat'l Assoc. of Secs. Dealers, Inc.*, 159 F.3d 1209, 1215 (9th Cir. 1998) (holding there is no bad faith exception to the absolute immunity doctrine and providing that "when Congress elected 'cooperative regulation' as the primary

means of regulating the over-the-counter market, the consequence was that self-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity"). Thus, FINRA enjoys absolute immunity for its conduct in this case and all Plaintiff's claims against FINRA are barred.[4]

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to its regulatory immunity be **GRANTED**. (Doc. 45). Because FINRA's regulatory immunity bars Plaintiff's claims, the claims should be **DISMISSED WITH PREJUDICE**.

### C. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Even if the Court had personal jurisdiction and Plaintiff's claims against FINRA were not barred, FINRA also argues Plaintiff has failed to state an antitrust claim or a constitutional claim for which relief can be granted. The Court will discuss each in turn.

### i. Antitrust Claims

In her Complaint, Plaintiff alleges FINRA violated Section 1 of the Sherman Act and Section 4 and 13[5] of the Clayton Act. (Doc. 13 at 70–71). Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. As Plaintiff seems to plead a conspiracy theory, to establish liability under § 1, Plaintiff must show that FINRA "(1) engaged in a conspiracy (2) that restrained trade (3) in a

---

4. FINRA raises another argument in the alternative, asserting Plaintiff has no private right of action against FINRA. (Doc. 45 at 23). As the Court has already found FINRA is entitled to absolute immunity and Plaintiff's claims against FINRA are barred, the Court need not discuss this alternative argument. *Park v. Fin. Indus. Regul. Auth. Inc.*, No. 23-CV-69, 2023 WL 11795601, at *3 n.2 (N.D. Ga. Sept. 25, 2023) ("FINRA further argues that, even if the challenged actions are not protected by absolute immunity, the Amended Complaint nonetheless fails to state a claim because . . . (ii) no statute provides a private right of action against SROs for 'acts or omissions in connection with its duties as a securities regulator.' As discussed below, the Court finds FINRA's absolute immunity argument dispositive. Therefore, the Court need not consider FINRA's remaining arguments.").

5. In referencing Section 13 of the Clayton Act in her Complaint, Plaintiff cites to 15 U.S.C. § 23. (Doc. 13 at 71). This statute deals with issuing subpoenas for witnesses in any antitrust action brought by or on behalf of the United States. 15 U.S.C. § 23. The Court finds this inapplicable to Plaintiff's claims.

particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). "Unlike a contract or other combination in restraint of trade, a conspiracy violates the Sherman Act even without proof of injury because of the surreptitious, pernicious effect a conspiracy ultimately can have upon a free market. Violation of the Sherman Act is therefore not dependent on damage, although no damages can be recovered unless proved." *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 986 (5th Cir. 1983). "Even though a conspiracy in unreasonable restraint of trade may be proved, to justify a private suit the plaintiff must additionally demonstrate injury under the standard of section 4 of the Clayton Act, 15 U.S.C. § 15." *Id*. at 987.

Plaintiff's allegations fail to state a claim for relief under § 1 of the Sherman Act. While Plaintiff generally states the relevant market is the "U.S. financial markets" or "U.S. securities markets" or "U.S. capital markets" (Doc. 13 at 4, 51, 65–66, 76), she provides no facts to allow the Court to determine whether this may plausibly be considered a relevant geographic or cognizable product market for antitrust purposes. *Wampler v. Sw. Bell. Telephone Co.*, 597 F.3d 741, 744 (5th Cir. 2010) ("The first step in this analysis [of § 1 of the Sherman Act] is determining the relevant market, which itself is a function of the relevant product market and the relevant geographic market."); *RX Sols., Inc. v. Caremark, LLC*, No. 23-CV-100, 2025 WL 360656, at *5 (S.D. Miss. Jan. 31, 2025) ("The Amended Complaint refers to Defendants' alleged unfair monopolization of the 'prescription medication market.' But this conclusory description of the relevant market that Defendants purportedly seek to monopolize is insufficient because it does not define Plaintiff's proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, which is necessary to plead a legally sufficient product market.").

As to the conspiracy element, Plaintiff simply states FINRA violated § 1 "by colluding with market participants, including broker-dealers, hedge funds, and market makers, to facilitate or negligently permit illegal short selling activities and related anti-competitive practices, substantially restricting market competition and causing financial harm to retail investors." (Doc. 13 at 70). This is insufficient to state a claim. And even so, "[t]he primary purpose of section 1 is to prevent the diminution of competition in the marketing of goods and services, the sale of stock of a single company within the context of a takeover battle for that one company does not fall within this definition." *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 769 F.2d 152, 156 (3d Cir. 1985). And without sufficiently pleading an antitrust claim, Plaintiff also cannot recover damages under § 4 of the Clayton Act.

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to Plaintiff's claim for antitrust violations be **GRANTED** (Doc. 45) for failure to state a claim and these claims be **DISMISSED WITH PREJUDICE**.

### ii.    Constitutional Claims

While Plaintiff does not bring any constitutional causes of action, under her claims for a violation of the Securities Exchange Act and failure to resolve the halt, she makes reference to FINRA violating her rights under the Fifth Amendment's Due Process Clause.[6] (Doc. 13 at 69–70, 73). In her Response, Plaintiff contends FINRA committed a "Fifth Amendment due process violation for depriving her of property without notice or opportunity to be heard." (Doc. 69 at 12). But as FINRA points out, Plaintiff's argument fails. The "Fifth Amendment only applies to violations of one's constitutional rights by the United States or federal actors." *Collins v. Garcia*,

---

6. Throughout her Complaint, as it relates to FINRA, Plaintiff also makes reference to the separation of powers doctrine, the Appointments Clause, and the non-delegation doctrine. (Doc. 13 at 51–52, 67). Because Plaintiff only makes vague references to these constitutional principles and seemingly does not bring any such claims against FINRA, the Court will not address them.

No. 19-CV-1097, 2020 WL 2733953, at *6 (W.D. Tex. May 26, 2020) (citing *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)). And FINRA is a private actor, not a state actor. *Desiderio v. Nat'l Assoc. of Secs. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) ("Indeed, we have already ruled that the New York Stock Exchange—a self-regulatory private organization like the NASD [FINRA's predecessor]—is not a state actor."); *Mohlman v. Fin. Indus. Regul. Auth., Inc.*, No. 19-CV-154, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) (collecting cases) ("Courts have held without exception that FINRA is a private entity and not a state actor.").

Accordingly, the Court **RECOMMENDS** FINRA's Motion to Dismiss as to Plaintiff's claim under the Fifth Amendment's Due Process Clause be **GRANTED** (Doc. 45) for failure to state a claim and these claims be **DISMISSED WITH PREJUDICE**.

## IV.    RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** FINRA's Motion to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(2) and, alternatively 12(b)(6), be **GRANTED**. (Doc. 45). Further, the Court **RECOMMENDS** Plaintiff's claims as to FINRA for violation of the Securities Exchange Act, violation of the Sherman Antitrust Act (15 U.S.C. § 1) and Clayton Act (15 U.S.C. §§ 15, 23), negligence, failure to resolve the FINRA U3 halt, unjust enrichment, conspiracy to commit fraud, failure to supervise, and negligent or intentional infliction of emotional distress be **DISMISSED WITH PREJUDICE**.

SIGNED this 28th day of January, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

14

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).