**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **DANIELLE SPEARS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **MO:24-CV-00321-DC-RCG** |
| | § | |
| **NEXT BRIDGE HYDROCARBONS,** | § | |
| **INC.; GREGORY MCCABE; JOHN** | § | |
| **BRDA; SECURITIES & EXCHANGE** | § | |
| **COMMISSION; FINANCIAL** | § | |
| **INDUSTRY REGULATORY** | § | |
| **AUTHORITY; and JANE DOES 1-20,** | § | |
| **JOHN DOES 1-20;** | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**

BEFORE THE COURT is Defendant Next Bridge Hydrocarbons Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 54).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** Next Bridge Hydrocarbons Inc.'s Motion to Dismiss be **GRANTED**. (Doc. 54).

## I.    BACKGROUND

Plaintiff Danielle Spears ("Plaintiff"), proceeding *pro se*, filed her Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended her Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 13). Plaintiff's Second Amended Complaint bring claims against six Defendants—Next Bridge Hydrocarbons, Inc. ("NBH"); Gregory McCabe ("McCabe"); John Brda ("Brda"); Securities and Exchange Commission ("the

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

Commission"); Financial Industry Regulatory Authority ("FINRA"); and Jane Doe 1-20, John Doe 1-20 ("Does"). (Doc. 13).

The relevant factual allegations in Plaintiff's Complaint are as follows.[2] On December 14, 2020, Torchlight Energy Resources, Inc. ("Torchlight"), a Texas-based oil exploration company, formally planned to merge with Metamaterials, Inc. ("MMAT shares"), a Canadian high-technology materials firm, which would create Series A Preferred shares ("MMTLP shares"). *Id*. at 23–25. Once the merger was complete in June 2021, Torchlight shareholders received ½ MMAT share and 1 MMTLP share for each Torchlight share. *Id*. at 25. MMTLP shares started trading shortly after the merger, angering Torchlight shareholders as the shares were intended to be non-tradable. *Id*. Brda, as CEO of Torchlight, asserted the trading of MMTLP commenced without his knowledge or authorization. *Id*. Plaintiff alleges "Brda told shareholders that it wasn't his fault, yet with the same breath of air, he stated that there was a mistake in his paperwork." *Id*. at 26. "Plaintiff asserts that this was a meticulously planned and executed strategy, deliberately utilizing vague or misleading language within regulatory filings, designed specifically to enable unauthorized trading, artificially inflate shareholder expectations, and ultimately facilitate significant personal enrichment of company insiders at the direct expense of retail investors." *Id*.

Following the merger, "Plaintiff believes Brda and McCabe used undisclosed, paid, social media stock promoters to pump the stock." *Id*. at 28. "Plaintiff recalls influencers frequently declaring that MMTLP would provide 'generational wealth' and promised returns 'beyond investors' wildest dreams.'" *Id*. at 29. According to her Complaint, Plaintiff began buying MMTLP in October 2022. *Id*. at 22, 27. Plaintiff also provides she purchased shares

---

2. Plaintiff's allegations involving Brda go back to his conduct in 2004—the Court finds those facts have no bearing on the case at hand.

between December 5, 2022, and December 8, 2022. *Id*. at 45. "Plaintiff personally acknowledges that these pervasive messages directly influenced her decision to abandon her usual investment safeguards, notably removing stop-loss protections on MMTLP shares." *Id*. at 29. Plaintiff believes these undisclosed stock promoters, reinforced by explicit public endorsements from Brda, set the stage for FINRA's U3 trading halt by "strategically and repeatedly assur[ing] retail investors that short sellers would be forced to close their positions by December 12, 2022, dramatically heightening investor anticipation of a lucrative short squeeze event." *Id*. at 40.

Between October 1, 2022, and December 8, 2022, MMTLP stock "experienced significant volatility, with prices ranging from a low of $2.85 to a high of $12.50, raising questions about potential market manipulation." *Id*. at 40. On December 7, 2022, both FINRA and the merger's corporate leadership confirmed the existence of an approved corporate action for MMTLP—the spin-off to NBH. *Id*. at 42. Plaintiff alleges that according to this action, no new trades could be executed after December 8, 2022, but shareholders could settle positions through the end of trading on December 12, 2022. *Id*. The announcement further specified MMTLP shares would be cancelled on December 13, 2022, with a date for NBH shares or dividends set for December 14, 2022. *Id*. at 42–43.

On December 9, 2022, FINRA[3] halted trading of MMTLP shares, citing "extraordinary circumstances." *Id*. at 47, 51. Then, on December 13, 2022, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *See id*. at 2, 26, 43, 58. Plaintiff alleges FINRA's U3 trading halt disproportionately affected retail investors by permanently trapping their shares in an illiquid state. *Id*. at 48.

---

3. FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, including the over-the-counter market, with oversight from the Commission. (Doc. 13 at 50–51). FINRA is a registered national securities association under the Securities Exchange Act. (Doc. 47 at 11).

Plaintiff brings six causes of action against NBH: (1) violation of the Securities Exchange Act (15 U.S.C. § 78); (2) negligence; (3) failure to resolve the FINRA U3 halt; (4) unjust enrichment; (5) conspiracy to commit fraud; and (6) negligent or intentional infliction of emotional distress. (Doc. 13 at 68–78). On June 16, 2025, NBH filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 54). After numerous extensions of time, Plaintiff filed her Response on September 29, 2025 (Doc. 90), and NBH subsequently filed its Reply (Doc. 95). Accordingly, this matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir.

2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### B. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 only provides a remedy for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. EP-CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting Fed. R. Civ. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended

to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (emphasis in original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

### III.   DISCUSSION

#### A.   Securities Exchange Act § 10(b) and Rule 10b-5

"Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024) (internal quotations omitted). "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id*. (quoting 17 C.F.R. § 240.10b-5(b) (2022)).

The Supreme Court has interpreted Section 10(b) to provide a right of action to purchasers or sellers of securities injured by its violation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

> ### i.    Statutory Standing

In its Motion to Dismiss, NBH first argues Plaintiff failed to establish statutory standing for her § 10(b) and Rule 10b-5 claim. (Doc. 54 at 11). NBH argues Plaintiff is a mere holder of MMTLP securities and has not purchased or sold her shares as it relates to NBH's conduct, which negates her standing to bring this claim. *Id*. at 11–12. In her Response, Plaintiff concedes this fact, stating "Plaintiff is a holder of NBH common shares received in connection with the MMTLP spin-off." (Doc. 90 at 7). But Plaintiff argues this satisfies the purchaser requirement. *Id*.

The Supreme Court has held that a plaintiff may only bring a private damage action under § 10(b) and Rule 10b-5 as an actual purchaser or seller of securities and not as a mere holder. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 79 (2006) (explaining the Court treats this as a statutory standing requirement). One justification for this is that "a putative plaintiff, who neither purchases nor sells securities but sues instead for intangible economic injury such as loss of a noncontractual opportunity to buy or sell, is more likely to be seeking a largely conjectural and speculative recovery in which the number of shares involved will depend on the plaintiff's subjective hypothesis." *Blue Chip Stamps*, 421 U.S. at 734. The Court further reasoned that a

contract to purchase or sell a security can be voidable under § 10(b) at the option of the deceived party, but this principle is absent if there is no actual purchase or sale of securities. *Id*. at 735.

Here, Plaintiff does not plead she purchased or sold her shares in any way that relates to NBH's conduct but instead states she is a mere holder of MMTLP shares. (Doc. 90 at 7). And to the extent Plaintiff relies on the exchange of shares following the spin-off of NBH, this does not constitute a purchase or sale of securities. *Targgart v. Next Bridge Hydrocarbons*, 790 F. Supp. 3d 520, 525 (N.D. Tex. 2025) (finding that "receiving shares in a distribution does not confer standing"). Thus, Plaintiff does not have standing to bring this claim against NBH.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **GRANTED** (Doc. 54) for lack of standing and this claim be **DISMISSED WITH PREJUDICE**.

### ii.    Failure to State a Claim

Because Plaintiff does not establish standing as to her § 10(b) and Rule 10b-5 claim, she also necessarily did not sufficiently plead the claim. "To state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission;[4] (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Emps.' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm.*, 544 U.S. at 341–42). In

---

4. "Section 10(b), in proscribing the use of a 'manipulative or deceptive device or contrivance,' prohibits not only material misstatements but also manipulative acts." *ASTI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d. Cir. 2007). "Market manipulation requires a plaintiff to allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *Id*. at 101. To the extent Plaintiff attempts to plead this theory in her Complaint, she is equally unable to meet the elements. Further, Plaintiff's Response fails to address a manipulative acts argument to avoid dismissal of this claim, meaning Plaintiff has waived it.

pleading scienter, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. (citing 15 U.S.C. § 78u-4(b)(2)(a)).

Plaintiff fails to allege factual allegations to meet most, if not all, of the elements. To start, in her Response, Plaintiff alleges NBH's material misrepresentations and omissions include: (1) "NBH failed to disclose that McCabe acquired META-originated loans for just $7.3M while continuing to report the full $25.13M face value"; and (2) NBH "concealed paid consultant arrangements, share dilution, SEC-mandated restatements, pending litigation, and the loss of its core asset." (Doc. 90 at 10) (internal citations omitted). Plaintiff also states she "held MMTLP shares into the halt based on statements from Brda, stock promoting influencers, and the S-1 narrative that NBH would provide value through oil-linked assets or registration." *Id*. The Court notes it cannot find these misrepresentations or omissions within Plaintiff's Complaint[5]; but even if they were alleged, this would not suffice under a normal pleading standard, let alone the heightened pleading that is required here. Plaintiff is unable to show how these statements are material, that they were connected with a purchase or sale of security, or that she relied on them in making a purchase or sale. Finally, the Complaint alleges nothing to establish a strong inference that NBH intended to "deceive, manipulate, or defraud" Plaintiff. *Tellabs*, 551 U.S. at 319 ("To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud.").

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 be **GRANTED** (Doc. 54) for failure to state a claim and this claim be **DISMISSED WITH PREJUDICE**.

---

5. Plaintiff makes a comment in her Response that "[a]bsent the misstatements by Brda, META, and affiliated actors *later tied to NBH*, Plaintiff would not have held her MMTLP shares into the halt." (Doc. 90 at 11) (emphasis added).

### B.     Failure to Resolve the FINRA U3 Halt

In her Complaint, Plaintiff brings a cause of action against all Defendants for failure to resolve the FINRA U3 halt. (Doc. 13 at 73). Within that claim, Plaintiff asserts NBH violated Section 10(b) and Rule 10b-5 by (1) failing to take corrective action regarding the FINRA U3 halt despite its clear knowledge of ongoing market manipulation, unresolved illegal short positions, and investor harm; and (2) breaching its fiduciary duties through failure to meaningfully address or rectify the regulatory disruptions from the U3 halt, thereby exacerbating investor harm, market uncertainty, and financial losses related to ongoing illegal short positions. *Id*. at 73–74.

The Court begins by noting that "failure to resolve the FINRA U3 halt" is not a cause of action Plaintiff can bring. Even if the Court were to look to Plaintiff's "sub-claims," the Court has already discussed above why Plaintiff's violation of Section 10(b) and Rule 10b-5 claim should be dismissed. Finally, Plaintiff makes a cursory mention of NBH breaching its fiduciary duty to Plaintiff. *Id*. at 74. Though absent in her Complaint, Plaintiff's Response contends NBH had a duty to clarify its role, legal status, and investor outlook after the trading halt. (Doc. 90 at 14). Plaintiff provides no legal authority to support NBH owing such duties to Plaintiff, and even if she did, Plaintiff does not demonstrate any injuries she suffered post-halt from the breach of these duties. Thus, Plaintiff does not sufficiently allege NBH breached a fiduciary duty.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claims for failure to resolve the FINRA U3 Halt be **GRANTED** (Doc. 54) and this claim be **DISMISSED WITH PREJUDICE**.

### C.     Negligence

In her Complaint, Plaintiff brings a cause of action for negligence against all Defendants. (Doc. 13 at 71). Within that claim, Plaintiff again alleges NBH violated § 10(b) and Rule 10b-5; § 13(b)(2)(A) and Rule 13b2-1; and § 13(b)(2)(B) and Rule 13b2-2. *Id*. at 71–72. Plaintiff asserts NBH violated these Sections and Rules by negligently permitting the unchecked proliferation of illegal short positions, negligently failing to maintain accurate financial records and transparency, negligently hiring and compensating undisclosed proxies and paid promoters, and negligently failing to establish and enforce effective internal control mechanisms and oversight. *Id*. As NBH argues, Plaintiff is seemingly attempting to circumvent the required showing of fraud by pleading NBH negligently violated sections of the Exchange Act. (Doc. 54 at 23). In *Ernst & Ernst v. Hochfelder*, the Supreme Court considered whether Section 10(b) embraces negligence as a standard of liability. 425 U.S. 185, 200 (1976). The Court determined "[t]he words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct." *Id*. at 197. Thus, these negligent acts Plaintiff alleges cannot form the basis for violating the Exchange Act.

In her Response though, Plaintiff makes a new claim—"NBH breached its duty of care by failing to provide accurate, complete and non-misleading information to shareholders, and by neglecting internal governance practices necessary to prevent misrepresentations and misuse of corporate power." (Doc. 90 at 12); *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021) ("[C]laims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court."). But even if this claim were before the Court, Plaintiff provides no support for her argument that NBH owed a duty of care to Plaintiff. *Hill v. Pepper Hamilton LLP*, No. 17-CV-021, 2017 WL 10841216, at *6 (W.D. Tex. May 31, 2017) ("[The plaintiff] fails to allege that [the defendant] owed him any

11

legal duty, nor does he allege any facts from which the Court could infer that [the defendant] owed [the plaintiff] a legal duty."). Further, Plaintiff makes no factual allegations to establish a link between NBH's alleged conduct and Plaintiff's injuries, which Plaintiff's Complaint continuously attributes to the FINRA trading halt. (*See, e.g.*, Doc. 13 at 47) ("FINRA's indefinite and unexplained implementation of the extraordinary U3 trading halt on December 9, 2022, abruptly terminated all trading of MMTLP shares, causing immediate and lasting financial harm to Plaintiff.").

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for negligence be **GRANTED** (Doc. 54) and this claim be **DISMISSED WITH PREJUDICE**.

### D.    Conspiracy to Commit Fraud

Within her conspiracy to commit fraud claim, Plaintiff alleges Defendants Brda, McCabe, NBH, and the Does violated Section 10(b) and Rule 10b-5 "by conspiring to disseminate materially false and misleading information through undisclosed proxies and stock promoters, deliberately misleading investors, artificially inflating share prices, and facilitating illegal short positions." (Doc. 13 at 75). Plaintiff further asserts "Defendants Brda, McCabe, NBH, and undisclosed paid proxies (Jane and John Does) conspired to utilize cyberbullying, cyberstalking, and harassment as deliberate tools of market manipulation and investor suppression, furthering their fraudulent scheme and maintaining illegal short positions" in violation of Section 10(b) and Rule 10b-5.[6] *Id*. at 76.

---

6. Plaintiff also alleges all Defendants violated 18 U.S.C. §§ 371, 1349. (Doc. 13 at 75–76). However, these are both federal criminal statutes that do not give rise to a private right of action. *Cleveland v. Dripping Springs Indep. Sch. Dist.*, No. 19-CV-1256, 2020 WL 10054501, at *2 (W.D. Tex. June 24, 2020); *Ireland v. Ward*, No. 23-CV-00828, 2023 WL 9103066, at *2 (W.D. Tex. Dec. 6, 2023).

To start, "there is no private right of action for aiding and abetting a § 10(b) violation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 155 (2008). Second, to the extent Plaintiff's allegations of conspiracy to commit fraud are derivative of her Section 10(b) and Rule 10b-5 fraud allegations, Plaintiff is unable to plead this claim given that the Court already found she failed to state a claim for a violation of Section 10(b) and Rule 10b-5. *Highland Crusader Offshore Partners LP v. LifeCare Holdings Inc.*, 377 F. App'x 422, 428 (5th Cir. 2010); *Burback v. Oblon*, No. 20-CV-946, 2021 WL 4477607, at *10 (E.D. Tex. Sept. 30, 2021) (holding that because the plaintiffs failed to state a claim for fraud under any of their theories of liability, including a violation of Section 10(b) and Rule 10b-5, their claim for conspiracy to commit fraud also fails). Finally, Rule 9(b)'s heightened pleading standard applies to conspiracy to commit fraud claims. *Cavazos v. Allstate Vehicle & Prop. Ins.*, No. 17-CV-368, 2017 WL 11317905, at *2 (S.D. Tex. Oct. 27, 2017). And Plaintiff has failed to articulate with particularity the fraudulent conduct committed by NBH that resulted in harm to her.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for conspiracy to commit fraud be **GRANTED** (Doc. 54) and this claim be **DISMISSED WITH PREJUDICE**.

### E.    Negligent or Intentional Infliction of Emotional Distress

Plaintiff brings a cause of action for negligent or intentional infliction of emotional distress against NBH. (Doc. 13 at 78). Under this claim, Plaintiff asserts Defendants Brda, McCabe, and NBH violated Section 10(b) and Rule 10b-5 "by intentionally orchestrating harassment, cyberbullying, and targeted intimidation campaigns through paid proxies, foreseeably causing significant emotional distress, humiliation, anxiety, and substantial disruption of Plaintiff's personal and social relationships." *Id*. At the outset, Plaintiff "cannot

recover for negligent infliction of emotional distress because Texas does not recognize a cause of action under this theory." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 224 (5th Cir. 2013) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

The tort of intentional infliction of emotional distress ("IIED") requires proof of the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman*, 855 S.W.2d at 621–22. "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (quoting *Twyman*, 855 S.W.2d at 621). The Texas Supreme Court has repeatedly recognized that an IIED claim is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has *no other* recognized theory of redress." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998) (emphasis added). Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Hoffmann-La Roche*, 114 S.W.3d at 447.

Here, IIED is not Plaintiff's only recognized theory of redressability, so Plaintiff is not permitted to recover under this claim. Even if IIED was a claim available to Plaintiff, she does not plausibly allege the elements as to NBH. In her Complaint, Plaintiff wholly fails to provide any facts to tie NBH to the alleged online harassment and cyberbullying she experiences. And the harassment and cyberbullying Plaintiff describes falls short of the extreme and outrageous

standard, which is required to plead a claim for IIED. *Hoffmann-La Roche Inc.*, 144 S.W.3d at 445.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's claim for negligent or intentional infliction of emotional distress be **GRANTED** (Doc. 54) and this claim be **DISMISSED WITH PREJUDICE**.

### F.     Unjust Enrichment

Finally, in her Complaint, Plaintiff seeks to bring an unjust enrichment claim against NBH for unjustly enriching itself through coordinated promotional schemes and undisclosed compensation to paid proxies and promoters. (Doc. 13 at 74). But unjust enrichment is not an independent cause of action; it is merely a theory of recovery. *In re Primera Energy, LLC*, 579 B.R. 75, 183 (Bankr. W.D. Tex. 2017); *Llort v. BMW of N. Am., LLC*, No. 20-CV-94, 2020 WL 2928472, at *10 (W.D. Tex. June 2, 2020). Because the Court has found Plaintiff's substantive claims fail to state a cause of action, Plaintiff has no underlying claim to tether her unjust enrichment claim to.

Accordingly, the Court **RECOMMENDS** NBH's Motion to Dismiss as to Plaintiff's unjust enrichment claim be **GRANTED** (Doc. 54) and this claim be **DISMISSED WITH PREJUDICE**.

## IV.     RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** NBH's 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint be **GRANTED**. (Doc. 54). Further, the Court **RECOMMENDS** Plaintiff's claims as to NBH for a violation of the Securities Exchange Act (15 U.S.C. § 78), negligence, failure to resolve the FINRA U3 halt, conspiracy to commit fraud,

negligent or intentional infliction of emotional distress, and unjust enrichment be **DISMISSED**

**WITH PREJUDICE**.

      SIGNED this 28th day of January, 2026.


                                   _____

                                   RONALD C. GRIFFIN
                                   UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).