**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **DANIELLE SPEARS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **MO:24-CV-00321-DC-RCG** |
| | § | |
| **NEXT BRIDGE HYDROCARBONS,** | § | |
| **INC.; GREGORY MCCABE; JOHN** | § | |
| **BRDA; SECURITIES & EXCHANGE** | § | |
| **COMMISSION; FINANCIAL** | § | |
| **INDUSTRY REGULATORY** | § | |
| **AUTHORITY; and JANE DOES 1-20,** | § | |
| **JOHN DOES 1-20;** | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Securities and Exchange Commission's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 47).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** the Securities and Exchange Commission's Motion to Dismiss be **GRANTED**. (Doc. 47).

### I.    BACKGROUND

Plaintiff Danielle Spears ("Plaintiff"), proceeding *pro se*, filed her Original Complaint in this Court on December 6, 2024. (Doc. 1). Plaintiff amended her Complaint once as a matter of right and a second time with leave of Court. (Docs. 3, 13). Plaintiff's Second Amended Complaint bring claims against six Defendants—Next Bridge Hydrocarbons, Inc. ("NBH"); Gregory McCabe ("McCabe"); John Brda ("Brda"); Securities and Exchange Commission ("the

---

1. All citations are to CM/ECF generated pagination unless otherwise noted.

Commission"); Financial Industry Regulatory Authority ("FINRA"); and Jane Doe 1-20, John Doe 1-20 ("Does"). (Doc. 13).

The relevant factual allegations in Plaintiff's Complaint are as follows.[2] On December 14, 2020, Torchlight Energy Resources, Inc. ("Torchlight"), a Texas-based oil exploration company, formally initiated a merger plan with Metamaterials, Inc. ("MMAT shares"), a Canadian high-technology materials firm, which would create Series A Preferred shares ("MMTLP shares"). (Doc. 13 at 23–25). When the merger was complete in June 2021, Torchlight shareholders received ½ MMAT share and 1 MMTLP share for each Torchlight share. *Id*. at 25. Shortly after the merger, MMTLP shares started trading, which angered Torchlight shareholders as the shares were allegedly to be non-tradable. *Id*. Brda, as CEO of Torchlight, asserted the trading of MMTLP commenced without his knowledge or authorization. *Id*. Plaintiff alleges "Brda told shareholders that it wasn't his fault, yet with the same breath of air, he stated that there was a mistake in his paperwork." *Id*. at 26. "Plaintiff asserts that this was a meticulously planned and executed strategy, deliberately utilizing vague or misleading language within regulatory filings, designed specifically to enable unauthorized trading, artificially inflate shareholder expectations, and ultimately facilitate significant personal enrichment of company insiders at the direct expense of retail investors." *Id*.

Following the merger, "Plaintiff believes Brda and McCabe used undisclosed, paid, social media stock promoters to pump the stock." *Id*. at 28. "Plaintiff recalls influencers frequently declaring that MMTLP would provide 'generational wealth' and promised returns 'beyond investors' wildest dreams.'" *Id*. at 29. According to her Complaint, Plaintiff began buying MMTLP in October 2022. *Id*. at 22, 27. Plaintiff also provides she purchased shares

---

2. Plaintiff's allegations as it relates to Brda go back to his conduct in 2004—the Court finds those facts have no bearing on the case at hand.

between December 5, 2022, and December 8, 2022. *Id*. at 45. "Plaintiff personally acknowledges that these pervasive messages directly influenced her decision to abandon her usual investment safeguards, notably removing stop-loss protections on MMTLP shares." *Id*. at 29. Plaintiff believes these undisclosed stock promoters, reinforced by explicit public endorsements from Brda, set the stage for FINRA's U3 trading halt by "strategically and repeatedly assur[ing] retail investors that short sellers would be forced to close their positions by December 12, 2022, dramatically heightening investor anticipation of a lucrative short squeeze event." *Id*. at 40.

Between October 1, 2022, and December 8, 2022, MMTLP stock "experienced significant volatility, with prices ranging from a low of $2.85 to a high of $12.50, raising questions about potential market manipulation." *Id*. at 40. On December 7, 2022, both FINRA and the merger's corporate leadership confirmed the existence of an approved corporate action for MMTLP—the spin-off of NBH. *Id*. at 42. Plaintiff alleges that according to this action, no new trades could be executed after December 8, 2022, but shareholders could settle positions through the end of trading on December 12, 2022. *Id*. It further specified MMTLP shares would be cancelled on December 13, 2022, with a date for NBH shares or dividends set for December 14, 2022. *Id*. at 42–43.

On December 9, 2022, FINRA[3] halted trading of MMTLP shares, citing "extraordinary circumstances." *Id*. at 47, 51. Then, on December 13, 2022, MMTLP shares were exchanged on a one-to-one basis for shares of NBH, which is not publicly traded. *See id*. at 2, 26, 43, 58. Plaintiff alleges FINRA's U3 trading halt disproportionately affected retail investors by permanently trapping their shares in an illiquid state. *Id*. at 48.

---

3. FINRA is a private, not-for-profit self-regulatory organization ("SRO") that is authorized by Congress to conduct daily regulation of the national securities markets, including the over-the-counter market, with oversight from the Commission. (Doc. 13 at 50–51). FINRA is a registered national securities association under the Securities Exchange Act. (Doc. 47 at 11).

Plaintiff brings eight causes of action against the Commission: (1) violation of the Securities Exchange Act (15 U.S.C. § 78), (2) violation of the Sherman Antitrust Act and Clayton Act, (3) negligence, (4) failure to resolve the FINRA U3 halt, (5) unjust enrichment, (6) conspiracy to commit fraud, (7) failure to supervise, and (8) negligent or intentional infliction of emotional distress. (Doc. 13 at 68–78). On May 21, 2025, the Commission filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 47). After numerous extensions of time, Plaintiff filed her Response on September 3, 2025 (Doc. 76-1),[4] and the Commission subsequently filed its Reply (Doc. 102). Accordingly, this matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for "lack of subject-matter jurisdiction." Under Rule 12(b)(1), "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on

---

4. As reflected on the case's docket sheet, Plaintiff filed a Response in Opposition to the Commission's Motion to Dismiss. (*See* Doc. 76). In reality, Plaintiff filed a Motion for Leave to Exceed the Page Limitation of her Response, and Plaintiff attached her Response as an exhibit to the Motion. (Doc. 76-1). Because Plaintiff did not file her document as a motion, the Court did not previously rule on it. Given Plaintiff's *pro se* status, the Court will accept and consider Plaintiff's Response, which exceeds the page limit and is docketed as an exhibit.

the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. Furthermore, when a Rule 12(b)(1) motion is accompanied by the filing of another Rule 12 motion, the former should be considered before addressing attacks on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

### B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to

support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions."). "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

### C. Rule 9(b)

Securities Exchange Act § 10(b) and Rule 10b-5 only provides a remedy for those victimized by securities fraud. "Fraud claims are subject to the heightened pleading standard of Rule 9(b), under which 'a party must state with particularity the circumstances constituting fraud.'" *Poe v. Bock*, No. CV-17-00232, 2018 WL 4677901, at *2 (W.D. Tex. June 11, 2018) (quoting FED. R. CIV. P. 9(b)), *R. & R. adopted*, 2018 WL 4275839 (W.D. Tex. Sept. 7, 2018). The Fifth Circuit has interpreted this to mean a plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and

explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Stated differently, "[a] claim of fraud must allege the 'who, what, when, and where.'" *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 924 (W.D. Tex. 2023) (quoting *Williams*, 112 F.3d at 178). Further, in securities fraud suits, the Private Securities Litigation Reform Act ("PSLRA") "reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) (emphasis in original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

## III.    DISCUSSION

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Commission argues this Court lacks subject matter jurisdiction over Plaintiff's claims against the Commission because Plaintiff does not have standing to bring her claims and sovereign immunity bars her claims. (Doc. 47 at 14).

### i.    Standing

Article III of the United States Constitution limits federal courts' jurisdiction to cases and controversies. U.S. CONST. art. III § 2. "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295 (2022). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed

by the requested relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To meet the first element, the injury suffered must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The traceability or causation requirement "does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). Finally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 181.

The Commission argues Plaintiff cannot establish the second and third elements of standing: traceability and redressability. (Doc. 47 at 16–19). The Commission explains that any link between its alleged failure to regulate third parties—such as Brda, McCabe, and FINRA—and Plaintiff's economic injuries is too speculative and attenuated to show a causal connection. *Id.* Further, Plaintiff's only collectible relief would not redress any harms Plaintiff endured. *Id.* at 18–19. Plaintiff provides no meaningful response to this argument, asserting only that this Court has federal question jurisdiction over this action. (Doc. 76-1 at 8). The Court agrees with the Commission.

The Supreme Court recently explained that "when (as here) a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of someone else,' 'standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (quoting *Lujan*, 504 U.S. at 562). This is "often because unregulated parties may have more difficulty establishing causation—that is, linking their asserted injuries to the government's regulation (or lack of regulation) of someone else." *Id.*

"When the plaintiff is an unregulated party, causation ordinarily hinges on the response of the regulated (or regulable) third party to the government action or inaction . . . ." *Id*. at 383 (quoting *Lujan*, 504 U.S. at 562) (internal quotations omitted). "Yet the Court has said that plaintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013)). This is exactly what Plaintiff has done here as it relates to the Commission.

Plaintiff alleges the Commission was aware of various irregularities ahead of her purchase of MMTLP shares in 2022, but the Commission took no action, or its action was too delayed, and it was not transparent with investors. (Doc. 13 at 21–22, 44, 68). But any link between the Commission's actions or inactions to the harms Plaintiff suffered is far too attenuated to satisfy the second element of standing and create a causal connection. The Commission explains this:

> Even if the Commission would have brought an enforcement action, a court would have needed to rule in the Commission's favor. Even if a court ruled in the Commission's favor, the court would have needed to enjoin the fraud or order recompense for monetary losses. Similarly, even if the Commission had publicized its concerns about META II and/or MMTLP, Plaintiff would have had to decide not to invest or to exit her investment. And even if Plaintiff wanted to exit her investment, her ability to do so would have been dependent on finding a willing buyer *after* public concerns about fraud had been raised.

(Doc. 47 at 16). To establish causation here, the Court would need to "rely on speculation about the unfettered choices made by independent actors not before" it. *All. for Hippocratic Med.*, 602 U.S. at 383. The Court is unwilling to do so. *Id*. (holding "where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing").

Even if there was a causal link here, Plaintiff's harms cannot be redressed by her claims against the Commission. Plaintiff seeks a variety of relief as it relates to the Commission: monetary damages, a declaration that the Commission violated various federal securities laws and that FINRA is unconstitutional, a reinstitution of MMTLP trading, an Order mandating future reform, production of blue sheet data, and public disclosure of all the Commission's personnel and actions it has taken related to the FINRA halt. (Doc. 13 at 84–86). As discussed below, sovereign immunity bars Plaintiff's claims for monetary damages against the Commission, thus her injuries cannot be redressed. *Dee v. Granholm*, No. 23-1950, 2024 WL 4263831, at \*4 (D.D.C. Sept. 23, 2024) ("If a claim is barred by sovereign immunity, it is not redressable.") (citing *Seed v. Env't Prot. Agency*, 100 F.4th 257, 265 (D.C. Cir. 2024)). Second, the remaining mandamus and equitable relief Plaintiff requests would not redress her alleged remediable harm. *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 107 (1998) ("By the mere bringing of his suit, every plaintiff demonstrates his belief that a favorable judgment will make him happier. But although a suitor may derive great comfort and joy from the fact that the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury. Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.") (internal citations omitted). Thus, Plaintiff fails to establish the element of redressability.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to standing be **GRANTED**. (Doc. 47). Because Plaintiff does not have standing to bring her claims against the Commission, these claims should be **DISMISSED WITH PREJUDICE**.

ii.    **Sovereign Immunity**

Even if Plaintiff had standing, Plaintiff's claims against the Commission are barred by sovereign immunity. Sovereign immunity is jurisdictional in nature and deprives a court of subject matter jurisdiction. *See Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). "[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Only Congress can consent to suit against the United States and "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). Typically, in determining whether subject matter jurisdiction exists, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). The plaintiff bears the burden of showing unequivocal waiver of sovereign immunity. *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

The Commission argues Plaintiff does not identify any statute that waives sovereign immunity over her claims. (Doc. 47 at 20). The Court agrees. In her Complaint, Plaintiff claims the Court has jurisdiction pursuant to 28 U.S.C. § 1331 for claims under the Securities Act, the Securities Exchange Act, the Sarbanes-Oxley, the Dodd-Frank Wall Street Reform and Consumer Protection Act, Securities Litigation Uniform Standards Act, and several federal criminal statutes; supplemental jurisdiction under 28 U.S.C. § 1367 for her state law claims; the mandamus statute, 28 U.S.C. § 1361; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. (Doc. 13 at 5–6). First, general jurisdictional statutes such as 28 U.S.C. §§ 1331, 1367 do

not waive sovereign immunity. *Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987); *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 201 (D.D.C. 2013). Second, as the Fifth Circuit has stated, the mandamus statute does waive, for some purposes, the sovereign immunity of the United States. *Drake v. Panama Canal Comm'n*, 907 F.2d 532, 534 (5th Cir. 1990). But that waiver "is limited to the extent that a federal court exercising mandamus jurisdiction may only order a federal agency or actor to perform a mandatory function or ministerial duty that is imposed by law." *Vogt v. United States*, No. 11-CV-62, 2011 WL 5553678, at *5 (E.D. Tex. Oct. 5, 2011) (citing *Drake*, 907 F.2d at 534). And the "legal duty must be set out in the Constitution or by statute and its performance must be positively commanded and so plainly prescribed as to be free from doubt." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997). As described below, Plaintiff is not seeking to require the Commission to perform a nondiscretionary duty imposed on it by law, thus the mandamus statute does not waive sovereign immunity for Plaintiff's claims.

In its Motion to Dismiss, the Commission addresses both the Federal Tort Claims Act ("FTCA") and the APA, noting, however, that Plaintiff only invokes the incorrect section of the APA in her Complaint. (Doc. 47 at 21–23). As the Commission explains, both these statutes can waive sovereign immunity, but they are inapplicable to Plaintiff's claims. *Id.*

To start, this Court does not have jurisdiction over the Commission because of the FTCA. "The FTCA waives sovereign immunity and permits suit against *the United States* for claims sounding in state tort law for money damages." *Cantu Silva v. United States*, 110 F.4th 782, 787 (5th Cir. 2024) (emphasis added). "It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit." *Naranjo v. Thompson*, No. 11-CV-105, 2017 WL 11638032, at *4 (W.D. Tex. Mar. 6, 2017);

28 U.S.C. § 1346(b) ("[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims *against the United States*, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . . .") (emphasis added). The United States is not a party to this action. Instead, Plaintiff has chosen to bring suit against a federal agency. Because Plaintiff sued the agency and not the United States, the Court finds it does not have jurisdiction arising out of the FTCA to hear Plaintiff's claims for money damages against the Commission.

Additionally, the APA does not waive sovereign immunity over Plaintiff's claims. Under § 702 of the APA, sovereign immunity is waived for claims seeking non-monetary damages when a person is "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. The Commission identifies two primary issues with waiving sovereign immunity under the APA for Plaintiff's claims: (1) § 702's waiver of sovereign immunity does not apply when the agency action is discretionary and (2) § 702's waiver of sovereign immunity only applies to Plaintiff's claims if an "agency action" harmed her. (Doc. 47 at 23–26). Even if Plaintiff had attempted this argument, the Court finds sovereign immunity is not waived under the APA due to these principles.

First, § 702's waiver of sovereign immunity does not apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Throughout her Complaint, Plaintiff makes vague references to the Commission failing to investigate, regulate, and take enforcement actions. (Doc. 13 at 6, 20, 47, 71–73, 78, 82). She emphasizes this point in her Response, arguing the Commission "repeatedly and deliberately chose not to pursue any enforcement actions of accountability measures against FINRA." (Doc. 76-1 at 12). But the

Commission has explicit discretion to investigate. 15 U.S.C. § 77t(a) ("Whenever it shall appear to the Commission, either upon complaint or otherwise, that the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, have been or are about to be violated, it may, *in its discretion*, either require or permit such person to file with it a statement in writing, under oath, or otherwise, as to all the facts and circumstances concerning the subject matter which it believes to be in the public interest to investigate, and may investigate such facts.") (emphasis added). The Commission also "has broad authority to supervise, investigate, and discipline SROs [like FINRA] for wrongdoing." *Lanier v. BATS Exch., Inc.*, 105 F. Supp. 3d 353, 364 (S.D.N.Y. 2015) (citing *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007)). Finally, the Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Accordingly, § 702's waiver of sovereign immunity does not apply to Plaintiff's claims against the Commission. *See id*. at 838 ("The general exception to reviewability provided by § 701(a)(2) for action 'committed to agency discretion' remains a narrow one but within that exception are included agency refusals to institute investigative or enforcement proceedings, unless Congress has indicated otherwise.") (internal quotations omitted); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission.").

Second, Plaintiff's complaints against the Commission do not constitute agency action. At best, Plaintiff alleges the Commission's inaction. While § 702 does contemplate an agency's failure to act, it is "properly understood as a failure to take an *agency action*." *Norton v. S. Utah*

*Wilderness All.*, 542 U.S. 55, 62 (2004). And an agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). Plaintiff fails to allege the Commission committed this kind of inaction. *Norton*, 542 U.S. at 63 (stating a failure to act is, "for example, the failure to promulgate a rule or take some decision by a statutory deadline"). Even to the extent Plaintiff makes claims regarding the Commission's failures, they are entirely too vague and conclusory to be actionable. (*See, e.g.*, Doc. 13 at 80, 82) (stating "the SEC's ongoing failure to fulfill its mandatory duties," "abandoned its oversight duties by failing to investigate or effectively address systemic market irregularities").Thus, the APA does not waive sovereign immunity for Plaintiff's claims, and the Court does not have subject matter jurisdiction over the Commission in this action.[5]

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to sovereign immunity be **GRANTED**. (Doc. 47). Because the Commission's sovereign immunity bars Plaintiff's claims, the claims should be **DISMISSED WITH PREJUDICE**.

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Even if Plaintiff had standing and the Commission's sovereign immunity did not bar her claims, Plaintiff failed to state a claim for which relief can be granted.

### i. Negligence, Failure to Resolve the FINRA U3 Halt, Unjust Enrichment, Failure to Supervise, Emotional Distress (Negligent or Intentional Infliction)

In its Motion to Dismiss, the Commission addresses Plaintiff's Counts III (negligence), IV (failure to resolve the FINRA U3 halt), V (unjust enrichment), VII (failure to supervise), and VIII (emotional distress) together, stating each of these counts are premised on the notion that

---

5. The Commission also asserts that, to the extent Plaintiff is contending the Commission should have issued an order overturning FINRA's trading halt or should have reinstituted MMTLP trading, a court of appeals would have exclusive jurisdiction. (Doc. 47 at 26). As the Court has already found a lack of subject matter jurisdiction over the Commission due to its sovereign immunity and Plaintiff's failure to establish Article III standing, the Court need not discuss this additional or alternative argument.

the Commission negligently breached its duty to investors by failing to enforce the securities laws and/or to resolve the FINRA U3 halt. (Doc. 47 at 27).

The Commission relies primarily on *Grady* to show its lack of duty to individual investors. *Grady v. United States*, No. 13-15C, 2013 WL 4957344 (Fed. Cl. July 31, 2013), *aff'd*, 565 F. App'x 870 (Fed. Cir. 2014). In *Grady*, a *pro se* plaintiff brought suit against the Commission after sustaining a financial loss during a stock market "Flash Crash." *Id*. at *1. There, the plaintiff argued the 1934 Securities Act imposed a fiduciary duty on the Commission to investors to maintain "fair and orderly markets." *Id*. at *3. The Court found the Commission "has no such duty, however, because the statute does not establish any sort of trust relationship that benefits investors." *Id*. This Court follows *Grady*. Further, courts have refused to find the Commission owes a duty of care to individual investors, because if it did, the Commission "would become the guarantor of the investment decisions of individuals who choose to participate in regulated markets. While, undoubtedly, one function of the SEC is to protect the public from people [committing fraud], to impose an obligation on the government to expend the resources sufficient to uncover every wrong which could be discovered from a proper investigation is to impose an unlimited obligation on the government to spend its resources on such endeavors, whether or not fiscal policy concerns might require otherwise." *Baer v. United States*, No. 11-1277, 2011 WL 6131789, at *7 (D.N.J. Dec. 8, 2011).

In her negligence claim, Plaintiff alleges the Commission violated various sections of the Exchange Act by negligently failing to enforce federal securities laws and regulations and negligently permitting persistent settlement failures, share-count discrepancies, and manipulative trading practices. (Doc. 13 at 72). Because the Commission does not owe a legal duty to Plaintiff as an investor, Plaintiff is unable to state a claim for negligence. *Hill v. Pepper Hamilton LLP*,

No. 17-CV-021, 2017 WL 10841216, at *6 (W.D. Tex. May 31, 2017) ("[The plaintiff] fails to allege that [the defendant] owed him any legal duty, nor does he allege any facts from which the Court could infer that [the defendant] owed [the plaintiff] a legal duty."). Even if she had alleged a duty, Plaintiff did not plead sufficient facts to show that the Commission breached this duty.

In her claim against the Commission for failing to resolve the FINRA halt, Plaintiff again alleges the Commission violated various sections of the Exchange Act, as well as the Fifth Amendment, by failing to promptly lift, adequately explain, or address the U3 halt; neglecting its statutory duty to facilitate prompt and accurate clearance, settlement, and resolution of securities transactions impacted by the halt; and by failing in its statutory oversight duties over FINRA. (Doc. 13 at 73). Even setting aside that "failure to resolve the FINRA U3 halt" is not a cause of action Plaintiff can bring, the Court agrees with the Commission that any recognized claim Plaintiff would have standing to bring as it relates to the Commission's involvement with the halt would be derived from the Commission's duty to investors—a duty which does not exist. (Doc. 47 at 27).

The Court finds the same to be true for Plaintiff's failure to supervise and negligent or intentional infliction of emotional distress claims. (Doc. 13 at 77) (alleging the Commission failed to supervise broker-dealers, market makers, and regulatory personnel adequately and failed to adequately implement, enforce, or supervise market access controls); (Doc. 13 at 77) (alleging the Commission recklessly failed to address, investigate, or mitigate market manipulation, illegal short positions, cyberbullying, and investor intimidation). There is no duty that exists between the Commission and Plaintiff, an individual investor, allowing her to bring such claims. Even if there were, Plaintiff fails to allege sufficient facts to state such claims.

As to Plaintiff's unjust enrichment claim, the Commission argues it fails because Plaintiff does not allege any facts showing the Commission profited from the alleged manipulation related to MMTLP. *Id.* at 29. The Court agrees Plaintiff has not sufficiently plead a claim for unjust enrichment as she does not state any relevant facts as it relates to the Commission.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's claims for negligence, failure to resolve the FINRA U3 halt, failure to supervise, emotional distress (negligent or intentional infliction), and unjust enrichment be **GRANTED** (Doc. 47) for failure to state a claim and these claims be **DISMISSED WITH PREJUDICE**.

### ii.    Antitrust Claims

In her Complaint, Plaintiff alleges the Commission violated Section 2 of the Sherman Act and Section 13 of the Clayton Act. (Doc. 13 at 70–71). However, as the Commission argues, it is not a proper defendant under the antitrust statutes. *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 246 (D.D.C. 1981) ("Accordingly, we hold that the United States, its agencies and officials, remain outside the reach of the Sherman Act."); *Jet Courier Servs., Inc. v. Fed. Res. Bank of Atlanta*, 713 F.2d 1221, 1228 (6th Cir. 1983) ("As an agency of the federal government the Federal Reserve System may not be sued under the Sherman Act."); *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 580 (2d Cir. 2000) ("[T]he United States is not a 'person' under the antitrust laws, such that it cannot be subject to a lawsuit under the Sherman Act. . . . [T]he *Sea-Land* court's holding that the Sherman Act does not expose federal agencies to legal or equitable liability for alleged antitrust violations is uncontroversial . . . ."); *Gonzalez v. United States*, 681 F. App'x 310, 311 (5th Cir. 2017) ("[T]he Government is 'not controlled by the antitrust laws' and cannot be a defendant in an antitrust action." (quoting *U.S. Postal Serv. v. Flamingo Indus. Ltd.*, 540 U.S. 736, 744–48 (2004))).

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's claim for antitrust violations be **GRANTED** (Doc. 47) for failure to state a claim and these claims be **DISMISSED WITH PREJUDICE**.

### iii. Constitutional Claims

While Plaintiff does not bring any constitutional causes of action, under her claims for a violation of the Securities Exchange Act and failure to resolve the halt, she references the Commission violating her rights under the Fifth Amendment's Due Process Clause. (Doc. 13 at 69–70, 73). Plaintiff contends FINRA and the Commission violated Plaintiff's constitutional rights under the Fifth Amendment's Due Process Clause by failing to resolve the U3 halt timely and transparently, depriving shareholders of access to their investments, and by failing to provide adequate oversight, timely communication, transparency, or corrective actions, thus depriving Plaintiff of protected property interests without due process of law. *Id.*

The Fifth Amendment's Due Process Clause guarantees that persons will not "be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. However, Plaintiff does not provide any facts to support the notion that the Commission deprived her of property. Plaintiff does not allege that she no longer owns her shares, rather she complains that during the halt she did not have access to her investments. (Doc. 13 at 69–70, 73). Even if that could constitute a taking of property, Plaintiff does not point to any action the Commission took to deprive her of that access. Thus, the Commission did not violate Plaintiff's Fifth Amendment rights.

Additionally, within her Complaint, Plaintiff asks the Court to declare FINRA's existing operational and regulatory structure is unconstitutional. *Id.* at 85. As the Commission notes, Plaintiff fails to articulate any constitutional provisions or principles that are violated by the

alleged conflicts of interest presented by FINRA's funding mechanism. Thus, Plaintiff's constitutional claim regarding FINRA's structure should be dismissed.

As a final note, Plaintiff's Response failed to address any of the Commission's arguments regarding her constitutional claims, so she has abandoned these claims. *In Re Matter of Dall. Roadster, Ltd.*, 846 F.3d 112, 125–26 (5th Cir. 2017) (holding the plaintiff "abandoned the claim by failing to include any argument about the claim in his response to [the defendant's] motions to dismiss and for summary judgment"); *Douglas v. Dorchester Props Ltd.*, No. 22-CV-100, 2023 WL 5156337, at *4 (N.D. Tex. May 17, 2023) ("At the motion to dismiss stage, plaintiffs must defend their claims against the movant's arguments in order to preserve those claims. Courts are strict about this requirement, even when the plaintiff is *pro se*.") (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's constitutional claims, including her claim under the Fifth Amendment's Due Process Clause, be **GRANTED** (Doc. 47) for failure to state a claim and these claims be **DISMISSED WITH PREJUDICE**.

### iv.   Securities Exchange Act § 10(b) and Conspiracy to Commit Fraud

Throughout multiple causes of action in her Complaint, Plaintiff alleges the Commission violated Section 10(b) and Rule 10b-5 of the Exchange Act. (Doc. 13 at 68, 74–75, 78). Specifically, under her conspiracy to commit fraud claim, Plaintiff asserts the Commission violated § 10(b) and Rule 10b-5, as well as 18 U.S.C. §§ 371, 1349.

To start, "Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as

the SEC may prescribe." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024) (internal quotations omitted). "Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (quoting 17 C.F.R. § 240.10b–5(b) (2022)). The Supreme Court has interpreted Section 10(b) to provide a right of action to purchasers or sellers of securities injured by its violation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007). "But the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

"To state a claim under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission;[6] (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Empl.' Ret. Syst. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm.*, 544 U.S. at 341–42). Plaintiff makes no factual allegations that even hint

---

6. "Section 10(b), in proscribing the use of a 'manipulative or deceptive device or contrivance,' prohibits not only material misstatements but also manipulative acts." *ASTI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d. Cir. 2007). "Market manipulation requires a plaintiff to allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *Id.* at 101. To the extent Plaintiff attempts to plead this theory in her Complaint, she is equally unable to meet the elements. Further, Plaintiff's Response fails to address the Commission's arguments for dismissing this claim, meaning Plaintiff has abandoned the claim.

at any of these elements as it relates to the Commission, and she is therefore unable to state a claim.[7]

Plaintiff also alleges all Defendants, including the Commission, violated 18 U.S.C. §§ 371, 1349. (Doc. 13 at 75–76). However, these are both federal criminal statutes that do not give rise to a private right of action. *Cleveland v. Dripping Springs Indep. Sch. Dist.*, No. 19-CV-1256, 2020 WL 10054501, at *2 (W.D. Tex. June 24, 2020); *Ireland v. Ward*, No. 23-CV-00828, 2023 WL 9103066, at *2 (W.D. Tex. Dec. 6, 2023).

As a final note, Plaintiff's Response failed to address any of the Commission's arguments regarding her § 10(b) and Rule 10b-5 or 18 U.S.C. §§ 371, 1349 claims, so she has abandoned these claims. *In Re Matter of Dall. Roadster, Ltd.*, 846 F.3d at 125–26 (holding the plaintiff "abandoned the claim by failing to include any argument about the claim in his response to [the defendant's] motions to dismiss and for summary judgment"); *Douglas*, 2023 WL 5156337, at *4 ("At the motion to dismiss stage, plaintiffs must defend their claims against the movant's arguments in order to preserve those claims. Courts are strict about this requirement, even when the plaintiff is *pro se*.") (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's claim for violation of the Securities Exchange Act § 10(b) and Rule 10b-5 and claims under 18 U.S.C. §§ 371, 1349 be **GRANTED** (Doc. 47) for failure to state a claim and these claims be **DISMISSED WITH PREJUDICE**.

---

7. In her Complaint, Plaintiff also generally states that "Defendants violated Section 9(a) (15 U.S.C. § 78i(a)) by intentionally manipulating the price of MMTLP shares through artificial and deceptive trading conditions." (Doc. 13 at 68). If this claim applies to the Commission, because Plaintiff cannot establish a Section 10(b) claim, she similarly did not sufficiently plead a Section 9(a) claim. *Chemetron Corp v. Bus. Funds, Inc.*, 718 F.2d 725, 727 (5th Cir. 1983) (explaining the two Sections have overlapping elements but Section 9(a) requires an additional element to establish liability); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 423–434 (S.D.N.Y. 2010) (analyzing Section 9(a) and 10(b) claims together).

###### v.     Petition for Writ of Mandamus

In her last cause of action, Plaintiff requests the Court "issue a Writ of Mandamus compelling the Commission and FINRA to immediately and fully perform their mandatory statutory duties." (Doc. 13 at 79). Plaintiff also asks the Court to "appoint an impartial third-party Special Agent to independently oversee and administer a controlled two-day trading event, explicitly structured to reconcile and close all open positions that are not legitimate long shares in MMTLP securities," and compel the Commission and FINRA to produce a full and complete accounting of all MMTLP shares to assist in the two-day trading event. *Id*.

A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary cases." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019). A writ may only be issued if three conditions are met: (1) the plaintiff must have no other adequate means to attain the relief she desires; (2) the court must be satisfied that the writ is appropriate under the circumstances; and (3) the plaintiff must demonstrate a clear and indisputable right to the writ. *Id*. "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

Here, Plaintiff's claim for mandamus relief fails. Plaintiff has not established, or even attempted to establish, the conditions necessary for this Court to issue a writ. Further, as the Court discussed above, the actions or inactions of the Commission Plaintiff complains of are discretionary in nature and thus are not subject to this form of relief.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's request for a Writ of Mandamus be **GRANTED** (Doc. 47) and this request be **DENIED**.

### vi.    Request for Systematic Reforms

As additional relief, Plaintiff requests this Court issue an injunction requiring FINRA and the Commission to "permanently establish effective oversight mechanisms to prevent the proliferation of illegal short positions, enforce securities laws consistently, and enhance transparency and public accountability." (Doc. 13 at 84). The Commission argues Plaintiff's request be dismissed because courts cannot issue such vague, overly broad declarations. (Doc. 47 at 34). The Court agrees, and it has been given no reason to issue such relief. Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's request for an injunction be **GRANTED** (Doc. 47) and this request be **DENIED**.

### vii.    Various Provisions of the Exchange Act

Within Plaintiff's nine enumerated causes of action in her Complaint, she alleges the Commission violated various provisions of the Exchange Act: Section 6(b)(5) (15 U.S.C. § 78f(b)(5)); Section 15(b)(4)(E) (15 U.S.C. § 78o(b)(4)(E)); Section 15A(b)(6) (15 U.S.C. § 78o-3(b)(6)); Section 17(a) (15 U.S.C. § 78q(a)); Section 17A(a)(1) (15 U.S.C. § 78q-1(a)(1)); Section 19(c) (15 U.S.C. § 78s(c)); and Section 29(b) (15 U.S.C. § 78cc(b)). (Doc. 13 at 68–78).

Many of these provisions lack a private right of action, including Section 6(b)(5) (15 U.S.C. § 78f(b)(5)); Section 15(b)(4)(E) (15 U.S.C. § 78o(b)(4)(E)); Section 15A(b)(6) (15 U.S.C. § 78o-3(b)(6)); Section 17(a) (15 U.S.C. § 78q(a)); and Section 17A(a)(1) (15 U.S.C. § 78q-1(a)(1)). *Ferreri v. Fox, Rothschild, O'Brien & Frankel*, 690 F. Supp. 400, 403 n.3 (E.D. Penn. 1988) (Section 6); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980)

24

(Sections 6(b), 15A(b)(6), 17(a)); *Fraser v. Fid. Tr. Co., Int'l*, No. 04-CIV-6958, 2005 WL 6328596, at *14 (S.D.N.Y. June 23, 2005) (Section 15(b)(4)(E)); *Synder v. Newhard, Cook & Co., Inc.*, 764 F. Supp. 612, 615 (D. Colo. 1991) (Section 15(b)(4)(E)); *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095, 1100 (5th Cir. 1988) (Section 17(a)); *Ahr v. Raymond James & Assocs., Inc.*, No. 08-CV-507, 2008 WL 11351382, at *4 (S.D. Ohio Oct. 9, 2008) (Section 17A).

The remaining provisions are inapplicable to this litigation or not plausibly plead. While Section 19(c) likely does not have a private right of action, even if it did, Plaintiff provides no basis that the Commission had violated this provision. 15 U.S.C. § 78s(c) (Section 19(c)) (authorizing the Commission to abrogate, add to, and delete from the rules of an SRO as it deems necessary and appropriate). The last provision Plaintiff alleges the Commission violated is Section 29(b). "Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006). To void an agreement under this Section, a plaintiff must establish that the contract involves a prohibited transaction, the parties are in contractual privity, and the plaintiff was in the class of persons that the securities acts were designed to protect. *Id*. Given that Plaintiff has no factual allegations relating to a contract, this provision is inapplicable here.

Accordingly, the Court **RECOMMENDS** the Commission's Motion to Dismiss as to Plaintiff's various claims for violations of the Securities Exchange Act be **GRANTED** (Doc. 47) for failure to state a claim and these claims be **DISMISSED WITH PREJUDICE**.

## IV.   RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** the Commission's Motion to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(1) and, alternatively 12(b)(6), be **GRANTED**. (Doc. 47). Further, the Court **RECOMMENDS** Plaintiff's claims as to the Commission for violation of the Securities Exchange Act, violation of the Sherman Antitrust Act and Clayton Act, negligence, failure to resolve the FINRA U3 halt, unjust enrichment, conspiracy to commit fraud, failure to supervise, and negligent or intentional infliction of emotional distress be **DISMISSED WITH PREJUDICE**. Finally, the Court **RECOMMENDS** Plaintiff's requests for a Writ of Mandamus and an injunction be **DENIED**. (Doc. 13).

SIGNED this 28th day of January, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).